IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| THOMAS B. WILNER, et al., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Civil Action No. 07-CIV-3883 |
| | ) | |
| NATIONAL SECURITY AGENCY and | ) | |
| DEPARTMENT OF JUSTICE, | ) | |
| | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

## DECLARATION OF JOSEPH J. BRAND

I, Joseph J. Brand, declare as follows:

1. I am the Associate Director, Community Integration, Policy and Records for the National Security Agency ("NSA" or the "Agency"). I have been employed with NSA since 2000, and prior to my employment, I served as a Military Intelligence Officer in the U.S. Army for almost 29 years. Prior to this current assignment, I held various senior and supervisory positions including the Deputy Chief of Staff for Operations and Support for the Signals Intelligence Directorate, wherein I oversaw signals intelligence (SIGINT) operations of NSA, which included the SIGINT units of the U.S. armed services. While the Deputy Chief of Staff for Operations and Support for the SIGINT Directorate, I was responsible for protecting NSA SIGINT activities, sources and methods against unauthorized disclosures.

2. As the Associate Director, Community Integration, Policy and Records, I am a TOP SECRET classification authority, pursuant to Section 1.3 of Executive Order 12958, as amended March 25, 2003, and I am responsible for the processing of requests made

pursuant to the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, for NSA records. It is also my responsibility to assert FOIA Exemptions in the course of litigation.

3. My statements herein are based on my personal knowledge of SIGINT production and NSA operations and the information available to me in my capacity as the former Deputy Chief of Staff for Operations and Support for the SIGINT Directorate and as the current NSA Director of Policy. Of import is the fact that I was one of NSA's Original Classification Authorities for the Terrorist Surveillance Program (TSP)[1], when I served as the Deputy Chief of Staff for the SIGINT Directorate, and I was one of the few Agency officials who had been cleared to have access to the details of the TSP and the documents related thereto. I was responsible for ensuring that these details were properly classified when necessary to protect intelligence sources and methods. Accordingly, I have knowledge of the documents reviewed by NSA in response to the Plaintiffs' FOIA request seeking records pertaining to the TSP, which was operational at the time the Plaintiffs submitted their FOIA request.

### ORIGIN AND MISSION OF NSA

4. NSA was established by Presidential Directive in 1952 as a separately organized agency within the Department of Defense. See Executive Order 12333, Section 1.12(b). NSA's cryptologic mission has three functions: to collect, process, and disseminate SIGINT information for national foreign intelligence purposes; to conduct

---

[1] The Foreign Intelligence Surveillance Court ("FISA Court" or "FISC") issued orders on January 11, 2007 authorizing the Government to target for collection, international communications into or out of the United States where there is probable cause to believe that one of the parties to the communication is a member or agent of al Qaeda or an associated terrorist organization. In light of these FISC Orders, any electronic surveillance that was occurring as part of the Terrorist Surveillance Program ("TSP") is now being conducted subject to the approval of the FISC, and the President has decided not to reauthorize the TSP. The TSP is no longer operative. See Attorney General Alberto Gonzales's letter to the United States Senate Committee on the Judiciary dated January 17, 2007.

information security activities; and to conduct operations security training for the United States Government.

5. Signals intelligence is one of NSA's primary missions. NSA's SIGINT mission is to obtain information from foreign electromagnetic signals and to provide, frequently on a rapid response basis, reports derived from such information or data to national policy makers, combatant commanders, and the intelligence community of the United States Government. A primary SIGINT mission of NSA is to intercept communications in order to obtain foreign intelligence information necessary to the national defense, national security, or the conduct of the foreign affairs of the United States. The SIGINT collection mission of NSA provides national policy makers and the intelligence community with highly reliable foreign intelligence information.

6. The Agency's SIGINT mission includes intelligence sources and methods, which enable it to keep pace with challenging developments in communications technology. In the course of fulfilling its mission, NSA produces foreign intelligence and reports it to customers within the United States Government.

7. There are two primary reasons for gathering and analyzing intelligence information. The first, and most important, is to gain the information required to direct U.S. resources as necessary to counter external threats. The second reason is to obtain the information necessary to direct the foreign policy of the United States. Information produced by SIGINT is relevant to a wide range of important issues, including military order of battle; threat warnings and readiness; arms proliferation; terrorism; and foreign aspects of international narcotics trafficking. This information is often critical to the

formulation of U.S. foreign policy and the support of U.S. military operations around the world. Moreover, intelligence produced by NSA is often unobtainable by other means.

8. NSA has developed a SIGINT collection network that acquires, among other things, foreign and international electronic communications. The technological infrastructure that supports NSA's foreign intelligence information collection network has taken years to develop at a substantial cost and untold human effort. It relies on sophisticated collection and processing technology.

9. NSA's ability to produce foreign intelligence information depends on its access to foreign and international electronic communications. Further, SIGINT technology is both expensive and fragile. Public disclosure of either the capability to collect specific communications or the substance of the information itself can easily alert targets to the vulnerability of their communications. Disclosure of even a single communication holds the potential of revealing the intelligence collection techniques that are applied against targets around the world. Once alerted, SIGINT targets can implement measures to thwart continued SIGINT collection.

10. Information obtained from intercepted foreign communications is called communications intelligence ("COMINT"). NSA's COMINT efforts constitute only part of the functions and activities of the Agency. A fundamental tenet of the COMINT process is that the identity of specific communications (commonly referred to as "targets"), the degree of success in exploiting these targets, and the vulnerability of particular foreign communications are all matters that must be maintained in strictest secrecy because of the fragility of the ability to exploit foreign communications. Disclosure of the identity of the targets, the ability to exploit those targets, or the

4

vulnerability of particular foreign communications would encourage countermeasures by the targets of NSA'S COMINT efforts. If a target is successful in defeating an intercept operation, all of the intelligence from that source is lost unless and until NSA can establish new and equivalent exploitation of that target's signals. If a source becomes unavailable, the military, national policymakers, combatant commanders, and the intelligence community must operate without the information the signals provided. Such losses are extremely harmful to the national security of the United States.

## THE TERRORIST SURVEILLANCE PROGRAM (TSP)

11. Following the devastating attacks of September 11, 2001, the President of the United States authorized the NSA to intercept international communications into and out of the United States of persons linked to al Qaeda or related terrorist organizations (hereinafter, the "Terrorist Surveillance Program" or "TSP"). The TSP was a targeted and focused program intended to help "connect the dots" between known and potential terrorists and their affiliates. In order for communications to be intercepted under the TSP, there was a requirement to have a reasonable basis to conclude that one party to the communication was located outside the United States and that one party to the communication was a member of al Qaeda, affiliated with al Qaeda, or a member of an organization affiliated with al Qaeda or terrorism. Thus, the TSP program was an "early warning" system with one purpose: to detect and prevent another catastrophic attack on or within the United States.

12. The TSP was a SIGINT program that was critical to the national security of the United States. The President publicly acknowledged the existence of the program on December 17, 2005. As the President has made clear, however, details about the TSP

5

remain highly classified and subject to special access restrictions under the criteria set forth in Executive Order 12958, as amended. Unauthorized disclosure of information regarding the TSP can be expected to cause exceptionally grave damage to the national security of the United States. Thus, pursuant to the criteria outlined in Executive Order 12958, as amended, information related to the TSP is classified TOP SECRET, and is subject to the special access and handling requirements reserved for "Sensitive Compartment Information," (SCI), because it involved or was derived from particularly sensitive intelligence sources and methods.

13. NSA's SIGINT operations, including the TSP (the surveillance authorized by the President) or the surveillance now authorized by the FISC, are both sensitive and fragile. The critical intelligence information that is derived from NSA's SIGINT operations depends upon the collection of electronic communications, which can be easily compromised if targets are made aware of NSA capabilities and priorities. If an individual learns or suspects that his\her signals are or may be targeted by the NSA for collection, he\she may take steps to evade detection, to manipulate the information that NSA receives, or to implement other countermeasures aimed at undermining the NSA's operations. The resulting loss of intelligence from such a source deprives U.S. policy makers of information critical to U.S. interests, such as the prevention of terrorist attacks.

14. Congress has specifically recognized the inherent sensitivity of the SIGINT activities of the NSA; thus, Congress has passed statutes to protect the fragile nature of NSA's SIGINT efforts. These statutes recognize the vulnerability of signals intelligence to countermeasures of a foreign power or terrorist party and the significance of the loss of valuable foreign intelligence information to national policymakers, combatant

6

commanders, and the intelligence community. These statutes are: Section 6 of the

National Security Agency Act of 1959 (codified at 50 U.S.C. § 402 note); Section

102A(i)(l) of the Intelligence Reform and Terrorism Prevention Act of 2004, 50 U.S.C. §

403-1(i)(1); and 18 U.S.C. § 798. Under these three statutes, NSA is specifically

authorized to protect certain information concerning its activities, and its intelligence

sources and methods, from public disclosure.

## PLAINTIFF'S FOIA REQUEST

15. By letter dated January 18, 2006, William Goodman, Legal Director for the

Center for Constitutional Rights ("CCR"), submitted a FOIA request, on behalf of the

Plaintiffs, to the NSA seeking records concerning warrantless electronic surveillance that

reference any of the individuals identified in Appendix A of his FOIA request (i.e. the

Plaintiffs) and records concerning the development, approval, and implementation of the

domestic surveillance program. Attachment 1. Mr. Goodman further set out eight (8)

items to describe the information he was seeking in its FOIA request. Id.

16. NSA's former Director of Policy, Louis Giles, responded by letter dated

February 28, 2006, wherein he informed the Plaintiffs, through CCR's Legal Director,

that NSA could not acknowledge the existence or non-existence of records responsive to

item #1 of Plaintiffs' request, and therefore, he was denying this portion of their request

pursuant to the first and third exemptions of the FOIA. Attachment 2. Mr. Giles further

informed Plaintiffs that NSA did not have records responsive to items #2 and #5 of their

request, and for items #3-4 and #6-8, other than the two Director's Messages to the NSA

workforce that were released with this letter, there was responsive information, but it was

properly and currently classified and protected from statute and thus exempt from

7

disclosure pursuant to the first and third exemptions of the FOIA. Id. Additionally, Mr.

Giles informed Plaintiffs that some of the responsive information to items #3-4 and #6-8,

in addition to being exempt based on the first and third exemptions of the FOIA, was

exempt from disclosure pursuant to the fifth exemption of the FOIA, because the

information was protected by the predecisional deliberative process privilege, attorney

client privilege, and/or was attorney work product. Id. Further, Mr. Giles informed

Plaintiffs that a document responsive to Plaintiffs item #4 originated with another

government agency and that he referred this document to that agency for review and

direct response to them. Finally, Mr. Giles informed Plaintiffs of their appeal rights. Id.

17. Plaintiffs appealed Mr. Giles' decision by letter dated May 1, 2006.

Attachment 3. NSA's Deputy Director, who is NSA's FOIA/Privacy Act Appeals

Authority, denied Plaintiffs' appeal. Attachment 4. In his denial, NSA's Deputy

Director informed Plaintiffs of their right to seek judicial review of his decision. Id.

## NSA'S GLOMAR DETERMINATION

18. Plaintiffs seek surveillance records that reference them. NSA's only response

to such a request is to state that it cannot confirm publicly in any particular case whether

or not any communications were collected pursuant to the TSP or the surveillance now

authorized by the FISC or, conversely, that no such collection occurred.

19. Based on my knowledge of the TSP and my position as the Associate

Director, Community Integration, Policy and Records, the Agency official responsible for

the processing of all requests made pursuant to FOIA, I am confident that NSA's

determination that it could not acknowledge the existence or non-existence of

surveillance information that reference the Plaintiffs was proper because a positive or

8

negative response to this request would reveal information that is currently and properly classified in accordance with E.O. 12958 as amended and is protected from disclosure by statute.[2]

## TSP TARGETING INFORMATION IS CLASSIFIED

20.  Acknowledgment of the existence or non-existence of surveillance information referencing the Plaintiffs would reveal information that meets the criteria for classification as set forth in Subparagraphs (c) and (g) of Section 1.4 of Executive Order 12958, 60 Fed. Reg. 19825 (Apr. 17, 1995), as amended by Executive Order 13292, 68 Fed. Reg. 15315 (Mar. 25, 2003) (hereinafter "E.O. 12958, as amended"), which authorizes the classification of information concerning "intelligence activities (including special activities), intelligence sources or methods, or cryptology," and "vulnerabilities or capabilities of systems, installations, infrastructures, projects, plans, or protection systems relating to national security, which includes defense against transnational terrorism." In addition, any such positive or negative response would disclose information that is subject to Sensitive Compartmented Information (SCI) control systems, which requires special access and handling restrictions.

21.  Such information is currently and properly classified TOP SECRET-SCI pursuant to Executive Order 12958, as amended 25 March 2003, sections 1.2.(1), because its disclosure reasonably could be expected to cause exceptionally grave damage to the national security.  Any disclosure of this information would obviously and immediately

---

[2] I understand that plaintiffs have also brought suit challenging NSA's withholding of records responsive to item 3 in their FOIA request. See Second Am. Compl. ¶ 8.  When that issue is briefed, NSA will submit a supplemental declaration explaining why NSA withheld records responsive to that item on the grounds that they contain information that is currently and properly classified in accordance with E.O. 12958 as amended; that the information is protected from disclosure by statute; and that, for certain records, the information, in addition to being classified and protected from disclosure by statute, is also privileged in accordance with the deliberative process privilege, attorney-work product doctrine, and the attorney-client privilege.

affect the ability of NSA to fulfill the primary purpose of the TSP, which is now authorized by the FISC: to detect and prevent the next terrorist attack against the United States. To identify targets under the TSP is to offer official confirmation that such persons have been identified as, or linked to, a potential threat. Such official confirmation is invaluable information to the enemy; its disclosure will alert the enemy that their operations may have been compromised and allow them to adopt strategies to circumvent surveillance and to otherwise evade detection, doing immeasurable damage to the national security of the United States.

22. Acknowledging the existence or non-existence of those individuals or organizations subject to surveillance would provide our adversaries with critical information about the capabilities and limitations of the NSA, such as the types of communications that may be susceptible to NSA detection. Confirmation by NSA that a person's activities are not of foreign intelligence interest or that NSA is unsuccessful in collecting foreign intelligence information on their activities on a case-by-case basis would allow our adversaries to accumulate information and draw conclusions about NSA's technical capabilities, sources, and methods. For example, if NSA were to admit publicly in response to an information request that no information about Persons X, Y or Z exists, but in response to a separate information request about Person T state only that no response could be made, this would give rise to the inference that Person T is a target of the TSP. Over time, the accumulation of these inferences would disclose the targets and capabilities (sources and methods) of NSA's SIGINT activities and functions and inform our adversaries of the degree to which NSA is aware of some of their operatives or can successfully exploit particular communications.

23. NSA cannot respond to each case in isolation, but must acknowledge that our adversaries will examine all released information together. This compilation of information, if disclosed, could reasonably be expected to cause exceptionally grave and irreparable damage to the national security by providing our adversaries a road map, instructing them which communications modes and personnel remain safe or are successfully defeating NSA's capabilities. Our adversaries could exploit this information in order to conduct their international terrorist activities more securely, to the detriment of the national security of the United States.

24. For these reasons, the fact of the existence or nonexistence of the information concerning the specific targeting of individuals/organizations is a currently and properly classified matter in accordance with Executive Order 12958, as amended and thus the Plaintiffs' FOIA request is properly denied pursuant to FOIA Exemption 1. See People for the American Way v. Nat'l Security Agency, 462 F. Supp. 2d 21, 27 (D.D.C. 2006).

## TSP TARGETING INFORMATION IS PROTECTED FROM DISCLOSURE BY STATUTE

25. The fact of the existence or nonexistence of targeting information is also protected from disclosure by federal statute. Acknowledging the existence or nonexistence of specific targeting information would reveal NSA's organization, functions and activities by revealing the success or failure of NSA's activities. It would also reveal the intelligence sources and methods that NSA uses to obtain this information.

26. As described above, Congress has enacted three statutes to protect the fragile nature of NSA's SIGINT efforts, to include but not limited to, the existence and depth of signal intelligence-related analytical successes, weaknesses and exploitation techniques. These statutes recognize the vulnerability of signals intelligence to countermeasures and

the significance of the loss of valuable intelligence information to national policymakers, combatant commanders, and the intelligence community

27. The first of these statutes is a statutory privilege unique to NSA. NSA's statutory privilege is set forth in section 6 of the National Security Agency Act of 1959, Public Law 86-36 (50 U.S.C. § 402 note). Section 6 of the NSA Act provides that **"[n]othing in this Act or any other law . . . shall be construed to require the disclosure of the organization or any function of the National Security Agency, of any information with respect to the activities thereof, . . . "** (emphasis added). By this language Congress expressed its finding that disclosure of any information relating to NSA activities is potentially harmful. The courts have held that the protection provided by this statutory privilege is, by its very terms, absolute. *See, e.g., Linder v. NSA*, 94 F. 3d 693 (D.C. Cir. 1996). Section 6 states unequivocally that, notwithstanding any other law, including the FOIA, NSA cannot be compelled to disclose any information with respect to its activities. *See Hayden v. NSA*, 608 F.2d 1381 (D.C. Cir. 1979). Further, while in this case the harm would be very serious, NSA is not required to demonstrate specific harm to national security when invoking this statutory privilege, but only to show that the information relates to its activities. *Id.* To invoke this privilege, NSA must demonstrate only that the information sought to be protected falls within the scope of section 6.

28. The second applicable statute is 18 U.S.C. § 798. This statute prohibits the unauthorized disclosure of classified information (i) concerning the communications intelligence activities of the United States or (ii) obtained by the process of communication intelligence derived from the communications of any foreign

12

government. The term "communications intelligence," as defined by Section 798, means the procedures and methods used in the interception of communications and obtaining of information from such communications by other than the intended recipients.

29. The third applicable statute is Section 102A(i)(l) of the Intelligence Reform and Terrorism Prevention Act of 2004, 50 U.S.C. § 403-1(i)(1), which states that the Director of National Intelligence shall protect intelligence sources and methods from unauthorized disclosure." NSA, as a member agency of the U.S. intelligence community, must also protect intelligence sources and methods. Like the protection afforded to core NSA activities by Section 6 of the NSA Act of 1959, the protection afforded to intelligence sources and methods is absolute. *See Central Intelligence Agency v. Sims*, 471 U.S. 159 (1985).

30. Acknowledging the existence or nonexistence of specific targeting information falls within the scope of information protected pursuant to Section 6 of the National Security Agency Act of 1959, 50 U.S.C. 402 note; to do so would disclose an "activity of the NSA." Similarly, acknowledging the existence or nonexistence of specific targeting information would reveal the sources of intelligence, which are protected by Section 102A(i)(1) of the Intelligence Reform and Terrorism Prevention Act of 2004, and would tend to reveal the methods by which such intelligence is collected, another category of information protected by that Section. Finally, confirmation or denial of this information would reveal the limitations of NSA SIGINT capabilities. This revelation of communications intelligence capabilities and limitations is prohibited by 18 U.S.C. § 798.

31. Given that Congress specifically authorized NSA to withhold information related to NSA's functions and activities and its communications intelligence activities, as well as the sources and methods used by the intelligence community as a whole, I have determined that NSA's SIGINT activities and functions, and its intelligence sources and methods would be revealed if NSA confirmed or denied the existence of information responsive to Plaintiffs' FOIA request seeking the identification of targets of the TSP. This information is exempted from disclosure by all three statutes and thus information responsive to Plaintiff's request is also properly withheld under Exemption 3 of FOIA.

I declare under of penalty of perjury that the foregoing is true and correct.

Signed this **18th** day of March 2008

Joseph J. B
Associate Director, Community
  Integration, Policy and Records
National Security Agency

# **ATTACHMENT 1**

1|23|06

January 18, 2006

**VIA OVERNIGHT DELIVERY**

National Security Agency
Attn: FOIA/PA Office (DC34)
9800 Savage Road
Suite 648
Ft. George G. Meade, Maryland 20755-6248
(fax) 301-688-6198

<u>Re: **Freedom of Information Act Request (Expedited Processing Requested)**</u>

Dear FOIA/PA Officer:

This letter constitutes a Request for records pursuant to the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, *et seq.*, and corresponding regulations. This Request is submitted on behalf of the Center for Constitutional Rights, its staff and Board attorneys, and the volunteer, cooperating, and co-counsel attorneys and their staff (collectively, "Requesting Parties" or "Requesters") listed in Appendix A attached hereto. A similar request has been submitted to the following agencies, departments and units of the United States government: the Federal Bureau of Investigation, the Defense Intelligence Agency, the Central Intelligence Agency, the United States Army, the United States Navy, the Department of Homeland Security, and the Department of Justice.

**1.     Requesting Parties**

The Center for Constitutional Rights ("CCR") is a non-profit, public interest organization that engages in litigation, public advocacy and educational programs on behalf of those who seek to challenge governmental misconduct, racial injustice, social and economic injustice and violations of international human rights law in U.S. courts, the courts of other countries and other international bodies and courts. For the past four years, lawyers and advocates at CCR have represented citizens and noncitizens identified as alleged terrorists and/or suspected of having affiliations with terrorists. These persons have been detained in places as diverse as the Metropolitan Detention Center in Brooklyn, New York; the Passaic County Jail in Patterson New Jersey; the detention center at the U.S. Naval Station in Guantánamo Bay, Cuba; the Far Falestin Branch Detention Facility of Syrian Military Intelligence in Damascus, Syria; the Sednaya Prison in Sednaya, Syria; Abu Ghraib Prison in Baghdad, Iraq; and other U.S. facilities, where they were subject to physical and psychological abuse or torture, or unlawful rendition.

This Request is made on behalf of the following CCR staff members, staff attorneys, volunteer attorneys, consultants, and Board Members who have or may have communicated with clients, families of clients, attorneys and human rights activists in foreign countries: William Goodman (a.k.a., Bill Goodman), Barbara Olshansky, Gitanjali Gutierrez (a.k.a., Gita Gutierrez), Tina Monshipour Foster (Tina Foster), Seema Ahmad, Maria LaHood, Jennifer Green (a.k.a., Jennie Green), Shayana Kadidal (a.k.a., Shane Kadidal), Rachel Meeropol, Steven MacPherson Watt,

Matthew Strugar (a.k.a., Matt Strugar) Marc Krupanski, Kelly McAnnany, Claire Tixeire, Michael Ratner, Jules Lobel, David Cole, Rhonda Copelon, Peter Weiss, Abdeen Jabara, Marilyn Clement, Charles Hay-Maestre (a.k.a., Charlie Hay-Maestre or Charley Hay-Maestre), and Jeff Hogue.

This Request is also made on behalf of 108 *pro bono* volunteer, cooperating and co-counsel attorneys and their staff throughout the United States who have worked with CCR on a variety of cases, primarily involving petitions for writs of *habeas corpus* filed on behalf of persons detained at the U.S. Naval Station in Guantánamo Bay, Cuba. These *pro bono* attorneys and their staff are listed in Appendix A.

## 2.    Definitions

For the purpose of this Request, the following definitions shall apply:

A.    "Electronic surveillance" - refers to

   (a)    the acquisition by an electronic, mechanical, or other surveillance device of the contents of any wire, radio or other communication in any form or format of persons located within the United States obtained without benefit of warrant, including but not limited to any and all wiretaps, recordings, surveillance and/or interceptions of telephonic conversations and/or transactions (including cellular and satellite phone conversations and/or transactions), interception of e-mail conversations, or other written communications from public or non-public web sites or computer networks;

   (b)    the acquisition by an electronic, mechanical, or other surveillance device of non-content records obtained without benefit of warrant, from persons located within the United States that identify the existence of any communications, including but not limited to pen registers; and

   (c)    the warrantless installation or use of an electronic, mechanical or other surveillance device for monitoring to acquire information, other than from a wire or radio communication;[1]

B.    "Records" - refers to all "records" as defined by the FOIA, 5 U.S.C. § 522(f)(2), including but not limited to existing memoranda, agreements, notes, orders, policies, procedures, protocols, written or email correspondence, faxes, files, reports, rules, technical manuals, technical specifications, training manuals, studies, analyses, audio or video recordings,

---

[1] This request does not include surveillance authorized pursuant to Sections 1802 or 1822(a) of the Foreign Intelligence Surveillance Act. 50 U.S.C. §§ 1802 or 1822(a).

transcripts of such recordings, data, papers, guidance, guidelines, evaluations, instructions, photographs, films, recordings, books, accounts, communications and all retrievable information in computer storage, regardless of form of the record as a digital, audio, written, video, or other record;

C.    "Electronic surveillance" "of persons located within the United States" - refers to records obtained through electronic surveillance of any communications by or to an individual, individuals, group or groups within the United States, regardless of whether the communication originated inside or outside the United States.

3.    **Records Sought**

CCR and the other Requesting Parties seek disclosure of records in the possession of any office of the National Security Agency ("NSA") and any agency, organization or corporation holding records at the behest of the NSA concerning any warrantless electronic surveillance or warrantless physical searches of any person located within the United States from September 11, 2001 to the date of this FOIA Request that references a Requesting Party. In addition, CCR and other Requesters seek the disclosure of records concerning the development, approval, and implementation of the Executive's warrantless electronic surveillance and/or warrantless physical search program within the United States.

In order to ascertain the extent of the Executive's policies and practices concerning warrantless electronic surveillance and/or warrantless physical searches of persons located within the United States, Requesting Parties seek the following records:

1.    All records obtained through or relating to ongoing or completed warrantless electronic surveillance or physical searches of persons located within the United States, including logs and indexes, regarding or concerning any Requesting Party and/or records of warrantless electronic surveillance or physical searches of persons located within the United States that reference, list, or name any Requesting Party;

2.    Any Executive Orders authorizing the warrantless electronic surveillance or physical searches of persons located within the United States referenced in paragraph (1) above;

3.    All records establishing, discussing or referencing the policies, procedures, guidelines, or practices of the NSA used to (a) identify the individuals or organizations subject to warrantless electronic surveillance or warrantless physical searches within the United States; (b) gather information through warrantless electronic surveillance or warrantless physical searches within the United States; (c) share this information with other U.S. government agencies and with foreign

governments or the agencies or agents thereof; (d) share this information as a basis for a warrant request by the U.S. Department of Justice to the Foreign Intelligence Surveillance Court; (e) destroy this information; and/or (f) consult with or secure approval from the U.S. Department of Justice or other departments, agencies or Executive officials prior to conducting warrantless electronic surveillance or warrantless physical searches of persons located within the United States;

4. Any records stating, discussing, or referencing the legality or propriety of warrantless electronic surveillance or warrantless physical searches of persons located within the United States, including but not limited to policy statements, memoranda, analyses, explanations, or authorizations;

5. Any Department of Justice evaluation, assessment, or audit of any NSA program implementing warrantless electronic surveillance or warrantless physical searches of persons located within the United States;

6. Any internal NSA evaluation, assessment, or audit of any NSA program implementing warrantless electronic surveillance or warrantless physical searches of persons located within the United States;

7. Any records containing concerns or comments by judges, national security officials, intelligence officials, government lawyers, or other about the NSA warrantless electronic surveillance program; and

8. All records reflecting budget allocations for all warrantless electronic surveillance or warrantless physical search programs of persons located within the United States.

## 4. Requesters Are Entitled to Expedited Processing

Expedited processing is warranted when an organization "primarily engage[s] in disseminating information in order to inform the public about an actual or alleged Federal Government activity" has an "urgent need" to secure the records. 32 C.R.F. § 286.4(d)(3)(ii). The Center for Constitutional Rights is an organization "primarily engaged in disseminating information" about government misconduct through the work of its staff, Board, volunteer, cooperating, and co-counsel attorneys. As described above, CCR engages in litigation, public advocacy and educational programming to defend constitutional and human rights law. Dissemination of information to the public is a crucial component of CCR's mission and work. Specifically, CCR publishes reports and newsletters, maintains a public website, issues press releases, and offers educational materials and programming to the pubic within the United States and internationally. Additionally, CCR's staff, board, and volunteer, co-counsel, and cooperating attorneys further disseminate CCR's information to their local and national communities through a variety of means, including their own press releases, interviews, reports, and educational programming.

The records in question involved the NSA's actual and alleged warrantless electronic surveillance within the United States, in apparent violation of the rights guaranteed by the First, Fourth, Fifth and Fourteenth Amendments to the United States Constitution. FOIA requests bearing upon alleged Constitutional violations require an immediate response in order to cease any ongoing violations and to prevent future ones.

A requester may also demonstrate compelling need by a showing that the information sought is "urgently needed" and involves a "breaking new story of general public interest." 32 C.R.F. § 286.4(d)(3)(iii). The instant Request clearly meets these standards in light of the current public scrutiny and impending legislative hearings in response to the disclosure of the Executive's policies and practices involving warrantless electronic surveillance of persons within the United States. *See, e.g.,* Jennifer Loven, *Report of NS Spying Prompts Call for Probe,* San Fran. Chron., Dec. 16, 2005 (stating that Senator Arlen Specter, chairman of the Senate Judiciary Committee, promised that the Senate would conduct hearings to investigate the NSA's warrantless electronic surveillance practices); *see also* Christine Hauser, *Bush Declines to Discuss Report on Eavesdropping,* N.Y. Times, Dec. 16, 2005; Maura Reynolds & Greg Miller, *Congress Wants Answers About Spying on U.S. Citizens,* Pitts. Post-Gazette, Dec. 16, 2005; James Risen & Eric Lichtblau, *Bush Lets US. Spy on Callers Without Courts,* N.Y. Times, Dec. 16, 2005; Steven Thomma, *Spying Could Create Backlash on Congress; Public Reaction Hinges on Identity of Targets,* San Jose Mercury News, Dec. 16, 2005; Caren Bohan & Thomas Ferraro, *Bush Defends Eavesdropping and Patriot Act,* ABC News, Dec. 17, 2005; Dan Eggen & Charles Lane, *On Hill, Anger and Calls for Hearing Greet News of Stateside Surveillance,* Wash. Post, Dec. 17, 2005; Jennifer Loven, *Bush Defends Secret Spying in U.S.,* San Fran. Chron., Dec. 17, 2005; John Diamond, *NSA's Surveillance of Citizens Echoes 1970s Controversy,* USA Today, Dec. 18, 2005; Barton Gellman & Dafna Linzer, *Pushing the Limits of Wartime Powers,* Wash. Post, Dec. 18, 2005; James Kuhnhenn, *Bush Defends Spying in U.S.,* San Jose Mercury News, Dec. 18, 2005; Fred Barbash & Peter Baker, *Gonzales Defends Eavesdropping Program,* Wash. Post, Dec. 19, 2005; James Gerstenzang, *Bush Vows to Continue Domestic Surveillance,* L.A. Times, Dec. 19, 2005;Todd J. Gillman, *Bush Assails Disclosure of Domestic Spying Program,* San Jose Mercury News, Dec. 19, 2005; Terrence Hunt, *Bush Says NSA Surveillance Necessary, Legal,* Wash. Post, Dec. 19, 2005; David Stout, *Bush Says U.S. Spy Program is Legal and Essential,* N.Y. Times, Dec. 19, 2005; George E. Condon, *Bush Says Spying Is Needed to Guard US,* San Diego Union Trib., Dec. 20, 2005; Michael Kranish, *Bush Calls Leak of Spy Program Shameful,* Bost. Globe, Dec. 20, 2005; Jeff Zeleny, *No 'Unchecked Power' in Domestic Spy Furor,* Chi. Trib., Dec. 20, 2005; Douglas Birch, *NSA's Methods Spur Controversy,* Balt. Sun, Jan. 8, 2006; Dan Eggen, *Probe Set in NSA Bugging,* Wash. Post, Jan. 11, 2006; David E. Sanger, *In Shift, Bush Says He Welcomes Inquiry on Secret Wiretaps,* N.Y. Times, Jan. 11, 2006; Scott Shane, *N.S.A. Audit of Spying is Not Assessing Legality,* N.Y. Times, Jan. 11, 2006; Jessica Yellin, *Ex-CIA Lawyer: No Legal Basis for NSA Spying,* ABC News, Jan. 11, 2006; James Gerstenzang, *Bush Now Cites Value of Spying Inquiry,* L.A. Times, Jan. 12, 2006; Sean Sullivan, *Markey Bashes Surveillance Program at Forum,* Arlington (MA) Advocate, Jan. 12, 2006.

Finally, pursuant to the applicable regulations and statue, CCR and the other Requesters expect the NSA's determination of this Request for expedited processing within 10 calendar days and the determination of this Request for documents within 20 days. *See* 32 C.F.R. § 286.4(d)(1),

(3); 5 U.S.C. § 552(a)(6)(A)(i).

### 5.    Requesting Parties Are Entitled To A Fee Waiver

Requesting Parties are entitled to waiver of all costs pursuant to 5 U.S.C. § 552(a)(4)(A)(iii) because "disclosure of the requested records is in the public interest" and "likely to contribute significantly to the public understanding of the operations or activities of the government and is not primarily in the commercial interest of the requester." As indicated above, the significant media attention focused on the NSA's policy of warrantless electronic surveillance reflects the extraordinary public interest in the records Requesters seek. Disclosure of the requested information would reveal the extent of the NSA's warrantless electronic surveillance and/or warrantless physical searches of persons located within the United States, raising weighty constitutional questions.

Further, disclosure of the requested records will aid the public's understanding of the President's decision to disregard existing restraints on the exercise of Executive power, including the minimal oversight provided by the Foreign Intelligence Surveillance Act courts.

Finally, as a non-profit legal, advocacy, and educational organization, CCR and its staff, Board, and volunteer, co-counsel and cooperating attorneys are well-suited to disseminate publicly the information obtained from this Request. Because this Request satisfies the statutory criteria, a fee waiver would fulfill Congress's legislative intent in amending FOIA. *See Judicial Watch, Inc. v. Rossotti*, 326 F.3d 1309, 1312 (D.C. Cir. 2003) ("Congress amended FOIA to ensure that it be liberally construed in favor of waivers for noncommercial requesters." (internal quotation marks omitted)).

If the fee waiver is not granted, however, we request that the fees assigned be limited to "reasonable standard charges for document duplication" pursuant to 5 U.S.C. § 552(a)(4)(A)(ii)(II) ("[F]ees shall be limited to reasonable standard charges for document duplication when records are not sought for commercial use and the request is made by . . . . a representative of the news media . . ." and 32 C.F.R. § 286.28(e) (stating that search and review fees shall not be charges to "representatives of the news media"). If appropriate after reviewing the results of the Request, CCR intends to "disseminate the information" disclosed by this Request "among the public" through the media channels described above. CCR meets the definition of a "representative of the news media" because it is "an entity that gathers information of potential interest to a segment of the public, uses its editorial skills to turn raw material into a distinct work, and distributes that work to an audience." *Nat'l Security Archive v. Dep't of Defense*, 880 F.2d 1381, 1387 (D.C. Cir. 1989); *see also Judicial Watch Inc., v. Rossotti*, 326 F.3d 1309, 1310 (D.C. 2003) (finding that a non-profit, public interest organization that distributed a newsletter and published books was a "representative of the media" for purposes of FOIA). Accordingly, any fees imposed for the processing of this Request should be limited pursuant to these regulations.

*          *          *          *

If this Request is denied in whole or in part, Requesters ask that the NSA justify all deletions

by reference to specific exemptions of FOIA. Requesters expect the NSA to release all segregable portions of otherwise exempt material, and reserve the right to appeal a decision to withhold any records or to deny the within application for expedited processing and waiver of fees.

Thank you for your consideration of this Request. Kindly direct all future responses and furnish all disclosed records to William Goodman, Legal Director, Center for Constitutional Rights, 666 Broadway, 7th floor, New York, N.Y. 10012, telephone (212) 614-6427.

Under penalty of perjury, I hereby affirm that the information provided supporting the Request and the attached Appendix are true and correct to the best of my knowledge and belief.

Signed by:

William Goodman, Esq.
Legal Director
Center for Constitutional Rights
666 Broadway, 7th Floor
New York, NY 10012
(212) 617-6427

## Appendix A*

David C. Sleigh, Esq.
Sleigh & Williams, P.C.
364 Railroad Street
St. Johnsbury, VT 05819
(802) 748-5176

Joseph Margulies, Esq.
MacArthur Justice Center
University of Chicago Law School
1111 East 60th Street
Chicago, IL 60637
(773) 702-9560
(763) 245-8048

Stephen M. Truitt, Esq.
   (202) 220-1452
Charles Carpenter, Esq.
   (202) 220-1507
Pepper Hamilton LLP
Hamilton Square
600 Fourteenth Street, N.W.
Suite 500
Washington, D.C. 20005

Christopher J. Huber, Esq.
Pepper Hamilton LLP
3000 Two Logan Square
Eighteenth and Arch Streets
Philadelphia, PA 19103
(215) 981-4446

Marjorie M. Smith, Esq.
Law Office of Marjorie M. Smith
P.O. Box 234
Piermont, NY 10968
(845) 365-6335

Richard (Dicky) A. Grigg, Esq.
Spivey & Grigg, LLP
48 East Avenue
Austin, TX 78701
(512) 474-6061

Richard J. Wilson, Professor of Law
Muneer I. Ahmad, Professor of Law
Sheku Sheikholeslami
American University Washington College
of Law
4801 Massachusetts Ave. NW,
Washington D.C. 20016
(202) 274-4147

William (Bill) A. Wertheimer, Jr., Esq.
30515 Timberbrook Lane
Bingham Farms, MI 48025
(248) 644-9200

Allan Sussman, Esq.
Sussman Law Office
Box 379
Bearsville, NY 12409
(845) 679-6927

Jonathan Wells Dixon, Esq.
Paul Schoeman, Esq.
Allison Sclater, Esq.
Michael J. Sternhell, Esq.
   (212) 715-7624
Kramer, Levin, Naftalis, & Frankel LLP
1177 Avenue of the Americas
New York, NY 10036
(212) 715-9100

Eldon V.C. Greenberg, Esq.
Garvey Schubert Barer
1000 Potomac Street, N.W.
Washington, D.C. 20007
(202) 298-1789

Samuel C. Kauffman, Esq.
Garvey Schubert Barer
121 S.W. Morrison St.
Portland, OR 97204
(503) 228-3939

*Written authorizations from all individual requesters are attached.

George Brent Mickum, III, Esq.
   (202) 434-4245
Douglas J. Behr
   (202) 434-4213
Keller and Heckman LLP
1001 G Street, N.W.
Washington, D.C. 20001

John W. Lundquist, Esq.
   (612) 492-7181
James E. Dorsey, Esq.
   (612) 492-7079
Deborah A. Schneider, Esq.
   (612) 492-7124
Asmah Tareen, Esq.
   (612) 492-7134
Jessica D. Sherman, Esq.
   (612) 492-7020
Fredrikson & Byron, P.A.
200 South Sixth Street
Suite 4000
Minneapolis, MN 55402-1425
(612) 492-7000

Richard L. Cys, Esq.
Davis, Wright, Tremaine LLP
1500 K Street NW
Suite 450
Washington, DC, 20005-1272
(202) 508-6618

Mark S. Sullivan, Esq.
   (212) 415-9245
Christopher G. Karagheuzoff, Esq.
   (212) 415-0793
Joshua Colangelo-Bryan, Esq.
   (212) 415-9234
Dorsey & Whitney LLP
250 Park Avenue
New York, NY 10177
(212) 415-9200

William J. Murphy, Esq.
John J. Connolly, Esq.
Murphy & Shaffer LLC
Suite 1400
36 South Charles Street
Baltimore, MD 21201
(410) 783-7000

Clive Stafford Smith, Esq.
Justice in Exile
P.O. Box 52742
London, EC4P 4WS
44 (0)20 7353 4640

Arnold L. Natali, Jr., Esq.
   (973) 622-2475
Jeremy L. Hirsh, Esq.
   (973) 622-3165
McCarter & English LLP
Four Gateway Center
100 Mulberry Street
Newark, NJ 07102
(973) 622-4444

Jason C. Welch, Esq.
McCarter & English LLP
City Place I
185 Asylum Street
Hartford, CT 06103
(860) 275-7048

Paula M. Jones, Esq.
McCarter & English LLP
Mellon Bank Center
1735 Market Street
Suite 700
Philadelphia, PA 19103
(215) 979-3844

Louis (Lou) Marjon, Esq.
67 West North Shore Avenue
North Fort Myers, FL 33903
(239) 652-3951

H. Candace Gorman, Esq.
Elizabeth Popolis, Esq.
Law Office of H. Candace Gorman
542 S. Dearborn
Suite 1060
Chicago, IL 60605
(312) 427-2313

W. Matthew Dodge, Esq.
Federal Defender Program, Inc.
100 Peachtree Street, NW
Suite 1700
Atlanta, GA 30303
(404) 688-7530

John A. Chandler, Esq.
   (404) 853-8029
Elizabeth V. Tanis, Esq.
   (404) 853-8382
Kristin B. Wilhelm, Esq.
   (404) 853-8542
Sutherland Asbill & Brennan LLP
999 Peachtree Street, N.E.
Atlanta, Georgia 30309-3996
(404) 853-8000

Richard G. Murphy, Esq.
   (202) 383-0635
Gregory (Greg) Stuart Smith, Esq.
   (202) 383-0454
John P. Anderson, Esq.
Sutherland Asbill & Brennan LLP
Washington, D.C. 20004-2415
(202) 383-0100

Michael W. Drumke, Esq.
Ismail Alsheik, Esq.
David H. Anderson, Esq.
Schiff Hardin LLP
6600 Sears Tower
Chicago, IL 60606-6360
(312) 258-5500

Brian J. Neff, Esq.
Donald A. Klein, Esq.
Charles H. R. Peters, Esq.
Schiff Hardin LLP
623 Fifth Avenue
New York, NY 10022
(212) 753-5000

Agnieska M. Fryszman, Esq.
Reena Gambhir, Esq.
Matthew K. Handley, Esq.
Matthew Kaplan, Esq.
George Farah, Esq.
Jason M. Leviton, Esq.
Avi Garbow, Esq.
Cohen, Milstein, Hausfeld, & Toll
1100 New York Ave. NW
Suite 500
Washington, DC 20005
(202) 408-4600

Richard Coughlin, Esq.
Federal Public Defender for New Jersey

Paul M. Rashkind, Esq.
Office of the Federal Public Defender
Southern District of Florida
150 West Flagler Street
Suite 1500
Miami, FL 33130-1555
(305) 536-6900

Thomas Wilner, Esq.
Neil Koslowe, Esq.
Kristine Huskey, Esq.
Amanda Shafer, Esq.
Uzma Rasool
Shearman & Sterling LLP
801 Pennsylvania Ave., NW
Washington, DC 20004
(202) 508-8000

Julia Symon, Esq.
Clifford Chance US LLP
2001 K. Street N.W.
Washington, D.C. 20006
(202) 912-5092

Gary A. Isaac, Esq.
  (312) 701-7025
James C. Schroeder
  (312) 701-7964
David A. Grossman, Esq.
  (312) 701-8497
Lauren R. Noll, Esq.
  (312) 701-8253
Jeffrey (Jeff) M. Strauss, Esq.
  (312) 701-7324
Stephen (Steve) J. Kane, Esq.
  (312) 701-8857
Mayer, Brown, Rowe & Maw LLP
71 South Wacker Drive
Chicago, IL 60606

Adrian L. Steel, Jr., Esq.
Mayer, Brown, Rowe & Maw LLP
1909 K Street, N.W.
Washington, D.C. 20006
(202) 263-3237

Sergio F. Rodriguez, Esq.
  (312) 612-8353
Carol A. Brook, Esq.
  (312) 612-8339
William H. Theis, Esq.
  (312) 612-8335
Federal Defender Program for the
Northern District of Illinois
55 E. Monroe St.
Suite 2800
Chicago, IL 60603
(312) 612-8353

Jonathan Hafetz, Esq.
Brennan Center for Justice
at NYU School of Law
161 Avenue of the Americas
12th Floor
New York, NY 10013
(212) 998-6289

Scott S. Barker, Esq.
Anne J. Castle, Esq.
Holland & Hart LLP
555 17th Street, S.E.
Suite 3200
Denver, CO 80202
(303) 295-8229

Carol Elder Bruce, Esq.
Venable LLP
575 7th Street, N.W.
Washington, D.C. 20004-1601
(202) 344-4717

Varda Hussain, Esq.
Venable LLP
8010 Towers Crescent Drive
Vienna, VA 22182
(703) 760-1600

Judith Brown Chomsky, Esq.
Michael Poulshock, Esq.
Law Office of Judith Brown Chomsky
P.O. Box 29726
Elkins Park, PA 19027
(215) 782-8368

Michael Mone, Esq.
Michael Mone, Jr., Esq.
Esdaile, Barrett & Esdaile
75 Federal Street
Boston, MA 02110
(617) 482-0333

Mary Manning Petras, Esq.
Ketanji Brown Jackson, Esq.
A.J. Kramer, Esq.
Office of the Federal Public Defender for
the District of Columbia
625 Indiana Avenue, N.W.
Suite 550
Washington, D.C. 20004
(202) 208-7500

Marc D. Falkoff, Esq.
Robert H. Knowles, Esq.
Brent T. Starks, Esq.
Alissa R. King
Covington & Burling LLP
1330 Avenue of the Americas
New York, NY 10019
(212) 841-1166

David H. Remes, Esq.
Jason M. Knott, Esq.
Gregory M. Lipper, Esq.
Erich W. Struble
Covington & Burling LLP
1210 Pennsylvania Avenue, N.W.
Washington, D.C. 20004

Brian S. Fraser, Esq.
   (212) 530-1820
Marcellene E. Hearn, Esq.
   (212) 530-1948
Christopher W. Dysard, Esq.
   (212) 530-1908
Richards Spears Kibbe & Orbe LLP
One World Financial Center
New York, NY 10281

Paul A. Leder, Esq.
Richards Spears Kibbe & Orbe LLP
1775 Eye Street, N.W.
5th Floor, Room 510
Washington, D.C. 20006- 2401
(202) 261-2985

Maureen Rowley, Chief Federal Defender
Cristi Charpentier, Assistant Federal
   Defender
David McColgin, Assistant Federal
   Defender
Shawn Nolan, Assistant Federal Defender
Billy Nolas, Assistant Federal Defender
Mark Wilson, Assistant Federal Defender
Federal Community Defender Office
for the Eastern District of Pennsylvania
Suite 540 West
601 Walnut Street
Philadelphia, Pennsylvania 19106
(215) 928-1100

Paul R. Fortino, Esq.
Thomas R. Johnson, Esq.
Cody M. Weston, Esq.
Perkins Coie LLP
1120 N. W. Couch, 10th Fl.
Portland, OR 97209

Elizabeth Wilson, Esq.
Wilmer Cutler Pickering Hale and Dorr
LLP
1455 Pennsylvania Ave., N.W.
10th Floor
Washington, D.C. 20004
(202) 942-8466

George Daly
George Daly P.A.
139 Altondale Avenue
Charlotte, NC 28207
(704) 333-5196

Seema Ahmad
Shahzada Ahmad
Marilyn Clement
David Cole
Rhonda Copelon
Jeff Fogue
Tina M. Foster

William Goodman
Jennifer Green
Gitanjali Gutierrez
Charles Hay-Maestre
Abdeen Jabara
Shayana Kadidal
Marc James Krupanski
Maria LaHood
Jules Lobel
Rachel Meeropol
Kelly McAnnany
Barbara Olshansky
Michael Ratner
Matthew Strugar
Claire Tixieire
Steven Watt
Peter Weiss
Center for Constitutional Rights
666 Broadway, 7th Floor
New York, NY 10012
(212) 614-6464

Walter A. Lesnevich
Lesnevich & Marzano-Lesnevich
Court Plaza South
21 Main Street
Hackensack, NJ 07601
(201) 488-1161

Emmet J. Bondurant
Ronan P. Doherty
Bondurant, Mixson & Elmore, LLP
3900 One Atlantic Center
1201 W. Peachtree Street
Atlanta, GA 30309

Michael Rapkin
Law Offices of Michael Rapkin
1299 Ocean Ave., #900
Santa Monica, CA 90401
(310) 656-7880

# **ATTACHMENT 2**

FOIA Case: 48144
28 February 2006

Mr. William Goodman
Legal Director
Center for Constitutional Rights
666 Broadway, 7th Floor
New York, NY 10012

Dear Mr. Goodman:

This responds to your Freedom of Information Act (FOIA) request of 18 January 2006, which was received by this office on 23 January 2006, for records concerning warrantless electronic surveillance that reference a "Requesting Party" (any of the individuals affiliated with the Center for Constitution Rights, i.e., the individuals listed in your request and in Appendix A of your request); and records concerning the development, approval, and implementation of the domestic surveillance program. Specifically, you requested the following eight items as they relate to the above:

1. All records relating to surveillance that reference any "Requesting Party;"

2. Executive orders authorizing warrantless searches;

3. Records on the policies, procedures, guidelines or practices of NSA;

4. Records relating to the legality or appropriateness of the program;

5. Department of Justice evaluations, assessments, or audits of the program;

6. Internal NSA evaluations, assessments, or audits, of the program;

7. Records containing concerns or comments by judges, national security officials, intelligence officials, or government lawyers about the program; and

8. Records reflecting budget allocations for the program.

Your request has been assigned Case Number 48144. Please refer to this case number when contacting us about your request. For purposes of this request and based on the information you provided in your letter, you are considered an "all other" requester. There are no assessable fees for this request; therefore, we did not address your request for a fee waiver. Your request has been processed under the provisions of the FOIA.

As you know, the President of the United States "authorized the National Security Agency [(NSA)], consistent with U.S. law and the Constitution, to intercept the international communications of people with known links to al Qaeda and related terrorist organizations." The President also noted that, "[t]his is a highly classified program that is crucial to our national security."

FOIA Case: 48144

Rest assured that safeguards are in place to protect the civil liberties of U.S. citizens. However, because of the highly classified nature of the program, we can neither confirm nor deny the existence of records responsive to item #1 of your request. The fact of the existence or non-existence of responsive records is a currently and properly classified matter in accordance with Executive Order 12958, as amended. Thus, this portion your request is denied pursuant to the first exemption of the FOIA, which provides that the FOIA does not apply to matters that are specifically authorized under criteria established by an Executive Order to be kept secret in the interest of national defense or foreign relations and are properly classified pursuant to such Executive Order.

Moreover, the third exemption of the FOIA provides for the withholding of information specifically protected from disclosure by statute. Thus, any information relating to item #1 of your request is also denied because the fact of the existence or non-existence of the information is exempted from disclosure pursuant to the third exemption. The specific statutes applicable in this case are Title 18 U.S. Code 798; Title 50 U.S. Code 403-1(i); and Section 6, Public Law 86-36 (50 U.S. Code 402 note).

Regarding items #2 and #5 of your request, we have determined that we do not have records responsive to those portions of your request.

Regarding items #3-4 and #6-8 of your request, we have determined the following:

Other than the two enclosed items, the information responsive to this portion of your request has been found to be currently and properly classified in accordance with Executive Order 12958, as amended. The information meets the criteria for classification as set forth in Subparagraphs (c) and (g) of Section 1.4 and remains classified TOP SECRET as provided in Section 1.2 of Executive Order 12958, as amended. The information is classified because its disclosure could reasonably be expected to cause exceptionally grave damage to the national security. Because the information is currently and properly classified, it is exempt from disclosure pursuant to the first exemption of the FOIA (5 U.S.C. Section 552(b)(1)).

Furthermore, this Agency is authorized by various statutes to protect certain information concerning its activities. Accordingly, the information responsive to this portion of your request is exempt from disclosure pursuant to the third exemption of the FOIA which provides for the withholding of information specifically protected from disclosure by statute. The specific statutes applicable in this case are Title 18 U.S. Code 798; Title 50 U.S. Code 403-1(i); and Section 6, Public Law 86-36 (50 U.S. Code 402 note).

Finally, some of the information responsive to this portion of your request is exempt from release pursuant to the fifth exemption of the FOIA. This exemption applies to inter-agency or intra-agency memoranda or letters which would be available by law to a party in litigation with the agency, protecting information that is normally privileged in the civil discovery context, such as information that is part of a predecisional deliberative process, and/or attorney-client privileged information, and/or attorney work product.

FOIA Case: 48144

Since item #1 of your request is denied, we did not locate records responsive to items #2 and #5, and because most of the information responsive to items #3-4 and #6-8 is being withheld, you are hereby advised of this Agency's appeal procedures. Any person denied access to information may file an appeal to the NSA/CSS Freedom of Information Act Appeal Authority. The appeal must be postmarked no later than 60 calendar days of the date of the initial denial letter. The appeal shall be in writing addressed to the NSA/CSS FOIA Appeal Authority (DC34), National Security Agency, 9800 Savage Road STE 6248, Fort George G. Meade, MD 20755-6248. The appeal shall reference the adverse determination and shall contain, in sufficient detail and particularity, the grounds upon which the requester believes that the determination is unwarranted. The NSA/CSS FOIA Appeal Authority will endeavor to respond to the appeal within 20 working days after receipt, absent any unusual circumstances.

Please be advised that records responsive to item #4 of your request include a document originating with another government agency. Because we are unable to make determinations as to the releasability of the other agency's information, we have requested that the agency review the document and provide a direct response to you.

Sincerely,

LOUIS F. GILES
Director of Policy

Encls:
  a/s

## ATTACHMENT 3

5/2/06

# FAX TRANSMISSION



## CENTER FOR CONSTITUTIONAL RIGHTS
666 Broadway, 7th Floor
New York, N.Y. 10012
(212) 614-6464
Fax: (212) 614-6499
E-Mail: ccr@igc.org

Date: __May 1 2006__          From: __William Goodman__

To:                    # of Pages: __33__    including this cover sheet

| | | |
|---|---|---|
| FOIA Appeal Office | Fax # | 301 - 688 - 4762 |
| | Fax # | |
| | Fax # | |
| | Fax # | |
| | Fax # | |
| | Fax # | |
| | Fax # | |

*If you do not receive legible copies of all pages please call (212) 614-64 5 6*

This facsimile contains CONFIDENTIAL INFORMATION which may be legally privileged and which is intended only for the use of the addressee(s) named above. If you are not the intended recipient of this facsimile or the employer or agent responsible for forwarding it to the intended recipient, you are hereby notified that any dissemination or copying of this facsimile is prohibited. If you have received this facsimile in error, please notify us by telephone or return the original to us at the address below via the U S Postal Service
THANK YOU

## COMMENTS/REMARKS:

May 1, 2006

**VIA FACSIMILE AND FIRST CLASS MAIL**

NSA/CSS FOIA Appeal Authority (DC34)
National Security Agency
9800 Savage Road STE 6248
Fort George G. Meade, Maryland 20755-6248

    RE:    FOIA Case 48144

Dear Director:

I am writing to appeal the decision by the National Security Agency (NSA) to neither confirm nor deny the existence or nonexistence of records pursuant to the first exemption of the Freedom of Information Act (FOIA) and/or to invoke the third and fifth exemptions of FOIA to withhold information pertinent to our request under FOIA in the above-referenced matter as set forth in the National Security Administration Response dated February 28, 2006 and received by our office on March 21, 2006 ("Response"), attached hereto as Exhibit A. This administrative appeal is filed based on Section 552(a)(6) of FOIA. 50 U.S.C. §552(a)(6). The Center for Constitutional Rights and our individual requesters ("Requesters") sought these records under FOIA in a letter dated January 18, 2006, attached hereto as Exhibit B.

In our request of January 18, 2006, we sought the following records:

1.  All records obtained through or relating to ongoing or completed warrantless electronic surveillance or physical searches of persons located within the United States, including logs and indexes, regarding or concerning any Requesting Party and/or records of warrantless electronic surveillance or physical searches of persons located within the United States that reference, list, or name any Requesting Party;

2.  Any Executive Orders authorizing the warrantless electronic surveillance or physical searches of persons located within the United States referenced in paragraph (1) above;

3.  All records establishing, discussing or referencing the policies, procedures, guidelines, or practices of the NSA used to (a) identify the individuals or organizations subject to warrantless electronic surveillance or warrantless physical searches within the United States; (b) gather information through warrantless electronic surveillance or warrantless physical searches within the United States; (c) share this information with other U.S. government agencies and with foreign governments or the agencies or agents thereof; (d) share this information as a basis for a

warrant request by the U.S. Department of Justice to the Foreign Intelligence Surveillance Act Court; (e) destroy this information; and/or (f) consult with or secure approval from the U.S. Department of Justice or other departments, agencies or Executive officials prior to conducting warrantless electronic surveillance or warrantless physical searches of persons located within the United States;

4.  Any records stating, discussing, or referencing the legality or propriety of warrantless electronic surveillance or warrantless physical searches of persons located within the United States, including but not limited to policy statements, memoranda, analyses, explanations, or authorizations;

5.  Any Department of Justice evaluation, assessment, or audit of any NSA program implementing warrantless electronic surveillance or warrantless physical searches of persons located within the United States;

6.  Any internal NSA evaluation, assessment, or audit of any NSA program implementing warrantless electronic surveillance or warrantless physical searches of persons located within the United States;

7.  Any records containing concerns or comments by judges, national security officials, intelligence officials, government lawyers, or other about the NSA warrantless electronic surveillance program; and

8.  All records reflecting budget allocations for all warrantless electronic surveillance or warrantless physical search programs of persons located within the United States.[1]

In the denial of our FOIA request, your office stated with respect to item #1 of our request that,

> [B]ecause of the highly classified nature of the program, we can neither confirm nor deny the existence or non-existence of records responsive to item #1 of your request. The fact of the existence or non-existence of responsive records is a currently and properly classified matter in accordance with Executive Order 12958, as amended.

Your office justifies its "Glomar response"[2] under the first and third exemptions from FOIA's disclosure obligation. Your office claimed that under the first exemption from FOIA, information responsive to item #1 could be withheld because "FOIA does not

---

[1] See Exhibit B.
[2] An agency's "Glomar response" neither admits nor denies that it possesses a requested document. See *Phillippi v. CIA*, 546 F.2d 1009 (D.C. Cir. 1976).

2

apply to matters that are specifically authorized under criteria established by an Executive Order to be kept classified pursuant to such Executive Order."[3]

Your office also justified its Glomar response by relying upon the third exemption from FOIA's obligations, which permits withholding by reference to another statute authorizing the agency to exempt documents from disclosure. The withholding statutes in this matter are 18 U.S.C. §798 (regulating the disclosure of classified information); The National Security Act of 1947, 50 U.S.C. §403-1(i) (authorizing the Director of National Intelligence to "protect intelligence sources and methods from unauthorized disclosure"); and the National Security Agency Classification Act, Pub. L. No. 86-36, §6, 73 Stat. 63, 64 (1959) (codified at 50 U.S.C. 402 note) (providing that no law "shall be construed to require the disclosure of the organization or any function of the National Security Agency, of any information with respect to the activities thereof, or of the names, titles, salaries, or number of the persons employed by such agency").

Your office determined that you do not have any responsive records for items #2 and #5 of our request.

With regard to items #3-4 and #6-8, your office invoked three exemptions to withhold information. Your office stated that all information responsive to items #3-4 and #6-8,

> meets the criteria for classification as set forth in Subparagraphs (c) and (g) of Section 1.4 and remains classified TOP SECRET as provided in Section 1.2 of Executive Order 12958, as amended. The information is classified because its disclosure could reasonably be expected to cause exceptionally grave damage to the national security. Because the information is currently and properly classified, it is exempt from disclosure pursuant to the first exemption of the FOIA (5 U.S.C. Section 552(b)(1)).[4]

Your office also withheld information responsive to items #3-4 and #6-8 because it "is exempt from disclosure pursuant to the third exemption of the FOIA which provides for the withholding of information specifically protected from disclosure by statute."[5] Specifically, your office stated the applicable statutes are 18 U.S.C. §798; 50 U.S.C. §403-1(i); and Pub. L. 86-36, §6 (50 U.S.C. §402 note).

Finally, your office indicated that some information responsive to items #3-4 and #6-8 is exempt from release pursuant to the fifth exemption of FOIA applicable to "inter-agency or intra-agency memorandum or letters which would be available by law to a party in litigation with the agency, protecting information that is normally privileged in the civil discovery process, such as information that is part of a predecisional deliberative process, and/or attorney-client privileged information, and/or attorney work product."[6]

---

[3] See Exhibit A.
[4] Id.
[5] Id.
[6] Id.

3

Requesters now appeal each of these grounds for withholding information responsive to items #1, #3-4, and #6-8. Requesters additionally ask that the agency conduct further searches for any records responsive to items #2 and 5.[7] With respect to item #4, your office indicated that it referred our request to another agency that originated a responsive document. To our knowledge, we have not received a response from this unidentified agency. We ask that you promptly identify to which agency your office referred our request so that we may seek a timely response. Finally, by this letter the Requesters separately now seek a mandatory declassification review pursuant to Section 3.5 of Executive Order 12958 for all of the requested information in items #1-8 withheld under 50 U.S.C. §552(b)(1) & (3).

*Impropriety of Glomar Response to Item #1*

*Item #1.*
*All records obtained through or relating to ongoing or completed warrantless electronic surveillance or physical searches of persons located within the United States, including logs and indexes, regarding or concerning any Requesting Party and/or records of warrantless electronic surveillance or physical searches of persons located within the United States that reference, list, or name any Requesting Party.*

Reliance on the first exemption from FOIA's disclosure obligations by refusing to confirm or deny the existence or nonexistence of responsive information requires that the materials at issue be (a) specifically authorized under criteria established by an Executive Order to be kept secret in the interest of national defense or foreign policy and (b) are in fact properly classified pursuant to such Executive Order. *See* 5 U.S.C. §552(b)(1); *see also American Civil Liberties Union v. Department of Justice*, 265 F. Supp.2d 20 (D.D.C. 2003).

Moreover, Section 1.2(a)(4) of the order expressly limits the classification authority under Executive Order 12958, stating that an agency may only classify information if "the unauthorized disclosure of the information reasonably could be expected to result in damage to the national security and the *original classification authority is able to identify or describe the damage.*" *See Wolf v. Central Intelligence Agency*, 357 F. Supp.2d 112, 116 (D.D.C. 2004) (emphasis added).

Requesters strongly contest your office's reliance upon the first exemption under FOIA to justify its Glomar response because (a) acknowledging whether or not the disputed documents exist reveals no classified information that could reasonably be expected to damage "national defense" or "foreign affairs;" (b) information about the existence or nonexistence of the records is being withheld to conceal violations of the law or to

---

[7] Public information exists, for example, about documents seemingly responsive to items #4-7, including item #5. *See, e.g.,* Carol D. Leonnig & Dafna Linzer, *Judges on Surveillance Court To Be Briefed on Spy Programs*, Wash. Post, Dec. 22, 2005, at A1 (discussing preparations for a briefing by the National Security Agency and the Department of Justice about the warrantless surveillance program for judges on the Foreign Intelligence Surveillance Court (FISA) who raised concerns about the legality of the program and the Executive's apparent efforts to bypass FISA).

4

prevent embarrassment to the agency and thus, does not properly fall within disclosure exemptions under Executive Order 12958; and (c) public information about the existence of the National Security Agency's warrantless surveillance program is widespread, alleviating the need to maintain lingering doubt about the existence or nonexistence of the disputed information and the program's application to Requesters.

In the first instance, the fact of the existence or nonexistence of responsive information for item #1 would not reveal exempt classified information that endangers national security. Your office has failed to satisfy the requirement for the first exemption of FOIA that disclosure of the information "reasonably could be expected to result in damage to national security." *American Civil Liberties Union v. Department of Justice*, 265 F. Supp.2d at 28. Although your office referenced Executive Order 12985, you did not indicate the applicable provision of Section 1.4.[8]

The failure to identify a particular national security concern under Section 1.4 and the assertion of the President's vague conclusory statement that "[t]his is a highly classified program that is crucial to our national security"[9] fails to identify specific national security or foreign affairs concerns that would be placed at risk by the acknowledgement of the existence or nonexistence of records pertaining to the warrantless, domestic surveillance of the Requesters.[10] *Cf. Florida Immigration Advocacy Center v. National Security Agency*, 380 F. Supp.2d 1332 (S.D. Fla. 2005) (permitting withholding of a one-page document when its disclosure would identify a specific foreign target involved with a specific intelligence program in a specific foreign country and no portion of the document was segregable); *Wolf*, 357 F. Supp.2d at 112 (permitting a Glomar response to a request for information concerning "whether the CIA has gathered intelligence on a particular foreign national" and "acknowledging the existence of such records could reveal intelligence sources and methods and information harmful to foreign relations"). Your office's Glomar response to item #1 is highly is improper because the fact of the existence or nonexistence of these records will not identify a specific target, a specific

---

[8] Section 1.4 provides that information cannot be classified unless it concerns
    (a) military plans, weapons systems, or operations;
    (b) foreign government information;
    (c) intelligence activities (including special activities), intelligence sources or methods, or cryptology;
    (d) foreign relations or foreign activities of the United States, including confidential sources;
    (e) scientific, technological, or economic matters relating to the national security, which includes defense against transnational terrorism;
    (f) United States Government programs for safeguarding nuclear materials or facilities;
    (g) vulnerabilities or capabilities of systems, installations, infrastructures, projects, plans, or protection services relating to the national security, which include defense against transnational terrorism;
    (h) weapons of mass destruction.
Executive Order 12958, §1.4(a)-(h).
[9] *See* Exhbit A.
[10] Your office's failure to reference Section 1.4(d) when raising exemptions for items #3-4 and 6-8, suggests that with respect to item #1, no foreign relations or foreign activities are involved. This is likely due to the fact that the requested information relates to a program of domestic warrantless surveillance.

5

intelligence program, or the details of any methods of surveillance in such a manner that threatens national security.

The conclusory statements by the President also fail to overcome the limitations upon classification authority pursuant to Section 1.2(a)(4) of Executive Order 12958, which require that the original classification authority be able to describe or identify the grave damage to national security caused by disclosure of the classified information. Your office has given an insufficient description of the specific damages that would be caused by the disclosure of the existence or nonexistence of records related to warrantless domestic surveillance of the Requesters. It cannot be reasonably argued that acknowledgment of the existence or nonexistence of any records related to any warrantless surveillance of scores of lawyers who have clients in multiple countries could possibly lead to the specificity of information necessary to threaten national security. In fact, responsive records related to some portion of the Requesters, or even all of the Requesters would reveal only that lawyers and their colleagues and staff may or may not be subject to surveillance of some of their international communications. Because most Requesters have multiple overseas communications, such disclosure would not identify a specific intelligence target, program or method that could – in isolation or in tandem with other information[11] – create a risk to national security.

Even if such information were found to "concern" national security in some tenuous manner, we cannot accept that the release of limited records, or "reasonably segregable portions" of these records, "reasonably could be expected to result in damage to national security." *American Civil Liberties Union v. Department of Justice*, 265 F. Supp.2d at 28 (quoting Executive Order 12958, §§ 1.2, 1.5, as amended, §1.1(4)).

Rather, your office's overly-broad assertion of classification of the fact of the existence or nonexistence of records related to the warrantless surveillance of the Requesters is an improper effort under the Executive Order to conceal violations of the law and to prevent embarrassment to the NSA. Such information cannot be designated as "classified" under Executive Order 12958 and cannot be withheld under the first exemption of FOIA. Section 1.7 of Executive Order 12958 expressly states that "in no case shall information be classified in order to: (1) conceal violations of law [or] (2) prevent embarrassment to a person, organization, or agency." The classification limitations under Section 1.7(1)-(2) of the Executive Order prohibit precisely this avoidance of public accountability for wrongful government conduct.

Public censure of the Executive's domestic warrantless surveillance program has been widespread since the program was exposed by the *New York Times* in December 2005.[12] Substantial concerns about the program's legality and propriety have been expressed by

---

[11] Here, the release of any elements responsive to this request or the other items will not allow for analysis of "bits of data into a 'mosaic' by skilled intelligence agents who may receive FOIA-related documents." *See Center for National Security Studies v. Department of Justice*, 331 F.3d 918, 928 (D.C. Cir. 2003). Responsive records can be prepared in a manner that will not reveal details of particular intelligence targets, methods or sources.

[12] James Risen & Eric Lichtblau, *Bush Lets U.S. Spy on Callers Without Courts*, NY Times, Dec. 16, 2005, at A1, A16.

6

the general public,[13] former government officials,[14] legal organizations,[15] the judiciary,[16] and Congress.[17] Disclosure of the existence of records related to warrantless domestic surveillance of the Requesters would not reveal details of specific intelligence activities, but would raise substantial concerns that the Executive has acted lawlessly by, for example, intruding upon privileged attorney-client communications.

Requesters are lawyers and professionals associated with legal organizations, human rights advocacy organizations, private law firms, federal public defender offices, and law schools. Each requester engages and has engaged in some overseas communications with clients, foreign co-counsel, or other colleagues, often concerning privileged attorney-client communications or attorney work-product. The implications of your office's refusal to disclose the fact of the existence or nonexistence of any surveillance records of Requesters is that attorneys representing the United States may have access to confidential information between adverse parties and their clients or co-counsel, and may use evidence gathered by such monitoring to prepare the government's case, or even in court.

For example, in *Turkman v. Ashcroft*, 02-cv-2307 (E.D.N.Y.) and *Elmaghraby v. Ashcroft*, 04-cv-1809 (E.D.N.Y.), the government has refused to disclose whether it has subjected plaintiffs' lawyers to surveillance. The plaintiffs in these cases, some of whom now live overseas, are challenging their immigration detention and abuse while detained during post-9/11 immigration sweeps. In a March 7, 2006 Order, the court specifically directed the United States to state in writing that no member of its trial team is aware of any monitoring of confidential communications between plaintiffs and their attorneys, that no witness who might testify in these cases is aware of such monitoring, and that the United States has no intention of using any evidence obtained through such monitoring in defense of these actions. *Turkman*, 02-cv-2307 (E.D.N.Y.); *Elmaghraby*, 04-cv-1809 (E.D.N.Y.) Transcript of March 7, 2006 Conference, at 31. The United States has sought reconsideration of this Order and has not provided assurances to plaintiffs' counsel that government monitoring has not tainted the case. Such concerns are even more

---

[13] See, e.g., Editorial, *End Run the End Run: President Wrong to Bypass Courts in Ordering Domestic Wiretaps*, Columbus Dispatch, Jan. 14, 2006, at A12; Frank James, *Gore Accuses President of Breaking the Law*, Chi. Trib., Jan. 17, 2006.

[14] See, e.g., Jim Puzzanghera, *Experts Challenge Need for Warrantless Spying*, Mercury News, Jan. 28, 2006.

[15] American Bar Association, House of Delegates Resolution 302, adopted Feb. 13, 2006 (opposing "any future electronic surveillance inside the United States by any U.S. government agency for foreign intelligence purposes that does not comply with the provisions of the Foreign Intelligence Surveillance Act" and urging Congress to investigate the scope, justification, legality, and uses of the warrantless surveillance program); National Association of Criminal Defense Lawyers, News Release, *When the Government Becomes a Lawbreaker*, Part 2, Jan. 19, 2006, available at http://www.nacdl.org/public.nsf/newsreleases/2006mn0017OpenDocument (describing the NACDL's legal challenge to the NSA warrantless surveillance program).

[16] Carol D. Leonnig & Dafna Linzer, *Judges on Surveillance Court To Be Briefed on Spy Programs*, Wash. Post, Dec. 22, 2005, at A1.

[17] Jennifer Loven, *Report of NSA Spying Prompts Call for Probe*, S.F. Chron., Dec. 16, 2005 (reporting that Senator Arlen Specter pledged to hold Senate hearings to investigate the NSA's warrantless surveillance); Maura Reynolds & Greg Miller, *Congress Wants Answers About Spying on U.S. Citizens*, Pitts. Post-Gazette, Dec. 16, 2005.

7

heightened for federal pubic defenders and private defense counsel in federal criminal cases.

The possibility of intrusion upon attorney-client communications raises serious ethical and legal concerns. The "attorney-client privilege is the oldest of the privileges for confidential communications known to the common law." *Upjohn Co. v. United States*, 449 U.S. 383, 389 (1981). It functions to "encourage full and frank communication between attorneys and their client and thereby promote broader public interests in the observance of law and administration of justice." *Id.* Attorneys and law firms have an ethical duty not to "[e]ngage in conduct that is prejudicial to the administration of justice." Model Code of Professional Responsibility, Disciplinary Rule 1-102. The Department of Justice, once characterized by Chief Justice Berger as "the world's largest law firm," is no exception. *United States v. Sells Engineering, Inc.*, 463 U.S. 418, 471 (1983) ( Burger, C.J., dissenting). Your offices' refusal to confirm or deny whether surveillance is occurring which could lead to such violations within the Department of Justice or other government agencies seriously undermines the Requesters' ability to freely communicate with their overseas clients and co-counsel without fear that their adversaries will review and rely upon confidences revealed during government-monitored communications. Without confirmation of the existence of the information sought in item #1, no Requester's clients adverse to the United States can be assured of the confidentiality of their communications with their attorney, at least when such communications are transmitted across U.S. borders.

Pursuant to the limitations of Section 1.7, such undermining of the administration of justice cannot be withheld from FOIA disclosure under the protections of Executive Order 12958. If Requesters offers "compelling evidence that the agency denying the Freedom of Information Act, 5 U.S.C. §552, request is engaged in illegal activity, and shows that the information sought is necessary in order to confirm or refute that evidence," it will be viewed by the court as substantially favoring the release of the records. *See Davis v. Department of Justice*, 968 F.2d 1276, 1282 (D.C. Cir. 1992). With respect to information responsive to all items, government officials attempting to fulfill their duty to review the legality or illegality of Executive agency conduct have raised substantial concerns that these agencies, including the National Security Agency, have engaged in illegal conduct and these government officials have been refused access to many of the responsive documents sought in our FOIA request.[18] FOIA's principle of public disclosure is even more substantial in light of the lack of public scrutiny of the Agency's conduct.

Finally, while few details are known, there is widespread public knowledge about the existence of the National Security Agency's warrantless surveillance program, alleviating the need to maintain "lingering doubt" about the existence or nonexistence of records specifically related to the surveillance of Requesters. As noted above, the disclosure of

---

[18] *See, e.g.*, Laurie Kellman, *Sen. Specter Threatens to Block NSA Funds*, Wash. Post, Apr. 27, 2006 (reporting that Senator Specter is threatening to introduce an amendment withholding NSA funding if the President does not provide requested information to the Senate about the NSA warrantless surveillance program, including information related to budget allocations).

8

the existence of responsive information to item #1 will not reveal the details of a specific target, specific intelligence mission, or specific intelligence program or any other information which could reasonably be viewed as endangering national security or compromising intelligence activities. The existence of such documents and their content remain the subject of unprecedented public and legislative debate concerning the illegality of the warrantless surveillance program. Moreover, for item #1 and all other items, the release of information similar to previously released information cannot in this case be "reasonably [expected] to result in damage to national security." *American Civil Liberties Union v. Department of Justice*, 265 F. Supp.2d at 28. Accordingly, your office should promptly disclose the existence or nonexistence of such records and further disclose the content of documents responsive to item #1.

Your agency's justification of its Glomar response pursuant to the third exemption of FOIA's disclosure obligations is also misplaced. This exemption relieves FOIA's disclosure obligations for matters "specifically exempted from disclosure by statute . . . (A) requiring that the matters be withheld from the public in such a manner as to leave no discretion . . ., or (B) establishing particular criteria for withholding or referring to particular types of matters to be withheld." 5 U.S.C. §552(b)(3). Under FOIA, "'the two threshold criteria needed to obtain exemption 3 exclusion from public disclosure are that (1) the statute invoked qualifies as an exemption 3 withholding statute, and (2) the materials withheld fall within that statute's scope.'" *American Civil Liberties Union v. Department of Defense*, 389 F. Supp. 2d 547, 554 (D.C. Dir. 2005) (quoting *A. Michael's Piano, Inc. v. Fed. Trade Comm'n*, 18 F.3d 138, 143 (2d Cir. 1994); *see also Central Intelligence Agency v. Sims*, 471 U.S. 159, 167 (1985).

Your office's reliance upon this exemption to justify your Glomar response is erroneous because the fact of the disputed information's existence or nonexistence does not properly fall within the scope of the exemptions under 50 U.S.C. §403-1(i); Pub. L. No. 86-36, §6, 73 Stat. 63, 64 (1959) (codified at 50 U.S.C. 402 *note*); or 18 U.S.C. §798.

Title 50 U.S.C. §403-1(i) protects "intelligence sources and methods" from unauthorized disclosure. Yet, as explained in detail above, the existence or nonexistence of surveillance records related to the Requestors, and even at least some portion of the records themselves, would not reveal specific intelligence sources, targets, missions, or methods. Moreover, under §403(1)(i)(2)(C), your agency must ensure that records are prepared in a manner that "source information is removed to allow for dissemination at the lowest level *or in unclassified form to the extent practicable*. 50 U.S.C. 403(1)(i)(2)(C) (emphasis added). Although 50 U.S.C. §403-1 is a statute qualifying as a withholding statute, the information your office seeks to withhold does not fall within the statute's scope.

Similarly, the disputed information falls outside the exemptions of Section 6 of Public Law 86-36, which permits the NSA to invoke exemption from disclosing "the organization or any function of the National Security Agency, of any information with respect to the activities thereof, or of the names, titles, salaries, or number of the persons employed by such agency." Pub. L. No. 86-36, §6. In *Weberman v. National Security*

*Agency*, 490 F. Supp. 9, 15 (1980), the court acknowledged the broad grant of exemption under Section 6, but emphasized that this exemption was not without limitation: "Of course, all information gathered by NSA relates in some way to an NSA activity, simply because the gathering itself is an activity of the Agency. However, the underlying policy of the FOIA, which favors full disclosure, requires a more realistic construction of Section 6 [of Public Law 86-36]." The court concluded that disclosure of "the fact of existence or non-existence of the [document] requested by plaintiff will not reveal any non-public information related to a specific NSA activity," and thus disclosure was required. *Id.* Similarly, in *Florida Immigration Advocacy Center*, the court found the third exemption from FOIA under Section 6 was appropriate for a top secret document because of the specificity of information that disclosure of the document would reveal. 380 F. Supp.2d at 1339.

Here, the fact of the existence or nonexistence of the records cannot reasonably be viewed as revealing any specific details about classified information. Moreover, the content of all of the underlying documents that exist, if any, also cannot reasonably be viewed as revealing details of specific NSA activity. These, too, should be disclosed.

The existence or nonexistence of any records related to the warrantless surveillance of the Requesters and the content of the underlying documents also do not fall within the scope of Section 6 because information that relates to unlawful activity and is unauthorized by statute may not be withheld under this section. *See Hayden v. National Security Agency*, 608 F.2d 1381 (D.C.Cir. 1971) ("Certainly where the function or activity is authorized by statute and not otherwise unlawful, NSA materials integrally related to that function or activity fall within Public Law No. 86-36 and Exemption 3."). As explained above, information about the warrantless surveillance of the Requesters is both unauthorized and unlawful.

Finally, the information requested under item #1 does not fall within the scope of 18 U.S.C. §798 because it is simply not classified information and certainly the fact of its existence or nonexistence cannot reasonably be deemed to endanger national security.

Even assuming *arguendo*, that the existence of nonexistence of the records related to the FOIA requests by some of the individual Requesters in Appendix A would reveal classified information, it is unreasonable for the NSA to assert that this is true for all records related to every individual. Some portion of both the fact of the records' existence and the content of the underlying records responsive to item #1 is reasonably segregable. If so, your office has an obligation to produce the segregable information pursuant to the FOIA statute and congressional intent. *See* 5 U.S.C. § 552(b); *see also John Doe Agency v. John Doe Corp.*, 493 U.S. 146, 151-52 (1989) (describing the strong congressional intent favoring disclosure under FOIA); H.R. Rep. No. 1497, 89th Cong., 2d Sess., 6 (1966), U.S. Code Cong. & Admin. News 1966, pp. 2418, 2423 (noting the need "to reach a workable balance between the right of the public to know and the need of the Government to keep information in confidence to the extent necessary without permitting indiscriminate secrecy").

Accordingly, the existence or nonexistence of any records responsive to item #1 must be disclosed. Moreover, the content of the underlying documents, if any, must also be disclosed to avoid concealing unlawful or unethical conduct and conduct embarrassing to the Agency. If necessary, the Agency must engage in an adequate review of all records and prepare segregable portions for disclosure.

*Items #3-4 and 6-8*

*General Objections*

Requesters object to the exemptions invoked to withhold information responsive to items #3-4 and 6-8 pursuant to the first, third and fifth exemptions from FOIA's disclosure obligations.

The first and third exemptions under FOIA, for each of our requests, are not applicable because (a) the responsive information is not properly classified under Executive Order 12958, §1.4(c) & (g); (b) the release of the responsive information cannot reasonably be expected to "cause exceptionally grave damage to national security," as your office claims; and (c) the responsive information does not fall within scope of 50 U.S.C. §403-1(i); Pub. L. 86-36, §6; or 18 U.S.C. §798.

The records sought in items #3-4 and 6-8 relate to policies, procedures, guidelines, evaluations, assessments and practices that would reveal the scope of any warrantless surveillance of the Requesters – the majority of whom are lawyers communicating with some clients overseas – as well as the Agency's awareness of the illegality of the program. The records sought are related to potentially unlawful and unethical activity, including documents purporting to authorize and guide the surveillance of the Requesters' privileged communications and/or the sharing of information from the surveillance with law enforcement officials for impermissible use in obtaining warrants or in litigation. The disclosure of procedural protections, guidelines, or policies that guide the Agency's warrantless surveillance program cannot possibly harm national security.

Information concerning the policies, procedures, guidelines, evaluations, assessments, and practices related to the warrantless surveillance program cannot reasonably be viewed as disclosing specific intelligence activities, intelligence sources or methods, or cryptology, *see* §1.4 (c), nor will it reveal vulnerabilities or capabilities of the Agency's infrastructure, *see* §1.4(g). Such details might be revealed from documents describing the specific technology used for surveillance, but the evaluation of the warrantless surveillance program's scope and legality cannot reasonably be viewed as disclosing such details.

Moreover, it can hardly be said that disclosure of documents related to the program's scope, propriety and legality will "cause exceptionally grave damage to the national security." The documents responsive to these items are more likely to reveal unauthorized and unlawful conduct, which cannot be protected from disclosure within the

11

scope of Section 6 of Public Law 86-36. Your office's conclusory statement that disclosure will cause "exceptionally grave damage to national security" and the unlawful and embarrassing nature of requested documents fail to satisfy the requirements for exemption under the first and third exemptions from FOIA's disclosure requirements.

Finally, Requests object to your office's refusal to disclosure some responsive information pursuant to the fifth exemption of FOIA. In order to qualify for exemption under the fifth exemption from FOIA, a document must satisfy two requirements. First, its source must be a Government agency and, second, "it must fall within the ambit of a privilege against disclosure under judicial standards that would govern litigation against the agency that holds it." *Department of the Interior and Bureau of Indian Affairs v. Klamath Water Users Protective Assoc.*, 532 U.S. 1, 8 (2001). Your office has not indicated with specificity whether you are invoking this exemption because the requested information is from a predecisional deliberative process, or is privileged attorney work-product or attorney-client communications. Please provide Requesters with an index indicating the specific nature of the exemption for each document.

Purely factual information, postdecisional deliberative information, and attorney work-product providing guidance for future illegal activity is not protected under the fifth exemption. *See American Civil Liberties Union v. Department of Justice*, 265 F. Supp.2d at 39-40 ("Purely factual information is generally considered non-deliberative, and is therefore not typically covered by this exemption. Such information must therefore be disclosed even when contained in an otherwise protected document, unless the information is 'inextricably intertwined' with, or incapable of being segregated from, the exempt material." (internal citations omitted)); *Army Times v. Department of the Air Force*, 998 F.2d 1067, 1071 (D.C. Cir. 1993) ("Exemption 5 applies only to the deliberative portion of a document and not to any purely factual, non-exempt information the document contains. Non-exempt information must be disclosed if it is reasonably segregable from exempt portions of the record, and the agency bears the burden of showing that no such segregable information exists." (quotations omitted)); American Bar Association Model Rule 1.2(d) ("A lawyer shall not counsel a client to engage, or assist a client, in conduct that the lawyer knows is criminal or fraudulent."). Your office is under an obligation to review these documents, to identify the specific nature of the exemption asserted, and to disclose all segregable portions of the responsive information for items #3-4 and 6-8.

Finally, with respect to these items, assuming *arguendo* that some portion of the documents responsive to items #3-4 or 6-8 is properly withheld, your office is under an obligation to determine whether some portions of these records are segregable and, therefore, subject to disclosure. *See supra* at 10.

In addition to these objections for items #3-4 and 6-8, we raise additional points regarding items #7-8.

*Item #7*

12

Through both official and unofficial disclosures, some of the documents requested in item #7 have been made public by another agency pursuant to a FOIA request by the Electronic Privacy Information Center.[19]  The disclosure of these documents did not "cause exceptionally grave damage to the national security" as your office claimed in invoking the first exemption under FOIA; nor did it result in the disclosures of any specific NSA intelligence target, mission or activity which would justify exemption under the third exemption from FOIA's disclosure requirement.  Your office's claim that any further disclosure of these and similar documents would cause damage to our national security or reveal classified information is meritless against this backdrop of public disclosure.  This is so because the existence of at least some of the requested records is uncontestably public knowledge.  *See Washington Post v. United States Department of Defense*, 766 F. Supp. 1, 9 (D.D.C. 1991).

*Item #8:*

The refusal to disclose any documents responsive to item #8 is unjustifiable because the information about budget allocations is not properly classified under Executive Order 12958 and cannot reveal specific details about intelligence missions, sources, or methods that are properly classified and withheld under 50 U.S.C. §403-1 or Section 6 of Public Law 86-36.  Moreover, this information is the subject of ongoing public debate, and is being sought by officials at the highest level of our democratic government who have also rejected the Executive's attempts to classify this information. *See* Laurie Kellman, *Sen. Specter Threatens to Block NSA Funds*, Wash. Post., Apr. 27, 2006.

In closing, Requesters note that many government officials involved in classification determinations have been increasingly concerned over the past few years about the over-classification of information that results in less public accountability for government conduct.[20]  Your office's overly-broad assertions of exemptions from FOIA's disclosure requirements for information related to unlawful and unethical government activity threatens to further this unwarranted governmental secrecy.  Accordingly, Requesters demand that your office engage in an adequate and diligent effort to properly designate information, to disclose all responsive documents not properly subject to a FOIA exemption, and to comply with your obligations to provide segregable information when necessary.

---

[19] The documents related to the NSA's warrantless surveillance program are publicly-available at http://www.epic.org/privacy/nsa/foia/default.html#foia.

[20] The over-classification of documents was an issue cited by the 9/11 Commission in its final report as one factor impairing the efficient and effective sharing of information with the American public. *See* The 9/11 Commission Report, Final Report of the National Commission on Terrorist Attacks Upon the United States, 417 ("Current security requirements nurture overclassification and excessive compartmentation of information among agencies.")  In addition, much Congress has recently begun to address this issue. *See* Memorandum from Lawrence J. Halloran to Members of the Subcommittee on National Security, Emerging Threats, and International Relations, *Briefing Memorandum for the hearing, Emerging Threats: Overclassification and Pseudo-classification*, scheduled for Wednesday, March 2, 1:00 p.m., 2154 Rayburn House Office Building, Feb. 24, 2005 (noting that the Information and Security Oversight Office's 2003 Report to the President found that "many senior officials will candidly acknowledge that the government classifies too much information, although oftentimes the observation is made with respect to the activities of agencies other than their own").

13

We request a response to this appeal with twenty (20) working days.

Sincerely,

William Goodman, Esq.
Legal Director

14

# EXHIBIT A

APR.21.2006   2:41PM                                        NO.471   P.2



**NATIONAL SECURITY AGENCY**
**CENTRAL SECURITY SERVICE**
FORT GEORGE G. MEADE, MARYLAND 20755-6000

FOIA Case:  48144
28 February 2006

Mr. William Goodman
Legal Director
Center for Constitutional Rights
666 Broadway, 7th Floor
New York, NY  10012

Dear Mr. Goodman:

This responds to your Freedom of Information Act (FOIA) request of 18 January 2006, which was received by this office on 23 January 2006, for records concerning warrantless electronic surveillance that reference a "Requesting Party" (any of the individuals affiliated with the Center for Constitution Rights, i.e., the individuals listed in your request and in Appendix A of your request); and records concerning the development, approval, and implementation of the domestic surveillance program.  Specifically, you requested the following eight items as they relate to the above:

1.  All records relating to surveillance that reference any "Requesting Party;"

2.  Executive orders authorizing warrantless searches;

3.  Records on the policies, procedures, guidelines or practices of NSA;

4.  Records relating to the legality or appropriateness of the program;

5.  Department of Justice evaluations, assessments, or audits of the program;

6.  Internal NSA evaluations, assessments, or audits, of the program;

7.  Records containing concerns or comments by judges, national security officials, intelligence officials, or government lawyers about the program; and

8.  Records reflecting budget allocations for the program.

Your request has been assigned Case Number 48144.  Please refer to this case number when contacting us about your request.  For purposes of this request and based on the information you provided in your letter, you are considered an "all other" requester.  There are no assessable fees for this request; therefore, we did not address your request for a fee waiver.  Your request has been processed under the provisions of the FOIA.

As you know, the President of the United States "authorized the National Security Agency [(NSA)], consistent with U.S. law and the Constitution, to intercept the international communications of people with known links to al Qaeda and related terrorist organizations."  The President also noted that, "[t]his is a highly classified program that is crucial to our national security."

FOIA Case: 48144

Rest assured that safeguards are in place to protect the civil liberties of U.S. citizens. However, because of the highly classified nature of the program, we can neither confirm nor deny the existence of records responsive to item #1 of your request. The fact of the existence or non-existence of responsive records is a currently and properly classified matter in accordance with Executive Order 12958, as amended. Thus, this portion your request is denied pursuant to the first exemption of the FOIA, which provides that the FOIA does not apply to matters that are specifically authorized under criteria established by an Executive Order to be kept secret in the interest of national defense or foreign relations and are properly classified pursuant to such Executive Order.

Moreover, the third exemption of the FOIA provides for the withholding of information specifically protected from disclosure by statute. Thus, any information relating to item #1 of your request is also denied because the fact of the existence or non-existence of the information is exempted from disclosure pursuant to the third exemption. The specific statutes applicable in this case are Title 18 U.S. Code 798; Title 50 U.S. Code 403-1(i); and Section 6, Public Law 86-36 (50 U.S. Code 402 note).

Regarding items #2 and #5 of your request, we have determined that we do not have records responsive to those portions of your request.

Regarding items #3-4 and #6-8 of your request, we have determined the following:

Other than the two enclosed items, the information responsive to this portion of your request has been found to be currently and properly classified in accordance with Executive Order 12958, as amended. The information meets the criteria for classification as set forth in Subparagraphs (c) and (g) of Section 1.4 and remains classified TOP SECRET as provided in Section 1.2 of Executive Order 12958, as amended. The information is classified because its disclosure could reasonably be expected to cause exceptionally grave damage to the national security. Because the information is currently and properly classified, it is exempt from disclosure pursuant to the first exemption of the FOIA (5 U.S.C. Section 552(b)(1)).

Furthermore, this Agency is authorized by various statutes to protect certain information concerning its activities. Accordingly, the information responsive to this portion of your request is exempt from disclosure pursuant to the third exemption of the FOIA which provides for the withholding of information specifically protected from disclosure by statute. The specific statutes applicable in this case are Title 18 U.S. Code 798; Title 50 U.S. Code 403-1(i); and Section 6, Public Law 86-36 (50 U.S. Code 402 note).

Finally, some of the information responsive to this portion of your request is exempt from release pursuant to the fifth exemption of the FOIA. This exemption applies to inter-agency or intra-agency memoranda or letters which would be available by law to a party in litigation with the agency, protecting information that is normally privileged in the civil discovery context, such as information that is part of a predecisional deliberative process, and/or attorney-client privileged information, and/or attorney work product.

FOIA Case:  48144

Since item #1 of your request is denied, we did not locate records responsive to items #2 and #5, and because most of the information responsive to items #3-4 and #6-8 is being withheld, you are hereby advised of this Agency's appeal procedures. Any person denied access to information may file an appeal to the NSA/CSS Freedom of Information Act Appeal Authority. The appeal must be postmarked no later than 60 calendar days of the date of the initial denial letter. The appeal shall be in writing addressed to the NSA/CSS FOIA Appeal Authority (DC34), National Security Agency, 9800 Savage Road STE 6248, Fort George G. Meade, MD  20755-6248,. The appeal shall reference the adverse determination and shall contain, in sufficient detail and particularity, the grounds upon which the requester believes that the determination is unwarranted. The NSA/CSS FOIA Appeal Authority will endeavor to respond to the appeal within 20 working days after receipt, absent any unusual circumstances.

Please be advised that records responsive to item #4 of your request include a document originating with another government agency. Because we are unable to make determinations as to the releasability of the other agency's information, we have requested that the agency review the document and provide a direct response to you.

Sincerely,

LOUIS F. GILES
Director of Policy

Encls:
a/s

# EXHIBIT B

January 18, 2006

**VIA OVERNIGHT DELIVERY**

National Security Agency
Attn: FOIA/PA Office (DC34)
9800 Savage Road
Suite 648
Ft. George G. Meade, Maryland 20755-6248

(fax) 301-688-6198

Re: <u>Freedom of Information Act Request (Expedited Processing Requested)</u>

Dear FOIA/PA Officer:

This letter constitutes a Request for records pursuant to the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, *et seq.*, and corresponding regulations. This Request is submitted on behalf of the Center for Constitutional Rights, its staff and Board attorneys, and the volunteer, cooperating, and co-counsel attorneys and their staff (collectively, "Requesting Parties" or "Requesters") listed in Appendix A attached hereto. A similar request has been submitted to the following agencies, departments and units of the United States government: the Federal Bureau of Investigation, the Defense Intelligence Agency, the Central Intelligence Agency, the United States Army, the United States Navy, the Department of Homeland Security, and the Department of Justice.

**1.    Requesting Parties**

The Center for Constitutional Rights ("CCR") is a non-profit, public interest organization that engages in litigation, public advocacy and educational programs on behalf of those who seek to challenge governmental misconduct, racial injustice, social and economic injustice and violations of international human rights law in U.S. courts, the courts of other countries and other international bodies and courts. For the past four years, lawyers and advocates at CCR have represented citizens and noncitizens identified as alleged terrorists and/or suspected of having affiliations with terrorists. These persons have been detained in places as diverse as the Metropolitan Detention Center in Brooklyn, New York; the Passaic County Jail in Patterson New Jersey; the detention center at the U.S. Naval Station in Guantánamo Bay, Cuba; the Far Falestin Branch Detention Facility of Syrian Military Intelligence in Damascus, Syria; the Sednaya Prison in Sednaya, Syria; Abu Ghraib Prison in Baghdad, Iraq; and other U.S. facilities, where they were subject to physical and psychological abuse or torture, or unlawful rendition.

This Request is made on behalf of the following CCR staff members, staff attorneys, volunteer attorneys, consultants, and Board Members who have or may have communicated with clients, families of clients, attorneys and human rights activists in foreign countries: William Goodman (a.k.a., Bill Goodman), Barbara Olshansky, Gitanjali Gutierrez (a.k.a., Gita Gutierrez), Tina Monshipour Foster (Tina Foster), Seema Ahmad, Maria LaHood, Jennifer Green (a.k.a., Jennie Green), Shayana Kadidal (a.k.a., Shane Kadidal), Rachel Meeropol, Steven MacPherson Watt,

Matthew Strugar (a.k.a., Matt Strugar) Marc Krupanski, Kelly McAnnany, Claire Tixeire, Michael Ratner, Jules Lobel, David Cole, Rhonda Copelon, Peter Weiss, Abdeen Jabara, Marilyn Clement, Charles Hay-Maestre (a.k.a., Charlie Hay-Maestre or Charley Hay-Maestre), and Jeff Hogue.

This Request is also made on behalf of 108 *pro bono* volunteer, cooperating and co-counsel attorneys and their staff throughout the United States who have worked with CCR on a variety of cases, primarily involving petitions for writs of *habeas corpus* filed on behalf of persons detained at the U.S. Naval Station in Guantánamo Bay, Cuba. These *pro bono* attorneys and their staff are listed in Appendix A.

2.    **Definitions**

For the purpose of this Request, the following definitions shall apply:

A.    "Electronic surveillance" - refers to

    (a)    the acquisition by an electronic, mechanical, or other surveillance device of the contents of any wire, radio or other communication in any form or format of persons located within the United States obtained without benefit of warrant, including but not limited to any and all wiretaps, recordings, surveillance and/or interceptions of telephonic conversations and/or transactions (including cellular and satellite phone conversations and/or transactions), interception of e-mail conversations, or other written communications from public or non-public web sites or computer networks;

    (b)    the acquisition by an electronic, mechanical, or other surveillance device of non-content records obtained without benefit of warrant, from persons located within the United States that identify the existence of any communications, including but not limited to pen registers; and

    (c)    the warrantless installation or use of an electronic, mechanical or other surveillance device for monitoring to acquire information, other than from a wire or radio communication;[1]

B.    "Records" - refers to all "records" as defined by the FOIA, 5 U.S.C. § 522(f)(2), including but not limited to existing memoranda, agreements, notes, orders, policies, procedures, protocols, written or email correspondence, faxes, files, reports, rules, technical manuals, technical specifications, training manuals, studies, analyses, audio or video recordings,

---

1 This request does not include surveillance authorized pursuant to Sections 1802 or 1822(a) of the Foreign Intelligence Surveillance Act. 50 U.S.C. §§ 1802 or 1822(a).

transcripts of such recordings, data, papers, guidance, guidelines, evaluations, instructions, photographs, films, recordings, books, accounts, communications and all retrievable information in computer storage, regardless of form of the record as a digital, audio, written, video, or other record;

C.     "Electronic surveillance" "of persons located within the United States" - refers to records obtained through electronic surveillance of any communications by or to an individual, individuals, group or groups within the United States, regardless of whether the communication originated inside or outside the United States.

### 3.    Records Sought

CCR and the other Requesting Parties seek disclosure of records in the possession of any office of the National Security Agency ("NSA") and any agency, organization or corporation holding records at the behest of the NSA concerning any warrantless electronic surveillance or warrantless physical searches of any person located within the United States from September 11, 2001 to the date of this FOIA Request that references a Requesting Party. In addition, CCR and other Requesters seek the disclosure of records concerning the development, approval, and implementation of the Executive's warrantless electronic surveillance and/or warrantless physical search program within the United States.

In order to ascertain the extent of the Executive's policies and practices concerning warrantless electronic surveillance and/or warrantless physical searches of persons located within the United States, Requesting Parties seek the following records:

1.   All records obtained through or relating to ongoing or completed warrantless electronic surveillance or physical searches of persons located within the United States, including logs and indexes, regarding or concerning any Requesting Party and/or records of warrantless electronic surveillance or physical searches of persons located within the United States that reference, list, or name any Requesting Party;

2.   Any Executive Orders authorizing the warrantless electronic surveillance or physical searches of persons located within the United States referenced in paragraph (1) above;

3.   All records establishing, discussing or referencing the policies, procedures, guidelines, or practices of the NSA used to (a) identify the individuals or organizations subject to warrantless electronic surveillance or warrantless physical searches within the United States; (b) gather information through warrantless electronic surveillance or physical searches within the United States; (c) share this information with other U.S. government agencies and with foreign

governments or the agencies or agents thereof; (d) share this information as a basis for a warrant request by the U.S. Department of Justice to the Foreign Intelligence Surveillance Act Court; (e) destroy this information; and/or (f) consult with or secure approval from the U.S. Department of Justice or other departments, agencies or Executive officials prior to conducting warrantless electronic surveillance or warrantless physical searches of persons located within the United States;

4. Any records stating, discussing, or referencing the legality or propriety of warrantless electronic surveillance or warrantless physical searches of persons located within the United States, including but not limited to policy statements, memoranda, analyses, explanations, or authorizations;

5. Any Department of Justice evaluation, assessment, or audit of any NSA program implementing warrantless electronic surveillance or warrantless physical searches of persons located within the United States;

6. Any internal NSA evaluation, assessment, or audit of any NSA program implementing warrantless electronic surveillance or warrantless physical searches of persons located within the United States;

7. Any records containing concerns or comments by judges, national security officials, intelligence officials, government lawyers, or other about the NSA warrantless electronic surveillance program; and

8. All records reflecting budget allocations for all warrantless electronic surveillance or warrantless physical search programs of persons located within the United States.

4.    **Requesters Are Entitled to Expedited Processing**

Expedited processing is warranted when an organization "primarily engage[s] in disseminating information in order to inform the public about an actual or alleged Federal Government activity" has an "urgent need" to secure the records. 32 C.R.F. § 286.4(d)(3)(ii). The Center for Constitutional Rights is an organization "primarily engaged in disseminating information" about government misconduct through the work of its staff, Board, volunteer, cooperating, and co-counsel attorneys. As described above, CCR engages in litigation, public advocacy and educational programming to defend constitutional and human rights law. Dissemination of information to the public is a crucial component of CCR's mission and work. Specifically, CCR publishes reports and newsletters, maintains a public website, issues press releases, and offers educational materials and programming to the pubic within the United States and internationally. Additionally, CCR's staff, board, and volunteer, co-counsel, and cooperating attorneys further disseminate CCR's information to their local and national communities through a variety of means, including their own press releases, interviews, reports, and educational programming.

The records in question involved the NSA's actual and alleged warrantless electronic surveillance within the United States, in apparent violation of the rights guaranteed by the First, Fourth, Fifth and Fourteenth Amendments to the United States Constitution. FOIA requests bearing upon alleged Constitutional violations require an immediate response in order to cease any ongoing violations and to prevent future ones.

A requester may also demonstrate compelling need by a showing that the information sought is "urgently needed" and involves a "breaking new story of general public interest." 32 C.R.F. § 286.4(d)(3)(iii). The instant Request clearly meets these standards in light of the current public scrutiny and impending legislative hearings in response to the disclosure of the Executive's policies and practices involving warrantless electronic surveillance of persons within the United States. *See, e.g.*, Jennifer Loven, *Report of NS Spying Prompts Call for Probe*, San Fran. Chron., Dec. 16, 2005 (stating that Senator Arlen Specter, chairman of the Senate Judiciary Committee, promised that the Senate would conduct hearings to investigate the NSA's warrantless electronic surveillance practices); *see also* Christine Hauser, *Bush Declines to Discuss Report on Eavesdropping*, N.Y. Times, Dec. 16, 2005; Maura Reynolds & Greg Miller, *Congress Wants Answers About Spying on U.S. Citizens*, Pitts. Post-Gazette, Dec. 16, 2005; James Risen & Eric Lichtblau, *Bush Lets US. Spy on Callers Without Courts*, N.Y. Times, Dec. 16, 2005; Steven Thomma, *Spying Could Create Backlash on Congress; Public Reaction Hinges on Identity of Targets*, San Jose Mercury News, Dec. 16, 2005; Caren Bohan & Thomas Ferraro, *Bush Defends Eavesdropping and Patriot Act*, ABC News, Dec. 17, 2005; Dan Eggen & Charles Lane, *On Hill, Anger and Calls for Hearing Greet News of Stateside Surveillance*, Wash. Post, Dec. 17, 2005; Jennifer Loven, *Bush Defends Secret Spying in U.S.*, San Fran. Chron., Dec. 17, 2005; John Diamond, *NSA's Surveillance of Citizens Echoes 1970s Controversy*, USA Today, Dec. 18, 2005; Barton Gellman & Dafna Linzer, *Pushing the Limits of Wartime Powers*, Wash. Post, Dec. 18, 2005; James Kuhnhenn, *Bush Defends Spying in U.S.*, San Jose Mercury News, Dec. 18, 2005; Fred Barbash & Peter Baker, *Gonzales Defends Eavesdropping Program*, Wash. Post, Dec. 19, 2005; James Gerstenzang, *Bush Vows to Continue Domestic Surveillance*, L.A. Times, Dec. 19, 2005;Todd J. Gillman, *Bush Assails Disclosure of Domestic Spying Program*, San Jose Mercury News, Dec. 19, 2005; Terrence Hunt, *Bush Says NSA Surveillance Necessary, Legal*, Wash. Post, Dec. 19, 2005; David Stout, *Bush Says U.S. Spy Program is Legal and Essential*, N.Y. Times, Dec. 19, 2005; George E. Condon, *Bush Says Spying Is Needed to Guard US*, San Diego Union Trib., Dec. 19, 2005; Michael Kranish, *Bush Calls Leak of Spy Program Shameful*, Bost. Globe, Dec. 20, 2005; Jeff Zeleny, *No 'Unchecked Power' in Domestic Spy Furor*, Chi. Trib., Dec. 20, 2005; Douglas Birch, *NSA's Methods Spur Controversy*, Balt. Sun, Jan. 8, 2006; Dan Eggen, *Probe Set in NSA Bugging*, Wash. Post, Jan. 11, 2006; David E. Sanger, *In Shift, Bush Says He Welcomes Inquiry on Secret Wiretaps*, N.Y. Times, Jan. 11, 2006; Scott Shane, *N.S.A. Audit of Spying is Not Assessing Legality*, N.Y. Times, Jan. 11, 2006; Jessica Yellin, *Ex-CIA Lawyer: No Legal Basis for NSA Spying*, ABC News, Jan. 11, 2006; James Gerstenzang, *Bush Now Cites Value of Spying Inquiry*, L.A. Times, Jan. 12, 2006; Sean Sullivan, *Markey Bashes Surveillance Program at Forum*, Arlington (MA) Advocate, Jan. 12, 2006.

Finally, pursuant to the applicable regulations and statue, CCR and the other Requesters expect the NSA's determination of this Request for expedited processing within 10 calendar days and the determination of this Request for documents within 20 days. *See* 32 C.F.R. § 286.4(d)(1),

(3); 5 U.S.C. § 552(a)(6)(A)(i).

5. **Requesting Parties Are Entitled To A Fee Waiver**

Requesting Parties are entitled to waiver of all costs pursuant to 5 U.S.C. § 552(a)(4)(A)(iii) because "disclosure of the requested records is in the public interest" and "likely to contribute significantly to the public understanding of the operations or activities of the government and is not primarily in the commercial interest of the requester." As indicated above, the significant media attention focused on the NSA's policy of warrantless electronic surveillance reflects the extraordinary public interest in the records Requesters seek. Disclosure of the requested information would reveal the extent of the NSA's warrantless electronic surveillance and/or warrantless physical searches of persons located within the United States, raising weighty constitutional questions.

Further, disclosure of the requested records will aid the public's understanding of the President's decision to disregard existing restraints on the exercise of Executive power, including the minimal oversight provided by the Foreign Intelligence Surveillance Act courts.

Finally, as a non-profit legal, advocacy, and educational organization, CCR and its staff, Board, and volunteer, co-counsel and cooperating attorneys are well-suited to disseminate publicly the information obtained from this Request. Because this Request satisfies the statutory criteria, a fee waiver would fulfill Congress's legislative intent in amending FOIA. *See Judicial Watch, Inc. v. Rossotti*, 326 F.3d 1309, 1312 (D.C. Cir. 2003) ("Congress amended FOIA to ensure that it be liberally construed in favor of waivers for noncommercial requesters." (internal quotation marks omitted)).

If the fee waiver is not granted, however, we request that the fees assigned be limited to "reasonable standard charges for document duplication" pursuant to 5 U.S.C. § 552(a)(4)(A)(ii)(II) ("[F]ees shall be limited to reasonable standard charges for document duplication when records are not sought for commercial use and the request is made by . . . . a representative of the news media . . ." and 32 C.F.R. § 286.28(e) (stating that search and review fees shall not be charges to "representatives of the news media"). If appropriate after reviewing the results of the Request, CCR intends to "disseminate the information" disclosed by this Request "among the public" through the media channels described above. CCR meets the definition of a "representative of the news media" because it is "an entity that gathers information of potential interest to a segment of the public, uses its editorial skills to turn raw material into a distinct work, and distributes that work to an audience." *Nat'l Security Archive v. Dep't of Defense*, 880 F.2d 1381, 1387 (D.C. Cir. 1989); *see also Judicial Watch Inc. v. Rossotti*, 326 F.3d 1309, 1310 (D.C. 2003) (finding that a non-profit, public interest organization that distributed a newsletter and published books was a "representative of the media" for purposes of FOIA). Accordingly, any fees imposed for the processing of this Request should be limited pursuant to these regulations.

*    *    *    *

If this Request is denied in whole or in part, Requesters ask that the NSA justify all deletions

by reference to specific exemptions of FOIA. Requesters expect the NSA to release all segregable portions of otherwise exempt material, and reserve the right to appeal a decision to withhold any records or to deny the within application for expedited processing and waiver of fees.

Thank you for your consideration of this Request. Kindly direct all future responses and furnish all disclosed records to William Goodman, Legal Director, Center for Constitutional Rights, 666 Broadway, 7th floor, New York, N.Y. 10012, telephone (212) 614-6427.

Under penalty of perjury, I hereby affirm that the information provided supporting the Request and the attached Appendix are true and correct to the best of my knowledge and belief.

Signed by:

_____

William Goodman, Esq.
Legal Director
Center for Constitutional Rights
666 Broadway, 7th Floor
New York, NY 10012
(212) 617-6427

## Appendix A*

David C. Sleigh, Esq.
Sleigh &Williams, P.C.
364 Railroad Street
St. Johnsbury, VT 05819
(802) 748-5176

Joseph Margulies, Esq.
MacArthur Justice Center
University of Chicago Law School
1111East 60th Street
Chicago, IL 60637
(773) 702-9560
(763) 245-8048

Stephen M. Truitt, Esq.
   (202) 220-1452
Charles Carpenter, Esq.
   (202) 220-1507
Pepper Hamilton LLP
Hamilton Square
600 Fourteenth Street, N.W.
Suite 500
Washington, D.C. 20005

Christopher J. Huber, Esq.
Pepper Hamilton LLP
3000 Two Logan Square
Eighteenth and Arch Streets
Philadelphia, PA 19103
(215) 981-4446

Marjorie M. Smith, Esq.
Law Office of Marjorie M. Smith
P.O. Box 234
Piermont, NY 10968
(845) 365-6335

Richard (Dicky) A. Grigg, Esq.
Spivey & Grigg, LLP
48 East Avenue
Austin, TX 78701
(512) 474-6061

Richard J. Wilson, Professor of Law
Muneer I. Ahmad, Professor of Law
Sheku Sheikholeslami
American University Washington College
of Law
4801 Massachusetts Ave. NW,
Washington D.C. 20016
(202) 274-4147

William (Bill) A. Wertheimer, Jr., Esq.
30515 Timberbrook Lane
Bingham Farms, MI 48025
(248) 644-9200

Allan Sussman, Esq.
Sussman Law Office
Box 379
Bearsville, NY 12409
(845) 679-6927

Jonathan Wells Dixon, Esq.
Paul Schoeman, Esq.
Allison Sclater, Esq.
Michael J. Sternhell, Esq.
   (212) 715-7624
Kramer, Levin, Naftalis, & Frankel LLP
1177 Avenue of the Americas
New York, NY 10036
(212) 715-9100

Eldon V.C. Greenberg, Esq.
Garvey Schubert Barer
1000 Potomac Street, N.W.
Washington, D.C. 20007
(202) 298-1789

Samuel C. Kauffman, Esq.
Garvey Schubert Barer
121 S.W. Morrison St.
Portland, OR 97204
(503) 228-3939

*Written authorizations from all individual requesters are attached.

George Brent Mickum, III, Esq.
  (202) 434-4245
Douglas J. Behr
  (202) 434-4213
Keller and Heckman LLP
1001 G Street, N.W.
Washington, D.C. 20001

John W. Lundquist, Esq.
  (612) 492-7181
James E. Dorsey, Esq.
  (612) 492-7079
Deborah A. Schneider, Esq.
  (612) 492-7124
Asmah Tareen, Esq.
  (612) 492-7134
Jessica D. Sherman, Esq.
  (612) 492-7020
Fredrikson & Byron, P.A.
200 South Sixth Street
Suite 4000
Minneapolis, MN 55402-1425
(612) 492-7000

Richard L. Cys, Esq.
Davis, Wright, Tremaine LLP
1500 K Street NW
Suite 450
Washington, DC, 20005-1272
(202) 508-6618

Mark S. Sullivan, Esq.
  (212) 415-9245
Christopher G. Karagheuzoff, Esq.
  (212) 415-0793
Joshua Colangelo-Bryan, Esq.
  (212) 415-9234
Dorsey & Whitney LLP
250 Park Avenue
New York, NY 10177
(212) 415-9200

William J. Murphy, Esq.
John J. Connolly, Esq.
Murphy & Shaffer LLC
Suite 1400
36 South Charles Street
Baltimore, MD 21201
(410) 783-7000

Clive Stafford Smith, Esq.
Justice in Exile
P.O. Box 52742
London, EC4P 4WS
44 (0)20 7353 4640

Arnold L. Natali, Jr., Esq.
  (973) 622-2475
Jeremy L. Hirsh, Esq.
  (973) 622-3165
McCarter & English LLP
Four Gateway Center
100 Mulberry Street
Newark, NJ 07102
(973) 622-4444

Jason C. Welch, Esq.
McCarter & English LLP
City Place I
185 Asylum Street
Hartford, CT 06103
(860) 275-7048

Paula M. Jones, Esq.
McCarter & English LLP
Mellon Bank Center
1735 Market Street
Suite 700
Philadelphia, PA 19103
(215) 979-3844

Louis (Lou) Marjon, Esq.
67 West North Shore Avenue
North Fort Myers, FL 33903
(239) 652-3951

H. Candace Gorman, Esq.
Elizabeth Popolis, Esq.
Law Office of H. Candace Gorman
542 S. Dearborn
Suite 1060
Chicago, IL 60605
(312) 427-2313

W. Matthew Dodge, Esq.
Federal Defender Program, Inc.
100 Peachtree Street, NW
Suite 1700
Atlanta, GA 30303
(404) 688-7530

John A. Chandler, Esq.
  (404) 853-8029
Elizabeth V. Tanis, Esq.
  (404) 853-8382
Kristin B. Wilhelm, Esq.
  (404) 853-8542
Sutherland Asbill & Brennan LLP
999 Peachtree Street, N.E.
Atlanta, Georgia 30309-3996
(404) 853-8000

Richard G. Murphy, Esq.
  (202) 383-0635
Gregory (Greg) Stuart Smith, Esq.
  (202) 383-0454
John P. Anderson, Esq.
Sutherland Asbill & Brennan LLP
Washington, D.C. 20004-2415
(202) 383-0100

Michael W. Drumke, Esq.
Ismail Alsheik, Esq.
David H. Anderson, Esq.
Schiff Hardin LLP
6600 Sears Tower
Chicago, IL 60606-6360
(312) 258-5500

Brian J. Neff, Esq.
Donald A. Klein, Esq.
Charles H. R. Peters, Esq.
Schiff Hardin LLP
623 Fifth Avenue
New York, NY 10022
(212) 753-5000

Agnieska M. Fryszman, Esq.
Reena Gambhir, Esq.
Matthew K. Handley, Esq.
Matthew Kaplan, Esq.
George Farah, Esq.
Jason M. Leviton, Esq.
Avi Garbow, Esq.
Cohen, Milstein, Hausfeld, & Toll
1100 New York Ave. NW
Suite 500
Washington, DC 20005
(202) 408-4600

Richard Coughlin, Esq.
Federal Public Defender for New Jersey

Paul M. Rashkind, Esq.
Office of the Federal Public Defender
Southern District of Florida
150 West Flagler Street
Suite 1500
Miami, FL 33130-1555
(305) 536-6900

Thomas Wilner, Esq.
Neil Koslowe, Esq.
Kristine Huskey, Esq.
Amanda Shafer, Esq.
Uzma Rasool
Shearman & Sterling LLP
801 Pennsylvania Ave., NW
Washington, DC 20004
(202) 508-8000

Julia Symon, Esq.
Clifford Chance US LLP
2001 K. Street N.W.
Washington, D.C. 20006
(202) 912-5092

Gary A. Isaac, Esq.
  (312) 701-7025
James C. Schroeder
  (312) 701-7964
David A. Grossman, Esq.
  (312) 701-8497
Lauren R. Noll, Esq.
  (312) 701-8253
Jeffrey (Jeff) M. Strauss, Esq.
  (312) 701-7324
Stephen (Steve) J. Kane, Esq.
  (312) 701-8857
Mayer, Brown, Rowe & Maw LLP
71 South Wacker Drive
Chicago, IL 60606

Adrian L. Steel, Jr., Esq.
Mayer, Brown, Rowe & Maw LLP
1909 K Street, N.W.
Washington, D.C. 20006
(202) 263-3237

Sergio F. Rodriguez, Esq.
  (312) 612-8353
Carol A. Brook, Esq.
  (312) 612-8339
William H. Theis, Esq.
  (312) 612-8335
Federal Defender Program for the
Northern District of Illinois
55 E. Monroe St.
Suite 2800
Chicago, IL 60603
(312) 612-8353

Jonathan Hafetz, Esq.
Brennan Center for Justice
at NYU School of Law
161 Avenue of the Americas
12th Floor
New York, NY 10013
(212) 998-6289

Scott S. Barker, Esq.
Anne J. Castle, Esq.
Holland & Hart LLP
555 17th Street, S.E.
Suite 3200
Denver, CO 80202
(303) 295-8229

Carol Elder Bruce, Esq.
Venable LLP
575 7th Street, N.W.
Washington, D.C. 20004-1601
(202) 344-4717

Varda Hussain, Esq.
Venable LLP
8010 Towers Crescent Drive
Vienna, VA 22182
(703) 760-1600

Judith Brown Chomsky, Esq.
Michael Poulshock, Esq.
Law Office of Judith Brown Chomsky
P.O. Box 29726
Elkins Park, PA 19027
(215) 782-8368

Michael Mone, Esq.
Michael Mone, Jr., Esq.
Esdaile, Barrett & Esdaile
75 Federal Street
Boston, MA 02110
(617) 482-0333

Mary Manning Petras, Esq.
Ketanji Brown Jackson, Esq.
A.J. Kramer, Esq.
Office of the Federal Public Defender for
the District of Columbia
625 Indiana Avenue, N.W.
Suite 550
Washington, D.C. 20004
(202) 208-7500

Marc D. Falkoff, Esq.
Robert H. Knowles, Esq.
Brent T.Starks, Esq.
Alissa R. King
Covington & Burling LLP
1330 Avenue of the Americas
New York, NY 10019
(212) 841-1166

David H. Remes, Esq.
Jason M. Knott, Esq.
Gregory M. Lipper, Esq.
Erich W. Struble
Covington & Burling LLP
1210 Pennsylvania Avenue, N.W.
Washington, D.C. 20004

Brian S. Fraser, Esq.
    (212) 530-1820
Marcellene E. Hearn, Esq.
    (212) 530-1948
Christopher W. Dysard, Esq.
    (212) 530-1908
Richards Spears Kibbe & Orbe LLP
One World Financial Center
New York, NY 10281

Paul A. Leder, Esq.
Richards Spears Kibbe & Orbe LLP
1775 Eye Street, N.W.
5th Floor, Room 510
Washington, D.C. 20006- 2401
(202) 261-2985

Maureen Rowley, Chief Federal Defender
Cristi Charpentier, Assistant Federal
    Defender
David McColgin, Assistant Federal
    Defender
Shawn Nolan, Assistant Federal Defender
Billy Nolas, Assistant Federal Defender
Mark Wilson, Assistant Federal Defender
Federal Community Defender Office
for the Eastern District of Pennsylvania
Suite 540 West
601 Walnut Street
Philadelphia, Pennsylvania  19106
(215) 928-1100

Paul R. Fortino, Esq.
Thomas R. Johnson, Esq.
Cody M. Weston, Esq.
Perkins Coie LLP
1120 N. W. Couch, 10th Fl.
Portland, OR 97209

Elizabeth Wilson, Esq.
Wilmer Cutler Pickering Hale and Dorr
LLP
1455 Pennsylvania Ave., N.W.
10th Floor
Washington, D.C. 20004
(202) 942-8466

George Daly
George Daly P.A.
139 Altondale Avenue
Charlotte, NC 28207
(704) 333-5196

Seema Ahmad
Shahzada Ahmad
Marilyn Clement
David Cole
Rhonda Copelon
Jeff Fogue
Tina M. Foster

William Goodman
Jennifer Green
Gitanjali Gutierrez
Charles Hay-Maestro
Abdeen Jabara
Shayana Kadidal
Marc James Krupanski
Maria LaHood
Jules Lobel
Rachel Meeropol
Kelly McAnnany
Barbara Olshansky
Michael Ratner
Matthew Strugar
Claire Tixieire
Steven Watt
Peter Weiss
Center for Constitutional Rights
666 Broadway, 7th Floor
New York, NY 10012
(212) 614-6464

Walter A. Lesnevich
Lesnevich & Marzano-Lesnevich
Court Plaza South
21 Main Street
Hackensack, NJ 07601
(201) 488-1161

Emmet J. Bondurant
Ronan P. Doherty
Bondurant, Mixson & Elmore, LLP
3900 One Atlantic Center
1201 W. Peachtree Street
Atlanta, GA 30309

Michael Rapkin
Law Offices of Michael Rapkin
1299 Ocean Ave., #900
Santa Monica, CA 90401
(310) 656-7880

**ATTACHMENT 4**



**NATIONAL SECURITY AGENCY**
FORT GEORGE G. MEADE, MARYLAND 20755-6000

Case No. 48144/Appeal No. 3108

31 August 2006

Mr. William Goodman
Legal Director
Center for Constitutional Rights
666 Broadway, 7th Floor
New York, NY 10012

Dear Mr. Goodman:

This replies to your letter dated 1 May 2006 appealing the National Security Agency's (NSA) denial of your request under the Freedom of Information Act (FOIA) for records concerning warrantless electronic surveillance that reference a "Requesting Party" (any of the individuals affiliated with the Center for Constitution Rights, i.e., the individuals listed in your request and in Appendix A of your request); and records concerning the development, approval, and implementation of the domestic surveillance program. Specifically, you requested the following eight items as they relate to the above:

1. All records relating to surveillance that reference any "Requesting Party;"
2. Executive orders authorizing warrantless searches;
3. Records on the policies, procedures, guidelines or practices of NSA;
4. Records relating to the legality or appropriateness of the program;
5. Department of Justice evaluations, assessments, or audits of the program;
6. Internal NSA evaluations, assessments, or audits, of the program;
7. Records containing concerns or comments by judges, national security officials, intelligence officials, or government lawyers about the program; and
8. Records reflecting budget allocations for the program.

Your original request, dated 18 January 2006, the Director of Policy's response, and your letter of appeal have been reviewed. As a result of this review, I have concluded that the Director of Policy's response regarding items #1-8 of your request was proper, and accordingly, your appeal is denied.

Regarding item #1 of your appeal, the existence or non-existence of the information you requested is exempt from disclosure pursuant to 5 U.S.C. § 552(b)(1), which protects properly classified information. I have determined that any substantive response to your request would tend to confirm or deny specific activities. The fact of the existence or non-existence of such information is a properly classified matter under

Executive Order 12958, as amended, since it meets the specific criteria for classification established in Sections 1.4(c) and (g) of the Order. When such classification is warranted, Section 3.6(a) allows an agency to respond by declining to confirm or deny the existence of responsive records.

Further, the fact of the existence or non-existence of the records requested is also exempt pursuant to 5 U.S.C. § 552(b)(3), which permits withholding of matters specifically exempted from disclosure by statute. The applicable statutory provisions with regard to the existence or non-existence of the records requested are: Section 6 of the National Security Act of 1959 (Public Law 86-36, 50 U.S.C. § 402 note), which provides that no law shall be construed to require the disclosure of the organization, personnel, functions, or activities of the National Security Agency; 50 U.S.C. § 403-1(i)(1), which requires the protection of intelligence sources and methods from unauthorized disclosure; and 18 U.S.C. § 798, which prohibits the release of information concerning classified communications intelligence activities except to those persons authorized to receive such information.

Regardless of whether NSA has records concerning warrantless electronic surveillance that reference a "Requesting Party" (any of the individuals affiliated with the Center for Constitution Rights, i.e., the individuals listed in your request); and records concerning the development, approval, and implementation of the domestic surveillance program, NSA can neither confirm nor deny alleged activities or targets. To do otherwise when challenged under the FOIA would result in the exposure of intelligence information, sources, and methods and would severely undermine surveillance activities in general. For example, if NSA denied allegations about intelligence activities or targets in cases where such allegations were false (e.g., we told one FOIA requestor that we had no records), but remained silent in cases where the allegations were accurate, it would tend to reveal that the individuals in the latter cases were targets. Any further elaboration concerning these matters would reveal information that is currently and properly classified under the Executive Order.

Regarding items #2 and #5 of your appeal, I am confident that NSA has no responsive records.

Regarding items #3-4 and #6-8, I have concluded that other than the two documents that were provided to you, there are no reasonably segregable portions of the remaining responsive documents that can be released. Accordingly, these documents were properly withheld in their entirety as detailed below.

The withheld information meets the standards for classification set forth in subparagraph (a) of Section 1.1 of Executive Order 12958, as amended. In addition, the information meets the specific criteria for classification established in Section 1.4(c) and (g) of the Order. The information remains currently and properly classified TOP

SECRET in accordance with the criteria established in Section 1.2 of Executive Order 12958, as amended. The documents are classified because their exposure could reasonably be expected to cause exceptionally grave damage to national security. Accordingly, the documents are exempt from disclosure pursuant to 5 U.S.C. § 552(b)(1).

The same information is also protected against disclosure by 5 U.S.C. § 522(b)(3) which provides that the FOIA does not apply to matters that are specifically exempted from disclosure by statute. The applicable statutory provisions with regard to the information at issue are: 18 U.S.C. § 798, which prohibits the disclosure of classified communications intelligence information to unauthorized persons; 50 U.S.C. § 403-1(i)(1), which requires the protection of intelligence sources and methods from unauthorized disclosure; and Section 6 of the NSA Act of 1959 (50 U.S.C. § 402 note), which authorizes the Agency to withhold information pertaining to NSA's activities, organization, or the identities of its personnel notwithstanding the provisions of any other law.

The remaining information that the Agency withheld is exempt from disclosure pursuant to 5 U.S.C. § 552(b)(5). This exemption applies to inter-agency and intra-agency memoranda or letters, which would not be available by law to a party in litigation with the agency, protecting information that is normally privileged in the civil discovery context, such as information that is part of a pre-decisional deliberative process, and/or attorney-client privileged information, and/or attorney-work product. In general, the attorney-client privilege protects communications between an attorney and his client. The attorney-work product privilege protects documents and other memoranda prepared by an attorney in contemplation of litigation. The deliberative process is also applicable. Further, the documents in question contain pre-decisional/deliberative information, the release of which could chill the decision making process in the Agency. The logic behind the deliberative process privilege is that, by maintaining the confidentiality of the give-and-take that occurs among agency members in the formulation of decisions, the deliberative process privilege encourages frank and open discussions of ideas, and hence, improves the decision making process. The whole process would be harmed if participants could not engage in internal debates without fear of public scrutiny.

Regarding item #4, the Office of Policy referred the responsive document to the Department of Justice for a final release determination and direct response to your organization.

Your request for a Mandatory Declassification Review (MDR) of items #1-8 is denied for the following reason. This Agency conducted a line-by-line classification review of the responsive records under the provisions of the FOIA, and determined that all but two records you sought were currently and properly classified. The same type of

Case No. 48144/Appeal No. 3108

review would have been done under the MDR process. However, pursuant to Section 3.5(3) of Executive Order 12958, as amended, information that has already been reviewed for classification purposes will not be subject to a MDR for 2 years.

Since your appeal is denied, you are hereby advised of your right pursuant to 5 U.S.C. § 552(a)(4)(B) to seek judicial review of my decision in the United States District Court, in the district in which you reside, in which you have your principal place of business, in which the Agency records are situated (U.S. District Court of Maryland), or in the District of Columbia.

Sincerely,

JOHN C. INGLIS
Freedom of Information Act/Privacy Act
Appeals Authority