# UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

|  |  |  |
|---|---|---|
| THOMAS WILNER, et al., | ) | |
| Plaintiffs, | ) ) | Civil No. 07-3883 (DLC) |
| v. | ) ) ) | |
| NATIONAL SECURITY AGENCY and UNITED STATES DEPARTMENT OF JUSTICE, | ) ) ) | |
| Defendants | ) ) | |

## DECLARATION OF MELANIE ANN PUSTAY

I, Melanie Ann Pustay, declare the following to be true and correct:

1) I am the Director of the Office of Information and Privacy (OIP), United States Department of Justice. In this capacity, I am responsible for overseeing the actions of the Initial Request (IR) Staff. The IR Staff is responsible for searching for and reviewing records within OIP and the senior leadership offices of the Department of Justice, including the Offices of the Attorney General, Deputy Attorney General, Legislative Affairs, Public Affairs, and Legal Policy in response to requests made under the Freedom of Information Act (FOIA), 5 U.S.C. § 552 (2006), amended by OPEN Government Act of 2007, Pub. L. No. 110-175, 121 Stat. 2524. The IR Staff determines whether records responsive to access requests exist and, if so, whether they can be released in accordance with the FOIA. In processing such requests, the IR Staff consults with personnel in the senior leadership offices and, when appropriate, with other components within the Department of Justice as well as with other Executive Branch agencies.

2) I make the statements herein on the basis of personal knowledge, as well as on

-2-

information acquired by me in the course of performing my official duties.

3) By letter dated January 18, 2006, William Goodman submitted a request on behalf of plaintiffs, attorneys affiliated with the Center for Constitutional Rights (CCR), to the Department of Justice, FOIA/Privacy Act Mail Referral Unit, Justice Management Division (JMD), which routed plaintiffs' request to OIP, among others, for processing. Plaintiffs' request sought various records pertaining to the "warrantless electronic surveillance or warrantless physical searches of any person located within the United States" since September 11, 2001. OIP received plaintiffs' request on July 21, 2006. (A copy of plaintiffs' initial request letter is attached hereto as Exhibit A.)

4) By letter dated July 21, 2006, OIP acknowledged receipt of plaintiffs' request on behalf of the Offices of the Attorney General and Deputy Attorney General. (A copy of OIP's acknowledgment letter to plaintiffs is attached hereto as Exhibit B.)

5) In response to plaintiffs' FOIA request, OIP initiated records searches in the Offices of the Attorney General and Deputy Attorney General and in the Departmental Executive Secretariat, which is the official records repository for the Offices of the Attorney General and Deputy Attorney General. As a result of its search efforts, both classified and unclassified records responsive to plaintiffs' FOIA request were located. Because the potentially responsive classified records in the Office of the Deputy Attorney General were subject to the special access and handling requirements reserved for Sensitive Compartmented Information, or "SCI," OIP was advised that those documents would need to be reviewed by a Department attorney with the

-3-

appropriate authorization to review the highly classified material.[1]

## OIP's Responses to the Plaintiffs' Initial Request

6) By letter dated October 16, 2006, OIP provided an interim response to plaintiffs. In this response, OIP notified plaintiffs that our records search was completed in the Office of the Attorney General and provided plaintiffs with eighty-five pages without excision, as well as two pages with excisions made pursuant to Exemption 6 of the FOIA, 5 U.S.C. § 552(b)(6), which pertains to information the release of which would constitute a clearly unwarranted invasion of the personal privacy of a third party.[2] Additionally, eighty-four pages were withheld in full pursuant to the deliberative process, attorney work-product, and presidential communications privileges of Exemption 5 of the FOIA, 5 U.S.C. § 552(b)(5). Another one-page e-mail was withheld in full on behalf of the Office of Intelligence Policy and Review pursuant to Exemption 5. OIP also advised plaintiffs that electronic mail (e-mail) messages are counted and processed as individual documents. Finally, OIP stated that we located, but did not provide to plaintiffs, one document that is a Congressional record and not an "agency record" subject to the FOIA.[3] (A

---

[1] I have been advised by the Department attorney who reviewed the SCI material that she conducted a search in the Office of the Deputy Attorney General for classified records responsive to plaintiffs' request. The potentially responsive documents were located in a designated, secure file cabinet. I was further advised by the attorney who conducted the search that all of the documents located that were responsive to this request were referred elsewhere and will be addressed by other components' or agencies' declarations.

[2] Because plaintiffs explicitly declined to challenge OIP's partial withholding of two records pursuant to Exemption 6 in their December 14, 2006 administrative appeal, my declaration will not address those withholdings.

[3] This document is a nineteen-page memorandum analyzing the legality of the Terrorist Surveillance Program that was written by a Congressional staffer and forwarded to an agency official by that staffer. The Congressional staffer explicitly retained control over the document at the time that it was transmitted.

-4-

copy of OIP's interim response to plaintiffs is attached hereto as Exhibit C.)

7) By letter dated December 14, 2006, plaintiffs administratively appealed the decision of the Initial Request Staff of OIP to withhold documents pursuant to Exemption 5 of the FOIA, as well as its "failure to provide the requested records within the requisite statutory time limit." (A copy of plaintiffs' administrative appeal letter (without attachments) is attached hereto as Exhibit D.)

8) By letter dated February 5, 2007, the Associate Director of OIP, who is responsible for adjudicating administrative appeals, advised plaintiff that she was affirming the IR Staff's decision to withhold certain information pursuant to Exemption 5. With regard to plaintiffs' appeal from the failure of the IR Staff to provide a determination within the statutory time limit, the Associate Director advised plaintiffs that no action could be taken at the administrative appeal stage as no adverse determination had yet been made by the IR Staff. (A copy of the Associate Director of OIP's letter to plaintiffs is attached hereto as Exhibit E.)

9) By letter dated August 1, 2007, OIP provided a second interim response to plaintiffs. In this response, OIP notified plaintiffs that its records searches were completed in the Office of the Deputy Attorney General and in the Departmental Executive Secretariat.[4] OIP released forty-seven pages without excision. Fifteen pages were withheld in full pursuant to the deliberative process and attorney work product privileges of Exemption 5. In addition, OIP advised plaintiffs that certain duplicative and publicly-available material would not be processed. OIP also advised plaintiffs that certain unclassified documents were referred to other Department

---

[4] OIP also advised plaintiff that classified records had been located. As mentioned previously, those records were referred to other components or agencies for handling.

-5-

components.[5]  (A copy of OIP's second interim response letter is attached hereto as Exhibit F.)

10)  By letter dated October 31, 2007, OIP provided a supplemental response to plaintiffs' request, providing plaintiffs with thirty-seven pages of records that were previously withheld in full in our October 16, 2006 and August 1, 2007 responses.  As plaintiff was advised, several of those records were ordered to be released in regard to another FOIA request subject to litigation. Accordingly, we determined it was appropriate to release the same documents to plaintiffs.  (A copy of OIP's supplemental response to plaintiffs is attached hereto as Exhibit G.)

11)  By letter dated December 27, 2007, OIP made a final response to plaintiffs.  In this response, OIP released 297 pages without excision.  Plaintiffs were again informed that duplicative material was not processed.  Furthermore, we advised plaintiffs that we referred two pages to the Office of the Inspector General for processing and direct response.  Finally, we informed plaintiffs that five classified OLC documents, maintained in the Office of the Attorney General had been referred to OLC for processing.  (A copy of OIP's final response to plaintiffs is attached hereto as Exhibit H.)

12)  By letter dated April 24, 2008, OIP provided a supplemental response to plaintiffs. In this response, OIP released one document, totaling four pages, which was originally withheld in full pursuant to Exemption 5 in our August 1, 2007 response.  We determined, upon further review of the document, that it was appropriate for release without excision.  Also, OIP advised plaintiffs that, because three additional pages previously withheld in the August 1, 2007 response were of primary interest to OLC, those pages had been referred to OLC.  (A copy of OIP's

_____

[5] One page was referred to the Civil Division, three pages to the Criminal Division, and 252 pages to the Office of Legal Counsel (OLC).

-6-

supplemental response to plaintiffs is attached hereto as Exhibit I.)

**Processing of Referrals from the Office of Legal Counsel**

13)  By memoranda dated November 9, 2007, February 29, 2008, and March 13, 2008,

OLC referred three batches of documents to OIP for processing on behalf of the Offices of the

Attorney General, Deputy Attorney General, Legislative Affairs, Public Affairs, and Legal Policy.

These referrals were received by OIP on November 16, 2007, March 5, 2008, and March 17, 2008,

respectively.[6]

14)  By letter dated February 29, 2008, OIP provided a response to plaintiff with respect to

the documents received from OLC on November 16, 2007.  OIP advised plaintiffs that after review

of the referred documents we had determined that twenty-four pages of material were responsive to

their request.  OIP released one page without excision and withheld eleven pages in full pursuant to

the deliberative process and attorney work-product privileges of Exemption 5.  We also advised

plaintiffs that the remaining documents were either duplicative of material which had already been

processed, or were publicly available on the Department's electronic reading room, and therefore

were not processed.  (A copy of OIP's response letter to plaintiffs is attached hereto as Exhibit J.)

15)  By letter dated April 25, 2008, OIP provided a response to plaintiff with respect to the

documents received from OLC on March 5, 2008, and March 17, 2008.  OIP advised plaintiffs that

after review of the referred documents we had determined that fifty-nine pages of material were

responsive to their request.  OIP released thirty pages without excision to plaintiffs, and withheld

in full twenty-three pages pursuant to the deliberative process and attorney work-product privileges

of Exemption 5.  In addition, plaintiffs were advised that one document was publicly available on

---

[6]The documents forwarded in the second and third referrals were processed jointly.

-7-

the Department's electronic reading room and therefore was not processed. Finally, plaintiff was

advised that two pages had been referred to OLC for processing and direct response. (A copy of

OIP's response letter to plaintiffs is attached hereto as Exhibit K.)

## Explanation of Withheld Material

16) Attached to this declaration is a Vaughn Index containing a detailed description of the

documents withheld in response to plaintiffs' request. Because certain records are similar to one

another, we have categorized them into twenty distinct groups. The Vaughn Index describes the

responsive documents contained in each group, including such information as the date and the

general content of the material, provides the number of pages for each document in each group,

and identifies the privileges – deliberative process, attorney work-product, and presidential

communications – which protect each group from disclosure under Exemption 5 of the FOIA. E-

mail messages have been counted and processed as individual documents and duplicative material

processed only once. Finally, the documents in Groups 1, 2, 5, and 7 were reviewed in camera as

ordered in The New York Times v. DOD, and the application of Exemption 5 to those documents

was upheld. It is my understanding that plaintiffs are not challenging the withholding of these

documents; therefore, they will not be further discussed in this declaration.[7]

## FOIA Exemption 5

17) Exemption 5 of the FOIA protects certain inter- and intra- agency communications

protected by the deliberative process, attorney work-product and presidential communications

privileges. All of the records located in the Offices of the Attorney General and Deputy Attorney

---

[7]The document contained in Group 6 that OIP withheld from plaintiff in our August 1,
2007 response was subsequently released to plaintiff by letter dated April 24, 2008. Accordingly,
Group 6 is no longer at issue in this case.

-8-

General, or referred by OLC for processing on behalf of the Offices of the Attorney General, Deputy Attorney General, Legislative Affairs, Public Affairs, and Legal Policy, and withheld in full from plaintiffs are inter- and intra- agency communications exchanged within the Executive Branch. In one case, the withheld document consists of an e-mail with an attached draft document sent by the White House Counsel's Office to the Department; all other documents are internal to the Department of Justice.

18) All of these records are protected by the deliberative process privilege of Exemption 5 of the FOIA. The two documents in Group 3, one document in Group 9, and three documents in Group 14, are also protected by the attorney work-product privilege, and the two documents in Group 4 are also protected by the presidential communications privilege. The withheld records fall into three overall, but inter-related categories: 1) draft documents, 2) e-mail discussions about the content of drafts, and 3) talking points and the formulation of responses to possible questions.

<u>Deliberative Process Privilege</u>

19) As mentioned above, all eighty-nine pages in the nineteen groups of withheld records are protected in full by the deliberative process privilege, which is intended to protect the decisionmaking processes of government agencies from public scrutiny in order to enhance the quality of agency decisions.

20) A significant part of the deliberative process within the Department of Justice involves the creation of draft documents which are then reviewed, edited, and modified before they become final. The draft documents in Groups 3, 4, 8, 13, 14, 15, 16, 17, 18, 19, and 20 consist of, respectively, draft guidance from Assistant United States Attorneys, a draft presidential radio address, a draft answer to a Congressional inquiry, a draft statement prepared for the Attorney

-9-

General, draft statement of the Department of Justice on a litigation matter, a draft op-ed article by the Attorney General, a draft statement prepared for the Attorney General's Congressional testimony, draft responses to press inquiries, draft talking points, and a draft letter to a member of Congress. By their very nature as drafts, these documents are predecisional, preliminary versions of what will later become final documents. The process by which a draft evolves into a final document is itself a deliberative process. As a result, I have determined, after examining these documents, that there is no reasonably segregable, non-exempt information that can be disclosed from the drafts.

21) In addition to the draft documents themselves, e-mail messages pertaining to the preparation of documents were protected. The e-mail message at Group 8 contains a discussion and legal analysis of a proposed draft answer to a question from Congress regarding the Terrorist Surveillance Program. In the e-mail message at Group 9, we also protected the legal analysis and reasoning for the justification of the Terrorist Surveillance Program in light of ongoing and anticipated litigation. The e-mail messages at Group 10 consist of a discussion and solicitation of input regarding the preparation of a suggested draft statement that would potentially be used to respond to inquiries in reaction to the Congressional Research Service Report. At Group 11 are e-mail messages that forward and evaluate comments and proposed revisions to, and include a back and forth analysis of, a speech to be given by the Attorney General. Finally, at Group 12, we protected a discussion of options for the content of the Attorney General's upcoming remarks at a press event.

22) All of these documents, the drafts themselves, and the discussions reflecting the drafting process, are part of the exchange of ideas and suggestions that accompanies all decision-

-10-

making and reflect preliminary assessments by attorneys and other staff about issues in which they have been asked to make recommendations and give advice. Agency officials routinely e-mail each other, sharing language, giving and responding to suggestions and proposed language as they draft documents, discuss possible options, or respond to inquiries. E-mail operates as a way for individual Department of Justice employees to communicate with each other about current matters without having to leave their offices. These "discussions," which get memorialized online, are part of the exchange of ideas and suggestions that accompanies all decision-making and typically reflect staff members' very preliminary assessments about issues on which they may be asked to make recommendations. Indeed, such online discussions most resemble conversations between staff members which are part of the give and take of agency deliberations. Disclosure of such e-mails would severely hamper the efficient day-to-day workings of the Department as individuals would no longer feel free to discuss their ideas and advice on the content of documents in e-mail messages. If e-mail messages with such deliberative content as these are routinely released to the public, Department employees will be much more circumspect in their online discussions with each other. This lack of candor will seriously impair the Department's ability to foster the forthright, internal discussions necessary for efficient and proper decisionmaking. Certainly disclosure of such preliminary assessments and opinions would make officials commenting on drafts much more circumspect in providing their views. Agency decisionmaking is at its best when employees are able to focus on the substance of their views and not on whether their views may at some point be made publicly available. We carefully reviewed these e-mail messages and determined that they contain no reasonably segregable, non-exempt information.

     23) The final, overall category of withheld documents, located in Groups 18 and 19, reflect

-11-

yet another part of the deliberative process -- the creation of talking points -- to aid in briefing

officials and preparing them to answer inquiries.  Although the documents in both of these groups

were protected as draft documents, discussed above, the fact that they constitute talking points

reflects an additional ground for protection under the deliberative process privilege.  In Group 18

we withheld recommended draft talking points prepared by the Director of the Office of Public

Affairs and sent for review and comment to officials in OLC, the National Security Division, as

well as the Office of the Attorney General, in preparation for responding to potential press

inquiries.  The draft talking points in Group 19 were compiled and coordinated by officials in the

Offices of the Attorney General and Legal Counsel in anticipation of possible questions regarding

the Attorney General's Congressional testimony.

24) The documents in these two groups were prepared by officials within the Department to

assist the Attorney General and senior Administration officials in addressing various legal points

about the Terrorist Surveillance Program.  The drafters of these talking points attempt to succinctly

summarize particular issues and provide key background information in a concise, summary format

for ease of understanding and presentation.  In doing so, the authors also attempt to anticipate

questions that senior Administration officials, including the Attorney General, may encounter

about the program to ensure that they are prepared to respond to those questions.  In doing so, the

authors necessarily review the universe of facts and possible issues arising on the topic, and then

select those facts and those issues that they deem most appropriate for inclusion in the talking

points.  The Attorney General and senior agency officials rely heavily on the creation of such

talking points so that they can be fully briefed on the substance of the many legal issues being

worked on in the Department everyday.  The disclosure of the Terrorist Surveillance Program and

-12-

the questions that were then raised concerning it, readily lent itself to the creation of talking points to be used by the Attorney General and other Department officials in order to carry out their responsibilities. The employees preparing such documents must feel free to create the most thorough and candid documents possible so that decisionmakers are well-informed. As already mentioned with regard to these draft documents, I carefully reviewed them and determined that there was no reasonably segregable non-exempt information that could be disclosed.

25) All of the documents that have been withheld pursuant to the deliberative process privilege are intrinsically a part of the deliberative processes of the Department. In the course of drafting documents and advising senior officials, attorneys and staff communicate with each other, seeking information, providing advice, and offering suggestions. The documents at issue consist of just such communications.

26) These documents are part of the exchange of ideas and suggestions that accompanies all decisionmaking and typically reflect staff members' preliminary assessments about the issue on which they have been asked to make recommendations. Here, the draft documents, including talking points, and the internal agency e-mail discussions, are part of the exchange of ideas among attorneys of the Department who were analyzing the legal arguments regarding the Terrorist Surveillance Program. Throughout the process, advice is being requested, analysis is being conducted, and recommendations are being given.

27) As discussed above in connection with each category of withheld records, we carefully reviewed each of the documents and determined that there was no reasonably segregable, non-exempt information that could be disclosed.

<u>Attorney Work-Product Privilege</u>

-13-

28)  In addition to being protected by the deliberative process privilege, the documents in

Groups 3, 9, and 14 are also protected by the attorney work-product privilege.

29)  Both of the documents in Group 3 were written by Assistant United States Attorneys in

anticipation of litigation.  The first document gives an analysis of the early legislative history and

judicial responses to foreign communications acquisition and watch listing.  This document was

written, with past litigation pertaining to these issues in mind, in anticipation of any future

litigation pertaining specifically to the Terrorist Surveillance Program.  The second document was

written specifically to provide guidance to litigators responding to motions made in criminal

litigation pertaining to the Terrorist Surveillance Program.  In the e-mail at Group 9, the author

discusses and analyzes a legal point, in connection with both ongoing and anticipated litigation,

which is put forth to the First Assistant United States Attorney for the Eastern District of Virginia

for further consideration.  Additionally, in the three e-mails in Group 14, the authors forward draft

statements concerning litigation matters to the Deputy Assistant Attorney General of the Civil

Division, which handles litigation on behalf of the Department.  In the first two of these e-mails,

the authors forward a draft statement regarding a litigation matter and solicit the Deputy Assistant

Attorney General of the Civil Division's opinion on the adequacy of the statement and inquire

about the status of an aspect of the litigation.  In the third e-mail, the author submits proposed

language for another draft statement regarding a development in litigation to the Deputy Assistant

Attorney General of the Civil Division for consideration.

30)  All of the e-mails in Groups 3, 9, and 14 were either authored by or sent to Department

litigators who are tasked with representing the government in the courts.  Disclosure of these

documents would reveal the attorneys' mental impressions, interpretation of the law, and analysis

-14-

of the legal strategy that is available to the government in defending litigation on this issue. Such disclosure would severely hamper the adversary process as attorneys would no longer feel free to discuss litigation in this fashion or to memorialize concerns or issues arising in connection with or in anticipation of potential litigation for fear that the information might be disclosed to their adversaries.

31) Because the documents were prepared by or under the direction of an attorney in anticipation of litigation, they are protected in their entirety by the attorney work-product privilege. As such I have determined that they are exempt in full and contain no reasonably segregable, nonexempt information.

### Presidential Communications Privilege

32) In addition to being protected by the deliberative process privilege, the two documents in Group 4 are also protected by the presidential communications privilege. These documents consist of an e-mail from an attorney in the White House Counsel's Office seeking the Attorney General's comments on, and forwarding a draft of, the President's December 2005 radio address. In so doing, the White House attorney is seeking the views of the Attorney General on the proposed text of the radio address so that the President can have the benefit of the Attorney General's advise on its content. This e-mail was authored by an adviser to the President who was responsible for formulating advice to the President regarding his radio address. The underlying purposes of the presidential communications privilege are the same as those of the deliberative process privilege, but they take on a distinct significance at the level of presidential decisionmaking. Advisers must feel free to give the most candid and thorough advice possible in order for the President's decisionmaking process to be effective. The President was the ultimate

-15-

decisionmaker on the content of his radio address regarding the Terrorist Surveillance Program. He, and his advisors must be free to solicit the advice of the Attorney General on documents they are preparing without fear of those communications being disclosed.

33)  Because this communication originated with a presidential adviser and solicited advice regarding a presidential decision, the e-mail and accompanying draft are protected in full by the presidential communications privilege.  As such I have determined that they are exempt in full and contain no reasonably segregable, non-exempt information.

34)  I declare under penalty of perjury that the foregoing is true and correct.




_Melanie Ann Pustay_
MELANIE ANN PUSTAY

Executed this 30 day of April, 2008.

Wilner, et al. v. National Security Agency, et al.

Civil Action No. 07-3883 (DLC)
U.S. District Court
Southern District of New York

Vaughn Index

Description of the records of the Offices of the Attorney General and Deputy Attorney General
protected in full by FOIA Exemption 5.  This index also describes documents protected in full by
Exemption 5 that were referred to OIP by the Office of Legal Counsel for processing and direct
response on behalf of the Offices of the Attorney General, Deputy Attorney General, Legislative
Affairs, Public Affairs, and Legal Policy.  The eighty-nine pages of withheld records are divided
into nineteen groups and are described below.

| Group Number | Date | Description | Privilege | Pages |
|---|---|---|---|---|
| 1 | Five drafts are undated, two drafts are dated 12/21/05 | Seven different draft versions of the December 22, 2005 letter to Congress from the Assistant Attorney General of OLA | Deliberative Process | 26 |
| | 1/18/06 | One draft version of the letter from the Attorney General to Congress forwarding the White Paper. | | 1 |
| 2 | 12/19/05 | One electronic mail (e-mail) message from the Deputy Chief of Staff/Counselor to the AG to Acting Assistant Attorney General of OLC (with a carbon copy to an OLC attorney).  The e-mail message discusses and evaluates the content of draft talking points. | Deliberative Process | 1 |
| 3 | Undated | One unsigned, undated document written by an attorney of the USAO, EDVA pertaining to foreign communications acquisition and watch listing. | Deliberative Process<br><br>Attorney Work-Product | 9 |
| | Undated | One undated draft document from an Assistant United States Attorney which provides guidance for responding to motions made in criminal litigation. | | 1 |

| Group Number | Date | Description | Privilege | Pages |
|---|---|---|---|---|
| 4 | 12/17/05 | One e-mail message, with one attachment, from a White House attorney to the Assistant Attorney General of OLP and the Chief of Staff, OAG (with a carbon copy to another White House attorney). This e-mail message forwards a draft radio address, which is also contained in the text of the e-mail message. | Presidential Communications<br><br>Deliberative Process | 6 |
| 5 | 1/14/06 | One e-mail message from the Deputy Chief of Staff/Counselor to the AG to the Acting Assistant Attorney General of OLC (with a carbon copy to an OLC attorney). This e-mail message discusses the drafting of the White Paper. | Deliberative Process<br><br>Attorney Work-Product | 1 |
|  | 1/13/06 | One e-mail message from the Deputy Chief of Staff/Counselor to the AG to the Chief of Staff, OAG. This e-mail message discusses the drafting of the White Paper. |  | 1 |
|  | 1/18/06 | Eight e-mail messages which were sent between the Deputy Chief of Staff/Counselor to the Attorney General, the Acting Assistant Attorney General for OLC and OLC and OAG staff which discuss the drafting of the White Paper. |  | 6 |
| 6[1] | 1/26/06 | One unsigned draft document which compiles excerpts of Congressional inquiries. Document is marked "Draft-Not Approved Attorney Work Product." | Deliberative Process | 4 |

---

[1]This document was released to plaintiff by letter dated April 24, 2008. Accordingly, Group 6 is no longer considered to be withheld and is not addressed in the declaration.

| Group Number | Date | Description | Privilege | Pages |
|---|---|---|---|---|
| 7 | 2/14/06 | Five e-mail messages discussing a draft answer to a question posed by a member of Congress.  The discussion includes back and forth analyses of the draft, including assessments of others' comments and suggested revisions. | Deliberative Process | 2 |
| 8 | 1/30/06 | One e-mail message from the Deputy Chief of Staff/Counselor to the AG to OAG staff discussing a draft response to a question posed by a member of Congress in connection with an upcoming hearing on surveillance. | Deliberative Process | 1 |

**Description of the documents referred by the Office of Legal Counsel that are protected in full by FOIA Exemption 5.[2]**

| Group Number | Date | Description | Privilege | Pages |
|---|---|---|---|---|
| 9 | 12/30/05 | One e-mail message from the Chief of Staff to the Deputy Attorney General to First Assistant United States Attorney EDVA and Chief of the Counterterrorism Division, CRM.  This e-mail discusses a legal point for further consideration in connection with ongoing and anticipated litigation. | Deliberative Process<br><br>Attorney Work-Product | 1 |

---

[2]These documents were referred by OLC in three batches.  The first referral was dated November 9, 2007 and was received by OIP on November 16, 2007; the second referral was dated February 29, 2008 and was received by OIP on March 5, 2008; and the third referral was dated March 13, 2008 and was received by OIP on March 17, 2008.

| Group Number | Date | Description | Privilege | Pages |
|---|---|---|---|---|
| 10 | 1/6/06 | Two e-mail messages, one from the Deputy Director of Public Affairs and the second from the Director of Public Affairs, to the Assistant Attorney General of OLC and others in PAO, OLA, and OAG. These e-mails discuss and solicit input on possible responses to the Congressional Research Service report and contain suggested draft language. | Deliberative Process | 2 |
| 11 | 1/20/06 | Four e-mail messages among the Assistant Attorney General and Deputy Assistant Attorney General of OLP and the Deputy Chief of Staff and Counselor to the AG, and OAG, OLP, OLC, OLA and PAO staff. The e-mails forward and evaluate the comments and recommendations of various staff members regarding the content of a speech to be given by the AG, and include back and forth analysis of potential revisions to the speech. | Deliberative Process | 4 |
| 12 | 12/20/05 | One e-mail message from the Deputy Chief of Staff/Counselor to the AG to the Director of Public Affairs and other OAG, PAO , OLP, and OLC staff.  The e-mail suggests and discusses options for the content of the AG's upcoming remarks at a press briefing. | Deliberative Process | 1 |

| Group Number | Date | Description | Privilege | Pages |
|---|---|---|---|---|
| 13 | 1/19/06 | One e-mail message, with one attachment, from the Deputy Chief of Staff/Counselor to the AG to the Director of OIPR, Assistant Attorney General and Deputy Assistant Attorneys General of OLC. The e-mail discusses and solicits input on, and attaches, a draft statement prepared for purposes of advising the AG and as a potential response to anticipated questions. | Deliberative Process | 3 |
| 14 | 8/17/06 | Two e-mail messages from the Deputy Director of Public Affairs to the Deputy Assistant Attorney General of CIV, Deputy Chief of Staff/Counselor to the AG, the Solicitor General, Principal Deputy Solicitor General, Director of Public Affairs and Deputy Assistant Attorneys General of OLC forwarding a draft statement from the Department of Justice regarding a litigation matter. One e-mail solicits the Deputy Assistant Attorney General of CIV's opinion on the adequacy of the attached draft statement, while the other e-mail enquires about the status of an aspect of the litigation.<br><br>One e-mail message from the Deputy Chief of Staff/Counselor to the AG to a Deputy Assistant Attorney General of OLC, with a carbon copy the Deputy Assistant Attorney General of CIV, the Solicitor General, and another Deputy Assistant Attorney General of OLC. This e-mail message submits proposed language for a draft statement regarding and explaining a development in litigation. | Deliberative Process<br><br>Attorney Work-Product | 4 |

| Group Number | Date | Description | Privilege | Pages |
|---|---|---|---|---|
| 15 | Undated | One draft op-ed by the AG concerning the TSP, with extensive mark-ups, strike-throughs, and suggested revisions. | Deliberative Process | 3 |
| 16 | 1/17/07 | One e-mail message from PAO staff to the Director of Public Affairs (with a carbon copy to OAG, OLA, and OLC officials) forwarding a draft statement for the AG's upcoming Congressional testimony, and including proposed language for inclusion in the statement. | Deliberative Process | 10 |
| 17 | 5/16/07 | Two e-mail messages from the Spokesman of the NSD to the Assistant Attorneys General of OLA and OLC, Director of Public Affairs, and officials of NSD and OAG, forwarding two versions of a proposed statement to be used in responding to press inquiries from the news media. One e-mail, which forwards the latest version indicates that the draft statement has not yet been given final approval. | Deliberative Process | 2 |
| 18 | 6/6/07 | One e-mail message from the Director of Public Affairs to various attorneys of NSD, OAG, OLA, and OLC forwarding draft talking points recommended to be used as a response to potential inquiries by reporters, with commentary. | Deliberative Process | 1 |
| 19 | Undated | Draft talking points regarding the AG's testimony and responses to comments stemming from the testimony. | Deliberative Process | 1 |

| Group Number | Date | Description | Privilege | Pages |
|--------------|------|-------------|-----------|-------|
| 20 | 8/1/07 | Unsigned draft letter to a member of Congress in response to an invitation to a Congressional hearing. Document is marked "Close Hold Draft." | Deliberative Process | 2 |

Legend:
AG - Attorney General
CIV - Civil Division
CRM - Criminal Division
NSD - National Security Division
OAG - Office of the Attorney General
OIPR - Office of Intelligence Policy and Review
OLA - Office of Legislative Affairs
OLC - Office of Legal Counsel
OLP - Office of Legal Policy
PAO - Office of Public Affairs
USAO, EDVA - United States Attorney's Office, Eastern District of Virginia

# EXHIBIT A

**U.S. Department of Justice**
Justice Management Division

**Freedom of Information Act/Privacy Act Referral/Action Slip**

APM

Clerk:  M. Barnes

Date:  JUL 1 7 2006

Organization:  JMD/FASS

Building & Room:  LOC, 113

| To | From | | To | From |
|---|---|---|---|---|
| ☑ | ☐ | Office of Information & Privacy | ☐ | ☐ | Immigration Review, Executive Office for |
| | | Office of the Attorney General | ☐ | ☐ | Inspector General, Office of |
| | | Office of the Deputy Attorney General | ☐ | ☐ | Intelligence Policy and Review, Office of |
| | | | ☐ | ☐ | INTERPOL, U.S. National Central Bureau |
| | | | ☐ | ☐ | Justice Management Division Staff: _____ |
| ☐ | ☐ | Antitrust Division | ☐ | ☐ | Justice Programs, Office of |
| ☐ | ☐ | Bureau of Alcohol, Tobacco, Firearms and Explosives | | | |
| ☐ | ☐ | Civil Division | ☑ | ☐ | Legal Counsel, Office of |
| ☐ | ☐ | Civil Rights Division | ☐ | ☐ | National Drug Intelligence Center |
| ☐ | ☐ | Community Relations Service | ☐ | ☐ | Pardon Attorney, Office of |
| ☐ | ☐ | Community Oriented Policing Services | ☐ | ☐ | Professional Responsibility Advisory Office |
| ☑ | ☐ | Criminal Division | ☐ | ☐ | Professional Responsibility, Office of |
| ☐ | ☐ | Dispute Resolution, Office of | ☑ | ☐ | Solicitor General, Office of |
| ☐ | ☐ | Drug Enforcement Administration | ☐ | ☐ | Tax Division |
| ☐ | ☐ | Environment & Natural Resources Division | ☐ | ☐ | U.S. Attorneys, Executive Office for |
| ☐ | ☐ | Federal Bureau of Prisons | ☐ | ☐ | U.S. Marshals Service |
| ☑ | ☐ | Federal Bureau of Investigation | ☐ | ☐ | U.S. Parole Commission |
| ☐ | ☐ | Federal Detention Trustee, Office of | ☐ | ☐ | U.S. Trustees, Executive Office for |
| ☐ | ☐ | Foreign Claims Settlement Commission | ☐ | ☐ | _____ |

OFFICE OF INFORMATION
AND PRIVACY

JUL 2 1 2006

RECEIVED

Requester:  William Goodman, Esq.

Ref: _____

Date of Request:  January 18, 2006

Received By:  FOIA/PA Mail Referral Unit    Type of Request:  FOI/PA

Remarks:  Requester advised of this referral.

FORM JMD-481
Rev. Mar. 2004

*FOIA*

January 18, 2006

**VIA OVERNIGHT DELIVERY**

Department of Justice
Patricia D. Harris, Management Analyst
FOIA/PA Mail Referral Unit
Department of Justice
Room 1070, National Place Building
Washington, DC 20530-0001

Re: **Freedom of Information Act Request (Expedited Processing Requested)**

Dear Ms. Harris:

This letter constitutes a Request for records pursuant to the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, *et seq.*, and corresponding regulations. This Request is submitted on behalf of the Center for Constitutional Rights, its staff and Board attorneys, and the volunteer, cooperating, and co-counsel attorneys and their staff (collectively, "Requesting Parties" or "Requesters") listed in Appendix A attached hereto. A similar request has been submitted to the following agencies, departments and units of the United States government: the National Security Agency, the Federal Bureau of Investigation, the Defense Intelligence Agency, the Central Intelligence Agency, the United States Army, the United States Navy, and the Department of Homeland Security.

1.    **Requesting Parties**

The Center for Constitutional Rights ("CCR") is a non-profit, public interest organization that engages in litigation, public advocacy and educational programs on behalf of those who seek to challenge governmental misconduct, racial injustice, social and economic injustice and violations of international human rights law in U.S. courts, the courts of other countries and other international bodies and courts. For the past four years, lawyers and advocates at CCR have represented citizens and noncitizens identified as alleged terrorists and/or suspected of having affiliations with terrorists. These persons have been detained in places as diverse as the Metropolitan Detention Center in Brooklyn, New York; the Passaic County Jail in Patterson New Jersey; the detention center at the U.S. Naval Station in Guantánamo Bay, Cuba; the Far Falestin Branch Detention Facility of Syrian Military Intelligence in Damascus, Syria; the Sednaya Prison in Sednaya, Syria; Abu Ghraib Prison in Baghdad, Iraq; and other U.S. facilities, where they were subject to physical and psychological abuse or torture, or unlawful rendition.

This Request is made on behalf of the following CCR staff members, staff attorneys, volunteer attorneys, consultants, and Board Members who have or may have communicated with clients, families of clients, attorneys and human rights activists in foreign countries: William Goodman (a.k.a., Bill Goodman), Barbara Olshansky, Gitanjali Gutierrez (a.k.a., Gita Gutierrez), Tina Monshipour Foster (Tina Foster), Seema Ahmad, Maria LaHood, Jennifer Green (a.k.a., Jennie

Green), Shayana Kadidal (a.k.a., Shane Kadidal), Rachel Meeropol, Steven MacPherson Watt, Matthew Strugar (a.k.a., Matt Strugar) Marc Krupanski, Kelly McAnnany, Claire Tixeire, Michael Ratner, Jules Lobel, David Cole, Rhonda Copelon, Peter Weiss, Abdeen Jabara, Marilyn Clement, Charles Hay-Maestre (a.k.a., Charlie Hay-Maestre or Charley Hay-Maestre), and Jeff Hogue.

This Request is also made on behalf of 108 *pro bono* volunteer, cooperating and co-counsel attorneys and their staff throughout the United States who have worked with CCR on a variety of cases, primarily involving petitions for writs of *habeas corpus* filed on behalf of persons detained at the U.S. Naval Station in Guantánamo Bay, Cuba. These *pro bono* attorneys and their staff are listed in Appendix A.

### 2. Definitions

For the purpose of this Request, the following definitions shall apply:

A. "Electronic surveillance" - refers to

    (a) the acquisition by an electronic, mechanical, or other surveillance device of the contents of any wire, radio or other communication in any form or format of persons located within the United States obtained without benefit of warrant, including but not limited to any and all wiretaps, recordings, surveillance and/or interceptions of telephonic conversations and/or transactions (including cellular and satellite phone conversations and/or transactions), interception of e-mail conversations, or other written communications from public or non-public web sites or computer networks;

    (b) the acquisition by an electronic, mechanical, or other surveillance device of non-content records obtained without benefit of warrant, from persons located within the United States that identify the existence of any communications, including but not limited to pen registers; and

    (c) the warrantless installation or use of an electronic, mechanical or other surveillance device for monitoring to acquire information, other than from a wire or radio communication;[1]

B. "Records" - refers to all "records" as defined by the FOIA, 5 U.S.C. § 522(f)(2), including but not limited to existing memoranda, agreements, notes, orders, policies, procedures, protocols, written or email correspondence, faxes, files, reports, rules, technical manuals, technical

---

[1] This request does not include surveillance authorized pursuant to Sections 1802 or 1822(a) of the Foreign Intelligence Surveillance Act. 50 U.S.C. §§ 1802 or 1822(a).

specifications, training manuals, studies, analyses, audio or video recordings, transcripts of such recordings, data, papers, guidance, guidelines, evaluations, instructions, photographs, films, recordings, books, accounts, communications and all retrievable information in computer storage, regardless of form of the record as a digital, audio, written, video, or other record;

C.    "Electronic surveillance" "of persons located within the United States" - refers to records obtained through electronic surveillance of any communications by or to an individual, individuals, group or groups within the United States, regardless of whether the communication originated inside or outside the United States.

## 3.    Records Sought

CCR and the other Requesting Parties seek disclosure of records in the possession of any office of the Department of Justice ("DOJ") and any agency, organization or corporation holding records at the behest of the National Security Agency ("NSA") concerning any warrantless electronic surveillance or warrantless physical searches of any person located within the United States from September 11, 2001 to the date of this FOIA Request that references a Requesting Party. In addition, CCR and other Requesters seek the disclosure of records concerning the development, approval, and implementation of the Executive's warrantless electronic surveillance and/or warrantless physical search program within the United States.

In order to ascertain the extent of the Executive's policies and practices concerning warrantless electronic surveillance and/or warrantless physical searches of persons located within the United States, Requesting Parties seek the following records:

1.    All records obtained through or relating to ongoing or completed warrantless electronic surveillance or physical searches of persons located within the United States, including logs and indexes, regarding or concerning any Requesting Party and/or records of warrantless electronic surveillance or physical searches of persons located within the United States that reference, list, or name any Requesting Party;

2.    Any Executive Orders authorizing the warrantless electronic surveillance or physical searches of persons located within the United States referenced in paragraph (1) above;

3.    All records establishing, discussing or referencing the policies, procedures, guidelines, or practices of the DOJ or NSA used to (a) identify the individuals or organizations subject to warrantless electronic surveillance or warrantless physical searches within the United States; (b) gather information through warrantless electronic surveillance or warrantless physical searches within the United States; (c)

share this information with other U.S. government agencies and with foreign governments or the agencies or agents thereof; (d) share this information as a basis for a warrant request by the U.S. Department of Justice to the Foreign Intelligence Surveillance Act Court; (e) destroy this information; and/or (f) consult with or secure approval from the U.S. Department of Justice or other departments, agencies or Executive officials prior to conducting warrantless electronic surveillance or warrantless physical searches of persons located within the United States;

4. Any records stating, discussing, or referencing the legality or propriety of warrantless electronic surveillance or warrantless physical searches of persons located within the United States, including but not limited to policy statements, memoranda, analyses, explanations, or authorizations;

5. Any internal DOJ evaluation, assessment, or audit of any DOJ or NSA program implementing warrantless electronic surveillance or warrantless physical searches of persons located within the United States;

6. Any records containing concerns or comments by judges, national security officials, intelligence officials, government lawyers, or other about the DOJ or NSA warrantless electronic surveillance program; and

7. All records reflecting budget allocations for all warrantless electronic surveillance or warrantless physical search programs of persons located within the United States.

## 4.    Requesters Are Entitled to Expedited Processing

Expedited processing is warranted when an organization "primarily engage[s] in disseminating information in order to inform the public about an actual or alleged Federal Government activity" has an "urgent need" to secure the records. 32 C.R.F. § 286.4(d)(3)(ii). The Center for Constitutional Rights is an organization "primarily engaged in disseminating information" about government misconduct through the work of its staff, Board, volunteer, cooperating, and co-counsel attorneys. As described above, CCR engages in litigation, public advocacy and educational programming to defend constitutional and human rights law. Dissemination of information to the public is a crucial component of CCR's mission and work. Specifically, CCR publishes reports and newsletters, maintains a public website, issues press releases, and offers educational materials and programming to the pubic within the United States and internationally. Additionally, CCR's staff, board, and volunteer, co-counsel, and cooperating attorneys further disseminate CCR's information to their local and national communities through a variety of means, including their own press releases, interviews, reports, and educational programming.

The records in question involved the NSA and/or the DOJ's actual and alleged warrantless electronic surveillance within the United States, in apparent violation of the rights guaranteed by the First, Fourth, Fifth and Fourteenth Amendments to the United States Constitution. FOIA requests

bearing upon alleged Constitutional violations require an immediate response in order to cease any ongoing violations and to prevent future ones.

A requester may also demonstrate compelling need by a showing that the information sought is "urgently needed" and involves a "breaking new story of general public interest." 32 C.R.F. § 286.4(d)(3)(iii). The instant Request clearly meets these standards in light of the current public scrutiny and impending legislative hearings in response to the disclosure of the Executive's policies and practices involving warrantless electronic surveillance of persons within the United States. *See, e.g.,* Jennifer Loven, *Report of NS Spying Prompts Call for Probe,* San Fran. Chron., Dec. 16, 2005 (stating that Senator Arlen Specter, chairman of the Senate Judiciary Committee, promised that the Senate would conduct hearings to investigate the NSA's warrantless electronic surveillance practices); *see also* Christine Hauser, *Bush Declines to Discuss Report on Eavesdropping,* N.Y. Times, Dec. 16, 2005; Maura Reynolds & Greg Miller, *Congress Wants Answers About Spying on U.S. Citizens,* Pitts. Post-Gazette, Dec. 16, 2005; James Risen & Eric Lichtblau, *Bush Lets US. Spy on Callers Without Courts,* N.Y. Times, Dec. 16, 2005; Steven Thomma, *Spying Could Create Backlash on Congress; Public Reaction Hinges on Identity of Targets,* San Jose Mercury News, Dec. 16, 2005; Caren Bohan & Thomas Ferraro, *Bush Defends Eavesdropping and Patriot Act,* ABC News, Dec. 17, 2005; Dan Eggen & Charles Lane, *On Hill, Anger and Calls for Hearing Greet News of Stateside Surveillance,* Wash. Post, Dec. 17, 2005; Jennifer Loven, *Bush Defends Secret Spying in U.S.,* San Fran. Chron., Dec. 17, 2005; John Diamond, *NSA's Surveillance of Citizens Echoes 1970s Controversy,* USA Today, Dec. 18, 2005; Barton Gellman & Dafna Linzer, *Pushing the Limits of Wartime Powers,* Wash. Post, Dec. 18, 2005; James Kuhnhenn, *Bush Defends Spying in U.S.,* San Jose Mercury News, Dec. 18, 2005; Fred Barbash & Peter Baker, *Gonzales Defends Eavesdropping Program,* Wash. Post, Dec. 19, 2005; James Gerstenzang, *Bush Vows to Continue Domestic Surveillance,* L.A. Times, Dec. 19, 2005; Todd J. Gillman, *Bush Assails Disclosure of Domestic Spying Program,* San Jose Mercury News, Dec. 19, 2005; Terrence Hunt, *Bush Says NSA Surveillance Necessary, Legal,* Wash. Post, Dec. 19, 2005; David Stout, *Bush Says U.S. Spy Program is Legal and Essential,* N.Y. Times, Dec. 19, 2005; George E. Condon, *Bush Says Spying Is Needed to Guard US,* San Diego Union Trib., Dec. 20, 2005; Michael Kranish, *Bush Calls Leak of Spy Program Shameful,* Bost. Globe, Dec. 20, 2005; Jeff Zeleny, *No 'Unchecked Power' in Domestic Spy Furor,* Chi. Trib., Dec. 20, 2005; Douglas Birch, *NSA's Methods Spur Controversy,* Balt. Sun, Jan. 8, 2006; Dan Eggen, *Probe Set in NSA Bugging,* Wash. Post, Jan. 11, 2006; David E. Sanger, *In Shift, Bush Says He Welcomes Inquiry on Secret Wiretaps,* N.Y. Times, Jan. 11, 2006; Scott Shane, *N.S.A. Audit of Spying is Not Assessing Legality,* N.Y. Times, Jan. 11, 2006; Jessica Yellin, *Ex-CIA Lawyer: No Legal Basis for NSA Spying,* ABC News, Jan. 11, 2006; James Gerstenzang, *Bush Now Cites Value of Spying Inquiry,* L.A. Times, Jan. 12, 2006; Sean Sullivan, *Markey Bashes Surveillance Program at Forum,* Arlington (MA) Advocate, Jan. 12, 2006.

Finally, pursuant to the applicable regulations and statue, CCR and the other Requesters expect the DOJ's determination of this Request for expedited processing within 10 calendar days and the determination of this Request for documents within 20 days. *See* 32 C.F.R. § 286.4(d)(1), (3); 5 U.S.C. § 552(a)(6)(A)(i).

**5.    Requesting Parties Are Entitled To A Fee Waiver**

Requesting Parties are entitled to waiver of all costs pursuant to 5 U.S.C. § 552(a)(4)(A)(iii) because "disclosure of the requested records is in the public interest" and "likely to contribute significantly to the public understanding of the operations or activities of the government and is not primarily in the commercial interest of the requester." As indicated above, the significant media attention focused on the NSA's policy of warrantless electronic surveillance reflects the extraordinary public interest in the records Requesters seek. Disclosure of the requested information would reveal the extent of the NSA's warrantless electronic surveillance and/or warrantless physical searches of persons located within the United States, raising weighty constitutional questions.

Further, disclosure of the requested records will aid the public's understanding of the President's decision to disregard existing restraints on the exercise of Executive power, including the minimal oversight provided by the Foreign Intelligence Surveillance Act courts.

Finally, as a non-profit legal, advocacy, and educational organization, CCR and its staff, Board, and volunteer, co-counsel and cooperating attorneys are well-suited to disseminate publicly the information obtained from this Request. Because this Request satisfies the statutory criteria, a fee waiver would fulfill Congress's legislative intent in amending FOIA. *See Judicial Watch, Inc. v. Rossotti*, 326 F.3d 1309, 1312 (D.C. Cir. 2003) ("Congress amended FOIA to ensure that it be liberally construed in favor of wavers for noncommercial requesters." (internal quotation marks omitted)).

If the fee waiver is not granted, however, we request that the fees assigned be limited to "reasonable standard charges for document duplication" pursuant to 5 U.S.C. § 552(a)(4)(A)(ii)(II) ("[F]ees shall be limited to reasonable standard charges for document duplication when records are not sought for commercial use and the request is made by . . . .a representative of the news media . . ." and 32 C.F.R. § 286.28(e) (stating that search and review fees shall not be charges to "representatives of the news media"). If appropriate after reviewing the results of the Request, CCR intends to "disseminate the information" disclosed by this Request "among the public" through the media channels described above. CCR meets the definition of a "representative of the news media" because it is "an entity that gathers information of potential interest to a segment of the public, uses its editorial skills to turn raw material into a distinct work, and distributes that work to an audience." *Nat'l Security Archive v. Dep't of Defense*, 880 F.2d 1381, 1387 (D.C. Cir. 1989); *see also Judicial Watch Inc., v. Rossotti*, 326 F.3d 1309, 1310 (D.C. 2003) (finding that a non-profit, public interest organization that distributed a newsletter and published books was a "representative of the media" for purposes of FOIA). Accordingly, any fees imposed for the processing of this Request should be limited pursuant to these regulations.

*     *     *     *

If this Request is denied in whole or in part, Requesters ask that the DOJ justify all deletions by reference to specific exemptions of FOIA. Requesters expect the DOJ to release all segregable portions of otherwise exempt material, and reserve the right to appeal a decision to withhold any records or to deny the within application for expedited processing and waiver of fees.

Thank you for your consideration of this Request. Kindly direct all future responses and furnish all disclosed records to William Goodman, Legal Director, Center for Constitutional Rights, 666 Broadway, 7th floor, New York, N.Y. 10012, telephone (212) 614-6427.

Under penalty of perjury, I hereby affirm that the information provided supporting the Request and the attached Appendix are true and correct to the best of my knowledge and belief.

Signed by:

William Goodman, Esq.
Legal Director
Center for Constitutional Rights
666 Broadway, 7th Floor
New York, NY 10012
(212) 617-6427

# EXHIBIT B

**U.S. Department of Justice**

Office of Information and Privacy

---

*Telephone: (202) 514-3642*  *Washington, D.C. 20530*

JUL 2 1 2006

Mr. William Goodman, Esq.
Center for Constitutional Rights          Re:     AG/06-R0874
666 Broadway, 7th Floor                            DAG/06-R0875
New York, NY 10012                                 MAP:CLM:APM

Dear Mr. Goodman:

    We have received your letter requesting certain documents pertaining to the Terrorist Surveillance Program, as described by the President of the United States in his December 17, 2005, radio address. We note that your request was addressed to the FOIA/PA Mail Referral Unit, Justice Management Division, for appropriate routing. Regrettably, it has just now been referred to this Office where we received it today. This response is being made on behalf of the Offices of the Attorney General and Deputy Attorney General.

    Please be advised that your request for expedited processing has been granted. Accordingly, your request has been assigned to a FOIA Specialist in this Office and records searches are being initiated.

    We have not yet made a decision on your request for a fee waiver. We will do so after we determine whether fees will be assessed for this request.

    If you have any questions, you may contact Amy McNulty, the analyst handling your request, by telephone at the above number or you may write to her at the above address.

                              Sincerely,

                              *Melanie Ann Pustay*

                              Melanie Ann Pustay
                              Deputy Director

# EXHIBIT C

**U.S. Department of Justice**

Office of Information and Privacy

_____

Telephone: (202) 514-3642                    *Washington, D.C. 20530*

OCT 16 2006

Mr. William Goodman, Esq.
Center for Constitutional Rights            Re:    AG/06-R0874
666 Broadway, 7th Floor                              DAG/06-R0875
New York, NY 10012                                   MAP:TSW:APM

Dear Mr. Goodman:

     This is our first interim response to your Freedom of Information Act (FOIA) request dated January 18, 2006, and received in this Office on July 21, 2006, for certain documents pertaining to the Terrorist Surveillance Program, as described by the President of the United States in his December 17, 2005, radio address. This response is made on behalf of the Offices of the Attorney General and Deputy Attorney General.

     We have completed our records search in the Office of the Attorney General. I have determined that eighty-five pages are appropriate for release without excision and copies are enclosed. Additionally, two documents, totaling two pages, are appropriate for release with excisions made pursuant to Exemption 6 of the FOIA, 5 U.S.C. § 552(b)(6). Eighty-four pages are being withheld in full pursuant to Exemption 5. Finally, we located a one-page electronic mail (e-mail) that originated with the Office of Intelligence Policy and Review (OIPR) and we are withholding it in full on behalf of OIPR pursuant to Exemption 5. For your information, e-mail messages are counted and processed as individual documents. Exemption 5 pertains to certain inter- and intra-agency communications protected by the deliberative process, attorney-work-product, and presidential communications privileges. Exemption 6 pertains to information the release of which would constitute a clearly unwarranted invasion of the personal privacy of a third party. None of the withheld information is appropriate for discretionary release.

     Please be advised that we have also identified another document that is responsive to your request. We are not providing that document, however, because it is a Congressional document that is not an "agency record" subject to the FOIA.

     We are continuing to process documents located on behalf of the Office of the Attorney General. Additionally, we are continuing our records searches in the Office of the Deputy Attorney General and the Departmental Executive Secretariat, which is the official records repository for the Offices of the Attorney General and Deputy Attorney General. We will respond to you again once processing is completed and release determinations are made.

**FILE COPY**

-2-

     If you are not satisfied with my action on this interim response you may administratively appeal by writing to the Director, Office of Information and Privacy, United States Department of Justice, 1425 New York Avenue, Suite 11050, Washington, D.C. 20530-0001, within sixty days from the date of this letter.  Both the letter and the envelope should be clearly marked "Freedom of Information Act Appeal."

                          Sincerely,

                          Melanie Ann Pustay
                          Deputy Director

Enclosures

# EXHIBIT D

# centerforconstitutionalrights

666 broadway new york, ny 10012
t 212 614 6464 f 212 614 6499 www.ccr-ny.org

December 14, 2006

**VIA FACSIMILE AND OVERNIGHT MAIL**

Director
Office of Information and Privacy
1425 New York Ave, Suite 11050
Washington, DC 20530-0001

**Re: FOIA Appeal AG/06-R0874, DAG/06-R0875, MAP: TSW-APM**

Dear Director,

This letter constitutes an appeal to the DOJ Office of Information and Privacy's November 16, 2006 response (*hereinafter* DOJ Interim Response) to our January 18, 2006 FOIA request (*hereinafter* CCR FOIA Request) for information related to the Terrorist Surveillance Program, attached as Appendix A. In its letter, attached as Exhibit B, the DOJ released 85 pages of documents without excision, released two documents with excisions, and stated that it was withholding 84 pages and an electronic e-mail in full. The letter stated that these documents were being withheld under Exemptions 5 and 6 of the FOIA, U.S.C. §552 (b)(6). The letter purports to be an interim response from a records search in the Office of the Attorney General and the Office of the Deputy Attorney General. According to the DOJ Interim Response, the records search is complete in the offices of the Attorney General and the retrieved documents are being processed. The search in ongoing in the Office of the Deputy Attorney General and the Departmental Executive Secretariat. CCR has not yet received a response from the other DOJ components to which this request was referred: the Criminal Division, Federal Bureau of Investigation, Office of Legal Counsel and Office of Solicitor General.

Pursuant to 5 U.S.C. § 552(a)(6)(A)(i) and 5 U.S.C. § 552(a)(6)(F), we appeal the DOJ's denial of our request for certain responsive records. Furthermore, pursuant to 5 U.S.C. § 552(a)(6)(A)(i), we appeal the DOJ's refusal to provide a determination to our request within the statutory time limit.

In our January 18, 2006 request, attached as Exhibit B, we sought the following records:

1. All records obtained through or relating to ongoing or completed warrantless electronic surveillance or physical searches of persons located within the United States, including logs and indexes, regarding or concerning any Requesting Party and/or records of warrantless electronic surveillance or physical searches of persons located within the United States that reference, list, or name any Requesting Party;



2. Any Executive Orders authorizing the warrantless electronic surveillance or physical searches of persons located within the United States referenced in paragraph (1) above;

3. All records establishing, discussing or referencing the policies, procedures, guidelines, or practices of the CIA or NSA used to (a) identify the individuals or organizations subject to warrantless electronic surveillance or warrantless physical searches within the United States; (b) gather information through warrantless electronic surveillance or warrantless physical searches within the United States; (c) share this information with other U.S. government agencies and with foreign governments or the agencies or agents thereof; (d) share this information as a basis for a warrant request by the U.S. Department of Justice to the Foreign Intelligence Surveillance Act Court; (e) destroy this information; and/or (f) consult with or secure approval from the U.S. Department of Justice or other departments, agencies or Executive officials prior to conducting warrantless electronic surveillance or warrantless physical searches of persons located within the United States;

4. Any records stating, discussing, or referencing the legality or propriety of warrantless electronic surveillance or warrantless physical searches of persons located within the United States, including but not limited to policy statements, memoranda, analyses, explanations, or authorizations;

5. Any Department of Justice evaluation, assessment, or audit of any NSA program implementing warrantless electronic surveillance or warrantless physical searches of persons located within the United States;

6. Any internal CIA evaluation, assessment, or audit of any CIA or NSA program implementing warrantless electronic surveillance or warrantless physical searches of persons located within the United States;

7. Any records containing concerns or comments by judges, national security officials, intelligence officials, government lawyers, or other about the NSA warrantless electronic surveillance program; and

8. All records reflecting budget allocations for all warrantless electronic surveillance or warrantless physical search programs of persons located within the United States.

In a February 10, 2006 letter, the DOJ initially requested additional authorization and identifying information from Requestees. However, in a subsequent telephone communication, summarized in a letter from CCR dated June 21, 2006, DOJ confirmed that the initial documentation submitted was sufficient to process the FOIA request. On July 17, 2006, the DOJ stated that it forwarded our request to the relevant DOJ components, including the Offices of the Attorney General and Deputy Attorney General. In a letter dated July 21, 2006 the Office of Information and Privacy confirmed its delayed receipt of our request, and stated that it would be respond on behalf of these offices.

In the DOJ Interim Response, the DOJ released 85 pages of documents in full. Virtually all of the documents were previously released public documents consisting of transcripts of press

briefings and media interviews.  The only documents that had not previously been made public were a series of emails written *after* the disclosure of the program by the mainstream media. These emails were between the Chief Ethics and Compliance Officer at Time Warner and a representative of the DOJ analyzing arguments for and against the legality of the NSA warrantless surveillance program and commenting on the DOJ's legal strategy.

In addition, two pages of documents were released with undefined excisions made allegedly pursuant to Exemption 6.  Exemption 6 permits the non-disclosure of "personnel and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy."  Eighty-five pages of documents were withheld in full allegedly pursuant to Exemption 5, including a one-page email withheld in full on behalf of the office in which the document originated, the Office of Intelligence Policy and Review (OIPR). Exemption 5 permits the non-disclosure of "inter-agency or intra-agency memorandums or letters which would not be available by law to a party other than an agency in litigation with the agency."

We appeal the withholding of certain documents pursuant to Exemption 5.  Further, we appeal the effective denial of our request for the documents that have not been disclosed within the statutory time limit.  We do not appeal the assertion of Exemption 6 for the two documents in which there are excisions.

*First*, we appeal the withholding of certain documents pursuant to Exemption 5.  The DOJ invokes a far broader reading of this exemption than established by statute or case law.  *See Department of Justice v. Tax Analysts*, 492 U.S. 136, 151 (1989) ("consistent with the Act's goal of broad disclosure, these exemptions have been consistently given a narrow compass").  The Freedom of Information Act's "'limited exemptions do not obscure the basic policy that disclosure, not secrecy, is the dominant objective of the Act.'"  *DOI v. Klamath Water Users Protective Ass'n*, 532 U.S. 1, 7-8 (2001), *citing Department of Air Force v. Rose*, 425 U.S. 352, 361 (1976).  The DOJ refused to segregate non-exempt information from recovered records. This is a violation of the Freedom of Information Act's requirement that agencies perform a search and analysis of responsive records and narrowly exempt records or components of records qualifying under the limited Freedom of Information Act exemptions.  To this end, Exemption 5 does not permit the non-disclosure of entire documents that contain facts that would be discoverable in litigation.  *EPA v. Mink*, 410 U.S. 73, 88-92 (1973).  Thus, the DOJ is required to examine these documents and, where applicable, sever and disclose the non-exempt components. *See, e.g.*, *EPA v. Mink*, 410 U.S. 73, 91 (1973).

In order to qualify for exemption under Exemption 5, a document must satisfy two requirements.  First, its source must be a Government agency and, second, "it must fall within the ambit of a privilege against disclosure under judicial standards that would govern litigation against the agency that holds it."  *Department of the Interior and Bureau of Indian Affairs v. Klamath Water Users Protective Assoc.*, 532 U.S. 1, 8 (2001).  Your office has not indicated with specificity whether you are invoking this exemption because the requested information is from a pre-decisional deliberative process, or is privileged attorney work-product or attorney-client communications.  Please provide Requesters with an index indicating the specific nature of the exemption for each document.

Purely factual information, post-decisional deliberative information, and attorney work-product providing guidance for future illegal activity is not protected under Exemption 5. *See American Civil Liberties Union v. Department of Justice*, 265 F. Supp.2d at 39-40 ("Purely factual information is generally considered non-deliberative, and is therefore not typically covered by this exemption. Such information must therefore be disclosed even when contained in an otherwise protected document, unless the information is 'inextricably intertwined' with, or incapable of being segregated from, the exempt material" (internal citations omitted)); *Army Times v. Department of the Air Force*, 998 F.2d 1067, 1071 (D.C. Cir. 1993) ("Exemption 5 applies only to the deliberative portion of a document and not to any purely factual, non-exempt information the document contains. Non-exempt information must be disclosed if it is reasonably segregable from exempt portions of the record, and the agency bears the burden of showing that no such segregable information exists." (quotations omitted)); American Bar Association Model Rule 1.2(d) ("A lawyer shall not counsel a client to engage, or assist a client, in conduct that the lawyer knows is criminal or fraudulent."). Your office is under an obligation to review these documents, to identify the specific nature of the exemption asserted, and to disclose all segregable portions of the responsive information.

*Further*, we appeal the DOJ's effective denial of our request due to non-responsiveness within the statutory time limit. By statute and regulation, the DOJ is obligated to provide a determination within twenty working days. 5 U.S.C. § 552 (a)(6)(A)(i). The Freedom of Information Act permits extensions of the statutory time limit for up to ten days in "unusual circumstances" in which the records are contained off-site, are voluminous, or require inter-agency consultation. 5 U.S.C. § 552 (a)(6)(B)(iii). The DOJ has made no such claim here of specific difficulties related to the nature of the request or the search. Instead, the DOJ has merely highlighted the continuing nature of their processing. In determining whether a Freedom of Information Act request is ripe for appeal, the statute explicitly excludes delays due to "predictable agency workload." 5 U.S.C. § 552 (a)(6)(C)(ii).

The failure to provide the requested records within the requisite statutory time limit can be reasonably expected to result in an imminent loss of substantial due process rights. Requesters are lawyers and professionals associated with legal organizations, human rights advocacy organizations, private law firms, federal public defender offices, and law schools. Each Requester engages and has engaged in some overseas communications with clients, foreign co-counsel, or other colleagues, often concerning privileged attorney-client communications or attorney work-product. Your office's refusal to process this request leaves the Requesters unable to determine whether attorneys representing the United States may have access to confidential information of adverse parties, including communication between the Requesters and their clients or co-counsel, and whether U.S. government attorneys may use evidence gathered by such monitoring to prepare the government's case, or even in court. The warrantless surveillance of lawyers representing criminal defendants and civil plaintiffs would severely limit the ability of lawyers to effectively represent their clients in an adversarial relationship with government officials.

Moreover, the lack of a timely determination in response to our FOIA request leaves lawyers uncertain about whether or not their communication is being monitored, thus

significantly constraining free communication between the lawyers and their clients. *See Turkman v. Ashcroft*, 02-cv-2307 (E.D.N.Y.), and *Elmaghraby v. Ashcroft*, 04-cv-1809 (E.D.N.Y.) March 7, 2006 Order (directing the United States to state in writing that no member of its trial team is aware of any monitoring of confidential communications between plaintiffs and their attorneys, that no witness who might testify in these cases is aware of such monitoring, and that the United States has no intention of using any evidence obtained through such monitoring in its defense in a civil action brought by plaintiffs subjected to detention and abuse while detained during post-9/11 immigration sweeps).

The possibility of intrusion upon attorney-client communications raises serious ethical and due process issues. The "attorney-client privilege is the oldest of the privileges for confidential communications known to the common law." *Upjohn Co. v. United States*, 449 U.S. 383, 389 (1981). It functions to "encourage full and frank communication between attorneys and their client and thereby promote broader public interests in the observance of law and administration of justice." *Id.* Attorneys and law firms have an ethical duty not to "[e]ngage in conduct that is prejudicial to the administration of justice." Model Code of Professional Responsibility, Disciplinary Rule 1-102. The Department of Justice, once characterized by Chief Justice Berger as "the world's largest law firm," is no exception. *United States v. Sells Engineering, Inc.*, 463 U.S. 418, 471 (1983) (Burger, C.J., dissenting).

The DOJ's withholding of responsive documents and refusal to process this request within the statutory time limit seriously undermines the Requesters' ability to freely communicate with their overseas clients and co-counsel without fear that their adversaries will review and rely upon confidences revealed during government-monitored communications. Without prompt disclosure, Requesters' overseas clients engaged in proceedings adverse to the United States cannot be assured of the confidentiality of their communications with their attorneys. For these reasons and the reasons stated in our January 18, 2006 request, we appeal your denial of access to the requested records, and your refusal to grant our request expedited processing. We request a response to this appeal within twenty (20) working days.

In closing, Requesters note that many government officials involved in classification determinations have been increasingly concerned over the past few years about the over-classification of information that results in less public accountability for government conduct.[1] Your office's overly-broad assertions of exemptions from FOIA's disclosure requirements for information related to unlawful and unethical government activity threatens to further this unwarranted governmental secrecy. Accordingly, Requesters demand that your office engage in

---

[1] The over-classification of documents was an issue cited by the 9/11 Commission in its final report as one factor impairing the efficient and effective sharing of information with the American public. *See* The 9/11 Commission Report, Final Report of the National Commission on Terrorist Attacks Upon the Unites States, 417 ("Current security requirements nurture overclassification and excessive compartmentation of information among agencies.") In addition, much Congress has recently begun to address this issue. *See* Memorandum from Lawrence J. Halloran to Members of the Subcommittee on National Security, Emerging Threats, and International Relations, *Briefing Memorandum for the hearing, Emerging Threats: Overclassification and Pseudo-classification, scheduled for Wednesday, March 2, 1:00 p.m., 2154 Rayburn House Office Building*, Feb. 24, 2005 (noting that the Information and Security Oversight Office's 2003 Report to the President found that "many senior officials will candidly acknowledge that the government classifies too much information, although oftentimes the observation is made with respect to the activities of agencies other than their own").

an adequate and diligent effort to properly designate information, to disclose all responsive documents not properly subject to a FOIA exemption, and to comply with your obligations to provide segregable information when necessary.

Sincerely,

William Goodman (MTM)

William Goodman, Esq.
Legal Director
Center for Constitutional Rights
666 Broadway, 7th Floor
New York, NY 10012
(212) 617-6427

# EXHIBIT E

**U.S. Department of Justice**

Office of Information and Privacy

_Telephone: (202) 514-3642_                          _Washington, D.C. 20530_

FEB 0 5 2007

William Goodman, Esq.
Center for Constitutional Rights          Re:   Appeal Nos. 07-0388 and 07-0389
7th Floor                                        Request Nos. AG/06-R0874 and
666 Broadway                                     DAG/06-0875
New York, NY  10012                              JTR:SJV

Dear Mr. Goodman:

You appealed from the first interim release of the Initial Request Staff of the Office of Information and Privacy, acting on behalf of the Offices of the Attorney General and Deputy Attorney General, on your request for access to certain documents pertaining to the Terrorist Surveillance Program as described by the President of the United States in his radio address of December 17, 2005.

With regard to the Office of the Attorney General, I am affirming the Initial Request Staff's action on your request. The Initial Request Staff properly withheld certain information because it is protected from disclosure under the Freedom of Information Act pursuant to 5 U.S.C. § 552(b)(5), which concerns certain inter- and intra-agency communications protected by the deliberative process privilege.

Additionally, I am denying your request that we itemize and justify each item of the information withheld. You are not entitled to such a listing at the administrative stage of processing FOIA requests and appeals. See, e.g., Judicial Watch v. Clinton, 880 F. Supp. 1, 10 (D.D.C. 1995).

Finally, with regard to the Office of the Deputy Attorney General, you attempted to appeal from the failure of the Initial Request Staff to respond to your request within the statutory time limits, especially in light of the fact that your request has been granted expedited treatment by the Initial Request Staff. Please be advised that Department of Justice regulations provide for an administrative appeal only after there has been an adverse determination by a component. See 28 C.F.R. § 16.9 (2006). As no adverse determination has yet been made, there is no action for this Office to consider on appeal. In particular, the FOIA itself contemplates judicial review, rather than an administrative appeal, when an agency has failed to respond to a request within the statutory time limits. See 5 U.S.C. § 552(a)(6)(C)(i). I have forwarded your letter to the Initial Request Staff. You might also wish to contact it directly and inquire about the status of your request. You may appeal any future adverse determination made by the Initial Request Staff.

-2-

    If you are dissatisfied with my action on your appeal from the action taken on behalf of the Office of the Attorney General, you may seek judicial review in accordance with 5 U.S.C. § 552(a)(4)(B).

                          Sincerely,

                          Janice Galli McLeod
                          Associate Director

# EXHIBIT F



**U.S. Department of Justice**

Office of Information and Privacy

_____

_Telephone: (202) 514-3642_                    _Washington, D.C. 20530_

AUG - 1 2007


Mr. William Goodman, Esq.                    Re:    AG/06-R0874
Center for Constitutional Rights                           DAG/06-R0875
666 Broadway, 7th Floor                                  MAP:TEH:SBL
New York, NY 10012

Dear Mr. Goodman:

This is our second interim response to your Freedom of Information Act (FOIA) request dated January 18, 2006, and received in this Office on July 21, 2006, for certain documents pertaining to the Terrorist Surveillance Program, as described by the President of the United States in his December 17, 2005, radio address. This response is made on behalf of the Offices of the Attorney General and Deputy Attorney General.

By letter dated October 16, 2006, we advised that we were still searching in the Office of the Deputy Attorney General and the Departmental Executive Secretariat, which is the official records repository for the Offices of the Attorney General and Deputy Attorney General. Those searches are now complete.

Please be advised that we have located both classified and unclassified records. With respect to the unclassified records, we located 622 pages that are responsive to your request. For your information, e-mail messages are counted and processed as individual documents. At this time, I have determined that forty-seven pages are appropriate for release without excision and copies are enclosed. Fifteen pages are being withheld in full pursuant to Exemption 5 of the FOIA, 5 U.S.C. § 552(b)(5), which pertains to certain inter- and intra-agency communications protected by the deliberative process and attorney-work-product privileges. Finally, please be advised that we have referred 252 pages to the Office of Legal Counsel, three pages to the Criminal Division, and one page to the Civil Division for processing and direct response to you. Each component will respond to you directly.

In addition, thirty-three agency records or categories of records were located in the classified files of the Office of the Deputy Attorney General. All of these records or categories of records were referred to other agencies or to other components of the Department of Justice for processing, and we have been asked to advise you that the agencies to which they were referred have determined that they are being withheld in full because they are classified, and thus exempt under Exemption 1 of FOIA, 5 U.S.C. § 552(b)(1), and/or because they contain information of the type described in Section 6 of the National Security Act of 1959, Pub. L. No. 86-36, 73 Stat. 63, 64, codified at 50 U.S.C. § 402 note, and/or in Section 102A(i)(l) of the Intelligence Reform and Terrorism Prevention Act of 2004, 50 U.S.C. § 403-l(i)(l), and are thus exempt under Exemption 3 of the FOIA. 5 U.S.C. § 552(b)(3). Additionally, certain of these records or

-2-

categories of records are subject to the deliberative process and attorney-client privileges, or to the attorney work product doctrine, and thus are also withheld under Exemption 5, 5 U.S.C. § 552(b)(5).

To the extent that you are seeking intelligence information, including surveillance and monitoring of the organizations and individuals listed in the request, I can neither confirm nor deny the existence of records responsive to your request. 5 U.S.C. § 552(b)(1), (b)(3).

Please be advised that when duplicates were located, only one copy of a record was processed. We have also not provided copies of any briefs submitted by you in court as we assume you already have them. Likewise, we assume you are not interested in publicly available material such as copies of news articles. Please also be advised that any materials that are posted on the Department's electronic reading room are not being provided separately here. You can access these documents at the following internet addresses: www.usdoj.gov/ag/readingroom /surveillance.htm and www.usdoj.gov/ag/speeches/2006/ag-speech-060206.html.

Lastly, we located a version of the January 19, 2006 "White Paper" that contains marginalia. Such marginalia would be protected by Exemption 5. We have already provided you with a copy of that document, and so we assume you are not interested in the version with marginalia.

We are continuing to review the documents located on behalf of the Offices of the Attorney General and Deputy Attorney General and the Departmental Executive Secretariat. Please be advised that before this Office can make any disclosures, documents will require consultations with other Department components and government agencies. Once these consultations are complete and release determinations are made we will respond to you again.

Although I am aware that your request is the subject of ongoing litigation and that appeals are not ordinarily acted on in such situations, I am required by statute and regulation to inform you of your right to file an administrative appeal.

Sincerely,

Melanie Ann Pustay
Director

Enclosures

# EXHIBIT G

**U.S. Department of Justice**

Office of Information and Privacy

_____

Telephone: (202) 514-3642                    Washington, D.C. 20530

OCT 3 1 2007

Mr. William Goodman, Esq.
Center for Constitutional Rights
666 Broadway, 7th Floor                Re:    AG/06-R0874
New York, NY 10012                            DAG/06-R0875
                                              MAP:TEH:SBL

Dear Mr. Goodman:

    This is a supplemental response to your Freedom of Information Act (FOIA) request
dated January 18, 2006, and received in this Office on July 21, 2006, for certain documents
pertaining to the Terrorist Surveillance Program, as described by the President of the United
States in his December 17, 2005, radio address. This response is made on behalf of the Offices
of the Attorney General and Deputy Attorney General.

    By letters dated October 16, 2006 and August 1, 2007, we advised you that we were
withholding certain records in full pursuant to Exemption 5 of the FOIA, 5 U.S.C. § 552(b)(5).
Several of these records were also responsive to another FOIA request, which is currently the
subject of litigation. Pursuant to a court order in that litigation, additional documents were
recently released. Accordingly, thirty-seven pages are now appropriate for release without
excision and copies are enclosed.

    We are currently consulting with other offices on the remaining documents located on
behalf of the Offices of the Attorney General and Deputy Attorney General and the Departmental
Executive Secretariat. Once these consultations are completed we will promptly notify you of
our disclosure determinations.

    Although I am aware that your request is the subject of ongoing litigation and that appeals
are not ordinarily acted on in such situations, I am required by statute and regulation to inform
you of your right to file an administrative appeal.

                            Sincerely,

                            Melanie Ann Pustay

                            Melanie Ann Pustay
                            Director

Enclosures

**FILE COPY**

# EXHIBIT H

**U.S. Department of Justice**

Office of Information and Privacy

---

*Telephone: (202) 514-3642*                                *Washington, D.C. 20530*

DEC 2 7 2007

Mr. William Goodman, Esq.
Center for Constitutional Rights                    Re:    AG/06-R0874
666 Broadway, 7th Floor                                     DAG/06-R0875
New York, NY 10012                                          MAP:TEH:SBL

Dear Mr. Goodman:

This is our final response to your Freedom of Information Act (FOIA) request dated January 18, 2006, and received in this Office on July 21, 2006, for certain documents pertaining to the Terrorist Surveillance Program, as described by the President of the United States in his December 17, 2005, radio address. This response is made on behalf of the Offices of the Attorney General and Deputy Attorney General.

In our interim response, dated August 1, 2007, we advised you that we had located 622 pages that were responsive to your request, and provided you with a determination on 318 pages. In that letter, and in our October 31, 2007 supplemental response, we also advised you that we were consulting with other offices on the remaining documents, totaling 304 pages, that were located on behalf of the Offices of the Attorney General, Deputy Attorney General, and the Departmental Executive Secretariat. Those consultations are now complete.

I have determined that 297 pages are appropriate for release without excision and copies are enclosed. Please note that upon further review it was determined that five of the pages were duplicates, including a copy of the February 17, 2006 Attorney General memoranda that contains minimal marginalia. Accordingly, these were not processed. Also, please be advised that we referred two pages to the Office of Inspector General for processing and direct response to you. That component will respond to you directly.

Lastly, we have been advised that five Office of Legal Counsel classified documents were maintained in the Office of the Attorney General. The Office of Legal Counsel is currently handling these documents in response to your request. Accordingly, these documents have been referred to the Office of Legal Counsel.

-2-

Although I am aware that your request is the subject of ongoing litigation and that appeals are not ordinarily acted on in such situations, I am required by statute and regulation to inform you of your right to file an administrative appeal.

Sincerely,

*Melanie Ann Pustay*

Melanie Ann Pustay
Director

Enclosures

# EXHIBIT I

**U.S. Department of Justice**

Office of Information and Privacy

_____

_Telephone: (202) 514-3642_                           _Washington, D.C. 20530_
                                                      APR 2 4 2008

Mr. William Goodman, Esq.
Center for Constitutional Rights          Re:    AG/06-R0874
666 Broadway, 7ᵗʰ Floor                          DAG/06-R0875
New York, NY  10012                              MAP:VRB:SBL

Dear Mr. Goodman:

    This responds to your Freedom of Information Act (FOIA) request dated January 18, 2006, and received in this Office on July 21, 2006, for certain documents pertaining to the Terrorist Surveillance Program, as described by the President of the United States in his December 17, 2005, radio address. This response is made on behalf of the Offices of the Attorney General and Deputy Attorney General.

    By letter dated August 1, 2007, we advised you that we were withholding certain records in full pursuant to Exemption 5 of the FOIA, 5 U.S.C. § 552(b)(5). Upon further review of that material, I have determined that four pages previously withheld are now appropriate for release without excision and copies are enclosed. Also, I have determined that three additional pages previously withheld are of primary interest to the Office of Legal Counsel. Accordingly, that material has now been referred to the Office of Legal Counsel for processing and direct response. That component will respond to you directly if it has not already done so.

    Although I am aware that your request is the subject of ongoing litigation and that appeals are not ordinarily acted on in such situations, I am required by statute and regulation to inform you of your right to file an administrative appeal.

                                        Sincerely,

                                        _Melanie Ann Pustay_

                                        Melanie Ann Pustay
                                        Director

Enclosures

# EXHIBIT J



**U.S. Department of Justice**

Office of Information and Privacy

---

*Telephone: (202) 514-3642*　　　　　　　*Washington, D.C. 20530*

**FEB 2 9 2008**

Re:　　AG/08-R0111
　　　　DAG/08-R0112
Mr. William Goodman, Esq.　　　　OLA/08-R0113
Center for Constitutional Rights　　PAO/08-R0114
666 Broadway, 7th Floor　　　　MAP:TEH:SBL
New York, NY  10012

Dear Mr. Goodman:

　　While processing your Freedom of Information Act (FOIA) request dated January 18, 2006, for certain documents pertaining to the Terrorist Surveillance Program, as described by the President of the United States in his December 17, 2005, radio address, the Office of Legal Counsel (OLC) referred documents to this Office for processing and direct response to you. The documents were received in this Office on November 16, 2007. This response is being made on behalf of the Offices of the Attorney General, Deputy Attorney General, Legislative Affairs, and Public Affairs.

　　Upon review of the documents, we have determined that eleven documents, totaling twenty-four pages, are responsive to your request. For your information, e-mail messages are counted and processed as individual documents. I have determined that one document, totaling one page, is appropriate for release without excision and a copy is enclosed. Eight documents, totaling eleven pages, are being withheld in full pursuant to Exemption 5 of the FOIA, 5 U.S.C. § 552(b)(5), which pertains to certain inter- and intra-agency communications protected by the deliberative process and attorney-work-product privileges. None of the withheld information is appropriate for discretionary release.

　　Please be advised that two of the documents, totaling twelve pages, are duplicates of records previously processed in response to your request received by this Office on July 21, 2006. In our responses dated October 16, 2006 and August 1, 2007, these documents were withheld in full pursuant to Exemption 5. Therefore, no further processing of these documents is necessary.

　　The remaining two documents, a December 22, 2005 letter and an undated document entitled "Legal Authority for the Recently Disclosed NSA Activities," are publicly available in the Department of Justice electronic reading room. We assume, therefore, that you are not interested in receiving a hard copy. You can access these documents at the following internet addresses: www.usdoj.gov/ag/readingroom/surveillance.htm and www.usdoj.gov/ag/speeches/2006/ag-speech-060206.html.

**FILE COPY**

-2-

Although I am aware that your request is the subject of ongoing litigation and that appeals are not ordinarily acted on in such situations, I am required by statute and regulation to inform you of your right to file an administrative appeal.

Sincerely,

Melanie Ann Pustay
Director

Enclosure

# EXHIBIT K



**U.S. Department of Justice**

Office of Information and Privacy

---

*Telephone: (202) 514-3642*                    *Washington, D.C. 20530*    APR 2 5 2008

Mr. William Goodman, Esq.                    Re:    AG/08-R0334; DAG/08-R0336
Center for Constitutional Rights                    OLA/08-R0335; PAO/08-R0333
666 Broadway, 7th Floor                              OLP/08-R0337
New York, NY 10012                                  MAP:TEH:SBL

Dear Mr. Goodman:

While processing your Freedom of Information Act (FOIA) request dated January 18, 2006, for certain documents pertaining to the Terrorist Surveillance Program, as described by the President of the United States in his December 17, 2005, radio address, the Office of Legal Counsel (OLC) referred two batches of documents to this Office for processing and direct response to you. The first referral was received on March 5, 2008 and the second on March 17, 2008. This response is being made on behalf of the Offices of the Attorney General, Deputy Attorney General, Legislative Affairs, Public Affairs, and Legal Policy.

Upon review of the documents, we have determined that twenty-three documents, totaling fifty-nine pages, are responsive to your request. For your information, e-mail messages are counted and processed as individual documents. I have determined that nine documents, totaling thirty pages, are appropriate for release without excision and copies are enclosed. Eleven documents, totaling twenty-three pages, are being withheld in full pursuant to Exemption 5 of the FOIA, 5 U.S.C. § 552(b)(5), which pertains to certain inter- and intra-agency communications protected by the deliberative process and attorney-work-product privileges.

Furthermore, two documents, totaling two pages, have been referred to the Office of Legal Counsel. That component will respond to you directly if it has not already done so.

Finally, the remaining document, a four-page press release dated January 27, 2006, is publicly available in the Department of Justice electronic reading room. We assume, therefore, that you are not interested in receiving a hard copy. You can access this document at www.usdoj.gov/ag/readingroom/ surveillance16.pdf

Although I am aware that your request is the subject of ongoing litigation and that appeals are not ordinarily acted on in such situations, I am required by statute and regulation to inform you of your right to file an administrative appeal.

Sincerely,

*Melanie Ann Pustay*

Melanie Ann Pustay
Director

Enclosures