UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

THOMAS WILNER, *et al.*,                    )
                                            )
          Plaintiffs,                       )        Civil Action 07-3883 (DLC)
                                            )
      v.                                    )
                                            )
NATIONAL SECURITY AGENCY and                )
UNITED STATES DEPARTMENT OF JUSTICE,        )
                                            )
          Defendants.                       )
                                            )

## DECLARATION OF KATHY HSU

I, Kathy Hsu, declare the following to be true and correct:

1.    I am an attorney in the Criminal Division of the United States Department of Justice assigned to the Office of Enforcement Operations. My specific assignment at the present time is that of Litigation Attorney for the Division's Freedom of Information Act/Privacy Act Unit (FOIA/PA Unit).

2.    In such capacity, my duties are, *inter alia*, to review complaints in lawsuits filed under both the Freedom of Information Act (FOIA), 5 U.S.C. § 552 *et seq*., and the Privacy Act (PA), 5 U.S.C. § 552a *et seq*., and to provide litigation support and assistance to Assistant United States Attorneys and to Department trial attorneys litigating these cases in District Court. In conjunction with these duties, I review processing files that have been compiled by the paralegal processors and reviewed by supervisory paralegals and/or by the FOIA/PA Unit's Acting Chief in responding to FOIA/PA requests received by the Unit. I also consult with the Unit's Acting Chief, who supervises the Unit's processing of FOIA and PA requests, and with the supervisory paralegals to confirm that determinations to

- 1 -

withhold or to release records of the Criminal Division have been made in accordance with the provisions of both the FOIA and the PA, and with Department of Justice regulations - 28 C.F.R. § 16.1 *et seq.*

3. I make this declaration on the basis of information acquired through the performance of my official duties.

## SUMMARY OF CORRESPONDENCE

4. By a letter dated January 18, 2006, addressed to the Department of Justice's Justice Management Division (JMD), the plaintiffs in the above-captioned action, attorneys affiliated with the Center for Constitutional Rights (CCR), made a request for records concerning the National Security Agency's (NSA) "warrantless electronic surveillance or warrantless physical searches of any person located within the United States from September 11, 2001 to the date of this FOIA [r]equest that references a [r]equesting [p]arty." *See* Exhibit 1.

5. On July 17, 2006, JMD referred the plaintiffs' request to the Criminal Division's FOIA/PA Unit. The referral was received by the FOIA/PA Unit on July 20, 2006. *See* Exhibit 2.

6. By a letter addressed to the plaintiffs dated November 16, 2006, the FOIA/PA Unit acknowledged receipt of the plaintiffs' January 18, 2006 request, and assigned it case number CRM-200600734F. The letter advised that the Criminal Division had no records reflecting warrantless physical searches in the United States had been located; however, the Criminal Division did have copies of the Justice Department's "Legal Authorities Supporting the Activities of the National Security Agency Described by the President," report dated January 19, 2006. The plaintiffs were notified that the report was already publicly available. The plaintiffs were also notified of their right to seek an administrative appeal. *See* Exhibit 3.

7.   The November 16, 2006 letter, as discussed above, also advised the plaintiffs that to the extent the Criminal Division should maintain records pertaining to its request, that information would have been compiled solely in conjunction with investigations of unauthorized disclosure of classified information concerning the Terrorist Surveillance Program, or in connection with pending criminal prosecutions or investigations. Moreover, the letter stated that such information, should it exist, would pertain to pending law enforcement investigations, and/or is the subject of a court sealing order, and that any responsive information would be withheld in full under Exemption 7(A) of the FOIA, which permits the withholding of "records or information compiled for law enforcement purposes, but only to the extent that the production of such law enforcement records or information . . . (A) could reasonably be expected to interfere with enforcement proceedings." 5 U.S.C. § 552(b)(7)(A). The letter also advised that FOIA Exemptions 1, 5, 6, (7)(C), and 7(D) may apply as overlapping exemptions to portions of the same material. *See id.*

8.   In a letter dated January 13, 2007, the plaintiffs filed an administrative appeal with the Office of Information and Privacy (OIP) alleging that the Criminal Division's November 16, 2006 response, "to either confirm of deny the existence or nonexistence of responsive records pursuant to Exemption 7(A), and potentially other exemptions[,]" was a refusal to respond to its request. *See* Exhibit 4.

9.   In response to the plaintiffs' administrative appeal dated February 5, 2007, OIP advised the plaintiffs that it affirmed the Criminal Division's action regarding his request on modified grounds. Specifically, OIP found that the Criminal Division properly withheld the information described in the November 16, 2006 letter, pursuant to 5 U.S.C. § 552(b)(7)(A). The plaintiffs were further advised that this provision concerns records or information complied for law enforcement purposes, the release

of which could reasonably be expected to interfere with enforcement proceedings. *See* Exhibit 5.

10. By a memorandum dated July 31, 2007, and received by the Criminal Division on August 14, 2007, OIP referred to the FOIA/PA Unit one record, consisting of three pages, which is of primary interest to the Criminal Division's Counterterrorism Section (CTS), for review and direct response to the plaintiffs. *See* Exhibit 6.

11. By a letter dated August 17, 2007, the FOIA/PA Unit notified the plaintiffs that it had processed the three-page record and determined to release the document in part. The portions withheld are the names of numerous CTS attorneys and contacts in the field. The plaintiffs were advised that the portions withheld in part where done so pursuant to Exemptions 6 and (7)(C) of the FOIA, as set forth in 5 U.S.C. § 552(b). The letter further advised the plaintiffs that although a complaint in the United States District Court regarding this FOIA request had already been filed, the FOIA/PA Unit is still obligated to inform the plaintiffs of its administrative appeal rights. Attached to the letter was a copy of the three-page record. *See* Exhibit 7.[1]

### Searches for Responsive Records

12. Upon receipt of plaintiffs' request from JMD, as discussed in paragraph 4 above, the Criminal Division's FOIA/PA Unit immediately searched its components and sections for responsive records. In conducting such searches, the FOIA/PA Unit relies on its many years of experience in searching for records responsive to FOIA requests. Based on that expertise, a search slip with a copy

---

[1]

The same three-page record was also the subject of a referral from OIP with respect to a FOIA request made by the American Civil Liberties Union (ACLU) and the Electronic Privacy Information Center (EPIC). The FOIA/PA Unit processed the three-page record in an identical manner, releasing the document in part to the ACLU and EPIC and withholding portions pursuant to Exemptions 6 and 7(C).

of the plaintiffs' request is transmitted to all sections that may have records responsive to the plaintiffs' request. Designated personnel employed by the pertinent sections undertake a search for responsive materials and report the results by means of individual, signed forms to the Criminal Division FOIA/PA Unit. Searches are to be undertaken in the same manner as if the Criminal Division were seeking the information for its own, official purposes. By this means, the Criminal Division aims to ensure that its searches fully meet the criteria established under the Freedom of Information Act and the Privacy Act and interpretative decisional law. In this case the FOIA/PA Unit requested that the Criminal Division's Office of Enforcement Operations' Title III Unit, the Counterterrorism Section, Domestic Security Section, and Counterespionage Section search their files for responsive records. To assist in directing their search the FOIA/PA Unit attached a copy of the plaintiffs' request to the search slip.[2]

13. I have personally reviewed all of the original, signed search sheets in this case, and have verified that all of the Criminal Division's sections, which may have relevant records, searched their files and have each indicated the extent to which it maintains records (or does not maintain) responsive to plaintiffs' request.

## JUSTIFICATION FOR WITHHOLDING OF INFORMATION

### Exemption 7(A)

14. FOIA exemption (7)(A) permits the withholding of:

> (7) records or information compiled for law enforcement purposes, but only to the extent that the production of such law enforcement records or information

---

[2] The ACLU and EPIC both made similar requests, which have resulted in similar law suits as the plaintiffs. *See ACLU, et al., v. DOJ,* 1:06cv00214 (HHK) (DDC); *EPIC v. DOJ,* 1:06cv00096(HHK) (DDC).

(A) could reasonably be expected to interfere with enforcement proceedings . . . .

5 U.S.C. § 552(b)(7)(A).

15. The records being withheld under Exemption 7(A) were compiled in conjunction with an on-going investigation into the unauthorized disclosure, or "leak," of classified information concerning the Terrorist Surveillance Program, involving allegations of violations of federal criminal law, specifically, 18 U.S.C. §§ 793 and 798, and related statutes. Accordingly, these record(s) meet Exemption 7's threshold requirement of "records or information compiled for law enforcement purposes."

16. In conducting its review of these records, the FOIA/PA Unit also consulted with the Division sections having an interest in these records. The records withheld pursuant to Exemption 7(A) relate to matters in an on-going Criminal Division investigation. The attorneys in charge of these matters have informed the FOIA/PA that release of these records could reasonably be expected to interfere with the on-going criminal proceedings. The expected interference with or harm to these proceeding is discussed in greater detail below in this declaration.

17. In consulting with the Criminal Division sections having an interest in these records, it became clear that any records in the possession of the Division that are responsive to the plaintiffs' request for records concerning the NSA's warrantless electronic surveillance or warrantless physical search programs would only be incidental to the leak investigation. In other words, to the extent the relevant Division sections have compiled any records responsive to the plaintiffs' request, such records are few in number and provide only the background for the Division's investigation into the unauthorized disclosure of this classified information.

18. The records withheld under Exemption 7(A) were reviewed for the purpose of

identifying categories into which these records would logically fall. Every effort was made to

identify meaningful categories that would provide sufficient insight into the nature of the

information contained in the records falling within a specific category, yet not so descriptive as to

reveal prematurely the very information that is statutorily protected.

19. The records withheld in full pursuant to Exemption 7(A) fall into three categories:

(1)    Classified copies of Federal Bureau of Investigation "302" Reports (specifically,

reports and summaries of witness interviews), containing attorney notes, which

further contain information related to potential subjects of the investigation and

which would reveal their identities as well as the focus of the investigation;

(2)    Unclassified documents relating to attorney work product and case development

matters, specifically attorney notes containing discussions of prospective and

investigative theories; discussions or analyses of individuals under investigation;

and discussions and analyses of allegations and legal issues concerning the subject

matter and areas of inquiry of the investigations, which would reveal (a) identities

of subjects of the investigation; (b) facts relevant to the investigation; and (c) facts

about the Terrorist Surveillance Program; and

(3)    A classified chronology of events related to the leak investigation, showing the

history of events leading up to the investigation as well as the initial and developing

focus of the investigation, and which also contains statements of potential witnesses

or subjects of the investigation.[3]

---

[3] To the extent the Criminal Division's leak investigation files contain information that
would not qualify for protection under Exemption 7(A) (typically, such items as media coverage
that would not indicate the focus of the investigation or publicly filed materials), it has been
determined that such information is not responsive to plaintiffs' requests. Therefore such

20.  The Criminal Division determined that disclosure of the information contained in the categories of documents described above could reasonably be expected to result in interference with the on-going proceedings.  For example, prematurely disclosing documents relating to witnesses in on-going inquiries and investigations could result in witness tampering or intimidation; could lead to alteration, tailoring, or construction of testimony; and could discourage the continued cooperation of these witnesses as well as of other knowledgeable individuals.  Likewise, disclosure of attorney work product and other documents related either to the government's initial inquiries or to the development of the government's cases could prematurely reveal the direction, focus and scope of the inquiries; the evidence developed to date and the reliance placed by the government on that evidence; the government's strategies; and the strengths and weaknesses of the government's cases.  Prematurely revealing such information could also provide the targets and subjects with undue insight into the development of the government's cases, could enable them to devise strategies to counter prosecutorial efforts, and could impair the government's ability to present its most effective case.  Finally, disclosure of evidentiary material obtained by the government could likewise provide targets and subjects with insight into the government's case against them; could enable such individuals to alter, tailor or destroy evidence, as well as to fabricate alibis, or could otherwise assist such individuals in circumventing the investigations.

21.  The Criminal Division has made every effort to provide clear and full descriptions of the categories of records being withheld pursuant to Exemption 7(A) and to identify the interference with or harm to the still pending proceeding that could reasonably be expected to

_____

limited, segregable information is not, in this instance, subject to disclosure.

- 8 -

occur from release of the information contained in these records. However, any attempt to describe these records in greater detail would lead to disclosure of the very information sought to be protected.

## JUSTIFICATION FOR WITHHOLDING OF INFORMATION

### Exemptions 5, 6, (7)(C), and 7(D)[4]

22.   The categories of documents identified above have further been withheld pursuant to other FOIA exemptions, as identified in the paragraphs below. As it is submitted that all of this information is currently fully protected pursuant to Exemption 7(A), as detailed above, these exemptions are included solely as additional bases for withholding should the Court, for any reason, at any time determine that such withheld information is not protected under Exemption 7(A).

23.   First, FOIA exemption 5 permits the withholding of:

> inter-agency or intra-agency memorandums or letters
> which would not be available by law to a party other
> than an agency in litigation with the agency. . . .

5 U.S.C. § 552(b)(5).

24.   This exemption authorizes the withholding of information that would not be subject to discovery in civil proceedings. Of the ordinary litigation privileges available to DOJ, the deliberative process privilege and the attorney work product doctrine are applicable here.

25.   Documents covered by the deliberative process privilege include those reflecting advisory opinions, recommendations and deliberations comprising part of a process by which government

---

[4] To the extent that the categories of documents identified in above are classified, FOIA exemption 1, 5 U.S.C. § 552(b)(1), provides further protection for these records. Exemption 1 protects information "(A) specifically authorized under criteria established by an Executive order to be kept secret in the interest of national defense or foreign policy and (B) are in fact properly classified pursuant to such Executive order." *See* 5 U.S.C. § 552(b)(1).

decisions and policies are formulated. An agency record must satisfy three conditions to qualify for the deliberative process privilege. It must be "inter-agency or intra-agency," 5 U.S.C. § 552(b)(5), that is, its source must be a government agency; and it must be both "predecisional" and "deliberative."

26. The attorney work product doctrine prevents the disclosure of documents prepared in anticipation of foreseeable litigation, even if no specific claim is contemplated. It applies so long as some articulable claim, likely to lead to litigation, has arisen. The doctrine, thus, protects information generated by legal counsel where the document can fairly be said to have been prepared or obtained because of the prospect of litigation. This privilege protects not only those materials prepared by attorneys, but extends to materials provides by others directly assisting attorneys in preparation for litigation.

27. All categories of documents identified in above constitute attorney work product. The classified FBI "302" reports with attorney notes, the unclassified attorney notes, and the classified chronology of events were all prepared in anticipation of foreseeable litigation, *i.e.*, the investigation and prosecution of a person or persons responsible for the unauthorized disclosure of classified information. As it is well settled that the attorney work product privilege protects all information, including factual information, no such information is required to be segregated for disclosure.

28. Many of the documents contained in the categories identified in above are also "intra-agency" records that reflect deliberations comprising part of a process by which government decisions about the leak investigation are being formulated. Thus, these records would also be properly protected by the deliberative process privilege.

29. Second, FOIA exemption 6 and (7)(C) permit the withholding of:

(6)     personnel and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy;

(7)    records or information compiled for law enforcement purposes, but only to the extent that the production of such law enforcement records or information ...

    (C)    could reasonably be expected to constitute an unwarranted invasion of personal privacy . . .

5 U.S.C. §§ 562(b)(6) and (7)(C).

30.  These interrelated exemptions authorize withholding of information which, if disclosed, would invade personal privacy.  Exemption 6 protects personnel and medical files and similar files, the disclosure of which would constitute a clearly unwarranted invasion of personal privacy.  5 U.S.C. § 552(b)(6).  Similarly, FOIA Exemption (7)(C) protects records or information compiled for law enforcement purposes, production of which could reasonably be expected to constitute an unwarranted invasion of personal privacy.  5 U.S.C. § 55(b)(7)C).

31.  Exemptions 6 and (7)(C) further apply to aspects of the documents identified by category in paragraph 19 to the extent these records contain the names of individuals who are connected with terrorism-related investigations and other related law enforcement functions.  In addition, the redactions to the three-page document referred by OIP were made under these exemptions to protect private information from release.  *See* Exhibit 7.

32.  Moreover, the overarching law enforcement purpose for which these records were compiled was to investigate the unauthorized disclosure of classified information, as previously discussed.  As such, these items plainly also meet Exemption 7's threshold requirement of "records or information compiled for law enforcement purposes."

33.  Exemptions 6 and (7)(C) each requires a balancing of the individuals' right to personal privacy against the public's interest in shedding light on an agency's performance of its statutory duties. In undertaking this evaluation, the United States Supreme Court has expressly instructed that a

- 11 -

requester's purpose in making the request and proposed use of the requested information have no bearing on the balancing test.

34. It has long been recognized that individuals who are associated with federal criminal investigations — either as subjects or interviewees — have an inherent privacy interest in that fact not being publicly divulged. Additionally, identifying federal employees assigned to high profile criminal investigations, including law enforcement officers, could reasonably be expected to subject these individuals to harassment or reprisals as well as increase the difficulties of duties which require a low profile.

35. Revealing such information will add nothing to the public's understanding of how the Department of Justice works or how it performs its statutory duties, the only factors appropriately weighed on the public interest side of the balance. The FOIA/PA Unit has determined that the privacy interest that is protected by refusing to release the names and identifying information clearly outweighs the nonexistent public interest that might be served by disclosure. Since such disclosure would be "clearly unwarranted" as required by 5 U.S.C. § 552(b)(6), which is the higher of the two standards of invasion of privacy, the release of this information also would be "unwarranted" as required by 5 U.S.C. § 552(b)(7)(C).

36. Finally, FOIA exemption (7)(D) permits the withholding of:

(7)  records or information compiled for law enforcement purposes, but only to the extent that the production of such law enforcement records or information ...

(D)  could reasonably be expected to disclose the identity of a confidential source, including a State, local, or foreign agency or authority or any private institution which furnished information on a confidential basis, and, in the case of a record or information compiled by criminal law enforcement authority in the course of a criminal investigation or by an agency conducting a lawful national security intelligence investigation, information furnished by a confidential source. . . .

5 U.S.C. § 552(b)(7)(D).

37. Exemption 7(D) provides the most comprehensive protection of all of the law enforcement exemptions in that it exists to ensure that confidential sources are not lost through retaliation against the sources for past disclosure or because of the sources' fear of future disclosure. In instances where no express promise of confidentiality has been extended to sources, the source's status as a confidential source depends on the nature of the crime and the source's relation to it.

38. Portions of the records identified above, which as part of the leak investigation were compiled for law enforcement purposes, also include the identities of confidential sources, the disclosure of which could conceivably provoke retaliation against the sources. There can be no doubt that when a criminal investigation is characterized as involving "a serious issue" by a White House spokesperson, the nature of the crime is of such consequence that anyone with relevant knowledge would expect that their statements would not be publicly divulged unless and until such disclosure is absolutely essential *for law enforcement purposes*. As noted, the identities of these sources are also protected under Exemptions 6 and 7(C) on the basis of their substantial privacy interests (and, presently, under Exemption 7(A), as well).

39. As the Criminal Division's investigation into the unauthorized disclosure of classified information about the Terrorist Surveillance Program is plainly a lawful criminal investigation, all information furnished by any confidential source — regardless of whether or not it could lead to identification of the source — is also exempt from disclosure pursuant to Exemption 7(D).

I declare under penalty of perjury that the foregoing is true and correct.


Executed on:  April 23, 2008 

KATHY HSU

*FOIA*

*2006-0073405*

January 18, 2006

**VIA OVERNIGHT DELIVERY**

Department of Justice
Patricia D. Harris, Management Analyst
FOIA/PA Mail Referral Unit
Department of Justice
Room 1070, National Place Building
Washington, DC 20530-0001

Re: <u>Freedom of Information Act Request (Expedited Processing Requested)</u>

Dear Ms. Harris:

This letter constitutes a Request for records pursuant to the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, *et seq.*, and corresponding regulations. This Request is submitted on behalf of the Center for Constitutional Rights, its staff and Board attorneys, and the volunteer, cooperating, and co-counsel attorneys and their staff (collectively, "Requesting Parties" or "Requesters") listed in Appendix A attached hereto. A similar request has been submitted to the following agencies, departments and units of the United States government: the National Security Agency, the Federal Bureau of Investigation, the Defense Intelligence Agency, the Central Intelligence Agency, the United States Army, the United States Navy, and the Department of Homeland Security.

1.    **Requesting Parties**

The Center for Constitutional Rights ("CCR") is a non-profit, public interest organization that engages in litigation, public advocacy and educational programs on behalf of those who seek to challenge governmental misconduct, racial injustice, social and economic injustice and violations of international human rights law in U.S. courts, the courts of other countries and other international bodies and courts. For the past four years, lawyers and advocates at CCR have represented citizens and noncitizens identified as alleged terrorists and/or suspected of having affiliations with terrorists. These persons have been detained in places as diverse as the Metropolitan Detention Center in Brooklyn, New York; the Passaic County Jail in Patterson New Jersey; the detention center at the U.S. Naval Station in Guantánamo Bay, Cuba; the Far Falestin Branch Detention Facility of Syrian Military Intelligence in Damascus, Syria; the Sednaya Prison in Sednaya, Syria; Abu Ghraib Prison in Baghdad, Iraq; and other U.S. facilities, where they were subject to physical and psychological abuse or torture, or unlawful rendition.

This Request is made on behalf of the following CCR staff members, staff attorneys, volunteer attorneys, consultants, and Board Members who have or may have communicated with clients, families of clients, attorneys and human rights activists in foreign countries: William Goodman (a.k.a., Bill Goodman), Barbara Olshansky, Gitanjali Gutierrez (a.k.a., Gita Gutierrez), Tina Monshipour Foster (Tina Foster), Seema Ahmad, Maria LaHood, Jennifer Green (a.k.a., Jennie

CRM EXHIBIT 1      JUL 2 0 2006

Green), Shayana Kadidal (a.k.a., Shane Kadidal), Rachel Meeropol, Steven MacPherson Watt, Matthew Strugar (a.k.a., Matt Strugar) Marc Krupanski, Kelly McAnnany, Claire Tixeire, Michael Ratner, Jules Lobel, David Cole, Rhonda Copelon, Peter Weiss, Abdeen Jabara, Marilyn Clement, Charles Hay-Maestre (a.k.a., Charlie Hay-Maestre or Charley Hay-Maestre), and Jeff Hogue.

This Request is also made on behalf of 108 *pro bono* volunteer, cooperating and co-counsel attorneys and their staff throughout the United States who have worked with CCR on a variety of cases, primarily involving petitions for writs of *habeas corpus* filed on behalf of persons detained at the U.S. Naval Station in Guantánamo Bay, Cuba. These *pro bono* attorneys and their staff are listed in Appendix A.

### 2.    Definitions

For the purpose of this Request, the following definitions shall apply:

A.    "Electronic surveillance" - refers to

  (a)    the acquisition by an electronic, mechanical, or other surveillance device of the contents of any wire, radio or other communication in any form or format of persons located within the United States obtained without benefit of warrant, including but not limited to any and all wiretaps, recordings, surveillance and/or interceptions of telephonic conversations and/or transactions (including cellular and satellite phone conversations and/or transactions), interception of e-mail conversations, or other written communications from public or non-public web sites or computer networks;

  (b)    the acquisition by an electronic, mechanical, or other surveillance device of non-content records obtained without benefit of warrant, from persons located within the United States that identify the existence of any communications, including but not limited to pen registers; and

  (c)    the warrantless installation or use of an electronic, mechanical or other surveillance device for monitoring to acquire information, other than from a wire or radio communication;[1]

B.    "Records" - refers to all "records" as defined by the FOIA, 5 U.S.C. § 522(f)(2), including but not limited to existing memoranda, agreements, notes, orders, policies, procedures, protocols, written or email correspondence, faxes, files, reports, rules, technical manuals, technical

---

[1] This request does not include surveillance authorized pursuant to Sections 1802 or 1822(a) of the Foreign Intelligence Surveillance Act. 50 U.S.C. §§ 1802 or 1822(a).

specifications, training manuals, studies, analyses, audio or video recordings, transcripts of such recordings, data, papers, guidance, guidelines, evaluations, instructions, photographs, films, recordings, books, accounts, communications and all retrievable information in computer storage, regardless of form of the record as a digital, audio, written, video, or other record;

C.    "Electronic surveillance" "of persons located within the United States" - refers to records obtained through electronic surveillance of any communications by or to an individual, individuals, group or groups within the United States, regardless of whether the communication originated inside or outside the United States.

### 3.    Records Sought

CCR and the other Requesting Parties seek disclosure of records in the possession of any office of the Department of Justice ("DOJ") and any agency, organization or corporation holding records at the behest of the National Security Agency ("NSA") concerning any warrantless electronic surveillance or warrantless physical searches of any person located within the United States from September 11, 2001 to the date of this FOIA Request that references a Requesting Party. In addition, CCR and other Requesters seek the disclosure of records concerning the development, approval, and implementation of the Executive's warrantless electronic surveillance and/or warrantless physical search program within the United States.

In order to ascertain the extent of the Executive's policies and practices concerning warrantless electronic surveillance and/or warrantless physical searches of persons located within the United States, Requesting Parties seek the following records:

1.    All records obtained through or relating to ongoing or completed warrantless electronic surveillance or physical searches of persons located within the United States, including logs and indexes, regarding or concerning any Requesting Party and/or records of warrantless electronic surveillance or physical searches of persons located within the United States that reference, list, or name any Requesting Party;

2.    Any Executive Orders authorizing the warrantless electronic surveillance or physical searches of persons located within the United States referenced in paragraph (1) above;

3.    All records establishing, discussing or referencing the policies, procedures, guidelines, or practices of the DOJ or NSA used to (a) identify the individuals or organizations subject to warrantless electronic surveillance or warrantless physical searches within the United States; (b) gather information through warrantless electronic surveillance or warrantless physical searches within the United States; (c)

share this information with other U.S. government agencies and with foreign governments or the agencies or agents thereof; (d) share this information as a basis for a warrant request by the U.S. Department of Justice to the Foreign Intelligence Surveillance Act Court; (e) destroy this information; and/or (f) consult with or secure approval from the U.S. Department of Justice or other departments, agencies or Executive officials prior to conducting warrantless electronic surveillance or warrantless physical searches of persons located within the United States;

4. Any records stating, discussing, or referencing the legality or propriety of warrantless electronic surveillance or warrantless physical searches of persons located within the United States, including but not limited to policy statements, memoranda, analyses, explanations, or authorizations;

5. Any internal DOJ evaluation, assessment, or audit of any DOJ or NSA program implementing warrantless electronic surveillance or warrantless physical searches of persons located within the United States;

6. Any records containing concerns or comments by judges, national security officials, intelligence officials, government lawyers, or other about the DOJ or NSA warrantless electronic surveillance program; and

7. All records reflecting budget allocations for all warrantless electronic surveillance or warrantless physical search programs of persons located within the United States.

## 4.    Requesters Are Entitled to Expedited Processing

Expedited processing is warranted when an organization "primarily engage[s] in disseminating information in order to inform the public about an actual or alleged Federal Government activity" has an "urgent need" to secure the records. 32 C.R.F. § 286.4(d)(3)(ii). The Center for Constitutional Rights is an organization "primarily engaged in disseminating information" about government misconduct through the work of its staff, Board, volunteer, cooperating, and co-counsel attorneys. As described above, CCR engages in litigation, public advocacy and educational programming to defend constitutional and human rights law. Dissemination of information to the public is a crucial component of CCR's mission and work. Specifically, CCR publishes reports and newsletters, maintains a public website, issues press releases, and offers educational materials and programming to the pubic within the United States and internationally. Additionally, CCR's staff, board, and volunteer, co-counsel, and cooperating attorneys further disseminate CCR's information to their local and national communities through a variety of means, including their own press releases, interviews, reports, and educational programming.

The records in question involved the NSA and/or the DOJ's actual and alleged warrantless electronic surveillance within the United States, in apparent violation of the rights guaranteed by the First, Fourth, Fifth and Fourteenth Amendments to the United States Constitution. FOIA requests

bearing upon alleged Constitutional violations require an immediate response in order to cease any ongoing violations and to prevent future ones.

A requester may also demonstrate compelling need by a showing that the information sought is "urgently needed" and involves a "breaking new story of general public interest." 32 C.R.F. § 286.4(d)(3)(iii). The instant Request clearly meets these standards in light of the current public scrutiny and impending legislative hearings in response to the disclosure of the Executive's policies and practices involving warrantless electronic surveillance of persons within the United States. *See, e.g.*, Jennifer Loven, *Report of NS Spying Prompts Call for Probe*, San Fran. Chron., Dec. 16, 2005 (stating that Senator Arlen Specter, chairman of the Senate Judiciary Committee, promised that the Senate would conduct hearings to investigate the NSA's warrantless electronic surveillance practices); *see also* Christine Hauser, *Bush Declines to Discuss Report on Eavesdropping*, N.Y. Times, Dec. 16, 2005; Maura Reynolds & Greg Miller, *Congress Wants Answers About Spying on U.S. Citizens*, Pitts. Post-Gazette, Dec. 16, 2005; James Risen & Eric Lichtblau, *Bush Lets US. Spy on Callers Without Courts*, N.Y. Times, Dec. 16, 2005; Steven Thomma, *Spying Could Create Backlash on Congress; Public Reaction Hinges on Identity of Targets*, San Jose Mercury News, Dec. 16, 2005; Caren Bohan & Thomas Ferraro, *Bush Defends Eavesdropping and Patriot Act*, ABC News, Dec. 17, 2005; Dan Eggen & Charles Lane, *On Hill, Anger and Calls for Hearing Greet News of Stateside Surveillance*, Wash. Post, Dec. 17, 2005; Jennifer Loven, *Bush Defends Secret Spying in U.S.*, San Fran. Chron., Dec. 17, 2005; John Diamond, *NSA's Surveillance of Citizens Echoes 1970s Controversy*, USA Today, Dec. 18, 2005; Barton Gellman & Dafna Linzer, *Pushing the Limits of Wartime Powers*, Wash. Post, Dec. 18, 2005; James Kuhnhenn, *Bush Defends Spying in U.S.*, San Jose Mercury News, Dec. 18, 2005; Fred Barbash & Peter Baker, *Gonzales Defends Eavesdropping Program*, Wash. Post, Dec. 19, 2005; James Gerstenzang, *Bush Vows to Continue Domestic Surveillance*, L.A. Times, Dec. 19, 2005; Todd J. Gillman, *Bush Assails Disclosure of Domestic Spying Program*, San Jose Mercury News, Dec. 19, 2005; Terrence Hunt, *Bush Says NSA Surveillance Necessary, Legal*, Wash. Post, Dec. 19, 2005; David Stout, *Bush Says U.S. Spy Program is Legal and Essential*, N.Y. Times, Dec. 19, 2005; George E. Condon, *Bush Says Spying Is Needed to Guard US*, San Diego Union Trib., Dec. 20, 2005; Michael Kranish, *Bush Calls Leak of Spy Program Shameful*, Bost. Globe, Dec. 20, 2005; Jeff Zeleny, *No 'Unchecked Power' in Domestic Spy Furor*, Chi. Trib., Dec. 20, 2005; Douglas Birch, *NSA's Methods Spur Controversy*, Balt. Sun, Jan. 8, 2006; Dan Eggen, *Probe Set in NSA Bugging*, Wash. Post, Jan. 11, 2006; David E. Sanger, *In Shift, Bush Says He Welcomes Inquiry on Secret Wiretaps*, N.Y. Times, Jan. 11, 2006; Scott Shane, *N.S.A. Audit of Spying is Not Assessing Legality*, N.Y. Times, Jan. 11, 2006; Jessica Yellin, *Ex-CIA Lawyer: No Legal Basis for NSA Spying*, ABC News, Jan. 11, 2006; James Gerstenzang, *Bush Now Cites Value of Spying Inquiry*, L.A. Times, Jan. 12, 2006; Sean Sullivan, *Markey Bashes Surveillance Program at Forum*, Arlington (MA) Advocate, Jan. 12, 2006.

Finally, pursuant to the applicable regulations and statue, CCR and the other Requesters expect the DOJ's determination of this Request for expedited processing within 10 calendar days and the determination of this Request for documents within 20 days. *See* 32 C.F.R. § 286.4(d)(1), (3); 5 U.S.C. § 552(a)(6)(A)(i).

**5.    Requesting Parties Are Entitled To A Fee Waiver**

Requesting Parties are entitled to waiver of all costs pursuant to 5 U.S.C. § 552(a)(4)(A)(iii) because "disclosure of the requested records is in the public interest" and "likely to contribute significantly to the public understanding of the operations or activities of the government and is not primarily in the commercial interest of the requester." As indicated above, the significant media attention focused on the NSA's policy of warrantless electronic surveillance reflects the extraordinary public interest in the records Requesters seek. Disclosure of the requested information would reveal the extent of the NSA's warrantless electronic surveillance and/or warrantless physical searches of persons located within the United States, raising weighty constitutional questions.

Further, disclosure of the requested records will aid the public's understanding of the President's decision to disregard existing restraints on the exercise of Executive power, including the minimal oversight provided by the Foreign Intelligence Surveillance Act courts.

Finally, as a non-profit legal, advocacy, and educational organization, CCR and its staff, Board, and volunteer, co-counsel and cooperating attorneys are well-suited to disseminate publicly the information obtained from this Request. Because this Request satisfies the statutory criteria, a fee waiver would fulfill Congress's legislative intent in amending FOIA. *See Judicial Watch, Inc. v. Rossotti*, 326 F.3d 1309, 1312 (D.C. Cir. 2003) ("Congress amended FOIA to ensure that it be liberally construed in favor of wavers for noncommercial requesters." (internal quotation marks omitted)).

If the fee waiver is not granted, however, we request that the fees assigned be limited to "reasonable standard charges for document duplication" pursuant to 5 U.S.C. § 552(a)(4)(A)(ii)(II) ("[F]ees shall be limited to reasonable standard charges for document duplication when records are not sought for commercial use and the request is made by . . . .a representative of the news media . . ." and 32 C.F.R. § 286.28(e) (stating that search and review fees shall not be charges to "representatives of the news media"). If appropriate after reviewing the results of the Request, CCR intends to "disseminate the information" disclosed by this Request "among the public" through the media channels described above. CCR meets the definition of a "representative of the news media" because it is "an entity that gathers information of potential interest to a segment of the public, uses its editorial skills to turn raw material into a distinct work, and distributes that work to an audience." *Nat'l Security Archive v. Dep't of Defense*, 880 F.2d 1381, 1387 (D.C. Cir. 1989); *see also Judicial Watch Inc., v. Rossotti*, 326 F.3d 1309, 1310 (D.C. 2003) (finding that a non-profit, public interest organization that distributed a newsletter and published books was a "representative of the media" for purposes of FOIA). Accordingly, any fees imposed for the processing of this Request should be limited pursuant to these regulations.

*       *       *       *

If this Request is denied in whole or in part, Requesters ask that the DOJ justify all deletions by reference to specific exemptions of FOIA. Requesters expect the DOJ to release all segregable portions of otherwise exempt material, and reserve the right to appeal a decision to withhold any records or to deny the within application for expedited processing and waiver of fees.

Thank you for your consideration of this Request. Kindly direct all future responses and furnish all disclosed records to William Goodman, Legal Director, Center for Constitutional Rights, 666 Broadway, 7th floor, New York, N.Y. 10012, telephone (212) 614-6427.

Under penalty of perjury, I hereby affirm that the information provided supporting the Request and the attached Appendix are true and correct to the best of my knowledge and belief.

Signed by: 

William Goodman, Esq.
Legal Director
Center for Constitutional Rights
666 Broadway, 7th Floor
New York, NY 10012
(212) 617-6427

*L:M:0:734P*

**U.S. Department of Justice**
Justice Management Division

**Freedom of Information Act/Privacy Act Referral/Action Slip**

Clerk:  M. Barnes

Date:  JUL 1 7 2006

Organization:  JMD/FASS

Building & Room:  LOC, 113

| To | From | | To | From |
|----|----|----|----|----|
| ☑ | ☐ | Office of Information & Privacy | ☐ | ☐ | Immigration Review, Executive Office for |
| | | Office of the Attorney General | ☐ | ☐ | Inspector General, Office of |
| | | Office of the Deputy Attorney General | ☐ | ☐ | Intelligence Policy and Review, Office of |
| | | _____ | ☐ | ☐ | INTERPOL, U.S. National Central Bureau |
| | | _____ | | | |
| ☐ | ☐ | Antitrust Division | ☐ | ☐ | Justice Management Division Staff: _____ |
| ☐ | ☐ | Bureau of Alcohol, Tobacco, Firearms and Explosives | ☐ | ☐ | Justice Programs, Office of |
| ☐ | ☐ | Civil Division | ☑ | ☐ | Legal Counsel, Office of |
| ☐ | ☐ | Civil Rights Division | ☐ | ☐ | National Drug Intelligence Center |
| ☐ | ☐ | Community Relations Service | ☐ | ☐ | Pardon Attorney, Office of |
| ☐ | ☐ | Community Oriented Policing Services | ☐ | ☐ | Professional Responsibility Advisory Office |
| ☑ | ☐ | Criminal Division | ☐ | ☐ | Professional Responsibility, Office of |
| ☐ | ☐ | Dispute Resolution, Office of | ☑ | ☐ | Solicitor General, Office of |
| ☐ | ☐ | Drug Enforcement Administration | ☐ | ☐ | Tax Division |
| ☐ | ☐ | Environment & Natural Resources Division | ☐ | ☐ | U.S. Attorneys, Executive Office for |
| ☐ | ☐ | Federal Bureau of Prisons | ☐ | ☐ | U.S. Marshals Service |
| ☑ | ☐ | Federal Bureau of Investigation | ☐ | ☐ | U.S. Parole Commission |
| ☐ | ☐ | Federal Detention Trustee, Office of | ☐ | ☐ | U.S. Trustees, Executive Office for |
| ☐ | ☐ | Foreign Claims Settlement Commission | ☐ | ☐ | _____ |

Requester:  William Goodman, Esq.

Ref: _____  JUL 2 0 2006

Date of Request:  January 18, 2006

Received By:  FOIA/PA Mail Referral Unit _____  Type of Request:  FOI/PA

Remarks:  Requester advised of this referral.

CRM EXHIBIT 2

FORM JMD-481
Rev. Mar. 2004



**U.S. Department of Justice**

Criminal Division

---

*Office of Enforcement Operations*                    *Washington, D.C. 20530*

TJM:KS:ss
typed 08-25-06                    NOV 1 6 2006

CRM-200600734F

Mr. William Goodman, Esq.
Legal Director
Center for Constitutional Rights
666 Broadway, 7th Floor
New York, NY 10012-2317

Dear Mr. Goodman:

　　This is in response to your request dated January 18, 2006, (received by this Unit on July 20, 2006), for records concerning any warrantless electronic surveillance or warrantless physical searches of any person located within the United States from September 11, 2001, to the date of your FOIA Request that references a Requesting Party and records concerning the development, approval and implementation of the Executives's warrantless electronic surveillance and/or warrantless physical search program within the United States. Your request has been assigned file number 200600734F.

　　In response to your request, the Criminal Division has no records reflecting warrantless physical searches in the United States. The Criminal Division does have copies of the Justice Department report dated January 19, 2006, entitled "Legal Authorities Supporting the Activities of the National Security Agency Described by the President," which is publicity available.

　　To the extent the Criminal Division maintains any other information related to your request such information would have been compiled solely in connection with an investigation of the unauthorized disclosure of classified information concerning the Terrorist Surveillance Program (the "leak investigation") or in connection with other pending criminal prosecutions or investigations. (This response should not be interpreted as confirmation that any defendants who have alleged that they were subject to the Terrorist Surveillance Program were, in fact, the subject of such surveillance.)

　　Inasmuch as all of this information pertains to pending law enforcement investigations and, in some instances, is subject to a court sealing order, any responsive information is being withheld in full under Exemption 7 (A) of the FOIA, which permits the withholding of "records

CRM EXHIBIT 3 **FILE COPY**

or information compiled for law enforcement purposes, but only to the extent that the production of such law enforcement records or information... (A) could reasonably be expected to interfere with enforcement proceedings." 5 U.S.C. § 552 (b) (7) (A).

Please be further advised that additional, overlapping exemptions may apply to portions of this same material including, but not limited to the following FOIA exemptions set forth in 5 U.S.C. 552 (b):

(1)    which permits the withholding of information properly classified pursuant to Executive Order;

(5)    which permits the withholding of inter-agency or intra-agency memorandums or letters which reflect the predecisional, deliberative processes of the department, and/or which consist of attorney work product prepared in anticipation of litigation;

(6)    which permits the withholding of personnel and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy;

(7)    which permits the withholding of records or information compiled for law enforcement purposes, but only to the extent that the production of such law enforcement records or information...

(C)    could reasonably be expected to constitute an unwarranted invasion of personal privacy and

(D)    could reasonably be expected to disclose the identity of a confidential source, including a State, local or foreign agency or authority or any private institution which furnished information on a confidential basis, and, in the case of a record or information compiled by criminal law enforcement authority in the course of a criminal investigation or by an agency conducting a lawful national security intelligence investigation, information furnished by a confidential source.

If you consider this response to be a denial of your request, you have a right to an administrative appeal of this determination. Your appeal should be addressed to: Office of Information and Privacy, United States Department of Justice, 1425 New York Ave., NW, Suite 11050, Washington, DC 20530-0001. Both the envelope and the letter should be clearly marked

with the legend "FOIA Appeal." Department regulations provide that such appeals must be received by the Office of Information and Privacy within sixty days of the date of this letter. 28 C.F.R. 16.9. If you exercise this right and your appeal is denied, you also have the right to seek judicial review of this action in the federal judicial district (1) in which you reside, (2) in which you have your principal place of business, (3) in which the records denied are located, or (4) for the District of Columbia. If you elect to file an appeal, please include, in your letter to the Office of Information and Privacy, the Criminal Division file number that appears above your name in this letter.

Sincerely,

Thomas J. McIntyre, Chief
Freedom of Information/Privacy Act Unit

3

04/17/2008 16:03 FAX  2025141009      DOJ-OIP                                    ☒002/019

*handwritten:* /Rec a  /-16-07

*handwritten:* 07-0469

*handwritten:* FOIA
(D)
CRM

# ℞centerforconstitutionalrights

666 Broadway
New York, New York 10012
212 614 6464

January 13, 2007

*handwritten:* want
expedite
→ Josh

**VIA FACSIMILE AND OVERNIGHT MAIL**

Director
Office of Information and Privacy
United States Department of Justice
1425 New York Avenue NW, Suite 11050
Washington, DC 20530-0001

Re: FOIA Appeal 200600734F

Dear Director,

        This letter constitutes an appeal to the DOJ Office of Information and Privacy's November 16, 2006 response (*hereinafter* DOJ Response, attached as Exhibit A) to our January 18, 2006 FOIA request (*hereinafter* CCR FOIA Request, attached as Exhibit B) for information related to the Terrorist Surveillance Program. In its letter, the DOJ refused to either confirm or deny the existence or non-existence of records responsive to most of the CCR FOIA Request. In the main, the DOJ asserted vague claims that any responsive records would be properly withheld pursuant to Exemption 7(A), and perhaps also pursuant to other exemptions including, "*but not limited to*" Exemptions 1, 5, 6, 7(A), and 7(D).  5 U.S.C. § 552 (b); DOJ Response ¶ 5. The DOJ only responded to a small section of the request, asserting that records reflecting warrantless physical searches in the United States. Requesters appeal the refusal to either confirm or deny the existence or non-existence of responsive records pursuant to Exemption 7(A), and potentially other exemptions.

        Pursuant to 5 U.S.C. § 552(a)(6)(A)(i) and 5 U.S.C. § 552(a)(6)(F), we appeal the DOJ's denial of our request for certain responsive records.  Furthermore, pursuant to 5 U.S.C. § 552(a)(6)(A)(i), we appeal the DOJ's refusal to provide a determination to our request within the statutory time limit because the date of your response is beyond the twenty-day statutory time limit.

        In our January 18, 2006 request, attached as Exhibit B, we sought the following records:

1. All records obtained through or relating to ongoing or completed warrantless electronic surveillance or physical searches of persons located within the United States, including

1

CRM EXHIBIT 4

logs and indexes, regarding or concerning any Requesting Party and/or records of warrantless electronic surveillance or physical searches of persons located within the United States that reference, list, or name any Requesting Party;

2. Any Executive Orders authorizing the warrantless electronic surveillance or physical searches of persons located within the United States referenced in paragraph (1) above;

3. All records establishing, discussing or referencing the policies, procedures, guidelines, or practices of the CIA or NSA used to (a) identify the individuals or organizations subject to warrantless electronic surveillance or warrantless physical searches within the United States; (b) gather information through warrantless electronic surveillance or warrantless physical searches within the United States; (c) share this information with other U.S. government agencies and with foreign governments or the agencies or agents thereof; (d) share this information as a basis for a warrant request by the U.S. Department of Justice to the Foreign Intelligence Surveillance Act Court; (e) destroy this information; and/or (f) consult with or secure approval from the U.S. Department of Justice or other departments, agencies or Executive officials prior to conducting warrantless electronic surveillance or warrantless physical searches of persons located within the United States;

4. Any records stating, discussing, or referencing the legality or propriety of warrantless electronic surveillance or warrantless physical searches of persons located within the United States, including but not limited to policy statements, memoranda, analyses, explanations, or authorizations;

5. Any Department of Justice evaluation, assessment, or audit of any NSA program implementing warrantless electronic surveillance or warrantless physical searches of persons located within the United States;

6. Any internal CIA evaluation, assessment, or audit of any CIA or NSA program implementing warrantless electronic surveillance or warrantless physical searches of persons located within the United States;

7. Any records containing concerns or comments by judges, national security officials, intelligence officials, government lawyers, or other about the NSA warrantless electronic surveillance program; and

8. All records reflecting budget allocations for all warrantless electronic surveillance or warrantless physical search programs of persons located within the United States.

In a February 10, 2006 letter, the DOJ initially requested additional authorization and identifying information from Requestees. However, in a subsequent telephone communication, summarized in a letter from CCR dated June 21, 2006, DOJ confirmed that the initial documentation submitted was sufficient to process the FOIA request. On July 17, 2006, the DOJ stated that it forwarded our request to the relevant DOJ components, including the Criminal Division.

2

In its November 16, 2006 letter, DOJ stated:

> To the extent the Criminal Division maintains any other information [other than
> records reflecting warrantless physical searches in the United States] related to
> your request such information would have been compiled solely in connection
> with an investigation of the unauthorized disclosure of classified information
> concerning the Terrorist Surveillance Program . . . or in connection with other
> pending criminal prosecutions or investigations. . . . In as much as all of this
> information pertains to pending law enforcement investigations and, in some
> instances, is subject to a court sealing order, any responsive information is being
> withheld in full under Exemption 7(A) of the FOIA. . .

DOJ Response ¶¶ 3-4. The DOJ Response further advises that "additional overlapping
exemptions may apply to portions of this same material including, but not limited to"
Exemptions 1, 5, 6, 7(C) and 7(D). DOJ Response ¶ 5.

Your office justifies its "Glomar response"[1] primarily under the seventh exemption from
FOIA's disclosure obligation. Your office claimed that under the seventh exemption from
FOIA, responsive information could be withheld because FOIA "permits the withholding of
'records or information compiled for law enforcement purposes, but only to the extent that the
production of such law enforcement records or information . . . (A) could reasonably be expected
to interfere with enforcement proceedings.'" DOJ Response ¶ 4, citing 5 U.S.C. § 552 (b)(7)(A).
Your office further claims, but does not elaborate, that "additional, overlapping exemptions"
may apply, including FOIA exemptions permitting the withholding of "information properly
classified pursuant to Executive Order," 5 U.S.C. 552(b)(1); "inter-agency or intra-agency
memorandums or letters which reflect the predecisional, deliberative processes of the
department, and/or which consist of attorney work product prepared in anticipation of litigation,"
5 U.S.C. 552(b)(5); "personnel and medical files and similar files the disclosure of which would
constitute a clearly unwarranted invasion of personal privacy," 5 U.S.C. 552(b)(6); "records or
information compiled for law enforcement purposes, but only to the extent that the production of
such law enforcement records or information . . . could reasonably be expected to constitute an
unwarranted invasion of personal privacy and could reasonably be expected to disclose the
identity of a confidential source . . ." 5 U.S.C. 552(b)(7). Requesters now appeal this Glomar
response.

*Impropriety of Glomar Response*

Your office's Glomar response is highly improper because the fact of the existence or
nonexistence of these records cannot reasonably be said to be "expected to interfere with
enforcement proceedings." Public censure of the Executive's domestic warrantless surveillance
program has been widespread since the program was exposed by the *New York Times* in

---

[1] An agency's "Glomar response" neither admits nor denies that it possesses a requested document. *See Phillippi v.
CIA*, 546 F.2d 1009 (D.C. Cir. 1976).

December 2005.[2]  Substantial concerns about the program's legality and propriety have been expressed by the general public,[3] former government officials,[4] legal organizations,[5] the judiciary,[6] and Congress.[7]  Disclosure of the existence of records related to warrantless domestic surveillance of the Requesters would not interfere with enforcement proceedings, but would raise substantial concerns that the Executive has acted lawlessly by, for example, intruding upon privileged attorney-client communications.

Requesters are lawyers and professionals associated with legal organizations, human rights advocacy organizations, private law firms, federal public defender offices, and law schools.  Each requester engages and has engaged in some overseas communications with clients, foreign co-counsel, or other colleagues, often concerning privileged attorney-client communications or attorney work-product.  The implications of your office's refusal to disclose the fact of the existence or nonexistence of any surveillance records of Requesters is that attorneys representing the United States may have access to confidential information between adverse parties and their clients or co-counsel, and may use evidence gathered by such monitoring to prepare the government's case, or even in court.

The possibility of intrusion upon attorney-client communications raises serious ethical and legal concerns.  The "attorney-client privilege is the oldest of the privileges for confidential communications known to the common law."  Upjohn Co. v. United States, 449 U.S. 383, 389 (1981).  It functions to "encourage full and frank communication between attorneys and their client and thereby promote broader public interests in the observance of law and administration of justice."  Id.  Attorneys and law firms have an ethical duty not to "[e]ngage in conduct that is prejudicial to the administration of justice."  Model Code of Professional Responsibility, Disciplinary Rule 1-102. The Department of Justice, once characterized by Chief Justice Berger as "the world's largest law firm," is no exception.  United States v. Sells Engineering, Inc., 463 U.S. 418, 471 (1983) (Burger, C.J., dissenting).  Your offices' refusal to confirm or deny whether surveillance is occurring which could lead to such violations within the Department of

---

[2] James Risen & Eric Lichtblau, *Bush Lets U.S. Spy on Callers Without Courts*, NY Times, Dec. 16, 2005, at A1, A16.

[3] See, e.g., Editorial, *End Run the End Run: President Wrong to Bypass Courts in Ordering Domestic Wiretaps*, Columbus Dispatch, Jan. 14, 2006, at A12; Frank James, *Gore Accuses President of Breaking the Law*, Chi. Trib., Jan. 17, 2006.

[4] *See, e.g.*, Jim Puzzanghera, *Experts Challenge Need for Warrantless Spying*, Mercury News, Jan. 28, 2006.

[5] American Bar Association, House of Delegates Resolution 302, adopted Feb. 13, 2006 (opposing "any future electronic surveillance inside the United States by any U.S. government agency for foreign intelligence purposes that does not comply with the provisions of the Foreign Intelligence Surveillance Act" and urging Congress to investigate the scope, justification, legality, and uses of the warrantless surveillance program); National Association of Criminal Defense Lawyers, News Release, *When the Government Becomes a Lawbreaker, Part 2*, Jan. 19, 2006, *available at* http://www.nacdl.org/public.nsf/newsreleases/2006mn001?OpenDocument (describing the NACDL's legal challenge to the NSA warrantless surveillance program).

[6] Carol D. Leonnig & Dafna Linzer, *Judges on Surveillance Court To Be Briefed on Spy Programs*, Wash. Post, Dec. 22, 2005, at A1.

[7] Jennifer Loven, *Report of NSA Spying Prompts Call for Probe*, S.F. Chron., Dec. 16, 2005 (reporting that Senator Arlen Specter pledged to hold Senate hearings to investigate the NSA's warrantless surveillance); Maura Reynolds & Greg Miller, *Congress Wants Answers About Spying on U.S. Citizens*, Pitts. Post-Gazette, Dec. 16, 2005.

Justice or other government agencies which seriously undermines the Requesters' ability to freely communicate with their overseas clients and co-counsel without fear that their adversaries will review and rely upon confidences revealed during government-monitored communications. Without confirmation of the existence of the information, no Requester's clients adverse to the United States can be assured of the confidentiality of their communications with their attorney, at least when such communications are transmitted across U.S. borders.

Further, your assertion of other potentially overlapping *exemptions* has not been asserted with the appropriate specificity. Even assuming *arguendo*, that the existence of nonexistence of the records related to the FOIA requests by some of the individual Requesters would reveal information pertaining to pending law enforcement investigations, or that other exemptions apply, it is unreasonable to assert that this is true for the existence or non-existence of records related to every individual. Some portion of both the fact of the records' existence and the content of the underlying records responsive is reasonably segregable. If so, your office has an obligation to produce the segregable information pursuant to the FOIA statute and congressional intent. *See* 5 U.S.C. § 552(b); *see also John Doe Agency v. John Doe Corp.*, 493 U.S. 146, 151-52 (1989) (describing the strong congressional intent favoring disclosure under FOIA); H.R. Rep. No. 1497, 89th Cong., 2d Sess., 6 (1966), U.S. Code Cong. & Admin. News 1966, pp. 2418, 2423 (noting the need "to reach a workable balance between the right of the public to know and the need of the Government to keep information in confidence to the extent necessary without permitting indiscriminate secrecy"). Your office is under an obligation to review these documents, to identify the specific nature of the exemption asserted, and to disclose all segregable portions of the responsive information.

Accordingly, the *existence or nonexistence* of any records responsive must be disclosed. If necessary, the Agency must engage in an adequate review of all records and prepare segregable portions for disclosure.

*Failure to provide a timely response*

Requesters seek expedited processing of this request because we have a compelling need for information related to the warrantless surveillance of Requesters and documents related to the authorization, scope and implementation of the program. This is so because the information concerns unlawful government activity that is the subject of public scrutiny and because denial of the information will result in a substantial loss of due process rights. DOJ has failed to respond to our request for an expedited response, and has, moreover, failed to satisfy FOIA's requirement to respond to FOIA requests within twenty days.

As described in our original request, these records are urgently needed by our organization and the individual Requesters in order to inform the public concerning allegedly unlawful federal government activity. Congress has expressly stated its intention to investigate the NSA's warrantless surveillance program and the requested information is crucial to holding public officials accountable for wrongful conduct. The scope and illegality of the NSA's warrantless surveillance program is the subject of widespread and exceptional media interest and the information Requesters seek involves substantial questions about the government's integrity that affect public confidence. Moreover, the Congressional Research Service has concluded that

04/17/2008  16:04 FAX  2025141009          DOJ-OIP                                    ☑ 007/019

"[w]hether an NSA activity is permissible under the Fourth Amendment and the [Foreign Intelligence Surveillance Act] is impossible to determine without an understanding of the specific facts involved and the nature of the President's authorization,"[8] information that is the subject of the present FOIA request.

The failure to obtain the records on an expedited basis is also reasonably expected to result in an imminent loss of substantial due process rights if the warrantless surveillance of the Requesters has infringed upon their relationship with their clients, as described in detail above. Accordingly, the DOJ should promptly make a determination of this FOIA request on an expedited schedule.

In closing, Requesters note that many government officials involved in classification determinations have been increasingly concerned over the past few years about the over-classification of information that results in less public accountability for government conduct.[9] Your office's overly broad assertions of exemptions from FOIA's disclosure requirements for information related to unlawful and unethical government activity threatens to further this unwarranted governmental secrecy. Accordingly, Requesters demand that your office engage in an adequate and diligent effort to properly designate information, to disclose all responsive documents not properly subject to a FOIA exemption, and to comply with your obligations to provide segregable information when necessary.

We request a response to this appeal with twenty (20) working days.

Sincerely,

*William Goodman* (MTK)

William Goodman, Esq.
Legal Director
Center for Constitutional Rights
666 Broadway, 7th Floor
New York, NY 10012
(212) 617-6427

---

[8] CRS, *Presidential Authority to Conduct Warrantless Electronic Surveillance*, at 42-43.

[9] The over-classification of documents was an issue cited by the 9/11 Commission in its final report as one factor impairing the efficient and effective sharing of information with the American public. *See* The 9/11 Commission Report, Final Report of the National Commission on Terrorist Attacks Upon the Unites States, 417 ("Current security requirements nurture overclassification and excessive compartmentation of information among agencies.") In addition, Congress has recently begun to address this issue. *See* Memorandum from Lawrence J. Halloran to Members of the Subcommittee on National Security, Emerging Threats, and International Relations, *Briefing Memorandum for the hearing, Emerging Threats: Overclassification and Pseudo-classification, scheduled for Wednesday, March 2, 1:00 p.m., 2154 Rayburn House Office Building*, Feb. 24, 2005 (noting that the Information and Security Oversight Office's 2003 Report to the President found that "many senior officials will candidly acknowledge that the government classifies too much information, although oftentimes the observation is made with respect to the activities of agencies other than their own").

6



**U.S. Department of Justice**

Office of Information and Privacy

_Telephone: (202) 514-3642_                    _Washington, D.C. 20530_

**FEB 0 5 2007**

William Goodman, Esq.
Center for Constitutional Rights              Re:    Appeal No. 07-0469
666 Broadway                                          Request No. CRM-200600734F
New York, NY 10012                                    JTR:SRO

Dear Mr. Goodman:

    You appealed from the action of the Criminal Division on your request for access to certain records pertaining to the National Security Agency's terrorist surveillance program.

    After carefully considering your appeal, I am affirming, on partly modified grounds, the Criminal Division's action on your request. The Criminal Division properly withheld the information described in paragraph three of its November 16, 2006 letter to you because it is protected from disclosure under the Freedom of Information Act pursuant to 5 U.S.C. § 552(b)(7)(A). This provision concerns records or information compiled for law enforcement purposes the release of which could reasonably be expected to interfere with enforcement proceedings. Please be advised that although you believe that the Criminal Division refused to confirm or deny the existence of any responsive records, the Criminal Division actually withheld all of the responsive records in their entireties.

    If you are dissatisfied with my action on your appeal, you may seek judicial review in accordance with 5 U.S.C. § 552(a)(4)(B).

                              Sincerely,

                              Janice Galli McLeod
                              Associate Director

                                              CRM EXHIBIT 5

RM



**U.S. Department of Justice**

Office of Information and Privacy



---

*Telephone: (202) 514-3642*

*Washington, D.C. 20530*

JUL 3 1 2007

<u>MEMORANDUM</u>

TO:       Thomas J. McIntyre
               Chief, FOIA/PA Unit
               Criminal Division

FROM:     Melanie Ann Pustay
               Director

SUBJECT:  Freedom of Information Act Request/Lawsuit of William Goodman of the Center
               for Constitutional Rights Regarding the National Security Agency Surveillance
               Program; OIP Nos. AG/06-R0874 and DAG/06-R0875

This concerns the above-referenced FOIA request which was received by this Office. **Please note that this request has been granted expedited processing is the subject of litigation.**

Attached are three pages which are of primary interest to your Office. The documents being referred to your Office for direct response to the requester consist of an electronic mail (e-mail) and one of its attachments. In an effort to lend context to the referred documents, we have included five additional pages in their entirety and a partial page, which contain information that is crossed out with a handwritten explanation. The material does not need to be processed and is included for your information only. While we defer to the judgment of your Office regarding disclosure of the referred material we note that it appears to be protected pursuant to Exemption 5 (deliberative process). For your information, the documents being referred are identical to documents that were referred to your Office in response to another requester, Marcia Hofmann of the Electronic Privacy Information Center.

Please be advised that the page numbers in the lower right-hand corner of each e-mail or attachment are for administrative purposes only and were not on the original documents.

Finally, please note that because these documents are the subject of litigation, you will be responsible for justifying in a declaration the withholding of any information which originated with your Office.

A copy of the requester's initial letter is attached for your information. If you have any questions regarding this matter, please call Stephanie B. Logan of this Office at (202) 305-4015. Please coordinate your response with and direct questions concerning litigation to the Civil Division attorney handling the case, Rupa Bhattacharyya, at (202) 514-3146.

Attachments

CRM EXHIBIT 6



**U.S. Department of Justice**

Criminal Division

_Office of Enforcement Operations_        _Washington, D.C. 20530_

TJM:PR:ss
Typed 08-14-2007

AUG 17 2007

CRM-200700684F

William Goodman, Esq.
Legal Director
Center for Constitutional Rights
666 Broadway, 7th Floor
New York, NY 10012

Dear Mr. Goodman:

     In processing your January 18, 2006, Freedom of Information Act request, the Office of Information and Privacy located one record, consisting of three pages, which is of primary interest to the Criminal Division of the Department of Justice, and referred this document to us for our review and direct response to you.

     We have processed this record and have determined to release this document in part. We are withholding the portions indicated of the item pursuant to one or more of the following FOIA exemptions set forth in 5 U.S.C. 552(b):

        (6)     which permits the withholding of personnel and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy; and,

        (7)     which permits the withholding of records or information compiled for law enforcement purposes, but only to the extent that the production of such law enforcement records or information...

              (C)     could reasonably be expected to constitute an unwarranted invasion of personal privacy.

A copy of this item is enclosed.

     Although I am aware that you have filed a complaint with the United States District Court regarding this request, I am required to inform you of your right to an administrative appeal of this partial denial of your request. Department regulations provide that such appeals must be received by the Office of Information and Privacy within sixty days of the date of this letter. 28 C.F.R. 16.9. Your appeal should be addressed to: The Office of Information and Privacy, United States Department of Justice, 1425 New York Ave., NW, Suite 11050, Washington, DC 20530-

**FILE COPY**

0001. Both the envelope and the letter should be clearly marked with the legend "FOIA Appeal." If you exercise this right and your appeal is denied, you also have the right to seek judicial review of this action in the federal judicial district (1) in which you reside, (2) in which you have your principal place of business, (3) in which the records denied are located, or (4) for the District of Columbia. If you elect to file an appeal, please include, in your letter to the Office of Information and Privacy, the Criminal Division file number that appears above your name in this letter.

Sincerely,

Thomas J. McIntyre, Chief
Freedom of Information/Privacy Act Unit
Office of Enforcement Operations
Criminal Division

2