UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

THOMAS WILNER, et al, )
)
      Plaintiffs, )
)
      v. )   Civil Action No. 07-3883 (DLC)
)
NATIONAL SECURITY AGENCY and )
UNITED STATES DEPARTMENT )
OF JUSTICE, )
)
      Defendants. )
_____)

**DECLARATION OF KALETUS L. MCCAIN**

I, Kaletus L. McCain, do hereby declare as follows:

1.     I am a Personnel Liaison Specialist in the Office of the Solicitor General of the Department of Justice, and, since October 2001, I have been designated as the appropriate person to respond to requests submitted to the Office of the Solicitor General under the Freedom of Information Act ("FOIA"). In that capacity, I am responsible for receiving, processing, handling, and responding to FOIA requests submitted to the Office of the Solicitor General and/or its employees.

2.     The information set forth in this declaration is based upon my personal knowledge and on information obtained in the course of my employment.

3.     The Office of the Solicitor General ("the Office") is responsible for supervising and conducting government litigation in the United States Supreme Court. Virtually all such litigation involving the United States, its agencies and components, is channeled through the Office of the Solicitor General and is actively conducted by the Office. The Office's staff attorneys, Deputy Solicitors General and Assistants to the Solicitor General participate in preparing the petitions, briefs, and other papers filed by the government in the Supreme Court,

and in formulating the legal position in cases that are pending before the Supreme Court or likely to reach the Supreme Court. In appropriate cases, attorneys in the Office may also participate in the cases in the other federal courts, including the federal appellate courts and the federal district courts. In addition, attorneys in the Office also are responsible for assisting the Solicitor General in determining whether to authorize appeals in which the United States or its agencies or components are a party, in determining whether to participate as an amicus curiae in cases pending in the Supreme Court or an appellate court, and in helping to formulate the government's legal position in such cases.

## PLAINTIFFS' FOIA REQUEST

4.      By letter dated January 18, 2006, plaintiffs in the above-captioned action made a request for records concerning the National Security Agency's "warrantless electronic surveillance or warrantless physical searches of any person located within the United States from September 11, 2001, to the date of this FOIA request. . . ." Exhibit A. The Office received that request from the Department's Justice Management Division on October 31, 2007.

5.      Plaintiffs' FOIA request concerns a National Security Agency ("NSA") foreign intelligence collection activity known as the Terrorist Surveillance Program ("TSP"). The TSP is the subject of extensive litigation, including approximately 40 cases that have been transferred and consolidated pursuant to orders of the Judicial Panel on Multidistrict Litigation before a single judge in the United States District Court for the Northern District of California, *In re National Security Agency Telecommunications Records Litigation*, Civil No. 06-01791 (N.D. Cal.). In particular, attorneys in this Office have been involved in the litigation of three of these cases which have been litigated or are pending before the United States Courts of Appeals: *Al-Haramain Islamic Foundation, Inc. v. George W. Bush*, 507 F.3d 1190 (9th Cir. 2007); *Hepting*

*v. AT&T*, No. 06-672 (N.D. Cal.), Appeal Nos. 06-80109 & 06-80110 (9th Cir.); and *American Civil Liberties Union v. National Security Agency*, 493 F.3d 644 ( 6th Cir. 2007), *cert. denied*, 128 S. Ct. 1334 (2008). Attorneys in this Office also have been involved in the litigation of other TSP-related cases in the district courts and in the formulation of legal arguments in such cases.

   6. Upon receipt of plaintiffs' FOIA request, each of the attorneys with responsibility for handling litigation involving the TSP was asked to search his files for responsive materials. The Office does not maintain centralized files on these cases; instead, any files related to these cases are maintained on an individualized basis by the attorneys working on the cases. In addition, because the TSP is a highly classified program, only a limited number of attorneys within the Office have the necessary clearances for access to classified information concerning the program. Any such classified information is subject to stringent handling and storage requirements, is maintained in specially designated secured facilities, and is easily retrieved by the attorneys familiar with these cases. Attorneys in the Office, accordingly, searched their own individual case files designated as containing TSP-related materials and the classified areas where TSP-related filed are maintained. Attorneys within the Office also specifically searched for documents that would have been created prior to the December 16, 2005, public disclosure of the TSP, and identified none within the custody of the Office.

   7. On February 22, 2008, the Office responded to plaintiffs' request indicating that "[t]o the extent the Office of the Solicitor General maintains any information related to your request such information would have been compiled solely in connection with, and in anticipation of, litigation concerning the Terrorist Surveillance Program." Exhibit B. The Office further advised plaintiffs that "while the Office of the Solicitor General has identified a number of records or categories of records relating to litigation in the federal courts concerning

challenges to the Terrorist Surveillance Program, including legal briefs and supporting materials, drafts of those legal briefs and drafts of supporting materials, appeal recommendations, and other correspondence within and between Executive Branch agencies concerning the litigation, those records or categories of records are exempt from disclosure under FOIA." Id.

8. Specifically, the Office of the Solicitor General advised plaintiffs that unclassified materials filed with the courts were publicly available, and indicated that any classified records responsive to plaintiffs' request were withheld under Exemptions One and Three of FOIA and that drafts of legal briefs and supporting materials, internal recommendations, and correspondence within and between Executive Branch agencies were also withheld under Exemption Five of FOIA. Exhibit B.

## JUSTIFICATION FOR WITHHOLDINGS

9. The documents withheld by the Office fall into four related categories: (1) classified final briefs and classified supporting materials, such as declarations and exhibits; (2) classified and unclassified draft briefs and drafts of supporting materials; (3) internal recommendations and memoranda concerning appeals in the TSP cases; (4) inter- and intra-agency communications, mostly electronic mail messages ("emails") relating to the TSP litigation or offering the Office's comments on drafts of TSP-related materials where the Office's advice was sought by other components or agencies because of pending or anticipated litigation; and (5) other attorney work product related to the prior four categories, such as attorney notes on cases or briefs. The documents in each of these categories are properly withheld under Exemption One, Three, and/or Five of FOIA.

10. ***Classified briefs, classified supporting materials, such as declarations or exhibits, or any drafts of classified briefs or materials*** are all properly withheld under FOIA

Exemptions One and Three. The Office does not maintain custody of classified filings made in these cases; instead, to the extent that attorneys from the Office have access to such materials, they are in the custody of other litigating components within the Department. In any event, the final documents were reviewed for classification at the time of their filing by the National Security Agency or the Office of the Director of National Intelligence, and were determined to be classified because their disclosure would cause harm to the national security of the United States. Because these documents were filed in litigation for *ex parte* and *in camera* review by the Court only, the Government has a continuing obligation to publicly file or disclose any material or information contained within these documents that may have subsequently become unclassified, and the Government has in fact done so when appropriate on the public record in the TSP-related litigation. Thus, information in these documents that has not been subsequently publicly disclosed remains classified.

11.    In the course of the ongoing litigation-related consultations between the attorneys in this Office and others in the Department and in the intelligence agencies involved in the TSP litigation, the Office has been advised that the classified information contained in these documents cannot be disclosed without causing serious harm to the national security and that the information is further protected under the statutory authority of the Director of National Intelligence ("DNI") to protect the sources and methods of intelligence collection. I understand that the DNI will submit a declaration in this litigation describing the serious harms to national security that would be caused by the disclosure of certain information related to the TSP and invoking his statutory authority to protect that information from disclosure. The classified briefs and classified supporting materials, or drafts thereof, which specifically concern the TSP, accordingly, are properly withheld under Exemptions One and Three.

12. ***Drafts of classified briefs and declarations, as well as drafts of unclassified briefs and declarations*** are properly withheld under Exemption Five because they are subject to the deliberative-process privilege, the attorney-client communication privilege, and attorney work product doctrine. The Office does not maintain custody of drafts of classified materials filed in these cases; instead, to the extent that attorneys from the Office have access to such materials, they are maintained in the custody of other litigating components within the Department. In any event, drafts of classified filings, along with drafts of unclassified briefs and declarations, are plainly exempt. Attorneys in the Office routinely create draft documents prior to finalizing documents for filing with the Courts, circulate the documents within the Office for comment and review, and solicit suggestions from attorneys outside the Office, such as those who handled the litigation in lower courts, or from the defendant client agencies. The disclosure of these draft documents and related notes or other attorney work product would seriously disrupt this process which is critical to the creation of accurate and thoughtful legal work product in the course of litigation. Attorneys who anticipated that drafts would be disclosed would be hesitant to set down language for review, comment and correction for fear that statements would be attributed to the agency even if they were incorrect or incomplete. These documents, accordingly are plainly protected by the attorney work product doctrine.

13. Documents of this nature are also protected by the attorney-client communication privilege. If draft briefs, declarations, and related attorney work product were to be routinely ordered disclosed, attorneys would need to be certain that communications made by their clients were suitable for potential public disclosure before incorporating them into drafts, which would substantially complicate the process of writing legal briefs and undeniably prejudice the Government in litigation against private parties who would not need to take similar precautions.

14.     Disclosure of drafts of materials subsequently made public in final form, moreover, seriously infringes on the Office's deliberative process. By their very nature as drafts, these documents are predecisional, preliminary versions of what will later become a final document. The process by which a draft evolves into a final document is itself a deliberative process. The only insight to be gained from review of a draft of a publicly available document is to compare the draft against the final and thereby assess the evolution of the document and the thought processes of the attorneys who created it. Documents of this nature are clearly exempt from disclosure under Exemption Five of FOIA.

15.     ***Internal recommendations and memoranda concerning appeals*** are also exempt from disclosure under the deliberative process, attorney-client communication and attorney work product components of Exemption Five. The Solicitor General is responsible for authorizing the participation of the United States or its agencies in every case litigated in the U.S. Courts of Appeals and in the Supreme Court. Attorneys in this Office assist the Solicitor General in making these decisions by soliciting recommendations regarding appeal from other components of the Department and from the relevant client agencies, and making their own recommendations to the Solicitor General. Disclosure of the memoranda and other documents (such as emails) reflecting these recommendations would reveal the individual recommendations considered by the Solicitor General in the course of his decision-making and would cause Department attorneys to be more hesitant and less candid in making such recommendations. Disclosure of these documents would also reveal the positions of client agencies concerning appeal, which are communications protected by the attorney-client privilege. And, most importantly, the disclosure of these recommendations would reveal the thought processes of attorneys about the strengths and weaknesses of any particular case, their views on the applicable law and facts, and concerns

of both law and policy that might influence a decision about appeal. The appeal recommendations generated in the course of the TSP-litigation, accordingly, are properly withheld under Exemption Five.

16. ***Inter- and intra- agency communications, mostly electronic mail messages ("emails") relating to the TSP litigation or offering the Office's comments on drafts of TSP-related materials where the Office's advice was sought by other components or agencies because of pending or anticipated litigation*** are also exempt under Exemption Five. The documents located by the Office in this category are emails and other internal communications relating to the briefing process, *i.e*, those that solicit suggestions, contain discussions of legal and/or factual issues, or relay comments, as well as emails or other internal communications (such as drafts that contain handwritten notes) relating to documents concerning the TSP that were generated by other components of the Department such as the White Paper, talking points or briefing papers created for the use of other Department officials, responses to congressional inquiries, or testimony or speeches.

17. These documents reflect attorney work product in the course of pending or anticipated litigation. Disclosure of emails between attorneys in the Office about pending cases or of comments and suggestions provided by Office attorneys to other components of the Department that reflect the needs of pending or anticipated litigation would reveal the thought processes of attorneys and would disrupt their ability to prepare for and conduct litigation on behalf of the United States.

18. In addition, all of these documents are part of the exchange of ideas and suggestions that accompanies all decision-making and reflect preliminary assessments by attorneys and other staff about issues on which they have been asked to make recommendations

and advice. Agency officials routinely e-mail each other, sharing language, giving and responding to suggestions and proposed language as they draft documents or respond to inquiries. E-mail operates as a way for individual Department of Justice employees to communicate with each other about current matters without having to leave their offices. These "discussions," which get memorialized online, are part of the exchange of ideas and suggestions that accompanies all decision-making and typically reflect staff members' very preliminary assessments about issues on which they may be asked to make recommendations. Indeed, such online discussions most resemble conversations between staff members which are part of the give and take of agency deliberations.

19.    Disclosure of such e-mails would severely hamper the efficient day-to-day workings of the Office as individuals would no longer feel free to discuss their ideas and advice on the content of documents in email messages. If e-mail messages such as these are routinely released to the public, attorneys in this Office will be much more circumspect in their online discussions with each other. This lack of candor will seriously impair the Department's ability to foster the forthright, internal discussions necessary for efficient and proper decisionmaking. Certainly, disclosure of such preliminary assessments and opinions would make officials commenting on drafts much more circumspect in providing their views. Agency decisionmaking is at its best when employees are able to focus on the substance of their views and not on whether their views may at some point be made publicly available. Thus, these documents that reflect internal discussions concerning pending or anticipate litigation, whether within the Office, within the Department, or with the client agencies, are clearly exempt under Exemption Five.

20.    Finally, **other attorney work product related to the prior four categories, such as attorney notes on cases or briefs**, is also properly withheld under FOIA's Exemption Five.

The confidentiality of attorney notes is critical to the Office's deliberative process. Like the e-mails, they contain attorneys' informal views and are vital to the careful and thoughtful development of this Office's advice. Compelling their release would greatly harm the deliberative processes of this Office by discouraging attorneys from placing their initial thoughts and reactions on paper. In the context of ongoing litigation, moreover, these notes and other work product contain mental impressions of attorneys and preliminary thoughts that could not be disclosed without hindering the process by which this Office formulates the Government's position in court cases and would impinge on the ability of attorneys in this Office to provide effective legal assistance to their government clients.

21. For the reasons given, the Office has determined that the responsive portions of the documents described herein are properly withheld in full under FOIA. I declare under penalty of perjury that the foregoing is true and correct.

Dated: 5/5/08

KALETUS L. McCAIN
Personnel Liaison Specialist
Department of Justice
Office of the Solicitor General
Washington, D.C.

FOIA

January 18, 2006

**VIA OVERNIGHT DELIVERY**

Department of Justice
Patricia D. Harris, Management Analyst
FOIA/PA Mail Referral Unit
Department of Justice
Room 1070, National Place Building
Washington, DC 20530-0001

Re: **Freedom of Information Act Request (Expedited Processing Requested)**

Dear Ms. Harris:

This letter constitutes a Request for records pursuant to the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, *et seq.*, and corresponding regulations. This Request is submitted on behalf of the Center for Constitutional Rights, its staff and Board attorneys, and the volunteer, cooperating, and co-counsel attorneys and their staff (collectively, "Requesting Parties" or "Requesters") listed in Appendix A attached hereto. A similar request has been submitted to the following agencies, departments and units of the United States government: the National Security Agency, the Federal Bureau of Investigation, the Defense Intelligence Agency, the Central Intelligence Agency, the United States Army, the United States Navy, and the Department of Homeland Security.

1. **Requesting Parties**

The Center for Constitutional Rights ("CCR") is a non-profit, public interest organization that engages in litigation, public advocacy and educational programs on behalf of those who seek to challenge governmental misconduct, racial injustice, social and economic injustice and violations of international human rights law in U.S. courts, the courts of other countries and other international bodies and courts. For the past four years, lawyers and advocates at CCR have represented citizens and noncitizens identified as alleged terrorists and/or suspected of having affiliations with terrorists. These persons have been detained in places as diverse as the Metropolitan Detention Center in Brooklyn, New York; the Passaic County Jail in Patterson New Jersey; the detention center at the U.S. Naval Station in Guantánamo Bay, Cuba; the Far Falestin Branch Detention Facility of Syrian Military Intelligence in Damascus, Syria; the Sednaya Prison in Sednaya, Syria; Abu Ghraib Prison in Baghdad, Iraq; and other U.S. facilities, where they were subject to physical and psychological abuse or torture, or unlawful rendition.

This Request is made on behalf of the following CCR staff members, staff attorneys, volunteer attorneys, consultants, and Board Members who have or may have communicated with clients, families of clients, attorneys and human rights activists in foreign countries: William Goodman (a.k.a., Bill Goodman), Barbara Olshansky, Gitanjali Gutierrez (a.k.a., Gita Gutierrez), Tina Monshipour Foster (Tina Foster), Seema Ahmad, Maria LaHood, Jennifer Green (a.k.a., Jennie

Exhibit A

Green), Shayana Kadidal (a.k.a., Shane Kadidal), Rachel Meeropol, Steven MacPherson Watt, Matthew Strugar (a.k.a., Matt Strugar) Marc Krupanski, Kelly McAnnany, Claire Tixeire, Michael Ratner, Jules Lobel, David Cole, Rhonda Copelon, Peter Weiss, Abdeen Jabara, Marilyn Clement, Charles Hay-Maestre (a.k.a., Charlie Hay-Maestre or Charley Hay-Maestre), and Jeff Hogue.

This Request is also made on behalf of 108 *pro bono* volunteer, cooperating and co-counsel attorneys and their staff throughout the United States who have worked with CCR on a variety of cases, primarily involving petitions for writs of *habeas corpus* filed on behalf of persons detained at the U.S. Naval Station in Guantánamo Bay, Cuba. These *pro bono* attorneys and their staff are listed in Appendix A.

2.   **Definitions**

For the purpose of this Request, the following definitions shall apply:

A.   "Electronic surveillance" - refers to

   (a)   the acquisition by an electronic, mechanical, or other surveillance device of the contents of any wire, radio or other communication in any form or format of persons located within the United States obtained without benefit of warrant, including but not limited to any and all wiretaps, recordings, surveillance and/or interceptions of telephonic conversations and/or transactions (including cellular and satellite phone conversations and/or transactions), interception of e-mail conversations, or other written communications from public or non-public web sites or computer networks;

   (b)   the acquisition by an electronic, mechanical, or other surveillance device of non-content records obtained without benefit of warrant, from persons located within the United States that identify the existence of any communications, including but not limited to pen registers; and

   (c)   the warrantless installation or use of an electronic, mechanical or other surveillance device for monitoring to acquire information, other than from a wire or radio communication;[1]

B.   "Records" - refers to all "records" as defined by the FOIA, 5 U.S.C. § 522(f)(2), including but not limited to existing memoranda, agreements, notes, orders, policies, procedures, protocols, written or email correspondence, faxes, files, reports, rules, technical manuals, technical

---

[1] This request does not include surveillance authorized pursuant to Sections 1802 or 1822(a) of the Foreign Intelligence Surveillance Act, 50 U.S.C. §§ 1802 or 1822(a).

specifications, training manuals, studies, analyses, audio or video recordings, transcripts of such recordings, data, papers, guidance, guidelines, evaluations, instructions, photographs, films, recordings, books, accounts, communications and all retrievable information in computer storage, regardless of form of the record as a digital, audio, written, video, or other record;

C.   "Electronic surveillance" "of persons located within the United States" - refers to records obtained through electronic surveillance of any communications by or to an individual, individuals, group or groups within the United States, regardless of whether the communication originated inside or outside the United States.

3.   **Records Sought**

CCR and the other Requesting Parties seek disclosure of records in the possession of any office of the Department of Justice ("DOJ") and any agency, organization or corporation holding records at the behest of the National Security Agency ("NSA") concerning any warrantless electronic surveillance or warrantless physical searches of any person located within the United States from September 11, 2001 to the date of this FOIA Request that references a Requesting Party. In addition, CCR and other Requesters seek the disclosure of records concerning the development, approval, and implementation of the Executive's warrantless electronic surveillance and/or warrantless physical search program within the United States.

In order to ascertain the extent of the Executive's policies and practices concerning warrantless electronic surveillance and/or warrantless physical searches of persons located within the United States, Requesting Parties seek the following records:

1. All records obtained through or relating to ongoing or completed warrantless electronic surveillance or physical searches of persons located within the United States, including logs and indexes, regarding or concerning any Requesting Party and/or records of warrantless electronic surveillance or physical searches of persons located within the United States that reference, list, or name any Requesting Party;

2. Any Executive Orders authorizing the warrantless electronic surveillance or physical searches of persons located within the United States referenced in paragraph (1) above;

3. All records establishing, discussing or referencing the policies, procedures, guidelines, or practices of the DOJ or NSA used to (a) identify the individuals or organizations subject to warrantless electronic surveillance or warrantless physical searches within the United States; (b) gather information through warrantless electronic surveillance or warrantless physical searches within the United States; (c)

share this information with other U.S. government agencies and with foreign governments or the agencies or agents thereof; (d) share this information as a basis for a warrant request by the U.S. Department of Justice to the Foreign Intelligence Surveillance Act Court; (e) destroy this information; and/or (f) consult with or secure approval from the U.S. Department of Justice or other departments, agencies or Executive officials prior to conducting warrantless electronic surveillance or warrantless physical searches of persons located within the United States;

4. Any records stating, discussing, or referencing the legality or propriety of warrantless electronic surveillance or warrantless physical searches of persons located within the United States, including but not limited to policy statements, memoranda, analyses, explanations, or authorizations;

5. Any internal DOJ evaluation, assessment, or audit of any DOJ or NSA program implementing warrantless electronic surveillance or warrantless physical searches of persons located within the United States;

6. Any records containing concerns or comments by judges, national security officials, intelligence officials, government lawyers, or other about the DOJ or NSA warrantless electronic surveillance program; and

7. All records reflecting budget allocations for all warrantless electronic surveillance or warrantless physical search programs of persons located within the United States.

### 4. Requesters Are Entitled to Expedited Processing

Expedited processing is warranted when an organization "primarily engage[s] in disseminating information in order to inform the public about an actual or alleged Federal Government activity" has an "urgent need" to secure the records. 32 C.R.F. § 286.4(d)(3)(ii). The Center for Constitutional Rights is an organization "primarily engaged in disseminating information" about government misconduct through the work of its staff, Board, volunteer, cooperating, and co-counsel attorneys. As described above, CCR engages in litigation, public advocacy and educational programming to defend constitutional and human rights law. Dissemination of information to the public is a crucial component of CCR's mission and work. Specifically, CCR publishes reports and newsletters, maintains a public website, issues press releases, and offers educational materials and programming to the pubic within the United States and internationally. Additionally, CCR's staff, board, and volunteer, co-counsel, and cooperating attorneys further disseminate CCR's information to their local and national communities through a variety of means, including their own press releases, interviews, reports, and educational programming.

The records in question involved the NSA and/or the DOJ's actual and alleged warrantless electronic surveillance within the United States, in apparent violation of the rights guaranteed by the First, Fourth, Fifth and Fourteenth Amendments to the United States Constitution. FOIA requests

bearing upon alleged Constitutional violations require an immediate response in order to cease any ongoing violations and to prevent future ones.

A requester may also demonstrate compelling need by a showing that the information sought is "urgently needed" and involves a "breaking new story of general public interest." 32 C.R.F. § 286.4(d)(3)(iii). The instant Request clearly meets these standards in light of the current public scrutiny and impending legislative hearings in response to the disclosure of the Executive's policies and practices involving warrantless electronic surveillance of persons within the United States. *See, e.g.*, Jennifer Loven, *Report of NS Spying Prompts Call for Probe*, San Fran. Chron., Dec. 16, 2005 (stating that Senator Arlen Specter, chairman of the Senate Judiciary Committee, promised that the Senate would conduct hearings to investigate the NSA's warrantless electronic surveillance practices); *see also* Christine Hauser, *Bush Declines to Discuss Report on Eavesdropping*, N.Y. Times, Dec. 16, 2005; Maura Reynolds & Greg Miller, *Congress Wants Answers About Spying on U.S. Citizens*, Pitts. Post-Gazette, Dec. 16, 2005; James Risen & Eric Lichtblau, *Bush Lets US. Spy on Callers Without Courts*, N.Y. Times, Dec. 16, 2005; Steven Thomma, *Spying Could Create Backlash on Congress; Public Reaction Hinges on Identity of Targets*, San Jose Mercury News, Dec. 16, 2005; Caren Bohan & Thomas Ferraro, *Bush Defends Eavesdropping and Patriot Act*, ABC News, Dec. 17, 2005; Dan Eggen & Charles Lane, *On Hill, Anger and Calls for Hearing Greet News of Stateside Surveillance*, Wash. Post, Dec. 17, 2005; Jennifer Loven, *Bush Defends Secret Spying in U.S.*, San Fran. Chron., Dec. 17, 2005; John Diamond, *NSA's Surveillance of Citizens Echoes 1970s Controversy*, USA Today, Dec. 18, 2005; Barton Gellman & Dafna Linzer, *Pushing the Limits of Wartime Powers*, Wash. Post, Dec. 18, 2005; James Kuhnhenn, *Bush Defends Spying in U.S.*, San Jose Mercury News, Dec. 18, 2005; Fred Barbash & Peter Baker, *Gonzales Defends Eavesdropping Program*, Wash. Post, Dec. 19, 2005; James Gerstenzang, *Bush Vows to Continue Domestic Surveillance*, L.A. Times, Dec. 19, 2005; Todd J. Gillman, *Bush Assails Disclosure of Domestic Spying Program*, San Jose Mercury News, Dec. 19, 2005; Terrence Hunt, *Bush Says NSA Surveillance Necessary, Legal*, Wash. Post, Dec. 19, 2005; David Stout, *Bush Says U.S. Spy Program is Legal and Essential*, N.Y. Times, Dec. 19, 2005; George E. Condon, *Bush Says Spying Is Needed to Guard US*, San Diego Union Trib., Dec. 20, 2005; Michael Kranish, *Bush Calls Leak of Spy Program Shameful*, Bost. Globe, Dec. 20, 2005; Jeff Zeleny, *No 'Unchecked Power' in Domestic Spy Furor*, Chi. Trib., Dec. 20, 2005; Douglas Birch, *NSA's Methods Spur Controversy*, Balt. Sun, Jan. 8, 2006; Dan Eggen, *Probe Set in NSA Bugging*, Wash. Post, Jan. 11, 2006; David E. Sanger, *In Shift, Bush Says He Welcomes Inquiry on Secret Wiretaps*, N.Y. Times, Jan. 11, 2006; Scott Shane, *N.S.A. Audit of Spying is Not Assessing Legality*, N.Y. Times, Jan. 11, 2006; Jessica Yellin, *Ex-CIA Lawyer: No Legal Basis for NSA Spying*, ABC News, Jan. 11, 2006; James Gerstenzang, *Bush Now Cites Value of Spying Inquiry*, L.A. Times, Jan. 12, 2006; Sean Sullivan, *Markey Bashes Surveillance Program at Forum*, Arlington (MA) Advocate, Jan. 12, 2006.

Finally, pursuant to the applicable regulations and statue, CCR and the other Requesters expect the DOJ's determination of this Request for expedited processing within 10 calendar days and the determination of this Request for documents within 20 days. *See* 32 C.F.R. § 286.4(d)(1), (3); 5 U.S.C. § 552(a)(6)(A)(i).

   5.   **Requesting Parties Are Entitled To A Fee Waiver**

Requesting Parties are entitled to waiver of all costs pursuant to 5 U.S.C. § 552(a)(4)(A)(iii) because "disclosure of the requested records is in the public interest" and "likely to contribute significantly to the public understanding of the operations or activities of the government and is not primarily in the commercial interest of the requester." As indicated above, the significant media attention focused on the NSA's policy of warrantless electronic surveillance reflects the extraordinary public interest in the records Requesters seek. Disclosure of the requested information would reveal the extent of the NSA's warrantless electronic surveillance and/or warrantless physical searches of persons located within the United States, raising weighty constitutional questions.

Further, disclosure of the requested records will aid the public's understanding of the President's decision to disregard existing restraints on the exercise of Executive power, including the minimal oversight provided by the Foreign Intelligence Surveillance Act courts.

Finally, as a non-profit legal, advocacy, and educational organization, CCR and its staff, Board, and volunteer, co-counsel and cooperating attorneys are well-suited to disseminate publicly the information obtained from this Request. Because this Request satisfies the statutory criteria, a fee waiver would fulfill Congress's legislative intent in amending FOIA. *See Judicial Watch, Inc. v. Rossotti*, 326 F.3d 1309, 1312 (D.C. Cir. 2003) ("Congress amended FOIA to ensure that it be liberally construed in favor of wavers for noncommercial requesters." (internal quotation marks omitted)).

If the fee waiver is not granted, however, we request that the fees assigned be limited to "reasonable standard charges for document duplication" pursuant to 5 U.S.C. § 552(a)(4)(A)(ii)(II) ("[F]ees shall be limited to reasonable standard charges for document duplication when records are not sought for commercial use and the request is made by . . . . a representative of the news media . . . ." and 32 C.F.R. § 286.28(e) (stating that search and review fees shall not be charges to "representatives of the news media"). If appropriate after reviewing the results of the Request, CCR intends to "disseminate the information" disclosed by this Request "among the public" through the media channels described above. CCR meets the definition of a "representative of the news media" because it is "an entity that gathers information of potential interest to a segment of the public, uses its editorial skills to turn raw material into a distinct work, and distributes that work to an audience." *Nat'l Security Archive v. Dep't of Defense*, 880 F.2d 1381, 1387 (D.C. Cir. 1989); *see also Judicial Watch Inc., v. Rossotti*, 326 F.3d 1309, 1310 (D.C. 2003) (finding that a non-profit, public interest organization that distributed a newsletter and published books was a "representative of the media" for purposes of FOIA). Accordingly, any fees imposed for the processing of this Request should be limited pursuant to these regulations.

*   *   *   *

If this Request is denied in whole or in part, Requesters ask that the DOJ justify all deletions by reference to specific exemptions of FOIA. Requesters expect the DOJ to release all segregable portions of otherwise exempt material, and reserve the right to appeal a decision to withhold any records or to deny the within application for expedited processing and waiver of fees.

Thank you for your consideration of this Request. Kindly direct all future responses and furnish all disclosed records to William Goodman, Legal Director, Center for Constitutional Rights, 666 Broadway, 7th floor, New York, N.Y. 10012, telephone (212) 614-6427.

Under penalty of perjury, I hereby affirm that the information provided supporting the Request and the attached Appendix are true and correct to the best of my knowledge and belief.

Signed by:

*[signature]*

William Goodman, Esq.
Legal Director
Center for Constitutional Rights
666 Broadway, 7th Floor
New York, NY 10012
(212) 617-6427

**U.S. Department of Justice**

Office of the Solicitor General

---

Washington, D.C. 20530

February 22, 2008

Mr. William Goodman, Esq.
Legal Director
Center for Constitutional Rights
666 Broadway, 7th Floor
New York, NY 10012-2317

Re:  *January 18, 2006 FOIA Request*

Dear Mr. Goodman:

This is in response to your request for records dated January 18, 2006, and received by the Office of Solicitor General on October 31, 1007, seeking records related to the Terrorist Surveillance Program as described by the President in December 2005.

To the extent the Office of Solicitor General maintains any information related to your request such information would have been compiled solely in connection with, and in anticipation of, litigation concerning the Terrorist Surveillance Program. (This response should not be interpreted as confirmation or denial that any person who has alleged that they were subject to the Terrorist Surveillance Program were, in fact, the subject of such surveillance.). Thus, while the Office of Solicitor General has identified a number of records or categories of records relating to litigation in the federal courts concerning challenges to the Terrorist Surveillance Program, including legal briefs and related attorney work product and supporting materials, drafts of those legal briefs and drafts of supporting materials, appeal recommendations, and other correspondence within and between Executive Branch agencies concerning the litigation, those records or categories of records are exempt from disclosure under FOIA.

Specifically, for all final *in camera, ex parte* legal briefs and related attorney work product and supporting materials, those documents are classified and are therefore being withheld in full pursuant to Exemption 1 of the FOIA, 5 U.S.C. § 552(b)(1). Please note that all final legal briefs, except those submitted for *in camera, ex parte* review, are already otherwise publicly available. In addition, a number of the responsive records contain information of the type described in Section 6 of the National Security Act of 1959, Pub. L. No. 86-36, § 6, 73 Stat. 63,64, codified at 50 U.S.C. § 402 note; and/or in Section 102A(i)(1) of the Intelligence Reform and Terrorism Prevention Act of 2004, 50 U.S.C. § 403-1(i)(1). Thus, the records subject to these

Exhibit B

-2-

protections are also being withheld pursuant to Exemption 3 of the FOIA. *See* 5 U.S.C. § 552(b)(3). Additionally, drafts of legal briefs and related attorney work product and supporting materials, internal recommendation, and correspondence within and between Executive Branch agencies are protected by the deliberative process privilege, the attorney-client privilege, or the attorney work product doctrine and are therefore being withheld in full under Exemption 5. 5 U.S.C. § 552(b)(5). Finally, in addition to the above-referenced exemptions requiring withholding of responsive records in full, please note that portions of these records are also exempt under Exemption 6, which permits withholding of personnel and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy. 5 U.S.C. § 552(b)(6).

This completes this Office's response to your request. Although I am aware that your request is the subject of ongoing litigation and that appeals are not ordinarily acted on in such situations, I am required by statute and regulation to inform you of your right to file an administrative appeal.

Sincerely,

Kaletus L. McCain