IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| THOMAS WILNER, et. al.  )<br>)<br>Plaintiffs,  )<br>)<br>v.  )<br>)<br>NATIONAL SECURITY AGENCY, et. al,  )<br>)<br>Defendants.  )<br>)<br>) | 07-cv-3883-DLC |

REDACTED DECLARATION OF MATTHEW G. OLSEN

I, Matthew G. Olsen, declare as follows:

1. **(U)** I am a Deputy Assistant Attorney General in the National Security Division ("NSD") of the United States Department of Justice ("DOJ" or "Department"), and have served in this position since 2006. In this capacity, I supervise all operations for the former Office of Intelligence and Policy Review ("OIPR"),[1] which as of April 28, 2008, were transferred to the Office of Intelligence ("OI"), including Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, administration. I am the final decision-making authority in NSD regarding access requests made under FOIA to the former OIPR.

---

[1] **(U)** OIPR and the Counterterrorism and Counterespionage Sections of the Criminal Division of the Department were consolidated to form NSD. NSD's core mission is to coordinate the Department's efforts to combat terrorism and protect national security. The NSD is responsible for assisting the Attorney General and other senior Department and Executive Branch officials in ensuring that the national security-related activities of the United States are consistent with relevant law; overseeing terrorism investigations and prosecutions; handling counterespionage cases and matters; obtaining court authorization for the collection of foreign intelligence under the Foreign Intelligence Surveillance Act; and conducting oversight of intelligence agency compliance with certain national security legal requirements. As the successor in interest to OIPR, NSD is responsible for FOIA requests, such as this, directed to the former OIPR. Because the records at issue were referred to the former OIPR for response, I refer to them, for the sake of clarity, as OIPR records.

2.  **(U)** I make the statements herein on the basis of personal knowledge, as well as on information acquired by me in the course of performing my official duties and on the advice of counsel.

3.  **(U)** The Office of Intelligence (formerly OIPR) provides legal advice to the Attorney General and the United States intelligence agencies regarding questions of law and procedure that relate to United States intelligence activities. OI performs review functions of certain intelligence activities, and prepares and presents applications for electronic surveillance, physical search, authorizing the installation and use of pen registers and trap and trace devices, and access to certain tangible things, to the United States Foreign Intelligence Surveillance Court ("FISC").

4.  **(U)** As the Department of Justice's Deputy Assistant Attorney General in NSD, I hold original classification authority at the TOP SECRET level by delegation from the Attorney General and therefore am authorized to make determinations regarding classification of national security information and to conduct classification reviews.

## (U) CLASSIFICATION OF DECLARATION

5.  **REDACTED**

6.  **REDACTED**

7.  **REDACTED**

8.  **REDACTED**

## (U) PLAINTIFFS' FOIA REQUEST AND REFERRALS TO OIPR

9.  **(U)** By letter dated January 18, 2006, the Plaintiffs, attorneys associated with the Center for Constitutional Rights ("CCR"), requested access under FOIA to certain records concerning the Terrorist Surveillance Program, a controlled access signals intelligence program authorized by the President in the aftermath of the terrorist attacks of September 11, 2001. OIPR

did not directly receive Plaintiffs' request, but 12 classified records or categories of records were referred to OIPR by the Office of Information and Privacy (OIP), the Office of Legal Counsel (OLC), and the Federal Bureau of Investigation (FBI) and 1 unclassified record was referred by OIP.

### (U) THE TERRORIST SURVEILLANCE PROGRAM

10. **(U)** The subject of Plaintiffs' request, the Terrorist Surveillance Program ("TSP"), is an intelligence gathering program operated by the National Security Agency ("NSA") which involves the targeted interception of communications, in which one party is outside the United States, and where there are reasonable grounds to believe that at least one party to the communication is a member or agent of al Qaeda or an al Qaeda affiliated terrorist organization. Although the existence of the TSP has been acknowledged by the President, details regarding the operation of the TSP remain highly classified, as their disclosure could be reasonably expected to cause exceptionally grave damage to the national security of the United States.

11. **(U)** Information related to the TSP is classified TOP SECRET, and, further, because it involves or derives from particularly sensitive intelligence sources and methods, it is subject to the special access and handling requirements reserved for "Sensitive Compartmented Information" ("SCI"). As a result of being entrusted with such highly classified information, I have been informed as to the harms that are likely to result should information concerning the TSP be disclosed without proper authorization and have been instructed as to the proper procedures to follow to ensure that classified information is not so disclosed. To the best of my knowledge, OIPR followed these procedures as to all TSP-related documents maintained in its files.

### (U) DOCUMENTS REFERRED TO OIPR

12. **(U)** I provide this declaration to address records or categories of records that were referred to OIPR by other components of the Department of Justice in response to Plaintiffs' FOIA

3

Request No. 3, and to provide the justifications for OIPR's determination that certain responsive documents must be withheld as exempt from disclosure under FOIA. In making its withholding determinations, OIPR and those acting on its behalf consulted with the National Security Agency ("NSA"), the Office of the Director of National Intelligence ("ODNI"), and other federal agencies and officials regarding the harm to national security that would result from disclosure of the documents identified in this declaration. In particular, I have reviewed the Declaration of J. Michael McConnell, Director of National Intelligence ("DNI Decl."), and have relied upon his expert assessment of the harm to the national intelligence program that would result from disclosure of documents related to the TSP. I understand that a copy of DNI McConnell's declaration is attached as an exhibit to the Defendants' Motion for Summary Judgment filed in this case.

13. **(U)** In particular, as to the withholding of records, Plaintiffs' complaint seeks relief concerning their third FOIA request for "policies, procedures, guidelines or practice for the interception of communications" pursuant to the TSP. *See* 2d Amended Complaint ¶ 8 (FOIA Request No. 3). As part of its response to this request, OIP referred a one-page unclassified email originating with OIPR. OIP also referred three classified records or categories of records from the Office of the Deputy Attorney General (ODAG). OLC referred seven classified records or categories of records. FBI referred two classified records or categories of records. This declaration describes the reasons that these referred records or categories of records, totaling one unclassified record and 12 classified records or categories of records were withheld. This declaration addresses OIPR's justifications under FOIA Exemptions One, Three, Five, and Six, for withholding these records. All of the documents addressed in this declaration are collectively referred to as documents withheld by OIPR.

## JUSTIFICATIONS FOR WITHHOLDING

14.     **(U)** The vast majority of documents withheld by OIPR concern its dealings with the Foreign Intelligence Surveillance Court ("FISC"). Given the nature of their duties, FISC judges are cleared to have access to highly classified information, and judges on the FISC have been briefed on the TSP, certain aspects of its operation, and some of its results.

15.     **(U)** The Foreign Intelligence Surveillance Act ("FISA") specifies that the record of proceedings before the FISC "including applications made and orders granted, shall be maintained under security measures established by the Chief Justice in consultation with the Attorney General and the Director of Central Intelligence." 50 U.S.C. § 1803(c). It further provides that persons rendering assistance under the Act do so "in such a manner as will protect its secrecy." 50 U.S.C. § 1802(a)(3). In enacting FISA, therefore, Congress recognized that proceedings before the FISC were to be conducted in the strictest secrecy if the confidentiality of United States intelligence sources and methods was to be maintained.

16.     **REDACTED**

17.     **(U)** In order to protect this secrecy, as well as in order to avoid disclosure of details concerning the TSP that would cause exceptionally grave damage to national security as described in the Declaration of DNI McConnell, *see, e.g.*, DNI Decl. ¶¶ 22-23, 29-37, OIPR withheld all twelve referred classified records or categories of records—ODAG 9, ODAG 29, ODAG 32, OLC 12, OLC 13, OLC 14, OLC 20, OLC 21, OLC 94, OLC 138, FBI 14, and FBI 317—under Exemptions One and Three, totaling 94 pages. We also withheld five records or categories of records—OLC 14, OLC 20, OLC 94, and FBI 317, as well as the single unclassified referred document—totaling 15 pages under Exemption Five.

18.     **REDACTED**

19.     **REDACTED**

20.     **REDACTED**

21.     **REDACTED**

22.     **(U)** In addition, OLC 14 and 20 are draft documents, which solicit suggestions from or contain the comments of government officials. To disclose these documents would substantially compromise the deliberative process by which attorneys prepare documents, as well as the process by which they seek review and comment by others with interest and expertise, by preventing the full and frank exchange of suggestions and opinions. In addition, these documents were created as part of OIPR's ordinary practice before the FISC, and their disclosure would risk revealing mental impressions of attorneys and preliminary views about how to approach certain issues, and thus, would compromise attorney work product. These documents, accordingly, are properly exempt from disclosure under Exemption Five.

23.     **REDACTED**

24.     **(U)** OIPR also withheld a classified email that reflects a follow up discussion concerning a technical question related to the TSP. Disclosure of this document, OLC 138, totaling 1 page, would interfere with the way in which inter-agency questions are resolved by personnel with expertise in particular subject matters areas and would undermine the informal give-and-take necessary to final agency decision-making. Moreover, because this document contains information provided by client agencies, disclosure would also interfere with an attorney-client communication. OLC 138, accordingly, is properly exempt from disclosure under FOIA Exemption Five.

25.     **(U)** Finally, as noted above, OIP withheld one unclassified document on behalf of OIPR. This one-page e-mail was withheld in full pursuant to the deliberative process and attorney work-product privileges embodied in Exemption Five of the FOIA. The record was created as part of a process during which attorneys drafted documents setting forth the legal basis for the TSP, including the Department's January 19, 2006, public paper, entitled "Legal Authorities Supporting

the Activities of the National Security Agency Described by the President" (hereinafter, "White Paper").

26.  (U) This e-mail message contains commentaries on and discussions of the draft White Paper, including suggestions and opinions made by an OIPR attorney regarding its content. It is part of the exchange of ideas and suggestions that accompanied decision-making concerning the final content of the White Paper and reflects the preliminary assessment of an OIPR attorney about issues as to which he had been asked to make recommendations and give advice. Release of this e-mail message would chill the free flow of opinions within the Executive Branch.

27.  (U) Disclosure of this record would prevent Department attorneys from freely expressing their recommendations and giving advice about the legal basis of the Administration's program. A staff member who is aware that his or her proposed recommendation may be released to the public may not be as forthcoming as he or she would otherwise be. That staff member may be more concerned with the public perception of the document on which he is she is commenting than with providing the necessary information to decision-makers. This inhibition would be extremely detrimental to officials who rely on such advisors for their complete, candid opinions. By affording confidentiality to agency deliberations such as these, decision-makers can operate most effectively.

28.  (U) Department employees will be much more circumspect in their deliberations with each other if they think their preliminary thoughts and analyses are going to be disclosed. This lack of candor will seriously impair the Department's ability to foster the forthright, internal discussions necessary for efficient and proper decision-making and make it much more difficult for Department staff to provide senior officials with the advice that they need to make important decisions. Because the unclassified e-mail message reflects this deliberative process which would be disrupted by its disclosure, it is properly exempt from disclosure under FOIA's Exemption Five.

29.   **(U)** In addition to being protected by the deliberative process privilege the unclassified record withheld by OIP on OIPR's behalf is also protected by the attorney-client privilege. I understand that the White Paper was created in anticipation of litigation, and litigation concerning the TSP was a major factor in the decision to create it. Disclosure of this e-mail, which contains internal suggestions regarding the drafting of the White Paper, would reveal attorneys' interpretation of the law and analyses of the legal strategy that would be available to the government in the likely event that it would face such litigation. Such disclosure would severely hamper the adversary process as attorneys working in anticipation of litigation would no longer feel free to discuss inevitable litigation in this fashion or to write down important thoughts on potential litigation strategies for fear that the information might be publicly disclosed.

30.   **(U)** Because the document was prepared by an attorney in anticipation of litigation, it is protected in its entirety by the attorney-work product privilege. Since it is exempt in full, it contains no reasonably segregable, nonexempt information.

*   *   *

31.   **(U)** I am personally familiar with each of the documents described in this declaration which OIPR determined must be withheld in full, and I have also relied on the advice of counsel with respect to the determinations set forth herein. Given the varying degrees of harm that would be reasonably expected to be done to national security if United States intelligence sources and methods are compromised as a result of the disclosure of any properly classified detail concerning the TSP without proper authorization, I have concluded that no portion of any of the documents withheld in full by OIPR which are responsive to the FOIA request at issue in this litigation may be disclosed without compromising the exemptions discussed at length herein and the interests described in the Declaration of DNI McConnell.

32.  **(U)** In addition to the substantive exemptions described above, some of the documents withheld by OIPR contain information that must be withheld to protect personal privacy. This information includes the names of third-party individuals (non-government employees) as well as OIPR staff, and their personal information (such as addresses (including email addresses), home telephone numbers, or cellular phone numbers) that occasionally appear in the documents. There is no legitimate public interest in the release of this information, as its disclosure would shed no light on the activities of the Department of Justice but could subject these individuals to unwanted public attention, harassment, or embarrassment. Thus, information of this type that appears in these documents is withheld by OIPR under FOIA Exemption Six, 5 U.S.C. § 552(b)(6).

I declare under penalty of perjury that the foregoing is true and correct.

Dated this  5  day of May 2008.

_____
MATTHEW G. OLSEN
Deputy Assistant Attorney General
National Security Division