IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| THOMAS WILNER, et. al. )<br>)<br>Plaintiffs, )<br>)<br>v. )<br>)<br>NATIONAL SECURITY AGENCY, et. al, )<br>)<br>Defendants. )<br>) | 07-cv-3883-DLC |

**REDACTED SUPPLEMENTAL DECLARATION OF J. MICHAEL McCONNELL,
DIRECTOR OF NATIONAL INTELLIGENCE**

I, J. Michael McConnell, do hereby state and declare as follows:

### (U) INTRODUCTION

1.  (U) I am the Director of National Intelligence (DNI) of the United States. I have held this position since February 2007. Previously, I have served as the Senior Intelligence Officer for the U.S. Seventh Fleet, Assistant Chief of Staff for Intelligence for the U.S. Pacific Fleet, the Director of Intelligence for the Joint Chiefs of Staff during Operation Desert Storm, and as the Director of the National Security Agency.

2.  (U) In the course of my official duties, I have been advised of the request of the Plaintiffs and the Center for Constitutional Rights under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, *et seq.*, directed at various federal agencies seeking documents relating to the Terrorist Surveillance Program, ("TSP"), which was a controlled access signals intelligence program authorized by the President in response to the attacks of September 11, 2001. I have also been advised of the lawsuit filed by the Plaintiffs in this court challenging the responses made to the FOIA requests by various agencies of the United States Government,

including the Department of Justice and its various components, and the National Security Agency. The statements made herein are based on my personal knowledge as well as on information provided to me in my official capacity as the Director of National Intelligence.

      3.     (U) The purpose of this supplemental declaration is principally to invoke and assert, in my capacity as the Director of National Intelligence and head of the United States Intelligence Community, the statutory authority created under the National Security Act of 1947, as amended by Section 102A(i)(l) of the Intelligence Reform and Terrorism Prevention Act of 2004, to protect intelligence information, sources, and methods. *See* 50 U.S.C. § 403-1(i)(1) ("The Director of National Intelligence shall protect intelligence sources and methods from unauthorized disclosure").[1] Disclosure of information that falls within the terms of this statutory protection would cause exceptionally grave damage to the national security of the United States, and, indeed, because each of the FOIA requests at issue relates to the TSP – which was itself a method of intelligence-gathering – the risk is great that disclosure of the information requested would compromise the effectiveness of intelligence sources and methods. As part of my authority to protect sources and methods, I reiterate and again specifically address and explain why no agency of the United States Government, or component thereof, can confirm or deny the existence of records responsive to requests concerning whether particular individuals or organizations, including Plaintiffs themselves, might have been the targets of surveillance under the TSP.[2]

---

[1] (U) Prior to the creation of the Office of the Director of National Intelligence, the Director of Central Intelligence exercised the Executive Branch's responsibility to protect this information.

[2] (U) In a separate and wholly unclassified declaration, I invoked my authority to protect intelligence sources and methods over this information for purposes of supporting the determination not to confirm or deny information responsive to Plaintiffs' request for targeting

4.  (U) In this declaration, I explain, from the perspective of the Intelligence Community, the significant harms that would be done to United States intelligence gathering in the ongoing war against terror if documents that contain classified information about the TSP are compelled to be disclosed and why the existence of certain other information cannot be confirmed or denied. Although the President publicly acknowledged the existence of the TSP in December 2005, highly sensitive information about the TSP remains classified and cannot be disclosed without causing exceptionally grave damage to U.S. national security.

5.  **REDACTED**

### (U) CLASSIFICATION OF DECLARATION

6.  **REDACTED**

7.  (U) Due to its extraordinary sensitivity, information relating to the TSP is currently classified as TOP SECRET under the standards set forth in Executive Order 12958, as amended. In particular, information relating to the TSP concerns "intelligence activities (including special activities), intelligence sources or methods, or cryptology," Exec. Order 12958, as amended, § 1.4(c); "foreign relations or foreign activities of the United States, including confidential sources"; *id.* § 1.4(d); "scientific, technological, or economic matters relating to the national security, which includes defense against transnational terrorism," *id.* § 1.4(e); and "vulnerability or capabilities of systems, installations, infrastructures, projects, plans, or protection services relating to the national security, which includes defense against transnational terrorism," *id.* § 1.4(g), the disclosure of which "reasonably could be expected to

---

information. I reiterate the invocation of statutory authority for purposes of supporting the agencies' determinations to withhold records responsive to Plaintiffs' other requests, but none of the *in camera, ex parte* portions of this declaration are intended to further augment or bolster the responding agencies' responses that they could neither confirm nor deny whether any particular person was targeted by or subject to TSP surveillance.

cause exceptionally grave damage to the national security of the United States." *Id.* § 1.2(a)(1). Moreover, information relating to the TSP is also designated as "SCI" and is subject to special access and handling requirements necessary to maintain its strict confidentiality and prevent its unauthorized disclosure.

8.     **REDACTED**

9.     **REDACTED**

## (U) BACKGROUND ON DIRECTOR OF NATIONAL INTELLIGENCE

10.    (U) The position of Director of National Intelligence was created by Congress in the Intelligence Reform and Terrorism Prevention Act of 2004, Pub. L. 108-458, §§ 1011(a) and 1097, 118 Stat. 3638, 3643-63, 3698-99 (2004) (amending sections 102 through 104 of Title I of the National Security Act of 1947). Subject to the authority, direction, and control of the President, the Director of National Intelligence serves as the head of the U.S. Intelligence Community and as the principal adviser to the President, the National Security Council, and the Homeland Security Council for intelligence matters related to the national security. *See* 50 U.S.C. § 403(b)(1), (2).

11.    (U) The United States "Intelligence Community" includes the Office of the Director of National Intelligence; the Central Intelligence Agency; the National Security Agency; the Defense Intelligence Agency; the National Geospatial-Intelligence Agency; the National Reconnaissance Office; other offices within the Department of Defense for the collection of specialized national intelligence through reconnaissance programs; the intelligence elements of the military services, the Federal Bureau of Investigation, the Department of the Treasury, the Department of Energy, the Drug Enforcement Administration, and the Coast Guard; the Bureau of Intelligence and Research of the Department of State; the elements of the

Department of Homeland Security concerned with the analysis of intelligence information; and such other elements of any other department or agency as may be designated by the President, or jointly designated by the DNI and heads of the department or agency concerned, as an element of the Intelligence Community. *See* 50 U.S.C. § 401a(4).

12.     **(U)** The responsibilities and authorities of the Director of National Intelligence are set forth in the National Security Act, as amended. *See* 50 U.S.C. § 403-1. These responsibilities include ensuring that national intelligence is provided to the President, the heads of the departments and agencies of the Executive Branch, the Chairman of the Joint Chiefs of Staff and senior military commanders, and the Senate and House of Representatives and committees thereof. 50 U.S.C. § 403-1(a)(1). The DNI is also charged with establishing the objectives of, determining the requirements and priorities for, and managing and directing the tasking, collection, analysis, production, and dissemination of national intelligence by elements of the Intelligence Community. *Id.* § 403-1(f)(1)(A)(i) and (ii). The DNI is also responsible for developing and determining, based on proposals submitted by the heads of agencies and departments within the Intelligence Community, an annual consolidated budget for the National Intelligence Program for presentation to the President, and for ensuring the effective execution of the annual budget for intelligence and intelligence-related activities, and for managing and allotting appropriations for the National Intelligence Program. *Id.* § 403-1(c)(1)-(5).

13.     **(U)** In addition, the National Security Act of 1947, as amended, provides that "[t]he Director of National Intelligence shall protect intelligence sources and methods from unauthorized disclosure." 50 U.S.C. § 403-1(i)(1). Consistent with this responsibility, the DNI establishes and implements guidelines for the Intelligence Community for the classification of information under applicable law, Executive orders, or other Presidential directives and access to

and dissemination of intelligence. *Id.* § 403-1(i)(2)(A), (B). In particular, the DNI is responsible for the establishment of uniform standards and procedures for the grant of access to Sensitive Compartmented Information to any officer or employee of any agency or department of the United States, and for ensuring the consistent implementation of those standards throughout such departments and agencies. *Id.* § 403-1(j)(1), (2).

14.     (U) By virtue of my position as the Director of National Intelligence, and unless otherwise directed by the President, I have access to all intelligence related to the national security that is collected by any department, agency, or other entity of the United States. Pursuant to Executive Order No. 12958, as amended by Executive Order 13292, the President has authorized me to exercise original TOP SECRET classification authority.

### (U) THE TERRORIST SURVEILLANCE PROGRAM

15.     (U) Following the September 11 attacks on the United States, the United States faced an urgent and immediate need for accurate intelligence regarding the threat posed by al Qaeda and affiliated terrorist groups. As a result, the President authorized signals intelligence activities designed to meet that need and to detect and prevent future terrorist attacks. The NSA is the component of the Intelligence Community that is responsible for signals intelligence activities, and the NSA utilizes various sources and methods, including the Terrorist Surveillance Program, to safeguard against the immediate threat of mass-casualty terrorist attacks within the United States. The TSP was critical to the national security of the United States.

16.     (U) The TSP was a targeted and focused program intended to help "connect the dots" between known and potential terrorists and their affiliates. In order to intercept a communication under the TSP, one party to the communication must be located outside the United States and there must be a basis to conclude that one party to the communication is a

member of al Qaeda, affiliated with al Qaeda, or a member of an organization affiliated with al Qaeda. Thus, the TSP was an "early warning" system with one purpose: to detect and prevent another catastrophic attack on the United States.

17. **(U)** The President publicly acknowledged the existence of the TSP on December 17, 2005. On January 17, 2007, the Attorney General announced that any electronic surveillance that was occurring under the TSP would now be conducted subject to the approval of the Foreign Intelligence Surveillance Court ("FISC"). On August 4, 2007, Congress enacted the Protect America Act of 2007, Pub. L. No. 110-55, codified at 50 U.S.C. §§ 105A, 105B, which exempted the acquisition of certain foreign intelligence information from the definition of "electronic surveillance" subject to the procedures of the FISA. Pursuant to Section 105B(a) of the Protect America Act, the Director of National Intelligence and Attorney General could authorize the acquisition of information concerning certain persons reasonably believed to be outside the United States.[3] Under these circumstances, the President has not renewed his authorization of the TSP.

18. **(U)** Although the existence of the TSP is now publicly acknowledged, and some general facts about the TSP have been officially disclosed, the President has made clear that sensitive information about the nature, scope, operation, and effectiveness of the TSP and other communications intelligence activities remains classified and cannot be disclosed without causing exceptionally grave harm to U.S. national security.

19. **REDACTED**

20. **REDACTED**

21. **REDACTED**

---

[3] (U) The Protect America Act lapsed on February 16, 2008, but the certifications made under the Act remain in force for one year following their execution.

7

22.   **REDACTED**

23.   **REDACTED**

24.   **REDACTED**

<b>(U) ASSERTION OF AUTHORITY<br>TO PROTECT INTELLIGENCE SOURCES AND METHODS</b>

25.   (U) For the reasons discussed in detail herein, I hereby invoke and assert the statutory authority held by the Director of National Intelligence under the National Security Act to protect intelligence sources and methods relating to the TSP.

26.   (U) In particular, TSP-related information that falls within my authority to protect intelligence sources and methods falls within the categories described below:

(1) (U) any classified intelligence information concerning the continuing threat to the United States posed by al Qaeda and its affiliates that forms the basis for the President's authorization and reauthorization of the TSP;

(2) (U) any operational details concerning the technical methods by which the NSA intercepts communications under the TSP;

(3) **REDACTED**;

(4) **REDACTED**;

(5) **REDACTED**;

(6) **REDACTED**; or

(7) (U) any information that would reveal or tend to reveal whether someone is a target of surveillance under the TSP.

(U) Disclosure of information in each of these categories would compromise the effectiveness of the sources and methods used by the U.S. Intelligence Community to combat the threat of international terrorism and, thus, this information falls squarely within my authority to protect intelligence sources and methods under the National Security Act, as amended. I describe below each of those categories of information, and then describe the harm that would be caused by the

disclosure of that information.

27.    **REDACTED**

28.    (U) Thus, even the release of what appears to be the most innocuous information about the TSP poses the substantial risk that our adversaries will be able to piece together sensitive information about how the Program operated, the capabilities, scope and effectiveness of the Program and our current capability, which would be utilized by the enemy to allow them to plan their terrorist activities more securely. Thus, in fulfilling my responsibility to protect intelligence sources and methods, I must exercise my statutory authority to protect a full spectrum of information concerning particular intelligence methods in any case where disclosure of such information could reasonably be expected to assist foreign intelligence services or hostile entities such as international terrorist organizations, to the detriment of the United States.

29.    (U) Because the information described in this declaration is critical to the continued successful operation of U.S. intelligence-gathering methods, and because its disclosure would cause exceptionally grave damage to the national security of the United States and render the nation more vulnerable to another terrorist attack, I fully support and defend any determination made to withhold information responsive to FOIA requests that seek the disclosure of classified information related to the TSP.

### (U) DESCRIPTION OF INFORMATION AND HARM FROM DISCLOSURE AS WELL AS THE UNITED STATES AGENCIES' INABILITY TO CONFIRM OR DENY THE EXISTENCE OF SOME INFORMATION

30.    **REDACTED**

31.    (U) I also invoke my statutory authority to protect intelligence sources and methods from disclosure with respect to *information that would reveal or tend to reveal operational details concerning the technical methods by which NSA intercepted*

***communications under the TSP.*** Detailed knowledge of the methods and practice of the U.S. Intelligence Community agencies must be protected from disclosure because such knowledge would be of material assistance to those who would seek to penetrate, detect, prevent, or damage the intelligence efforts of the United States, including efforts by this country to counter international terrorism.

32.   **REDACTED**

33.   **REDACTED**

34.   **REDACTED**

35.   **REDACTED**

36.   **REDACTED**

37.   **REDACTED**

38.   **REDACTED**

39.   (U) Finally, I invoke my statutory authority to protect intelligence sources and methods from disclosure with respect to ***information that would reveal or tend to reveal whether a particular person is a target of surveillance***. As should be obvious, to confirm or deny whether someone is a target of surveillance would disclose either who is being targeted—thus compromising that collection—or who is not being targeted. This would reveal to our adversaries that an individual may or may not be available as a secure means for communicating or, more broadly, the methods being used to conduct surveillance. Confirmation of a target's identity would immediately disrupt the flow of accurate intelligence as the target takes steps to evade detection or manipulate the information received. And while it may seem innocuous to disclose that law-abiding citizens are not being targeted, this may provide insight to a trained eye as to the scope of the NSA's activities. Moreover, providing assurances that someone is not being

targeted becomes unworkable, and itself revealing, in cases where an individual may be targeted. Similarly, a refusal to confirm or deny only in cases where surveillance is occurring would effectively disclose and compromise that surveillance. The only viable way for the Intelligence Community to protect this intelligence collection mechanism, accordingly, is neither to confirm nor deny whether someone has been targeted or subject to intelligence collection, regardless of whether the individual has been targeted. The same is true for any United States agency, or component thereof, that may or may not possess information concerning the targeting of surveillance. To say otherwise would result in the frequent, routine exposure of intelligence information, sources, and methods and would severely undermine surveillance activities in general, causing exceptionally grave harm to the national security of the United States.

40.    (U) For these reasons, the fact of the existence or nonexistence of information concerning whether any particular person has been subject to surveillance under the TSP is a currently and properly classified matter in accordance with Executive Order 12958, as amended, and thus I fully support and defend the determination of any agency of the United States, or component thereof, to refuse to confirm or deny the existence of any document responsive to a request for records identifying targets of surveillance pursuant to FOIA Exemption 1. Similarly, because confirmation of the existence or nonexistence of this information would reveal sources and methods of the United States' Intelligence Community in contravention of my authority to protect such information, this information is also protected from disclosure by federal statute— Section 102A(i)(1) of the Intelligence Reform and Terrorism Prevention Act of 2004 and 18 U.S.C. 798—and I fully support and defend the determination of any agency of the United States, or component thereof, to refuse to confirm or deny the existence of any document

responsive to a request for records identifying targets of surveillance pursuant to FOIA Exemption 3.

### (U) CONCLUSION

41. **REDACTED**

42. **(U)** For the foregoing reasons, I provide this declaration in my capacity as the Director of National Intelligence to assert and invoke my statutory authority and responsibility to protect from disclosure the intelligence information, sources, and methods implicated by FOIA requests for information related to the TSP. Information of the type discussed in this declaration cannot be disclosed without causing exceptionally grave damage to the national security of the United States.

I declare under penalty of perjury that the foregoing is true and correct.

DATE: 2 MAY 08

J. M. McCONNELL
Director of National Intelligence