## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| THOMAS WILNER, et. al. | ) | |
| | ) | |
| Plaintiffs, | ) | 07-cv-3883-DLC |
| | ) | |
| v. | ) | |
| | ) | |
| NATIONAL SECURITY AGENCY, et. al, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

## REDACTED DECLARATION OF STEVEN G. BRADBURY

I, Steven G. Bradbury, declare as follows:

1.    **(U)** I am the Principal Deputy Assistant Attorney General for the Office of Legal Counsel ("OLC" or "Office") of the United States Department of Justice ("DOJ" or "Department"). OLC is responsible for assisting the Attorney General in the discharge of his responsibilities as legal adviser to the President and to the heads of the Executive Branch departments and agencies. For the most part, OLC performs a purely advisory role, providing legal advice and assistance. No one currently serves as the Assistant Attorney General for OLC. Consequently, in my capacity as Principal Deputy Assistant Attorney General for the Office, I am the head of OLC and supervise all OLC activities, including its response to requests under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552.

2.    **(U)** The information contained in this declaration is based on my personal knowledge, information and belief, and on information provided to me in my official capacity.

3.    **(U)** I am aware of the January 18, 2006, FOIA request made by Thomas Wilner and other persons (collectively "plaintiffs") affiliated with the Center for Constitutional Rights ("CCR") that is the subject of this litigation. The request seeks records concerning eight categories of information, each of which relates to the Terrorist Surveillance Program ("TSP"), a highly classified signals intelligence program which was acknowledged by the President in his radio address of December 17, 2005. My duties have required me to become familiar with that program.

4.    **REDACTED**

5.    **(U)** In particular, as a result of being entrusted with such highly classified information, I have been informed as to the harms that are likely to result should information regarding the Program be disclosed without proper authorization and have been instructed as to the proper procedures to follow to ensure that classified information is not so disclosed. OLC has followed these procedures without exception.

6.    **(U)** I provide this declaration to address OLC's response to the CCR FOIA request and to provide the justifications for OLC's determination that certain responsive documents must be withheld as exempt from disclosure under FOIA. In making its withholding determinations, OLC and those acting on its behalf have consulted with the National Security Agency ("NSA"), the Office of the Director of National Intelligence ("DNI"), and other federal agencies and officials regarding the harm to national security that would result from disclosure of the documents identified in this declaration. In particular, I have reviewed the Declaration of J. Michael McConnell, Director of National Intelligence ("DNI Decl."), that I understand is being filed concurrently with my declaration. The DNI Declaration supports withholdings in this case,

and I have relied upon his expert assessment of the harm to the national intelligence program that would result from disclosure of documents related to the TSP.

## (U) CLASSIFICATION OF DECLARATION

7.     **REDACTED**

8.     **REDACTED**

9.     **REDACTED**

10.    **REDACTED**

## (U) THE TERRORIST SURVEILLANCE PROGRAM

11.     **(U)** On September 11, 2001, al Qaeda terrorists attacked the United States. The attacks of September 11th resulted in approximately 3,000 deaths—the highest single-day death toll from hostile foreign attacks on the United States homeland in the Nation's history. In addition, these attacks shut down air travel in the United States, disrupted the Nation's financial markets and government operations, and caused billions of dollars of damage to the economy.

12.     **(U)** Following those attacks, the President of the United States authorized the National Security Agency to intercept international communications into and out of the United States of persons linked to al Qaeda or related terrorist organizations (hereinafter, "Terrorist Surveillance Program" or "TSP").[1] The TSP was a targeted and focused program intended to help "connect the dots" between known and potential terrorists and their affiliates. In order to intercept a communication under the TSP, there must have been reasonable grounds to believe that one party to the communication is located outside the United States and that at least one party to the communication is a member or agent of al Qaeda or an affiliated terrorist

---

[1] **(U)** As the Attorney General announced on January 17, 2007 in a letter to Members of Congress, on January 10, 2007, a Judge of the Foreign Intelligence Surveillance Court ("FISC") issued orders authorizing the Government to target for collection international communications into or out of the United States where there is probable cause to believe that one of the communicants is a member or agent of al Qaeda or an associated terrorist organization. As a result of these orders, which allowed for the speed and agility necessary to intercept such communications effectively, any electronic surveillance that was occurring as part of the TSP is now being conducted subject to the approval of the FISC.

organization. The TSP, which operated in the context of the ongoing armed conflict with al Qaeda and its allies, was an early warning system with one purpose: to detect and prevent another catastrophic attack on the United States in the wake of the attacks of September 11th.

13.    **(U)** The TSP was a program critical to the national security of the United States. The President publicly acknowledged the existence of the Program on December 17, 2005. Although the existence of the TSP is now publicly acknowledged, and some facts about the Program have been disclosed, the President has made clear that sensitive information about the nature, scope, operation, and effectiveness of the Program remains classified and cannot be disclosed without causing exceptionally grave harm to U.S. national security.

14.    **REDACTED**

15.    **REDACTED**

16.    **REDACTED**

17.    **(U)** Because of the grave harms to national security that might result from disclosure of operational details regarding the TSP, and pursuant to the criteria outlined in Executive Order 12958, as amended, information related to the TSP is classified TOP SECRET, and is subject to the special access and handling requirements reserved for "Sensitive Compartmented Information," ("SCI"), because it involves or derives from particularly sensitive intelligence sources and methods. See DNI Decl. ¶ 7. All TSP-related information maintained by OLC is maintained in accordance with these access and handling requirements.

18.    **(U)** On January 17, 2007, the Attorney General announced that any electronic surveillance that was occurring under the TSP would now be conducted subject to the approval of the Foreign Intelligence Surveillance Court ("FISC"). On August 5, 2007, Congress enacted the Protect America Act of 2007, Pub. L. No. 110-55, which exempted the acquisition of certain foreign intelligence information from the definition of "electronic surveillance" subject to the procedures of the Foreign Intelligence Surveillance Act ("FISA"). Although the Protect America

Act lapsed on February 16, 2008, certifications made under the Act remain in force for one year

following their execution.  Under these circumstances, the President has not renewed his

authorization of the TSP.  See DNI Decl. ¶ 17.

### (U)  OLC'S RESPONSE TO PLAINTIFFS' FOIA REQUEST

19.     **(U)**  On January 18, 2006, plaintiffs by the Center for Constitutional Rights made

a FOIA request, a copy of which is attached as Exhibit A (the "FOIA request").  The FOIA

request seeks various documents regarding the authority of the National Security Agency to

target for interception international communications into and out of the United States of persons

linked to al Qaeda or related terrorist organizations (the "Terrorist Surveillance Program,"

"program" or "TSP").

20.     **(U)**  On February 29, 2008, OLC made its initial response to plaintiffs in which

we indicated that a search of the Office's unclassified and classified files had been completed.

With respect to our unclassified files, OLC indicated that it had located more than 10,000 pages

of responsive records.  At that time, OLC released 1,440 pages of the documents, indicated it

was referring 338 pages of the remaining records to other agencies of other components of the

Department for consultations, and that it was withholding the remaining unclassified documents

under FOIA Exemption Five, 5 U.S.C. § 552(b)(5), because they were protected by the

deliberative process privilege, the attorney-client privilege, and the attorney work product

doctrine, and/or the presidential communications privilege and were not appropriate for

discretionary release.

21.     **(U)**  On May 5, 2008, OLC responded to plaintiffs on the 338 pages of

unclassified records that it had referred to other agencies and other components of the

Department for consultations.  Based on those consultations, OLC released 102 pages, subject to

minor redactions to protect information protected by FOIA Exemptions Two, Five, and Six, 5

U.S.C. § 552(b)(2), (5) & (6).  OLC also explained that the Office of Information and Privacy

was responding directly with respect to 81 pages and that it was withholding the remaining 155

pages under FOIA Exemption Five, because they are protected by the deliberative process

privilege, the attorney-client privilege, and the attorney work product doctrine.  In addition, OLC

advised plaintiffs that some of the withheld pages also contained information protected by FOIA

Exemptions Two, Three, and Six.

22.     **(U)**  A <u>Vaughn</u> index describing the 24 unclassified records or categories of

records at issue in the litigation is attached to this declaration as Exhibit C.[2]  As the index

indicates, all of the documents reflect deliberations among OLC and other Executive Branch

attorneys, undertaken after that highly classified program was publicly disclosed in December

2005, regarding the legal authority for the TSP.  For reasons discussed in more detail below, the

deliberative process privilege protects each record or category of record listed on the *Vaughn*

index from disclosure.  In addition, most of the records are also shielded from disclosure by the

attorney work product doctrine, and records in Group Numbers 2 and 4 are protected by the

presidential communications privilege.  Finally, many of the records withheld by OLC contain

personal information protected by FOIA Exemption Six, 5 U.S.C. § 552(b)(6).

23.     **(U)**  With respect to classified material, OLC notified plaintiffs in the February 29

response, that it had located 104 records or categories of records responsive to the request.  OLC

released on of those classified records.  Of the remaining 103 records or categories of records,

OLC explained that it had referred 42 to other agencies or components of the Department for

consultations.  Based on those consultations, OLC explained that it was withholding the 42

---

[2]  **(U)** The attached *Vaughn* index summarizes all the responsive unclassified records or categories of records withheld by OLC.  I understand that Plaintiffs' Second Amended Complaint seeks only records responsive to Request No. 1 and Request No. 3 of the FOIA request.  OLC explained in its February 29 response that for national security reasons, it can neither confirm nor deny the existence of the Request No. 1, which sought "records of warrantless electronic surveillance or physical searches of persons located within the United States that reference, list, or name any Requesting Party."  Request No. 3 seeks all "records establishing, discussing or referencing the policies, procedures, guidelines, or practices" used to intercept communications under the TSP.  Most of the records in OLC's unclassified files that are responsive to Request No. 3 are also responsive to other document requests in the FOIA request.  Consequently, OLC has not, at this stage, narrowed its *Vaughn* index to only records responsive to this request.

records in full under FOIA Exemptions One and Three, 5 U.S.C. § 552(b)(1), (3), because they were properly classified and contain information of the type described in section 6 of the National Security Act of 1959, Pub. L. No. 86-36, 5 6, 73 Stat. 63, 64, codified at 50 U.S.C. § 402 note, and/or in Section 102A(i)(l) of the Intelligence Reform and Terrorism Prevention Act of 2004, 50 U.S.C. § 403-l(i)(l). Additionally, we advised that the documents were subject to the deliberative process and attorney client privileges and thus are also withheld under FOIA Exemption Five, 5 U.S.C. § 552(b)(5).

24.    **(U)** OLC also explained that it was withholding the remaining 61 classified records or categories of records not referred for consultations pursuant to FOIA Exemption One, because they are classified. We also advised plaintiffs that many of these documents were exempt from disclosure under Exemption Three, because they contain the type of information described in section 6 of the National Security Act of 1959, Pub. L. No. 86-36, 73 Stat. 63, 64, codified at 50 U.S.C. § 402 note, and/or section 102A(i)(l) of the Intelligence Reform and Terrorism Prevention Act, 50 U.S.C. § 403-1(i)(l). Finally, we explained that most, if not all, of the classified 61 records or categories of records are subject to FOIA Exemption Five, because they are protected by the deliberative process privilege, the attorney-client privilege, the presidential communications privileges, and/or the attorney work product doctrine.

25.    **(U)** It is my understanding that plaintiffs' complaint seeks relief only as to the withholdings responsive to their third FOIA request seeking "policies, procedures, guidelines, or practices" related to the TSP ("FOIA Request No. 3"). As for classified documents, we have identified 66 records or categories of records responsive to FOIA Request No. 3. The attached index, *see* Exhibit D, shows that 22 of those classified records or categories of records were referred to other agencies or to other components of the Department of Justice for processing and

they are not addressed further herein.[3]  The remaining 44 classified records or categories of records are withheld as exempt from disclosure under FOIA Exemption One, 5 U.S.C. § 552(b)(1), which protects documents that are currently and properly classified pursuant to Executive Order, and FOIA Exemption Three, 5 U.S.C. § 552(b)(3), which protects documents that are exempted from disclosure under FOIA by federal statute, and/or FOIA Exemption Five, 5 U.S.C. § 552(b)(5).  In addition, other Department of Justice components—the Office of the Deputy Attorney General ("ODAG") and FBI—referred 11 classified records or categories of records to OLC for processing.  These records were also withheld as exempt from disclosure under FOIA Exemptions One, Three, and/or Five and the withholding of those records or categories of records is also addressed by this declaration.  All of the documents described in this declaration are collectively referred to as documents withheld by OLC.

### (U) ADEQUACY OF SEARCH

26.    **(U)**  OLC received plaintiffs' FOIA request on July 20, 2006; a copy of that request is attached hereto as Ex. A.  Upon receipt of plaintiffs' FOIA request, OLC conducted a search of its unclassified files.  We searched my files as well as the files of the OLC staff attorneys and Deputy Assistant Attorney Generals who are principally responsible for matters involving the TSP.  The files were searched both electronically, through Microsoft Word and WordPerfect directories, and in hard copy.  In addition, the electronic mail messages ("e-mails") of OLC staff relating to the TSP were reviewed either electronically or in hard copy.  OLC also has a computer database that contains the full text of unclassified documents authored by the Office since 1945.  OLC searches this voluminous central file by conducting a keyword search of this database.  A keyword search was performed in this database for documents relating to the

---

[3]  **(U)**  Seven records or categories of records (OLC 12, 13, 14, 20, 21, 94, and 138) have been referred to the former Office of Intelligence and Policy Review (OIPR).  Fifteen records or categories of records (OLC 30, 31, 33, 38, 39, 44, 45, 48, 49, 50, 52, 96, 98, 99, and 135) have been referred to the National Security Agency.

plaintiffs FOIA request. In sum, this search was reasonably likely to uncover all responsive unclassified records.

27.    **(U)** With respect to the classified documents maintained in OLC files, because of their sensitive nature, all classified documents maintained by OLC relating to the TSP are kept in segregated and locked file cabinets to which only those with the necessary security clearances are allowed access. These file cabinets are themselves located in a secure facility approved for the storage of SCI material. Documents in these cabinets were reviewed for purposes of locating documents responsive to plaintiffs' request, and OLC does not maintain any significant number of classified documents relating to the TSP in any other location.

### (U) DOCUMENTS WITHHELD

28.    **(U)** In addition to Exemptions One, Three, and Five, many of the documents withheld by OLC contain information that must be withheld to prevent against an unwarranted invasion of personal privacy. This information includes the names of third-party individuals (non-government employees) as well as OLC and other government agency staff, and their personal information (such as addresses (including email addresses), home telephone numbers, or cellular phone numbers) that occasionally appear in the documents. There is no legitimate public interest in the release of this information, as its disclosure would shed no light on the activities of the Department of Justice but could subject these individuals to unwanted public attention, harassment, or embarrassment. Thus, information of this type that appears in these documents is withheld by OLC under FOIA Exemption Six, 5 U.S.C. § 552(b)(6).

29.    **(U)** The documents withheld by OLC under Exemptions One, Three, Five, and Six fall into six categories, which are discussed below. For the convenience of the Court, charts, attached as Ex. C and Ex. D, are provided which identify the classified and unclassified records or categories of records described in this declaration in numerical order and cross-reference the paragraphs of the declaration in which the justification for their withholding is explained or

indicate if the record is one for which a different agency or component will respond. Because certain documents contain the equities of OLC as well as another component or agency, in certain cases, documents discussed below may also be discussed in another declaration.

### (U) I.  Classified Records or Categories of Records

### (U) A.  Records or Categories of Records Relating to the President's Authorization of the TSP.

30.     (U)  The TSP, by its terms, expired approximately every 45 days unless it was reauthorized. The President was responsible for reauthorizing the Program. The President's reauthorization determination was based on: reviews undertaken by the Intelligence Community[4] and the Department of Justice of the current threat to the United States posed by al Qaeda and its affiliates, a strategic assessment of the continuing importance of the Program to the national security of the United States, and assurances that safeguards continued to protect civil liberties. The Attorney General was involved in reviewing the legality of the Program. Members of this Office provide legal advice and counsel to the President and the Attorney General as they made periodic decisions regarding reauthorization of the TSP.

31.     (U)  In the process of compiling its FOIA response, OLC has conferred with the intelligence agencies that provided or compiled this information and they have advised that to disclose such sensitive intelligence information would both endanger the sources from which it was obtained and compromise the capabilities of the United States Intelligence Community to continue to secure such intelligence information in the future. See generally DNI Decl. ¶¶ 25-26

---

[4] **(U)**  As used herein, the "Intelligence Community" includes the Office of the Director of National Intelligence; the Central Intelligence Agency; the National Security Agency; the Defense Intelligence Agency; the National Geospatial-Intelligence Agency; the National Reconnaissance Office; other offices within the Department of Defense which collect specialized national intelligence through reconnaissance programs; the intelligence elements of the military services, the Federal Bureau of Investigation, the Department of the Treasury, the Department of Energy, the Drug Enforcement Administration, and the Coast Guard; the Bureau of Intelligence and Research of the Department of State; the elements of the Department of Homeland Security concerned with the analysis of intelligence information; and such other elements of any other department or agency as may be designated by the President, or jointly designated by the DNI and heads of the department or agency concerned, as an element of the Intelligence Community. See 50 U.S.C. § 401a(4).

(invoking statutory sources and methods protection).  They advise that such a result would have

exceptionally grave consequences for U.S. national security.  The records or categories of

records identified below are therefore properly and currently classified and are exempt from

disclosure under FOIA Exemption One.  In addition, intelligence information relating to the

activities of al Qaeda and its affiliates is sensitive intelligence information that is subject to

statutory protection under the National Security Act of 1947, as amended, which protects

intelligence sources and methods from disclosure.  See 50 U.S.C. § 403-1(i)(1).  The information

contained in these records was derived from these sources and methods and, as described by DNI

McConnell, its disclosure risks compromising the safety and effectiveness of these intelligence

capabilities.  As a result, this information is also exempt under FOIA Exemption Three.

32.     **(U)**  One record, FBI 7, was referred to OLC and was withheld because it contains

classified information regarding the terms of the President's authorization of the TSP, which, if

disclosed, would compromise the effectiveness of the Program to the detriment of national

security.  See DNI Decl. ¶ 26.  FBI 7 is a one-page memorandum, dated October 20, 2001, from

the Attorney General to the Director of the FBI, advising the Director that certain intelligence

collection activities are legal and have been appropriately authorized.  The memorandum is

classified TOP SECRET and is withheld under FOIA Exemptions One and Three.

33.     **REDACTED**

34.     **(U)**  OLC also withheld OLC 114.  OLC 114 consists of two copies of a three-

page memorandum dated March 22, 2004, to the Deputy Attorney General from the Assistant

Attorney General for OLC, which confirms oral advice provided by OLC on a particular matter

concerning classified foreign intelligence activities.  OLC 114 is withheld under FOIA

Exemptions One, Three, and Five.

35.     **REDACTED**

36.     **REDACTED**

37.    **(U)** Disclosure of OLC 114 would interfere with privileged attorney-client relationships. OLC 114 contains recommendations and legal advice from OLC and its release would interfere with the attorney-client relationship between OLC and Department leadership who rely upon OLC for its legal advice with respect to a broad range of issues. Disclosure of communications of this nature would substantially harm the relationships intended to be protected by the attorney-client privilege by compromising OLC's ability to provide legal advice and to do so in writing. Thus, OLC 114 is properly withheld under FOIA's Exemption Five.

### B. REDACTED

38.    **REDACTED**

39.    **REDACTED**

40.    **REDACTED**

41.    **REDACTED**

42.    **(U)** Accordingly, the OLC records or categories of records described in this section, specifically, OLC 35, 36, 37, and ODAG 12, totaling 72 pages plus related electronic files are properly withheld under Exemption One, as well as under Exemption Three. To the extent, moreover, that the documents are drafts, notes, or internal recommendations, they are also exempt under Exemption Five, as their disclosure would damage the internal give-and-take necessary to agency decision-making.

### (U) C. Records or Categories of Records Relating to Targets of the TSP.

43.    **(U)** As described by the President, under the TSP, the NSA targets communications where there are reasonable grounds to believe that one party to the communication is located outside the United States and that at least one party to the communication is a member or agent of al Qaeda or an affiliated terrorist organization. OLC has been part of an extensive inter-agency process designed to identify those organizations that are properly considered to be affiliated with al Qaeda for purposes of this targeting and to develop

12

the criteria to be applied when identifying potential targets. OLC thus withheld records or categories of records relating to the criteria used for targeting and the appropriateness of targeting certain groups or individuals under the TSP. These records or categories of records, OLC 76, 107, 139, 144, and 200, and ODAG 23 and 24, totaling 686 pages and related electronic files, are exempt from disclosure under Exemptions One, Three, and Five, for the reasons explained below.

44.     **REDACTED**

45.     **(U)** Moreover, as described by DNI McConnell, as a matter of course, the United States does not publicly confirm or deny whether <u>any</u> individual is subject to surveillance activities of the type described herein, because to do so would tend to reveal actual targets. <u>See</u> DNI Decl. ¶ 39. For example, if any member of the Intelligence Community were to confirm that any specific individuals are <u>not</u> targets of surveillance, but later refused to comment (as it would have to) in a case involving an actual target, a person could easily deduce by comparing such responses that the person in the latter case is a target. The harm of revealing targets of foreign intelligence surveillance is obvious. If an individual learns or suspects that his communications are or may be targeted for intelligence collection, he can take steps to evade detection, to manipulate the information received, or to implement other countermeasures aimed at undermining U.S. intelligence operations. The resulting loss of accurate intelligence from such a source deprives U.S. policy makers of information critical to U.S. interests. <u>See</u> DNI Decl. ¶ 39.

46.     **REDACTED**

47.     **REDACTED**

48.     **(U)** Because each of the records or categories of records relates to TSP targeting information, it is subject to the highest level of protection and is properly excluded from disclosure under FOIA Exemptions One and Three. <u>See</u> DNI Decl. ¶¶ 33.

49.    **(U)**  In addition to being properly withheld under Exemptions One and Three, all of the documents identified in this section were created or collected as part of an ongoing inter-agency deliberative process, as described above, aimed at making decisions as to which individuals and entities are to be targeted by the TSP.  Moreover, although factual information is ordinarily not subject to deliberative process protection, in this case the selection of the specific facts considered by the Department and other agencies involved in this process would reveal the nature of the process and the specific information recommended to be considered when determining whether to target an entity or individual under the TSP.  Disclosure of these records or categories of records would compromise the interagency deliberative process and deter the full exchange of ideas and information intended to assist in that process, to the detriment of informed government decision-making.  Such documents are protected by the deliberative process privilege, and thus are properly withheld under Exemption Five.

50.    **(U)**  OLC 76 and ODAG 24 are categories of records that reflect this interagency discussion.  The documents withheld by OLC in this category of records fall into three overlapping categories:  interagency communications, much of it preliminary, concerning consideration of international terrorist groups potentially affiliated with al Qaeda; OLC drafts and notes concerning the same, often identifying questions requiring interagency resolution; and intelligence information and analysis concerning terrorist groups considered relevant to such consideration.  All of these documents are properly withheld under FOIA Exemptions One, Three, and Five.

51.    **(U)**  Similarly, OLC 107 consists of four copies of a two-page document that generally addresses standards for considering whether international terrorist groups would be considered to be potentially affiliated with al Qaeda.  This document is identified on its face as "preliminary" and thus constitutes a draft.  Similarly, OLC 139 consists of three copies of a six-page document, all with handwritten comments and marginalia, entitled "Factors."  This

document is a draft of a portion of a proposed submission to the FISC concerning the factors to be considered in decisions regarding targeting. OLC 144 consists of five copies of a two-page draft memorandum setting forth preliminary views on standards for considering whether international terrorist groups might be considered to be potentially affiliated with al Qaeda, with handwritten comments and marginalia. Finally, ODAG 23 is a six-page memorandum, dated August 18, 2005, from an intelligence agency official to OLC attorneys discussing classified intelligence concerning consideration of international terrorist groups potentially affiliated with al-Qaeda. These documents are part of the interagency discussion described above, and is withheld under FOIA Exemptions One, Three, and Five.

52.     **(U)**  In addition, OLC 76, OLC 139, OLC 144, and ODAG 23 and 24 constitute attorney-client communications between OLC and other Department attorneys, and the other agencies, particularly in the Intelligence Community, to which we provide legal advice. To disclose these communications would hamper that relationship and make it difficult for the Department to request and for the client agencies to provide factual information and opinions critical to producing well-informed legal opinions from the Department that can support effective decisionmaking at the agency level.

53.     **(U)**  OLC 200 is a typewritten note, with attachments, totaling 11 pages, plus a related electronic file, from one of my staff attorneys to me which discusses a legal question relating to foreign intelligence activities. This document is withheld under FOIA Exemptions One, Three and Five.

54.     **(U)**  The legal analysis contained in OLC 200 was derived from, and summarizes, a classified NSA operational directive that was provided to OLC in the course of performing its function of providing advice to other Executive Branch agencies. Because the NSA directive remains classified, this derivative document cannot be disclosed without compromising the

national security information contained in that document. Accordingly, it is properly withheld under Exemptions One and Three.

55.    **(U)** Disclosure of such intra-OLC communications as in OLC 200 conveying information from staff level attorneys to their supervisors would fundamentally undermine the manner in which this office conducts business. I rely upon my staff to provide me with concise legal explanations and analysis on topics of interest, and it is not unusual that they are asked to do so in writing. To require the disclosure of such informal communications when they are reduced to writing would seriously impinge on my ability – and the ability of my staff – to fulfill our duties to the Department. It is therefore properly withheld under Exemption Five.

### (U) D. Records or Categories of Records Relating to Matters before the Foreign Intelligence Surveillance Court.

56.    **REDACTED**

57.    **REDACTED**

58.    **REDACTED**

59.    **REDACTED**

60.    **REDACTED**

### E.  (U) Records or Categories of Records Relating to Legal Opinions of OLC.

61.    **(U)** The principal function of OLC is to assist the Attorney General in his role as legal adviser to the President and to other departments and agencies in the Executive Branch. In connection with this function, OLC prepares memoranda addressing a wide range of legal questions involving operations of the Executive Branch, and participates in assisting in the preparation of legal documents and providing more informal legal advice as necessary and requested. A significant portion of OLC's work can be divided into two categories. First, OLC renders opinions that resolve disputes within the Executive Branch on legal questions. Second, OLC performs a purely advisory role as legal counsel to the Attorney General, providing

confidential legal advice both directly to the Attorney General, and through him or on his behalf, to the White House and other components of the Executive Branch.

62.    **(U)**  OLC 113, and FBI 42 (which is a duplicate of OLC 113) totaling 6 pages as well as related electronic files consists of several copies of a one-page classified memorandum, dated September 15, 2004, from the Deputy Attorney General to the Director of the Federal Bureau of Investigation, entitled "National Security Agency Collection Activity." This memorandum was prepared with the expectation that it would be held in confidence, and to the best of my knowledge, it has been held in confidence. Because this memorandum is classified, it is properly withheld under FOIA Exemptions One and Three.

63.    **REDACTED**

64.    **(U)**  OLC 108 in a 2-page electronic file containing a draft document describing NSA procedures which was relevant to the preparation or development of other legal advice offered by OLC. Drafts of this sort are, by their very nature, predecisional and deliberative. Release of this draft would seriously inhibit and otherwise hinder the deliberations and frank discussions among attorneys within OLC when preparing legal advice, and would interfere with the relationship between OLC and its client agencies by undermining the process through which information pertinent to any particular legal analysis being performed by OLC is shared. OLC attorneys and officials at the agencies they are assisting would become inhibited and cautious in written expression of their preliminary analyses of legal issues, as well as their identification of options and submission of recommendations, to the great detriment of the attorney-client relationship and the Government's deliberative process.

65.    **(U)**  In addition, because OLC 108 contains highly classified material concerning the operation of the TSP, its disclosure implicates the same concerns regarding the release of classified information and the potential harm to intelligence sources and methods identified

above and in the DNI's declaration, see DNI Decl. ¶ 26. Thus, OLC 108 is properly withheld under Exemptions One, Three, and Five.

66.    **(U)** OLC also withheld OLC 8, 9, 26, 27, 28, 29, 32, 43, 94, 102, 103, 106, 118, 120, 123, 140, 141, 142, 143, 206, and 208; and ODAG 21 and 22 totaling approximately 318 pages, as well as related electronic files, which are informal communications (facsimile transmissions and electronic mail messages) to and from OLC and other federal Government agencies containing attorney-client communications regarding very specific questions about the TSP and corresponding attorney advice, or notes relating to such communications. These documents are withheld under FOIA Exemptions One, Three and Five.

67.    **(U)** Two examples illustrate the proper withholding of these records or categories of records. For example, OLC 27 is a one-page handwritten note recording that an OLC attorney recommended to the NSA General Counsel that certain language be included in documentation supporting collection of various communications under the TSP. Similarly, OLC 208 is a facsimile transmission from an attorney at OLC to an attorney at NSA seeking factual clarification regarding the operation of a particular technical aspect of the TSP so as to inform future advice regarding the Program.

68.    **(U)** These sorts of communications contain information protected by the attorney-client privilege and the deliberative process privilege. It is essential to the quality and effectiveness of the decisionmaking process leading to the provision of OLC advice that client agencies provide OLC with all relevant facts and with their candid analysis and recommendations regarding legal questions presented to us. To disclose such communications between OLC attorneys and our federal agency clients would fundamentally disrupt the attorney-client relationship and would deter federal agencies from seeking timely and appropriate legal advice. Such documents are properly withheld under Exemption Five of FOIA. Moreover, because of the content of these documents, disclosure of these communications implicates the

same concerns regarding the release of classified information and the potential harm to intelligence sources and methods identified above and in the Declaration of DNI McConnell, see DNI Decl. ¶¶ 26-39. Thus, all of these records or categories of records are also properly withheld under Exemptions One and Three.

### F. (U) Briefing Materials and Talking Points.

69.    **(U)** OLC has withheld various briefing materials and talking points that were created within the Department to assist senior Administration officials in addressing various points about the TSP. These documents, specifically, OLC 7, 46, 80, and 82, as well as ODAG 34 and 54 totaling 63 pages as well as related electronic files.

70.    **(U)** Briefing materials and talking points are by their very nature deliberative, as they reflect an attempt by the drafters succinctly to summarize particular issues and provide key background information in an effort to anticipate questions or issues that may be raised at a briefing or other situation in which such documents are used. Thus, these materials attempt to ensure that senior Administration officials are prepared to respond in any particular setting by providing draft answers in response to anticipated questions. Because these draft answers may or may not be used or may be modified by the speakers in any particular setting, these materials reflect the exchange of ideas and suggestions that accompanies all decision-making, and in many cases they also reflect assessments by attorneys and other staff about issues on which they have been asked to make recommendations or provide advice.

71.    **REDACTED**

72.    **(U)** OLC 7 appears to have been created to provide high level Department officials with a concise summary of information that might be required for an internal meeting or a presentation. OLC 7 is properly considered deliberative and pre-decisional, and thus exempt from disclosure under FOIA Exemption Five.

73.    **(U)**  OLC 46 consists of two copies of an undated one-page document entitled "Talkers," and a related electronic file, containing talking points that were created within the Department to assist senior Administration officials in addressing various points about the TSP in internal discussions.  This document is properly withheld under FOIA's Exemptions One, Three, and Five.  ODAG 54 is a duplicate of OLC 46 and is withheld for identical reasons.

74.    **REDACTED**[5]

75.    **(U)**  OLC 46 appears to have been created to provide high level Department officials with a concise summary of information that might be required for an internal meeting or a presentation.  OLC 46 is properly considered deliberative and pre-decisional, and thus exempt from disclosure under FOIA's Exemption Five.

76.    **(U)**  OLC 80 consists of six copies of an undated two-page document entitled "Technical Operation of [REDACTED],"[6] some with handwritten notes and marginalia.   These documents are withheld under FOIA Exemptions One, Three and Five.  In addition, ODAG 34 is a duplicate of OLC 80 and is withheld for identical reasons.

77.    **(U)**  OLC 80 contains a detailed description of the operation of the TSP and other classified foreign intelligence activities and thus falls squarely within the category of "information that would reveal or tend to reveal operational details concerning the technical methods by which NSA intercepts communications under the TSP," which the DNI identified as information that must be protected from disclosure.  DNI Decl. ¶ 31.  As the DNI explained, "[d]etailed knowledge of the methods and practice of the U.S. Intelligence Community agencies must be protected from disclosure because such knowledge would be of material assistance to those who would seek to penetrate, detect, prevent, or damage the intelligence efforts of the United States, including efforts by this country to counter international terrorism."  Id.

---

[5]  REDACTED

[6]  **(U)**  A classified codename is redacted.

Information falling within this category, accordingly, including OLC 80, is properly protected as both classified and subject to the DNI's authority to protect intelligence sources and methods. OLC 80, thus, is properly withheld under FOIA Exemptions One and Three.

78.    **REDACTED**

79.    **REDACTED**

80.    **(U)** OLC 80 is also properly withheld under FOIA's Exemption Five. OLC 80 is a briefing paper that was created within the Department to assist senior Administration officials in addressing various points about the TSP. This document was used for purposes of internal deliberations only; it was not prepared for purposes of providing information to the public. Briefing materials are by their very nature deliberative, as they reflect an attempt by the drafters succinctly to summarize particular issues and provide key background information in an effort to anticipate questions or issues that may be raised at a briefing or other situation in which such documents are used. OLC 80 reflects assessments by OLC attorneys about the relative importance of information considered necessary for purposes of briefing senior Administration officials, and the details of the information that need to be conveyed in any particular circumstance. To disclose such assessments would harm the Department's deliberative process.

81.    **(U)** OLC 82 consists of 20 copies, some drafts and some with handwritten edits and marginalia, plus eight related electronic files of a briefing outline totaling 36 pages, dated January 6, 2006, summarizing various topics related to foreign intelligence activities. OLC 82 contains classified information relating to the scope and operation of the TSP and other intelligence activities that would be compromised by disclosure of these documents. For the reasons identified in the declaration of the Director of National Intelligence, see DNI Decl. ¶ 26, 31-38, such information cannot be publicly disclosed without causing exceptionally grave harm to the national security of the United States. In addition, OLC 82 in an internal briefing outline, created by my staff at my request and for my use, intended to be used to prepare me to brief

others within the Government on issues concerning the TSP and other foreign intelligence

activities. This document contains recommendations from my staff as to topics for discussion,

and is both deliberative and predecisional in the sense that, as I spoke in these meetings, I made

the ultimate decision regarding which points would be made in any particular context.

Disclosure of this document would impermissibly interfere with my ability to ask my staff to

create candid and concise summaries of critical information and recommendations for my use in

discussions with higher level Department officials or other officials within the Government and,

thus, would interfere with my ability to fulfill my official duties. OLC 82, accordingly, is

properly exempt from disclosure under FOIA Exemptions One, Three, and Five.

### G.  (U)  Records that Are Not Agency Records

82.     **(U)**  OLC has temporary possession of three records, OLC 56, 57, 58, which are

documents created by the President or his immediate staff in the course of carrying out the

official duties of the President, namely the authorization of the TSP.  In addition, FBI 23, which

was referred, is a duplicate of OLC 56.  These documents were provided to OLC for purposes of

assisting OLC with completing its work but are subject to an express reservation of control by

the White House.  Other than taking steps to ensure that these highly classified documents are

maintained in a secure environment, OLC has no authority to distribute these records or to

dispose of them.  As such, they are not "agency records," as that term is defined in FOIA, and

thus were not processed by OLC in response to the three FOIA requests at issue in this litigation.

### (U) II.   OLC's Unclassified Records or Categories of Records

83.     **(U)**  As set forth above, see supra ¶ 22, OLC's Vaughn index of unclassified

records fall into 24 categories that are properly withheld under Exemption Five.

84.     **(U)**  The principal function of OLC is to assist the Attorney General in his role as

a legal adviser to the President of the United States and to departments and agencies in the

Executive Branch.  In connection with this function, OLC often provides advice and prepares

documents addressing a wide range of legal questions involving Executive Branch operations.  A significant portion of OLC's work involves performing a purely advisory role as legal counsel to the Attorney General, providing confidential legal advice and analysis to the Attorney General and, through him or on his behalf, to the White House and other components of the Executive Branch.

85.    **(U)** Although OLC generally does not represent the Government in litigation, the Office frequently provides legal advice to Department attorneys who are in the process of litigating—or anticipate litigating in the near future—sensitive or complex legal issues.  These cases often involve difficult legal questions related to, among other things, constitutional and national security law.  When working on such matters, OLC often provides substantive advice concerning preliminary briefs and other filings generated by the Department's litigating components, such as the Civil Division, the Criminal Division, or the Office of the Solicitor General.  In addition, OLC sometimes prepares memoranda and other documents with the understanding and expectation that the Department's litigators may incorporate OLC's legal analysis into their arguments.

86.    **(U)** Members of this Office periodically provide legal advice to the President, the Attorney General, and other government officials with respect to the TSP.  Following the public disclosure of the TSP by The New York Times, OLC attorneys—many of whom were previously unaware of the TSP's existence—created a number of documents analyzing, explaining, and defending the TSP's legality.  In particular, this Office attempted to identify and articulate the most relevant legal arguments concerning the TSP.

**(U)  A.  Deliberative Process Privilege**

87.    **(U)** The deliberative process privilege protects from disclosure all of the unclassified documents withheld by OLC.  This Office generated or received each of these documents in its advisory role; each document is non-final and pre-decisional; and each reflects

internal deliberations among OLC attorneys and other Executive Branch attorneys. Broadly speaking, the withheld documents consist of: (a) draft documents discussing the legal basis for the TSP; (b) handwritten attorney marginalia and notes; and (c) e-mails among various attorneys and officials in the Office, other components of the Department, and elsewhere in the Executive Branch generated while drafting documents and analyzing the TSP.

88.    **(U)** The draft documents consist of drafts of various documents discussing TSP and its legality, including drafts of the Department's January 19, 2006, paper entitled "Legal Authorities Supporting the Activities of the National Security Agency Described by the President" (the "DOJ White Paper"); drafts of the Department's December 22, 2005, letter to Congress (the "Moschella letter"); drafts of talking points discussing the TSP's legal basis and court decisions concerning the TSP; drafts of possible statements responding to congressional or media inquiries; drafts of proposed remarks by the President and the Attorney General; draft editorials discussing the TSP's legality; drafts of congressional testimony; and draft answers to "questions for the record" ("QFRs") from Members of Congress.[7]

89.    **(U)** OLC attorneys prepared many of these draft documents in the course of advising senior Executive Branch officials on how to address and explain various legal aspects of the TSP. Some of the drafts (such as the draft talking points, the draft editorials, and the draft public remarks) attempt to summarize succinctly particular issues and provide important background information in a concise, summary format for ease of understanding and presentation. Other documents (such the drafts of the Moschella letter, the drafts of the DOJ White Paper, the drafts of the QFR answers, and the draft congressional testimony) provide lengthier and more detailed analysis of various legal issues related to the TSP.

---

[7] **(U)** Drafts (including drafts attached to e-mails) are found in Group Numbers 2, 5, 6, 7, 8, 9, 10, 11, 12, 13, 17, 18, 19, 20, 22, 23, and 24 of the attached *Vaughn* index.

90.    **(U)**  Creating draft documents is an integral part of deliberations within OLC, the

Department, and the Executive Branch.  Through the writing process, OLC attorneys focus,

articulate, and refine their advice and analysis.  Drafts do not represent the final position or

ultimate views of the Office, the Department, or the Executive Branch.  To the contrary, drafts

are, by their very nature, pre-decisional and deliberative.  They are part of the exchange of ideas

and suggestions that accompanies the Office's formulation of its responses to questions and legal

advice, and they reflect the preliminary assessments and suggestions of OLC attorneys.  Indeed,

as a matter of Office policy, OLC attorneys exchange draft documents with one another for

comments, edits, and suggestions.  Inevitably, initial drafts of documents differ substantially

from the final versions, as attorneys adjust their analysis in response to input from their

colleagues.

91.    **(U)**  As indicated in the attached <u>Vaughn</u> index, OLC released to plaintiffs the

final version of many of the withheld drafts.  In particular, OLC released to plaintiffs the final

version of the Moschella letter; the final version of the DOJ White Paper; the final versions of

unclassified congressional testimony of OLC officials regarding the TSP; the final version of

prepared public remarks concerning the TSP made by the Attorney General at Georgetown

University on January 24, 2006; the final versions of unclassified letters from the Department of

Justice responding to inquiries from Members of Congress about the TSP[8]; certain talking points

---

[8] **(U)** OLC released the following letters for Members of Congress from the Department of Justice:  Letter
for Senator Russell D. Feingold from William E. Moschella, Assistant Attorney General, Office of Legal Counsel
(Feb. 3, 2006) (responding to January 30, 2006 letter from the Senator); Letter for Senator Arlen Specter from the
Attorney General (Feb. 28, 2006) (responding to several questions raised during a February 6, 2006, hearing before
the Senate Judiciary Committee); Letter for Senator Dianne Feinstein from William E. Moschella, Assistant
Attorney General, Office of Legislative Affairs (Feb. 28, 2006) (responding to questions raised in January 30, 2006
letter from Senator Feinstein); Letters for Senators Richard Durbin Russell Feingold, Dianne Feinstein, Charles
Schumer, Joseph Biden, Patrick Leahy, Edward Kennedy, and Herb Kohl, from William E. Moschella, Assistant
Attorney General, Office of Legislative Affairs (all dated May 8, 2006) (responding to letters from the Senators
dated January 27, 2006, and February 2, 2006); Letters for Senators Richard Durbin, Russell Feingold, Edward
Kennedy, and Charles Schumer from the Attorney General (all dated May 17, 2007) (responding to joint letter from
the Senators dated May 16, 2007); Letters for Senators Patrick Leahy and Arlen Specter from Richard A. Hertling,
Principal Deputy Assistant Attorney General, Office of Legislative Affairs (June 21, 2007) (responding to letter
dated May 21, 2007); Letter for Senator Patrick Leahy form the Attorney General (Aug. 1, 2007) (responding to
request from the Senator to supplement July 24, 2007 testimony before the Senate Judiciary Committee).

describing the legal authority for the TSP; and unclassified responses to QFRs concerning the TSP.[9]

92.   **(U)** However, none of the draft documents withheld by OLC is, to my knowledge, public, and all were prepared with the expectation that they would be held in confidence. Compelled disclosure of these non-public, pre-decisional, and deliberative draft documents would seriously inhibit and hinder the internal deliberations and frank discussions among OLC attorneys that are critical for providing candid and direct advice to the Executive Branch. Indeed, comparing the final copies of these documents against prior drafts would, inevitably, reveal changes and revisions made by OLC and the Department during the deliberative process.

93.   **(U)** Disclosure of the withheld e-mails would similarly undermine OLC's deliberative processes.[10] OLC and Department attorneys routinely send and receive e-mails that convey preliminary advice, analysis, and reactions to a legal issue in a substantive but informal manner. Often, OLC attorneys use e-mail to engage their colleagues in "back and forth" discussions, just as they might in a face-to-face meeting or when walking down the hall. OLC e-mails, in essence, reflect a fluid and evolving exchange of ideas.

94.   **(U)** The e-mails withheld in this case are characteristic of OLC e-mail use. The e-mails are among various attorneys within the Department and, in a few cases, other attorneys within the Executive Branch, including attorneys at the White House. All the messages relate to the preparation of draft documents, and most contain commentaries on and discussions of the documents, including suggestions and opinions regarding the drafts' legal analysis and discussion; many also attach copies of drafts in progress. Forcing the production of these

---

[9] **(U)** OLC released answers to QFRs posed to the Attorney General following his appearance before the House Judiciary Committee on April 6, 2006 and answers to QFRs posed to the Attorney General following his appearance before the Senate Judiciary Committee on July 18, 2006.

[10] **(U)** E-mails (including e-mails attaching draft documents) are found in Group Numbers 2, 6, 4, 5, 7, 8, 9, 12, 14, 15, 16, 17, and 18 of the attached *Vaughn* index.

quintessentially deliberative and preliminary documents would impair decisionmaking by discouraging OLC attorneys from candidly and freely exchanging information and ideas with their colleagues while examining complicated legal issues.

95.    **(U)**  The confidentiality of the withheld attorney notes is also critical to OLC's deliberative processes.  Like the e-mails, they contain attorneys' informal views and preliminary thoughts and reactions, and they are vital to the careful and thoughtful development of this Office's advice.  Compelling their release would greatly harm OLC's deliberative processes by discouraging attorneys from placing their initial thoughts and reactions on paper.

96.    **(U)**  Similarly, attorneys' notes, markings, and marginalia on documents are important aspects of OLC's deliberative processes.[11]  Like many attorneys, OLC lawyers regularly mark, underline, highlight, bracket, and place comments on the documents they read. These markings reflect attorneys' individual mental impressions and evaluations, and the markings highlight important sections of documents for future reference as they formulate their advice and response.  Disclosing these private markings would inevitably reveal the Department's internal deliberations.

97.    **(U)**  In sum, compelled disclosure of the unclassified documents withheld by OLC would cause serious harm to the deliberative processes of the Department of Justice and the Executive Branch and would disrupt the relationship between the Department and the President and other officers of the Executive Branch.  It is essential to the mission of the Executive Branch that OLC's legal advice, and the development of that advice, not be inhibited by concerns about public disclosure.  Protecting the confidentiality of these documents is essential in order to ensure that creative and even controversial legal arguments and theories may be explored

---

[11] **(U)** Group Number 1 of the attached Vaughn index contains records with attorney notes, marginalia, and similar markings.

candidly, effectively, and in writing, as well as to ensure that Executive Branch officials will continue to request OLC's legal views on sensitive matters.

### (U) B. Attorney Work Product Doctrine

98.    **(U)** In addition, as specified on the <u>Vaughn</u> index, most of the withheld unclassified records—including drafts of the DOJ White Paper, drafts of the Moschella letter, draft talking points, drafts of editorials, drafts of congressional testimony, draft answers to QFRs, and attorney e-mails, notes, and marginalia generated in the preparation of OLC's legal analysis—are protected from disclosure by the attorney work product doctrine.

99.    **(U)** All of the unclassified materials withheld under the attorney work product doctrine were prepared after public disclosure of the TSP by the *New York Times*. With that disclosure, OLC and the Department immediately expected that Congress would hold oversight hearings concerning the TSP and that private parties would file lawsuits challenging the TSP. And, in the weeks and months that followed, Congress, in fact, held a number of oversight hearings and private parties brought lawsuits challenging the legality of the TSP.[12] Consequently, OLC attorneys drafted, reviewed, and deliberated on these documents not only with the goal of articulating arguments in support of the TSP's legality, but also in contemplation of anticipated litigation and congressional hearings.

100.    **(U)** Each of the documents withheld under the work product doctrine reflects attorneys' thoughts, impressions, and legal analysis of arguments that OLC and others in the Department believed might arise in the expected litigation. In many cases, the Office transmitted either the withheld documents or their substance to litigating components in the Department because OLC's legal analysis might be used in developing the Government's litigating position and for the purpose of seeking advice from those components as to the litigation implications of

---

[12]  **(U)** For example, the records in Group Numbers 5, 6, 11, 13, 15, 16, 17, 18, 21, and 22 of the attached *Vaughn* index concern TSP-related litigation, court filings, and congressional inquiries that followed the *New York Times* article revealing the existence of the TSP.

our analysis. Consequently, releasing these non-final, pre-decisional, and deliberative documents would reveal legal arguments and analysis that the Department could present in lawsuits challenging the TSP.

### (U)  C. Presidential Communications Privilege

101.    **(U)**  In addition to falling under the deliberative process privilege, the records in Group Numbers 2 and 4 of the attached <u>Vaughn</u> index are protected by the presidential communications privilege, which protects communications that relate to decisions potentially made by the President and that involve the President, his senior advisers, or staff working for senior presidential advisers. The records at issue are e-mails between OLC attorneys and advisers to the President concerning proposed answers to questions the President might receive concerning the TSP and a draft presidential statement discussing the TSP. The President was the ultimate decisionmaker as to the content of these documents. The withheld e-mails contain advice from OLC attorneys to presidential advisers about the content of the statement and proposed answers. Revealing these advisory documents would inevitably discourage a full and frank dialogue between presidential advisers and the Department of Justice.

### (U)  D. Personal Privacy

102.    **(U)**  Finally, many of the documents withheld by OLC contain information that must be withheld to prevent an unwarranted invasion of privacy. The protected information includes the names of third-party individuals (non-government employees) and OLC and other government agency staff, as well as their personal information (such as addresses (including email addresses), home telephone numbers, or cellular phone numbers). There is no legitimate public interest in the release of this information, as its disclosure would shed no light on the activities of the Department of Justice but could subject these individuals to unwanted public attention, harassment, or embarrassment. Thus, information of this type that appears in the documents is protected from disclosure under FOIA Exemption Six, 5 U.S.C. § 552(b)(6).

\*       \*       \*

103.    **(U)**  In exercising its responsibilities under FOIA, OLC has determined that each

of the documents described herein must be withheld in full.  Given the exceptionally grave harm

that would be done to national security if United States intelligence sources and methods were

compromised as a result of the disclosure of any classified detail concerning the TSP without

proper authorization, I am confident that no portion of any of the documents withheld in full by

OLC that is responsive to the FOIA requests at issue in this litigation may be disclosed without

compromising the exemptions discussed at length herein.  Similarly as to the unclassified

records, I am confident that each of the withheld records must be withheld in full and that to do

otherwise would compromise the proper withholdings under Exemption Five.

I declare under penalty of perjury that the foregoing is true and correct.

Dated: May 5, 2008

STEVEN G. BRADBURY
Principal Deputy Assistant Attorney General
Office of Legal Counsel