FOIA

January 18, 2006

**VIA OVERNIGHT DELIVERY**

Department of Justice
Patricia D. Harris, Management Analyst
FOIA/PA Mail Referral Unit
Department of Justice
Room 1070, National Place Building
Washington, DC 20530-0001

Re: **Freedom of Information Act Request (Expedited Processing Requested)**

Dear Ms. Harris:

    This letter constitutes a Request for records pursuant to the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, *et seq.*, and corresponding regulations. This Request is submitted on behalf of the Center for Constitutional Rights, its staff and Board attorneys, and the volunteer, cooperating, and co-counsel attorneys and their staff (collectively, "Requesting Parties" or "Requesters") listed in Appendix A attached hereto. A similar request has been submitted to the following agencies, departments and units of the United States government: the National Security Agency, the Federal Bureau of Investigation, the Defense Intelligence Agency, the Central Intelligence Agency, the United States Army, the United States Navy, and the Department of Homeland Security.

    **1.    Requesting Parties**

    The Center for Constitutional Rights ("CCR") is a non-profit, public interest organization that engages in litigation, public advocacy and educational programs on behalf of those who seek to challenge governmental misconduct, racial injustice, social and economic injustice and violations of international human rights law in U.S. courts, the courts of other countries and other international bodies and courts. For the past four years, lawyers and advocates at CCR have represented citizens and noncitizens identified as alleged terrorists and/or suspected of having affiliations with terrorists. These persons have been detained in places as diverse as the Metropolitan Detention Center in Brooklyn, New York; the Passaic County Jail in Patterson New Jersey; the detention center at the U.S. Naval Station in Guantánamo Bay, Cuba; the Far Falestin Branch Detention Facility of Syrian Military Intelligence in Damascus, Syria; the Sednaya Prison in Sednaya, Syria; Abu Ghraib Prison in Baghdad, Iraq; and other U.S. facilities, where they were subject to physical and psychological abuse or torture, or unlawful rendition.

    This Request is made on behalf of the following CCR staff members, staff attorneys, volunteer attorneys, consultants, and Board Members who have or may have communicated with clients, families of clients, attorneys and human rights activists in foreign countries: William Goodman (a.k.a., Bill Goodman), Barbara Olshansky, Gitanjali Gutierrez (a.k.a., Gita Gutierrez), Tina Monshipour Foster (Tina Foster), Seema Ahmad, Maria LaHood, Jennifer Green (a.k.a., Jennie

Exhibit A

Green), Shayana Kadidal (a.k.a., Shane Kadidal), Rachel Meeropol, Steven MacPherson Watt, Matthew Strugar (a.k.a., Matt Strugar) Marc Krupanski, Kelly McAnnany, Claire Tixeire, Michael Ratner, Jules Lobel, David Cole, Rhonda Copelon, Peter Weiss, Abdeen Jabara, Marilyn Clement, Charles Hay-Maestre (a.k.a., Charlie Hay-Maestre or Charley Hay-Maestre), and Jeff Hogue.

This Request is also made on behalf of 108 *pro bono* volunteer, cooperating and co-counsel attorneys and their staff throughout the United States who have worked with CCR on a variety of cases, primarily involving petitions for writs of *habeas corpus* filed on behalf of persons detained at the U.S. Naval Station in Guantánamo Bay, Cuba. These *pro bono* attorneys and their staff are listed in Appendix A.

2.  **Definitions**

For the purpose of this Request, the following definitions shall apply:

A.  "Electronic surveillance" - refers to

  (a) the acquisition by an electronic, mechanical, or other surveillance device of the contents of any wire, radio or other communication in any form or format of persons located within the United States obtained without benefit of warrant, including but not limited to any and all wiretaps, recordings, surveillance and/or interceptions of telephonic conversations and/or transactions (including cellular and satellite phone conversations and/or transactions), interception of e-mail conversations, or other written communications from public or non-public web sites or computer networks;

  (b) the acquisition by an electronic, mechanical, or other surveillance device of non-content records obtained without benefit of warrant, from persons located within the United States that identify the existence of any communications, including but not limited to pen registers; and

  (c) the warrantless installation or use of an electronic, mechanical or other surveillance device for monitoring to acquire information, other than from a wire or radio communication;[1]

B.  "Records" - refers to all "records" as defined by the FOIA, 5 U.S.C. § 522(f)(2), including but not limited to existing memoranda, agreements, notes, orders, policies, procedures, protocols, written or email correspondence, faxes, files, reports, rules, technical manuals, technical

---

[1] This request does not include surveillance authorized pursuant to Sections 1802 or 1822(a) of the Foreign Intelligence Surveillance Act. 50 U.S.C. §§ 1802 or 1822(a).

specifications, training manuals, studies, analyses, audio or video recordings, transcripts of such recordings, data, papers, guidance, guidelines, evaluations, instructions, photographs, films, recordings, books, accounts, communications and all retrievable information in computer storage, regardless of form of the record as a digital, audio, written, video, or other record;

C. "Electronic surveillance" "of persons located within the United States" - refers to records obtained through electronic surveillance of any communications by or to an individual, individuals, group or groups within the United States, regardless of whether the communication originated inside or outside the United States.

### 3. Records Sought

CCR and the other Requesting Parties seek disclosure of records in the possession of any office of the Department of Justice ("DOJ") and any agency, organization or corporation holding records at the behest of the National Security Agency ("NSA") concerning any warrantless electronic surveillance or warrantless physical searches of any person located within the United States from September 11, 2001 to the date of this FOIA Request that references a Requesting Party. In addition, CCR and other Requesters seek the disclosure of records concerning the development, approval, and implementation of the Executive's warrantless electronic surveillance and/or warrantless physical search program within the United States.

In order to ascertain the extent of the Executive's policies and practices concerning warrantless electronic surveillance and/or warrantless physical searches of persons located within the United States, Requesting Parties seek the following records:

1. All records obtained through or relating to ongoing or completed warrantless electronic surveillance or physical searches of persons located within the United States, including logs and indexes, regarding or concerning any Requesting Party and/or records of warrantless electronic surveillance or physical searches of persons located within the United States that reference, list, or name any Requesting Party;

2. Any Executive Orders authorizing the warrantless electronic surveillance or physical searches of persons located within the United States referenced in paragraph (1) above;

3. All records establishing, discussing or referencing the policies, procedures, guidelines, or practices of the DOJ or NSA used to (a) identify the individuals or organizations subject to warrantless electronic surveillance or warrantless physical searches within the United States; (b) gather information through warrantless electronic surveillance or warrantless physical searches within the United States; (c)

share this information with other U.S. government agencies and with foreign governments or the agencies or agents thereof; (d) share this information as a basis for a warrant request by the U.S. Department of Justice to the Foreign Intelligence Surveillance Act Court; (e) destroy this information; and/or (f) consult with or secure approval from the U.S. Department of Justice or other departments, agencies or Executive officials prior to conducting warrantless electronic surveillance or warrantless physical searches of persons located within the United States;

4. Any records stating, discussing, or referencing the legality or propriety of warrantless electronic surveillance or warrantless physical searches of persons located within the United States, including but not limited to policy statements, memoranda, analyses, explanations, or authorizations;

5. Any internal DOJ evaluation, assessment, or audit of any DOJ or NSA program implementing warrantless electronic surveillance or warrantless physical searches of persons located within the United States;

6. Any records containing concerns or comments by judges, national security officials, intelligence officials, government lawyers, or other about the DOJ or NSA warrantless electronic surveillance program; and

7. All records reflecting budget allocations for all warrantless electronic surveillance or warrantless physical search programs of persons located within the United States.

### 4. Requesters Are Entitled to Expedited Processing

Expedited processing is warranted when an organization "primarily engage[s] in disseminating information in order to inform the public about an actual or alleged Federal Government activity" has an "urgent need" to secure the records. 32 C.R.F. § 286.4(d)(3)(ii). The Center for Constitutional Rights is an organization "primarily engaged in disseminating information" about government misconduct through the work of its staff, Board, volunteer, cooperating, and co-counsel attorneys. As described above, CCR engages in litigation, public advocacy and educational programming to defend constitutional and human rights law. Dissemination of information to the public is a crucial component of CCR's mission and work. Specifically, CCR publishes reports and newsletters, maintains a public website, issues press releases, and offers educational materials and programming to the pubic within the United States and internationally. Additionally, CCR's staff, board, and volunteer, co-counsel, and cooperating attorneys further disseminate CCR's information to their local and national communities through a variety of means, including their own press releases, interviews, reports, and educational programming.

The records in question involved the NSA and/or the DOJ's actual and alleged warrantless electronic surveillance within the United States, in apparent violation of the rights guaranteed by the First, Fourth, Fifth and Fourteenth Amendments to the United States Constitution. FOIA requests

bearing upon alleged Constitutional violations require an immediate response in order to cease any ongoing violations and to prevent future ones.

A requester may also demonstrate compelling need by a showing that the information sought is "urgently needed" and involves a "breaking new story of general public interest." 32 C.R.F. § 286.4(d)(3)(iii). The instant Request clearly meets these standards in light of the current public scrutiny and impending legislative hearings in response to the disclosure of the Executive's policies and practices involving warrantless electronic surveillance of persons within the United States. *See, e.g.*, Jennifer Loven, *Report of NS Spying Prompts Call for Probe*, San Fran. Chron., Dec. 16, 2005 (stating that Senator Arlen Specter, chairman of the Senate Judiciary Committee, promised that the Senate would conduct hearings to investigate the NSA's warrantless electronic surveillance practices); *see also* Christine Hauser, *Bush Declines to Discuss Report on Eavesdropping*, N.Y. Times, Dec. 16, 2005; Maura Reynolds & Greg Miller, *Congress Wants Answers About Spying on U.S. Citizens*, Pitts. Post-Gazette, Dec. 16, 2005; James Risen & Eric Lichtblau, *Bush Lets US. Spy on Callers Without Courts*, N.Y. Times, Dec. 16, 2005; Steven Thomma, *Spying Could Create Backlash on Congress; Public Reaction Hinges on Identity of Targets*, San Jose Mercury News, Dec. 16, 2005; Caren Bohan & Thomas Ferraro, *Bush Defends Eavesdropping and Patriot Act*, ABC News, Dec. 17, 2005; Dan Eggen & Charles Lane, *On Hill, Anger and Calls for Hearing Greet News of Stateside Surveillance*, Wash. Post, Dec. 17, 2005; Jennifer Loven, *Bush Defends Secret Spying in U.S.*, San Fran. Chron., Dec. 17, 2005; John Diamond, *NSA's Surveillance of Citizens Echoes 1970s Controversy*, USA Today, Dec. 18, 2005; Barton Gellman & Dafna Linzer, *Pushing the Limits of Wartime Powers*, Wash. Post, Dec. 18, 2005; James Kuhnhenn, *Bush Defends Spying in U.S.*, San Jose Mercury News, Dec. 18, 2005; Fred Barbash & Peter Baker, *Gonzales Defends Eavesdropping Program*, Wash. Post, Dec. 19, 2005; James Gerstenzang, *Bush Vows to Continue Domestic Surveillance*, L.A. Times, Dec. 19, 2005; Todd J. Gillman, *Bush Assails Disclosure of Domestic Spying Program*, San Jose Mercury News, Dec. 19, 2005; Terrence Hunt, *Bush Says NSA Surveillance Necessary, Legal*, Wash. Post, Dec. 19, 2005; David Stout, *Bush Says U.S. Spy Program is Legal and Essential*, N.Y. Times, Dec. 19, 2005; George E. Condon, *Bush Says Spying Is Needed to Guard US*, San Diego Union Trib., Dec. 20, 2005; Michael Kranish, *Bush Calls Leak of Spy Program Shameful*, Bost. Globe, Dec. 20, 2005; Jeff Zeleny, *No 'Unchecked Power' in Domestic Spy Furor*, Chi. Trib., Dec. 20, 2005; Douglas Birch, *NSA's Methods Spur Controversy*, Balt. Sun, Jan. 8, 2006; Dan Eggen, *Probe Set in NSA Bugging*, Wash. Post, Jan. 11, 2006; David E. Sanger, *In Shift, Bush Says He Welcomes Inquiry on Secret Wiretaps*, N.Y. Times, Jan. 11, 2006; Scott Shane, *N.S.A. Audit of Spying is Not Assessing Legality*, N.Y. Times, Jan. 11, 2006; Jessica Yellin, *Ex-CIA Lawyer: No Legal Basis for NSA Spying*, ABC News, Jan. 11, 2006; James Gerstenzang, *Bush Now Cites Value of Spying Inquiry*, L.A. Times, Jan. 12, 2006; Sean Sullivan, *Markey Bashes Surveillance Program at Forum*, Arlington (MA) Advocate, Jan. 12, 2006.

Finally, pursuant to the applicable regulations and statue, CCR and the other Requesters expect the DOJ's determination of this Request for expedited processing within 10 calendar days and the determination of this Request for documents within 20 days. *See* 32 C.F.R. § 286.4(d)(1), (3); 5 U.S.C. § 552(a)(6)(A)(i).

### 5. Requesting Parties Are Entitled To A Fee Waiver

Requesting Parties are entitled to waiver of all costs pursuant to 5 U.S.C. § 552(a)(4)(A)(iii) because "disclosure of the requested records is in the public interest" and "likely to contribute significantly to the public understanding of the operations or activities of the government and is not primarily in the commercial interest of the requester." As indicated above, the significant media attention focused on the NSA's policy of warrantless electronic surveillance reflects the extraordinary public interest in the records Requesters seek. Disclosure of the requested information would reveal the extent of the NSA's warrantless electronic surveillance and/or warrantless physical searches of persons located within the United States, raising weighty constitutional questions.

Further, disclosure of the requested records will aid the public's understanding of the President's decision to disregard existing restraints on the exercise of Executive power, including the minimal oversight provided by the Foreign Intelligence Surveillance Act courts.

Finally, as a non-profit legal, advocacy, and educational organization, CCR and its staff, Board, and volunteer, co-counsel and cooperating attorneys are well-suited to disseminate publicly the information obtained from this Request. Because this Request satisfies the statutory criteria, a fee waiver would fulfill Congress's legislative intent in amending FOIA. *See Judicial Watch, Inc. v. Rossotti*, 326 F.3d 1309, 1312 (D.C. Cir. 2003) ("Congress amended FOIA to ensure that it be liberally construed in favor of wavers for noncommercial requesters." (internal quotation marks omitted)).

If the fee waiver is not granted, however, we request that the fees assigned be limited to "reasonable standard charges for document duplication" pursuant to 5 U.S.C. § 552(a)(4)(A)(ii)(II) ("[F]ees shall be limited to reasonable standard charges for document duplication when records are not sought for commercial use and the request is made by . . . .a representative of the news media . . . ." and 32 C.F.R. § 286.28(e) (stating that search and review fees shall not be charges to "representatives of the news media"). If appropriate after reviewing the results of the Request, CCR intends to "disseminate the information" disclosed by this Request "among the public" through the media channels described above. CCR meets the definition of a "representative of the news media" because it is "an entity that gathers information of potential interest to a segment of the public, uses its editorial skills to turn raw material into a distinct work, and distributes that work to an audience." *Nat'l Security Archive v. Dep't of Defense*, 880 F.2d 1381, 1387 (D.C. Cir. 1989); *see also Judicial Watch Inc., v. Rossotti*, 326 F.3d 1309, 1310 (D.C. 2003) (finding that a non-profit, public interest organization that distributed a newsletter and published books was a "representative of the media" for purposes of FOIA). Accordingly, any fees imposed for the processing of this Request should be limited pursuant to these regulations.

\*   \*   \*   \*

If this Request is denied in whole or in part, Requesters ask that the DOJ justify all deletions by reference to specific exemptions of FOIA. Requesters expect the DOJ to release all segregable portions of otherwise exempt material, and reserve the right to appeal a decision to withhold any records or to deny the within application for expedited processing and waiver of fees.

Thank you for your consideration of this Request. Kindly direct all future responses and furnish all disclosed records to William Goodman, Legal Director, Center for Constitutional Rights, 666 Broadway, 7th floor, New York, N.Y. 10012, telephone (212) 614-6427.

Under penalty of perjury, I hereby affirm that the information provided supporting the Request and the attached Appendix are true and correct to the best of my knowledge and belief.

Signed by:

William Goodman, Esq.
Legal Director
Center for Constitutional Rights
666 Broadway, 7th Floor
New York, NY 10012
(212) 617-6427



**U.S. Department of Justice**

Office of Legal Counsel

---

*Washington, D.C. 20530*

February 29, 2008

William Goodman
Center for Constitutional Rights
666 Broadway, 7th Floor
New York, NY 10012

Dear Mr. Goodman:

    I write in response to your Freedom of Information Act ("FOIA" or the "Act") request dated January 18, 2006, which this office received from the Department of Justice FOIA Referral Unit on July 20, 2006. Among other documents, you seek "records of warrantless electronic surveillance or physical searches of persons located within the United States that reference, list, or name any Requesting Party." For national security reasons, I can neither confirm nor deny whether documents responsive to this part of your request exist. *See Phillippi v. Central Intelligence Agency*, 546 F.2d 1009, 1012 (D.C. Cir. 1976); 5 U.S.C. § 552 (b)(1), (b)(3).

    With respect to the remaining portions of your request, we have found in our unclassified files more than 10,000 pages of responsive records. We enclose 1440 pages of those documents, which include materials we have released in connection with the matter of *The New York Times Co. v. U.S. Dep't of Defense*, Civil Action No. 06-1553 (RMB) (S.D.N.Y. filed Feb. 27, 2006). We have referred 338 pages of the remaining documents to other agencies or other components of the Department of Justice for consultations, and we will respond with respect to those records as soon as we complete our consultations. We are withholding in full the remainder of the documents located in our unclassified files pursuant to FOIA Exemption Five, 5 U.S.C. § 552 (b)(5), because they are protected by the deliberative process privilege, the attorney-client privilege, the attorney work-product doctrine, and/or the presidential communications privilege and are not appropriate for discretionary release.

    In our classified files, we located 104 records or categories of records that respond to your request, and we enclose one of the documents. Of the remaining 103 records or categories of records, we referred 42 to other agencies or other components of the Department for consultations. We have been asked to advise you that these documents are properly withheld in full because they are classified and thus exempt under FOIA Exemption One, 5 U.S.C. § 552(b)(1), and because they contain information of the type described in section 6 of the National Security Act of 1959, Pub. L. No. 86-36, 5 6, 73 Stat. 63,64, codified at 50 U.S.C. § 402 note, and/or in Section 102A(i)(1) of the Intelligence Reform and Terrorism Prevention Act of 2004, 50 U.S.C. § 403-1(i)(1), and are thus exempt under FOIA Exemption Three, 5 U.S.C. § 552(b)(3). Additionally, we have been asked to advise you that the documents are subject to

Exhibit B

the deliberative process and attorney client privileges and thus are also withheld under FOIA Exemption Five, 5 U.S.C. § 552(b)(5).

We have determined that the remaining 61 records or categories of records located in our classified files are properly withheld pursuant to FOIA Exemption One, 5 U.S.C. § 552(b)(1), because they are classified. Many of these documents contain the type of information described in section 6 of the National Security Act of 1959, Pub. L. No. 86-36, 73 Stat. 63, 64, codified at 50 U.S.C. § 402 note, and/or section 102A(i)(l) of the Intelligence Reform and Terrorism Prevention Act, 50 U.S.C. § 403-1(i)(l), and thus are also exempt from disclosure under FOIA Exemption Three, 5 U.S.C. § 552(b)(3). In addition, most, if not all, of the classified documents are subject to FOIA Exemption Five, because they are protected by the deliberative process privilege, the attorney-client privilege, the presidential communications privileges, and/or the attorney work product doctrine.

Please be advised that we have identified three classified documents responsive to your request that are not agency records as defined in the Act. These documents are not provided.

Although I understand that your request is in litigation, I am required by statute and regulation to inform you that you have the right to file an administrative appeal. You must submit any administrative appeal within 60 days of the date of this letter to the Office of Information and Privacy, U.S. Department of Justice, Flag Building, Suite 570, Washington, D.C. 20530-0001. Both the appeal letter and the envelope should be clearly marked "Freedom of Information Act Appeal."

                                                Sincerely,

                                                Paul P. Colborn
                                                Special Counsel

Enclosures

*Wilner v. NSA*, Civil No. 07-CIV-3883 (S.D.N.Y. filed May 17, 2007) (Cote, J.)

Vaughn Index

Unclassified Records Withheld by the Office of Legal Counsel ("OLC")

All Records Were Withheld in Full under FOIA Exemption Five, 5 U.S.C. § 552(b)(5)

| Group Number | Date | Description | Privilege | Pages |
|---|---|---|---|---|
| 1 | 01/05/06; 01/06/06; two undated | Four documents containing handwritten notes, marginalia, and underscoring generated by OLC attorneys while preparing documents regarding the Terrorist Surveillance Program ("TSP") | DP & WP | 132 |
| 2 | 12/19/05 | Emails among OLC and White House attorneys regarding preparation of responses to possible questions to the President regarding the TSP (draft attached) | DP & PC | 6 |
| 3 | 12/17/05 - 12/18/05 | Emails among OLC and other attorneys regarding responses to possible questions to Secretary of State Rice regarding the TSP | DP & WP | 6 |
| 4 | 12/17/05 - 12/19/05 | Emails among OLC, Department of Justice and White House attorneys regarding preparation of draft presidential statement concerning the TSP | DP & PC | 6 |
| 5 | 07/22/06 - 06/06/07 | Emails (often with attachments) among OLC attorneys discussing edits to congressional testimony of OLC officials regarding legal authorities for the TSP[1] | DP & WP | 200 (est.) |
| 6 | 02/06/06 - 11/24/07 | Drafts of congressional testimony of Attorney General regarding legal authorities for the TSP | DP & WP | 400 (est.) |
| 7 | 02/01/06 - 11/07/07 | Emails (often with attachments) among OLC and other DOJ attorneys regarding draft responses to letters from members of Congress[2] | DP & WP | 1300 (est.) |

---

[1] OLC previously released the final version of the unclassified congressional testimony of OLC officials regarding the TSP.

[2] OLC previously released the final version of many of the draft letters in this group.

| Exhibit C |
|---|

| Group Number | Date | Description | Privilege | Pages |
|---|---|---|---|---|
| 8 | 02/03/06-11/29/07 | Emails (often with attachments) among OLC and other DOJ attorneys discussing legal authorities for the TSP | DP & WP | 500 (est.) |
| 9 | 01/21/06-03/01/07 | Emails (often with attachments) among OLC and other DOJ attorneys discussing edits to drafts of Attorney General remarks regarding legal authorities for the TSP | DP & WP | 200 (est.) |
| 10 | Jan. 2006-Sept. 2006 | Drafts of Attorney General remarks regarding legal authorities for the TSP | DP & WP | 200 (est.) |
| 11 | 05/15/07-09/27/07 | Draft statements and emails (often with attachments) among OLC and other DOJ attorneys regarding preparation of possible responses to media and congressional inquiries concerning the testimony of former Deputy Attorney General Comey | DP & WP | 300 (est.) |
| 12 | 01/24/06-12/1/07 | Emails (often with attachments) among OLC and other DOJ attorneys regarding preparation of draft op-eds concerning the TSP | DP & WP | 150 (est.) |
| 13 | Undated | Summaries and draft talking points prepared by OLC attorneys regarding district court decision in *ACLU v. NSA* | DP & WP | 44 |
| 14 | 08/03/07 | Emails among OLC and other DOJ attorneys regarding submissions to the Foreign Intelligence Surveillance Court ("FISC") related to the TSP | DP & WP | 7 |
| 15 | 01/23/06 | Emails among OLC and other DOJ attorneys regarding draft presidential statement regarding the TSP | DP & WP | 3 |
| 16 | 08/23/07 | Emails among OLC and other attorneys regarding draft DNI statement concerning FISC order related to the TSP | DP & WP | 7 |

2

| Group Number | Date | Description | Privilege | Pages |
|---|---|---|---|---|
| 17 | 01/17/07-01/18/07 | Emails (often with attachments) among OLC and other DOJ attorneys regarding preparation of documents discussing FISC order related to the TSP | DP & WP | 30 |
| 18 | 12/25/05-10/26/07 | Emails (often with attachments) among OLC and other DOJ attorneys regarding preparation of DOJ White Paper regarding the TSP, as well as emails among OLC attorneys discussing the paper's analysis[3] | DP & WP | 345 |
| 19 | Aug. 2006 | Draft charts prepared by OLC attorneys analyzing anti-terrorism laws, including laws regarding electronic surveillance | DP & WP | 39 |
| 20 | 01/06/06-12/07/07 | Draft talking points (and associated emails) prepared by OLC attorneys regarding legal authorities for the TSP[4] | DP & WP | 700 (est.) |
| 21 | Undated | List of possible questions that might be raised during congressional hearings concerning the TSP | DP & WP | 2 |
| 22 | Jan. 2006 to Oct. 2007 | Drafts of responses to "questions-for-the-record" regarding the TSP from members of Congress[5] | DP & WP | 9100 (est.) |
| 23 | 12/21/05-01/20/06 | Drafts of DOJ White Paper regarding legal authorities for the TSP[6] | DP & WP | 3354 (est.) |
| 24 | Dec. 2005 | Drafts of letter from Assistant Attorney General Moschella to congressional leaders regarding legal authorities for the TSP[7] | DP & WP | 30 (est.) |

---

[3] This group includes six records or categories of records the withholding of which was upheld by the court in *The New York Times Co. v. U.S. Dep't of Defense*, Civil Action No. 06-1553 (RMB) (S.D.N.Y. filed Feb. 27, 2006).

[4] OLC previously released the final version of some of the draft talking points in this group. This group includes six records or categories of records the withholding of which was upheld by the court in *The New York Times Co. v. U.S. Dep't of Defense*, Civil Action No. 06-1553 (RMB) (S.D.N.Y. filed Feb. 27, 2006). It also includes three records referred to OLC by the Office of Information and Privacy since August 2007.

[5] OLC previously released the final version of many of the draft responses in this group.

[6] OLC previously released the final version of the DOJ White Paper. This group number includes five records or categories of records the withholding of which was upheld by the court in *The New York Times Co. v. U.S. Dep't of Defense*, Civil Action No. 06-1553 (RMB) (S.D.N.Y. filed Feb. 27, 2006).

[7] OLC previously released the final version of this letter.

3

## OLC Public Index of Classified Records
(66 records or categories of records + 11 referred records or categories of records remain at issue in *Wilner v NSA*)

| OLC Doc # | Document Type | Applicable Exemption | Addressed in Court Opinion(s) | Referred to Other Component | Reference Declarations For Defendants' Motion for Summary Judgment in *Wilner* |
|---|---|---|---|---|---|
| OLC 7[1] | Talking Points | (b)(1) (b)(3) (b)(5) | **Remains pending in EPIC** | | Redacted Bradbury Declaration ¶¶ 69-72 |
| OLC 8 | Client Communication | (b)(1) (b)(3) (b)(5) (b)(6) | *EPIC*, 511 F. Supp. 2d at 69-71 | | Redacted Bradbury Declaration ¶¶ 66-68 |
| OLC 9 | Client Communication | (b)(1) (b)(3) (b)(5) (b)(6) | *EPIC*, 511 F. Supp. 2d at 69-71 | | Redacted Bradbury Declaration ¶¶ 66-68 |
| OLC 10 | Notes | (b)(1) (b)(3) (b)(5) | *EPIC*, 511 F. Supp. 2d at 69-71 | | Redacted Bradbury Declaration ¶¶ 56-60 |
| OLC 11 | Draft | (b)(1) (b)(3) (b)(5) | *EPIC*, 511 F. Supp. 2d at 69-71 | | Redacted Bradbury Declaration ¶¶ 56-60 |
| OLC 12 | Order | (b)(1) (b)(3) | *EPIC*, 511 F. Supp. 2d at 72-73 | OIPR | Redacted Olsen Declaration ¶¶ 16-18 |
| OLC 13 | Order | (b)(1) (b)(3) | *EPIC*, 511 F. Supp. 2d at 72-73 | OIPR | Redacted Olsen Declaration ¶¶ 16-18 |
| OLC 14 | Client Communication Draft | (b)(1) (b)(3) (b)(5) (b)(6) | *EPIC*, 511 F. Supp. 2d at 72-73 | OIPR | Redacted Olsen Declaration ¶¶ 16-17, 21-22 |
| OLC 15 | Draft | (b)(1) (b)(3) (b)(5) | *EPIC*, 511 F. Supp. 2d at 69-71 | | Redacted Bradbury Declaration ¶¶ 56-60 |

---

[1] For the ease of the parties, to reduce possible confusion, and to maintain consistency with preexisting document numbering conventions in other pending litigation, this chart retains the numbering convention for OLC's other charts. Defendants have therefore excluded from such indices any document that has been released in full or that we have determined to be non-responsive to FOIA Request No. 3.

Exhibit D

| OLC 20 | Draft | (b)(1) (b)(3) (b)(5) | *EPIC*, 511 F. Supp. 2d at 72-73 | OIPR | Redacted Olsen Declaration ¶¶ 16-17, 21-22 |
|---|---|---|---|---|---|
| OLC 21 | Letter | (b)(1) (b)(3) | *EPIC*, 511 F. Supp. 2d at 72-73 | OIPR | Redacted Olsen Declaration ¶¶ 16-17, 21-22 |
| OLC 22 | Draft | (b)(1) (b)(3) (b)(5) | *EPIC*, 511 F. Supp. 2d at 69-71 | | Redacted Bradbury Declaration ¶¶ 56-60 |
| OLC 26 | Client Communication | (b)(1) (b)(3) (b)(5) (b)(6) | *EPIC*, 511 F. Supp. 2d at 69-71 | | Redacted Bradbury Declaration ¶¶ 66-68 |
| OLC 27 | Notes | (b)(1) (b)(3) (b)(5) (b)(6) | *EPIC*, 511 F. Supp. 2d at 69-71 | | Redacted Bradbury Declaration ¶¶ 66-68 |
| OLC 28 | Draft | (b)(1) (b)(3) (b)(5) (b)(6) | *EPIC*, 511 F. Supp. 2d at 69-71 | | Redacted Bradbury Declaration ¶¶ 66-68 |
| OLC 29 | Client Communication | (b)(1) (b)(3) (b)(5) (b)(6) | *EPIC*, 511 F. Supp. 2d at 69-71 | | Redacted Bradbury Declaration ¶¶ 66-68 |
| OLC 30 | | | *EPIC*, 511 F. Supp. 2d at 73-74 | NSA | Redacted Brand Declaration |
| OLC 31 | | | *EPIC*, 511 F. Supp. 2d at 73-74 | NSA | Redacted Brand Declaration |
| OLC 32 | Client Communication | (b)(1) (b)(3) (b)(5) (b)(6) | *EPIC*, 511 F. Supp. 2d at 69-71 | | Redacted Bradbury Declaration ¶¶ 66-68 |
| OLC 33 | | | *EPIC*, 511 F. Supp. 2d at 73-74 | NSA | Redacted Brand Declaration |

| | | | | | |
|---|---|---|---|---|---|
| OLC 35 | Letter | (b)(1) (b)(3) (b)(6) | *EPIC*, 511 F. Supp. 2d at 69-71 | | Redacted Bradbury Declaration ¶¶ 38-42 |
| OLC 36 | Letter Draft | (b)(1) (b)(3) (b)(5) (b)(6) | *EPIC*, 511 F. Supp. 2d at 69-71 | | Redacted Bradbury Declaration ¶¶ 38-42 |
| OLC 37 | Letter Draft Memo | (b)(1) (b)(3) (b)(5) (b)(6) | *EPIC*, 511 F. Supp. 2d at 69-71 | | Redacted Bradbury Declaration ¶¶ 38-42 |
| OLC 38 | | | *EPIC*, 511 F. Supp. 2d at 73-74 | NSA | Redacted Brand Declaration |
| OLC 39 | | | *EPIC*, 511 F. Supp. 2d at 73-74 | NSA | Redacted Brand Declaration |
| OLC 43 | Client Communication | (b)(1) (b)(3) (b)(5) | *EPIC*, 511 F. Supp. 2d at 69-71 | | Redacted Bradbury Declaration ¶¶ 66-68 |
| OLC 44 | | | *EPIC*, 511 F. Supp. 2d at 73-74 | NSA | Redacted Brand Declaration |
| OLC 45 | | | *EPIC*, 511 F. Supp. 2d at 73-74 | NSA | Redacted Brand Declaration |
| OLC 46 | Draft Talking Points | (b)(1) (b)(3) (b)(5) | **Remains pending in EPIC** | | Redacted Bradbury Declaration ¶¶ 69-70, 73-75 |
| OLC 48 | | | *EPIC*, 511 F. Supp. 2d at 73-74 | NSA | Redacted Brand Declaration |
| OLC 49 | | | *EPIC*, 511 F. Supp. 2d at 73-74 | NSA | Redacted Brand Declaration |
| OLC 50 | | | *EPIC*, 511 F. Supp. 2d at 73-74 | NSA | Redacted Brand Declaration |
| OLC 52 | | | *EPIC*, 511 F. Supp. 2d at 73-74 | NSA | Redacted Brand Declaration |
| OLC 56 | Not Agency Record | | *EPIC*, 511 F. Supp. 2d at 64 | | Redacted Bradbury Declaration ¶ 82 |
| OLC 57 | Not Agency Record | | *EPIC*, 511 F. Supp. 2d at 64 | | Redacted Bradbury Declaration ¶ 82 |
| OLC 58 | Not Agency Record | | *EPIC*, 511 F. Supp. 2d at 64 | | Redacted Bradbury Declaration ¶ 82 |

| | | | | | |
|---|---|---|---|---|---|
| OLC 68 | Draft | (b)(1) (b)(3) (b)(5) | *EPIC*, 511 F. Supp. 2d at 69-71 | | Redacted Bradbury Declaration ¶¶ 56-60 |
| OLC 76 | Notes Draft Client Communication | (b)(1) (b)(3) (b)(5) (b)(6) | **Remains pending in EPIC** | | Redacted Bradbury Declaration ¶¶ 43-49, 50 |
| OLC 80 | Briefing Materials | (b)(1) (b)(3) (b)(5) (b)(6) | **Remains pending in EPIC** | | Redacted Bradbury Declaration ¶¶ 69-70, 76-80 |
| OLC 82 | Briefing Materials | (b)(1) (b)(3) (b)(5) | **Remains pending in EPIC** | | Redacted Bradbury Declaration ¶¶ 69-70, 81 |
| OLC 94 | Client Communication | (b)(1) (b)(3) (b)(5) (b)(6) | *EPIC*, 511 F. Supp. 2d at 69-71, 72-73 | OIPR | Redacted Bradbury Declaration ¶¶ 66-68  Redacted Olsen Declaration ¶¶ 16-17, 23 |
| OLC 96 | | | *EPIC*, 511 F. Supp. 2d at 73-74 | NSA | Redacted Brand Declaration |
| OLC 98 | | | *EPIC*, 511 F. Supp. 2d at 73-74 | NSA | Redacted Brand Declaration |
| OLC 99 | | | *EPIC*, 511 F. Supp. 2d at 73-74 | NSA | Redacted Brand Declaration |
| OLC 100 | Notes | (b)(1) (b)(3) (b)(5) (b)(6) | *EPIC*, 511 F. Supp. 2d at 69-71 | | Redacted Bradbury Declaration ¶¶ 56-60 |
| OLC 102 | Client Communication | (b)(1) (b)(3) (b)(5) (b)(6) | *EPIC*, 511 F. Supp. 2d at 69-71 | | Redacted Bradbury Declaration ¶¶ 66-68 |
| OLC 103 | Client Communication | (b)(1) (b)(3) (b)(5) (b)(6) | *EPIC*, 511 F. Supp. 2d at 69-71 | | Redacted Bradbury Declaration ¶¶ 66-68 |

| | | | | | |
|---|---|---|---|---|---|
| OLC 106 | Client Communication | (b)(1) (b)(3) (b)(5) | *EPIC*, 511 F. Supp. 2d at 69-71 | | Redacted Bradbury Declaration ¶¶ 66-68 |
| OLC 107 | Draft Client Communication | (b)(1) (b)(3) (b)(5) | **Remains pending in EPIC** | | Redacted Bradbury Declaration ¶¶ 43-49, 51 |
| OLC 108 | Draft | (b)(1) (b)(3) (b)(5) | *EPIC*, 511 F. Supp. 2d at 69-71 | | Redacted Bradbury Declaration ¶¶ 64-65 |
| OLC 113 | Memo | (b)(1) (b)(3) | **Remains pending in EPIC** | | Redacted Bradbury Declaration ¶¶ 62-63 |
| OLC 114 | Memo | (b)(1) (b)(3) (b)(5) | **Remains pending in EPIC** | | Redacted Bradbury Declaration ¶¶ 34-37 |
| OLC 118 | Client Communication | (b)(1) (b)(3) (b)(5) | *EPIC*, 511 F. Supp. 2d at 69-71 | | Redacted Bradbury Declaration ¶¶ 66-68 |
| OLC 120 | Client Communication | (b)(1) (b)(3) (b)(5) (b)(6) | *EPIC*, 511 F. Supp. 2d at 69-71 | | Redacted Bradbury Declaration ¶¶ 66-68 |
| OLC 123 | Client Communication | (b)(1) (b)(3) (b)(5) (b)(6) | *EPIC*, 511 F. Supp. 2d at 69-71 | | Redacted Bradbury Declaration ¶¶ 66-68 |
| OLC 135 | | | *EPIC*, 511 F. Supp. 2d at 73-74 | NSA | Redacted Brand Declaration |
| OLC 138 | Client Communication | (b)(1) (b)(3) (b)(5) (b)(6) | *EPIC*, 511 F. Supp. 2d at 72-73 | OIPR | Redacted Olsen Declaration ¶¶ 16-17, 24 |
| OLC 139 | Notes | (b)(1) (b)(3) (b)(5) | **Remains pending in EPIC** | | Redacted Bradbury Declaration ¶¶ 43-49, 51-52 |

| OLC 140 | Client Communication | (b)(1) (b)(3) (b)(5) (b)(6) | *EPIC*, 511 F. Supp. 2d at 69-71 | | Redacted Bradbury Declaration ¶¶ 66-68 |
|---|---|---|---|---|---|
| OLC 141 | Client Communication | (b)(1) (b)(3) (b)(5) (b)(6) | *EPIC*, 511 F. Supp. 2d at 69-71 | | Redacted Bradbury Declaration ¶¶ 66-68 |
| OLC 142 | Client Communication | (b)(1) (b)(3) (b)(5) (b)(6) | *EPIC*, 511 F. Supp. 2d at 69-71 | | Redacted Bradbury Declaration ¶¶ 66-68 |
| OLC 143 | Client Communication | (b)(1) (b)(3) (b)(5) | *EPIC*, 511 F. Supp. 2d at 69-71 | | Redacted Bradbury Declaration ¶¶ 66-68 |
| OLC 144 | Draft Client Communication | (b)(1) (b)(3) (b)(5) (b)(6) | **Remains pending in EPIC** | | Redacted Bradbury Declaration ¶¶ 43-49, 51-52 |
| OLC 200 | Notes | (b)(1) (b)(3) (b)(5) (b)(6) | **Remains pending in EPIC** | | Redacted Bradbury Declaration ¶¶ 43-49, 53-55 |
| OLC 206 | Client Communication | (b)(1) (b)(3) (b)(5) (b)(6) | *EPIC*, 511 F. Supp. 2d at 69-71 | | Redacted Bradbury Declaration ¶¶ 66-68 |
| OLC 208 | Client Communication | (b)(1) (b)(3) (b)(5) (b)(6) | *EPIC*, 511 F. Supp. 2d at 69-71 | | Redacted Bradbury Declaration ¶¶ 66-68 |
| **DOCUMENTS REFERRED TO OLC** | | | | | |
| ODAG 12 | Letter | (b)(1) (b)(3) (b)(5) (b)(6) | *NYT*, 499 F. Supp. 2d at 511; *EPIC*, 511 F. Supp. 2d at 69-70 | | Redacted Bradbury Declaration ¶¶ 38-42 |
| ODAG 21 | Client Communication | (b)(1) (b)(3) (b)(5) | *NYT*, 499 F. Supp. 2d at 512-13; *EPIC*, 511 F. Supp. 2d at 73-74 | | Redacted Bradbury Declaration ¶¶ 66-68 |

| | | | | | |
|---|---|---|---|---|---|
| ODAG 22 | Client Communication | (b)(1) (b)(3) (b)(5) | *NYT*, 499 F. Supp. 2d at 512-13; *EPIC*, 511 F. Supp. 2d at 73-74 | | Redacted Bradbury Declaration ¶¶ 66-68 |
| ODAG 23 | Client Communication | (b)(1) (b)(3) (b)(5) | *NYT*, 499 F. Supp. 2d at 511; **Remains pending in EPIC** | | Redacted Bradbury Declaration ¶¶ 43-49, 51-52 |
| ODAG 24 | Drafts Notes Client Communications | (b)(1) (b)(3) (b)(5) (b)(6) | *NYT*, 499 F. Supp. 2d at 511; **Remains pending in EPIC** | | Redacted Bradbury Declaration ¶¶ 43-49, 50, 52 |
| ODAG 34 | Briefing Materials | (b)(1) (b)(3) (b)(5) | *NYT*, 499 F. Supp. 2d at 511; **Remains pending in EPIC** | | Redacted Bradbury Declaration ¶¶ 69-70 |
| ODAG 54 | Talking Points | (b)(1) (b)(3) (b)(5) | *NYT*, 499 F. Supp. 2d at 511; **Remains pending in EPIC** | | Redacted Bradbury Declaration ¶¶ 69-70, 73-75 |
| ODAG 58 | Draft | (b)(1) (b)(3) (b)(5) | *NYT*, 499 F. Supp. 2d at 511; *EPIC*, 511 F. Supp. 2d at 69-70. | | Redacted Bradbury Declaration ¶¶ 56-60 |
| FBI 7 | Internal Memo | (b)(1) (b)(3) | *EPIC*, 511 F. Supp. 2d at 69-70. | | Redacted Bradbury Declaration ¶¶ 32-33 |
| FBI 23 | Not Agency Record | -- | *EPIC*, 511 F. Supp. 2d at 64. | | Redacted Bradbury Declaration ¶ 82 |
| FBI 42 | Memo | (b)(1) (b)(3) | **Remains pending in EPIC** | | Redacted Bradbury Declaration ¶¶ 62-63 |