UNCLASSIFIED

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

THOMAS WILNER, et al., )
)
Plaintiffs, )
)
v. )   Civ. A. No. 07-CV-03883-DLC
)
NATIONAL SECURITY AGENCY and )
U.S. DEPARTMENT OF JUSTICE, )
)
Defendants. )
)

## (U) **REDACTED SECOND DECLARATION OF DAVID M. HARDY**[1]

(U)    I, David M. Hardy, declare as follows:

1.    (U)    I am currently the Section Chief of the Record/Information Dissemination

Section ("RIDS"), Records Management Division ("RMD"), at Federal Bureau of Investigation

Headquarters ("FBIHQ") in Washington, D.C. I have held this position since August 1, 2002.

Prior to joining the FBI, from May 1, 2001 to July 31, 2002, I was the Assistant Judge Advocate

General of the Navy for Civil Law. In that capacity, I had direct oversight of Freedom of

Information Act ("FOIA") policy, procedures, appeals, and litigation for the Navy. From October

1, 1980 to April 30, 2001, I served as a Navy Judge Advocate at various commands and routinely

worked with FOIA matters. I am also an attorney who has been licensed to practice law in the state

of Texas since 1980.

2.    (U)    In my official capacity as Section Chief of RIDS, I supervise approximately

190 employees who staff a total of ten (10) Units and a field operational service center whose

---

[1]  **REDACTED**

UNCLASSIFIED

collective mission is to effectively plan, develop, direct and manage responses to requests for

access to FBI records and information pursuant to the FOIA; Privacy Act; Executive Order 12958,

as amended; Presidential, Attorney General and FBI policies and procedures; judicial decisions;

and Presidential and Congressional directives.

3.    **(U)**    My responsibilities also include the review of FBI information for

classification purposes as mandated by Executive Order 12958, as amended by Executive Order

13292 (March 25, 2003),[2] and the preparation of declarations in support of Exemption 1 claims

asserted under the FOIA.[3]  I have been designated by the Attorney General of the United States as

an original classification authority and a declassification authority pursuant to Executive Order

12958, as amended, §§1.3 and 3.1. The statements contained in this declaration are based upon my

personal knowledge, upon information provided to me in my official capacity, and upon

conclusions and determinations reached and made in accordance therewith.

4.    **(U)**    Due to the nature of my official duties, I am familiar with the procedures

followed by the FBI in responding to requests for information from its files pursuant to the

provisions of the FOIA, 5 U.S.C. § 552, and the Privacy Act of 1974, 5 U.S.C. § 552a. Specifically,

I am aware of the treatment which has been afforded the requests for records made to FBIHQ by

William Goodman, Esq., Legal Director of the Center for Constitutional Rights ("CCR"), on

behalf of the plaintiffs in this case, who seek, inter alia, access to the following:

> All policies, procedures, guidelines, or practices for the interception
> of communications pursuant to the [TSP] warrantless surveillance
> program. . . .

5.    **(U)**    This declaration supplements and incorporates my previously submitted

---

[2] **(U)** 60 Fed. Reg. 19825 (1995) and 68 Fed. Reg. 15315 (2003).

[3] **(U)** 5 U.S.C. § 552 (b)(1).

declaration in this case, the Declaration of David M. Hardy, executed on March 18, 2008, and

Exhibits A through E thereto ("First Hardy Declaration"), which was intended to address

plaintiffs' individual requests for access to documents concerning the TSP as it pertains to the

individual plaintiffs. This declaration also supplements, incorporates, and relies upon the In

Camera, Ex Parte Second Declaration of J. Michael McConnell, the current Director of National

Intelligence, dated May 2, 2008 ("Second McConnell Declaration");[4] the In Camera, Ex Parte

Declaration of Steven G. Bradbury, dated May 5, 2008 ("Bradbury Declaration"); and the

Supplemental Declaration of Joseph J Brand, ("Supplemental Brand Declaration"), dated May 1,

2008. In reaching withholding determinations, the FBI has consulted with other federal agencies

and officials with regard to the harm to national security that would result from disclosure of the

documents identified in this declaration. I have personally reviewed the Second McConnell

Declaration, which I am advised is being filed contemporaneously with this declaration. The

Second McConnell Declaration is provided in support of withholdings in all TSP-related FOIA

matters, and I have once again, as in my prior declaration, relied upon DNI McConnell's expert

assessment of the harm to the national intelligence program that would result from disclosure of

documents related to the TSP.

      6.     **(U)**     I am advised that plaintiffs' inquiry at issue in concerning document

withholdings has focused on "all records establishing discussing or referencing the policies,

procedures, guidelines, or practices" used to intercept communication under the TSP."[5]

      7.     **(U)**     As a result of extensive search efforts at FBIHQ, RIDS located and

---

[4] (U) In February 2007, J. Michael McConnell replaced Ambassador Negroponte as the Director of National Intelligence ("DNI").

[5] (U) For a complete description of the administrative history and related correspondence of this case, see Declaration of David M. Hardy ("First Hardy Declaration"), dated March 18, 2008, and Exhibits A through E attached thereto.

identified numerous pages of potentially responsive records. After engaging in a review of these records, which included the elimination of certain pages as either out of scope or not responsive, the FBI made a release to plaintiffs on February 8, 2008. This release consisted of a pre-processed set of materials which were deemed responsive in a similar lawsuit filed in the District of Columbia by the Electronic Privacy Information Center ("EPIC") and the American Civil Liberties Foundation ("ACLU") and consolidated, <u>EPIC/ACLU v. DOJ</u>, Civ. A. Nos. 06-CV-00096 and 06-CV-00214 (HHK) (D.D.C.).[6] Specifically, the FBI advised plaintiffs on February 8, 2008 that it had reviewed a total of 2557 pages, and it was releasing 168 pages in full or in part.[7]

     8.    **REDACTED**

     9.    **(U)**    This declaration will explain the procedures used to search for and review the FBIHQ records responsive to plaintiffs' FOIA requests; will address those documents which have been withheld in full or in part; and will provide justifications for information withheld in these documents pursuant to FOIA Exemptions 1, 2, 3, 5, 6, 7(A), 7(C), 7(D) and 7(E), in support of defendant's motion for summary judgment.

     10.    **(U)**    For the convenience of the Court, Exhibit A to this declaration is a detailed <u>In Camera</u>, <u>Ex Parte</u> Index which lists each of the documents withheld in full or in part by the FBI

---

[6] **(U)** The Court in <u>EPIC/ACLU v. DOJ</u>, Civ. A. Nos. 06-CV-00096 and 06-CV-00214 (HHK) (D.D.C.), granted summary judgment to the FBI for the following documents: **FBI 1, 15, 20, 25, 27-31, 34, 40, 44-46, 49, 52, 56, 61-64, 67, 68, 70, 71, 73-80, 82, 84, 92, 93, 116-120, 123, 124, 127, 130, 133, 140, 142, 146, 147, 150, 151, 152, 158, 159, 163, 164, 165, 167, 170, 172, 177, 179, 182-184, 186-188, 190, 191, 211, 212, 220, 221, 223, 224, 234, 236, 237, 243-246, 248-250, 256-261, 263, 266, 273, 276, 280, 283-285, 292, 293, 296, 297, 300, 304, 305, 309, 319, 322-340 and 2000.** Plaintiffs in <u>EPIC/ACLU</u> disclaimed/withdrew their objections for **FBI 23.** Finally, the Court in <u>EPIC/ACLU</u> also granted summary judgment for the following referred documents: **FBI 2, 6, 7, 14, 16, 24, 36, 37, 38, 42, 48, 50, 103, 104, 105, 106, 107, 108, 109, 112, 132 and 317.**

[7] **REDACTED**

in this litigation. The FBI previously assigned sequential numbers – e.g., "**FBI 1**," "**FBI 2**,"
"**FBI 3**," -- for those documents deemed responsive in the EPIC/ACLU v. DOJ, Civ. A. Nos.
06-CV-00096 and 06-CV-00214 (HHK) (D.D.C.), litigation. In this case, the FBI maintained the
identical number scheme but considered certain documents as not responsive to plaintiffs' requests.
It is for that reason that Exhibit A reflects skips or gaps in the numbering of the documents. The In
Camera, Ex Parte Index identifies the document number, date, includes a detailed document
description, number of pages, applicable FOIA exemptions, and justification for applicable FOIA
exemptions by referring to the corresponding paragraph number(s) in this declaration where the
document is discussed. By contrast, the public Index contains the document number, date, a
brief/generic document description, applicable FOIA exemptions, and justification for applicable
FOIA exemptions by referring to the corresponding paragraph number(s) in the Public Second
Hardy declaration where the document is discussed.

## (U) CLASSIFICATION OF DECLARATION

11.    **REDACTED**

12.    **REDACTED**

13.    **REDACTED**

14.    **REDACTED**

## (U) THE TERRORIST SURVEILLANCE PROGRAM ("TSP")

15.    **(U)**    Following the September 11, 2001 attacks on the United States, the
President authorized the TSP in order to detect and prevent future terrorist attacks by al Qaeda and
its affiliates. Under the TSP, the NSA intercepts communications as to which it has reasonable
grounds to believe that: (1) one of the communicants is a member or agent of al Qaeda or an
affiliated terrorist organization; and (2) the communication being collected is to or from a foreign

country (i.e., a "one-end" foreign communication).

16.    **(U)**    Due to its extraordinary sensitivity, information relating to the TSP is currently classified as TOP SECRET under the standards set forth in E.O. 12958, as amended. In particular, and as will be described in further detail infra, information relating to the TSP concerns "intelligence activities (including special activities), intelligence sources or methods, or cryptology," E.O. 12958, as amended, § 1.4(c); "scientific, technological, or economic matters related to the national security, which includes defense against transnational terrorism," id., § 1.4(e); and "vulnerabilities or capabilities of systems, installations, infrastructures, projects, plans, or protection services relating to the national security, which includes defense against international terrorism," id., § 1.4(g), the disclosure of which reasonably could be expected to cause exceptionally grave damage to the national security of the United States. Id. § 1.2(a)(1).

17.    **(U)**    The President publicly acknowledged the existence of the TSP on December 17, 2005 during a radio address. As the President has stated, however, details about the TSP remain highly classified and subject to special access restrictions under the criteria set forth in Executive Order 12958, as amended. Unauthorized disclosure of information regarding the TSP can be expected to cause exceptionally grave damage to the national security of the United States. Thus, pursuant to the criteria outlined in Executive Order 12958, as amended, information related to the TSP is classified and, depending on the information, is usually subject to the special access and handling requirements reserved for "Sensitive Compartmented Information" ("SCI"), because it involves or derives from particularly sensitive intelligence sources and methods.

18.    **(U)**    Following the President's public acknowledgment of the TSP in December 2005, the Director of the FBI, during a February 2, 2006 hearing of the Senate Select Committee on Intelligence, publicly acknowledged the FBI's involvement in the TSP. Specifically, FBI

Director Mueller stated that the FBI "get[s] a number of leads from the NSA from a number of programs, including the program that's under discussion today. . . . And I can say that leads from that program have been valuable in identifying would-be terrorists in the United States, individuals who were providing material support to terrorists." Transcript at 51.

     19.    **(U)**    On January 17, 2007, the Attorney General announced that any electronic surveillance that had been occurring under the TSP would subsequently be conducted subject to the approval of the Foreign Intelligence Surveillance Court ("FISC"). On August 5, 2007, Congress enacted the Protect America Act of 2007, Pub. L. No. 110-55, which exempted the acquisition of certain foreign intelligence information from the definition of "electronic surveillance" subject to the procedures of the Foreign Intelligence Surveillance Act ("FISA"). The Act lapsed on February 16, 2008, but certifications made under the Act continue for one year from their entry. Under these circumstances, I am advised, the President has not renewed his authorization of the TSP.

     20.    **(U)**    Although the existence of the TSP has now been publicly acknowledged, and certain general facts about the TSP have been officially disclosed both by DOJ officials as well as by FBI Director Mueller, the President and others have made clear that sensitive information about the nature, scope, operation, and effectiveness of the TSP and other communications intelligence activities remains classified and cannot be disclosed without causing exceptionally grave harm to U.S. national security. The declaration of DNI McConnell, Director of National Intelligence, also submitted in this litigation, sets forth the categories of information related to the TSP that cannot be disclosed without causing such harms, and describes these harms in detail, upon which I rely herein. See Second McConnell Declaration, ¶¶ 26-39.

     21.    **REDACTED**

     22.    **REDACTED**

23.    **REDACTED**

**REDACTED [HEADING]**

24.    **REDACTED**

25.    **REDACTED**[8]

26.    **REDACTED**

## (U) EXPLANATION OF THE FBI'S CENTRAL RECORDS SYSTEM

27.    **(U)**    The Central Records System ("CRS") enables the FBI to maintain information which it has acquired in the course of fulfilling its mandated law enforcement responsibilities. The records maintained in the CRS consist of administrative, applicant, criminal, personnel, and other files compiled for law enforcement purposes. This system consists of a numerical sequence of files, called FBI "classifications," which are broken down according to subject matter. The subject matter of a file may relate to an individual, organization, company, publication, activity, or foreign intelligence matter or program. Certain records in the CRS are maintained at FBIHQ, whereas records that are pertinent to specific field offices of the FBI are maintained in those field offices. Although the CRS is primarily designed to serve as an investigative tool, the FBI searches the CRS for documents which are potentially responsive to FOIA/Privacy Act requests. The mechanism that the FBI uses to search the CRS is the Automated Case Support System ("ACS").

28.    **(U)**    On or about October 16, 1995, the Automated Case Support ("ACS") system was implemented for all Field Offices, Legal Attaches ("Legats"), and FBIHQ in order to consolidate portions of the CRS that were previously automated. ACS can be described as an internal computerized subsystem of the CRS. Because the CRS cannot electronically query the

case files for data, such as an individual's name or social security number, the required information

is duplicated and moved to the ACS so that it can be searched. More than 105 million records were

converted from automated systems previously utilized by the FBI. Automation did not change the

CRS; instead, automation has facilitated more economic and expeditious access to records

maintained in the CRS.

29.    **(U)**    The retrieval of data from the CRS is made possible through the ACS using

the General Indices, which are arranged in alphabetical order. Entries in the General Indices fall

into two categories:

> (a) **(U)** A "main" entry -- A "main" entry, or "main" file, carries the name
> corresponding with a subject of a file contained in the CRS.
>
> (b) **(U)** A "reference" entry --"Reference" entries, sometimes called
> "cross-references," are generally only a mere mention or reference
> to an individual, organization, or other subject matter, contained in
> a document located in another "main" file on a different subject matter.

30.    **(U)**    Searches made in the General Indices to locate records concerning a

particular subject are made by searching the subject requested in the index. FBI field offices have

automated indexing functions.

31.    **(U)**    The ACS consists of three integrated, yet separately functional, automated

applications that support case management functions for all FBI investigative and administrative

cases:

> (a) **(U)** Investigative Case Management ("ICM") – ICM provides the ability to

open, assign, and close investigative and administrative cases as well as set, assign, and track leads.

The Office of Origin ("OO"), which sets leads for itself and other field offices, as needed, opens a

case. The field offices that receive leads from the OO are referred to as Lead Offices ("LOs") –

formerly known as Auxiliary Offices. When a case is opened, it is assigned a Universal

Case File Number ("UCFN"), which is used by FBIHQ, as well as all FBI field offices and Legats

---

[8] **REDACTED**

that are conducting or assisting in the investigation. Using a fictitious file number

"111-HQ-12345" as an example, an explanation of the UCFN is as follows: "111" indicates the

classification for the specific type of investigation; "HQ" is the abbreviated form used for the OO

of the investigation, which in this example is FBIHQ; and "12345" indicates the individual case

file number for the particular investigation.

(b) **(U)**  Electronic Case File ("ECF") – ECF serves as the central electronic

repository for the FBI's official text-based documents.  ECF supports the universal serial concept

in that only the creator of a document serializes it into a file.  This provides a single-source entry of

serials into the computerized ECF system.  All original serials are maintained in the OO case file.

(c) **(U)**  Universal Index ("UNI") – UNI continues the universal concepts of ACS

by providing a complete subject/case index to all investigative and administrative cases.  Only the

OO is required to index; however, the LOs may index additional information as needed.  UNI,

currently an index of approximately 98.9 million records, functions to index names to cases, and to

search names and cases for use in FBI investigations.  Names of individuals or organizations are

recorded with identifying applicable information such as date or place of birth, race, sex, locality,

Social Security number, address, and/or date of event.

32.    **(U)**    The decision to index names other than subjects, suspects, and victims is a

discretionary decision made by the FBI Special Agent ("SA") – and on occasion, the support

employee -- assigned to work on the investigation, the Supervisory SA ("SSA") in the field office

conducting the investigation, and the SSA at FBIHQ.  The FBI does not index every name in its

files; rather, it indexes only that information considered to be pertinent, relevant, or essential for

future retrieval.  Without a "key" (index) to this enormous amount of data, information essential to

ongoing investigations could not be readily retrieved.  The FBI files would thus be merely archival

in nature and could not be effectively used to serve the mandated mission of the FBI, which is to

investigate violations of federal criminal and national security statutes.  Therefore, the General

Indices to the CRS files are the means by which the FBI can determine what retrievable

UNCLASSIFIED

information, if any, the FBI may have in its CRS files on a particular subject matter or individual, such as documents related to the TSP.

## (U)  SEARCHES FOR RECORDS RESPONSIVE TO PLAINTIFFS' REQUEST

33.    **(U)**    The processing of plaintiffs' FOIA request was largely addressed in my prior declaration, see First Hardy Declaration, Exhibit E to Defendants' Partial Motion for Summary Judgment, at ¶¶ 10-14, and that description is incorporated herein by reference. RIDS personnel initiated a search of the FBI's CRS to identify potentially responsive documents on March 1, 2006. As a result, March 1, 2006 became the search cut-off date for the identification of responsive records. An initial problem associated with identifying responsive documents is the generalized and broad-ranging nature of plaintiffs' FOIA request as it relates to the TSP, which does not lend itself naturally to the standard CRS searches that the FBI typically conducts in response to specific requests for FBI investigative files. This is particularly the case when the subject matter of the request is relatively recent, and many of the records which ultimately were identified as responsive have not yet been indexed to the CRS. As a result, RIDS also prepared and sent an Electronic Communication ("EC") dated June 23, 2006, requesting that the Director's Office, the Office of the General Counsel ("OGC"), the Counterterrorism Division ("CTD"), the Counterintelligence Division ("CID"), the Inspection Division ("INSD"), the Office of Public Affairs ("OPA") and the Office of Congressional Affairs ("OCA"), search for and produce potentially responsive documents, particularly those documents which would not otherwise be serialized and/or indexed in the CRS, including internal e-mail traffic. A combination of the search EC and an individualized inquiry of those FBIHQ employees most likely to possess potentially responsive records, led to the identification of the set of documents which have ultimately been deemed to be responsive to plaintiffs' request. As a result, by letter dated February 8, 2008, the FBI released to plaintiffs a total of **168** pages out of a total of **2557** pages reviewed – **nine (9)** documents (consisting of **43** pages) released in full; and **four (4)** documents (consisting of **125** pages) released in part. Moreover, the FBI notified plaintiffs that the remainder of the

UNCLASSIFED

responsive material had been withheld in full pursuant to FOIA Exemptions 1, 2, 3, 5, 6, 7(A), 7(C), 7(D) and 7(E). **See Exhibit B**.

34.    **(U)**    In sum, the FBI has identified as responsive and has withheld in full: (a) **189** non-serialized documents, which will be further described in detail below; (b) **24** documents which originated with either other DOJ components or other federal government agencies and which were referred for direct response, **four** of which contain FBI equities and will be addressed in further detail below; and (c) **one** main HQ file and **five** sub-files, along with unserialized e-mails and other documents related to a criminal investigation into the leak of TSP-related information. This declaration will address both serialized and non-serialized responsive documents which have been withheld in full or in part, as well as FBI equities in those documents which originated with other DOJ components and/or other federal government agencies.

35.    **(U)**    In the course of preparing both this <u>Vaughn</u> declaration, as well as my second declaration in the <u>EPIC/ACLU</u> case, the FBI discovered it was unable to locate one particular subset of responsive documents (**FBI 15, 17, 20, 24, 25, 26-32, 36, 40, 44, and 45).** I did have the opportunity to review these documents when they were first located in 2006. However, some time after the first declaration I submitted in the EPIC/ACLU litigation and prior to my second declaration, we were unable to locate these particular documents. We were able to locate a copy of **FBI 31** – which may or may not be an identical duplicate – in the files of another FBI employee. However, aside from a copy of FBI 31, and despite extensive search efforts,[9] we

---

[9] **(U)** These efforts have included: thorough searches of the classified safe in which this material has been maintained since 2006 – negative results; thorough searches of several other classified safes in the surrounding office area – negative results; thorough searches of the classified safe in the GC's office – negative results; a request for any documents remaining in the possession of the Director's Special Assistant – negative results; an e-mail request from the GC to those OGC employees who have been read into the TSP to search their safes and report back either positive or negative findings (including OGC attorneys who are on extended details out of the office) – all negative results; a broader e-mail request from the GC to FBIHQ CTD employees who have been read into the TSP to search their safes and report back either positive or negative findings – as of this date, negative results; a request made directly to two FBI employees who have been associated with the program and who are recipients or senders of many of the documents as to leads in tracking down the documents in this missing range – negative results; a request for a thorough search of the Inspection Division unit who is responsible for collecting and providing documents to the DOJ Inspector General as it conducts an inquiry into the TSP – negative results; a direct request of IG personnel to conduct a search of the materials in their possession they have received from the FBI to see if these four documents could be located – negative results. The FBI will continue its search efforts, and will notify the Court in the event these remaining

have been unable to find the remaining documents identified above (**FBI 15, 17, 20, 24-30, 32, 36, 40, and 44-45**. As a result, I am able to provide only a brief summary of these documents – all of which appear to be drafts or similar to other non-serialized documents – based on an internal log we created in 2006, and which formed the basis for the Index we are submitting today as Exhibit A.

36.    **(U)**    The FBI has carefully reviewed each available document to determine if all classified information continues to be properly classified; and reviewed each available document to determine if any of the information could be segregated and released due to the passage of time and/or additional information having been made available publicly.[10]

37.    **(U)**    Thus, below we will address those documents which have been withheld in full or in part, and provide detailed justifications for that information pursuant to Exemptions 1, 2(Low), 2(High), 3, 5 6, 7(A), 7(C), 7(D) and 7(E).[11]

## (U) CATEGORIES OF RECORDS RESPONSIVE TO PLAINTIFFS' REQUEST

38.    **(U)**    The responsive documents as a whole are best described as falling into the following four general categories:[12]

---

documents are located.

[10] **(U)** On July 26, 2007, Representative John Conyers, Jr. made a request to the FBI for access to copies of the FBI Director's notes "regarding conversations that [he] had with former Deputy Attorney General James Comey . . . and former Attorney General John Ashcroft . . . regarding a March 10, 2004, hospital visit involving former White House Counsel Alberto Gonzales and former Chief of Staff to the President Andrew Card." The FBI responded by letter dated August 14, 2007, and produced a redacted set of the Director's notes regarding events on March 10, 2004. That material has since been made accessible via the Internet. As a result, the FBI has processed the identical document consistent with the Conyers release, and has reviewed and released certain portions of other documents which are very similar in nature to that material released to Representative Conyers.

[11] **(U)** For Exemption 5, the following acronyms will be used throughout: **DPP** = "deliberative process privilege;" **ACC** = "attorney-client communications privilege;" and **AWP** = "attorney-work product privilege."

[12] **(U)** The FBI has identified a subset of documents whose substance consists predominantly of discussions of operational details and statistics related to the use of, and reliance on, the TSP by the FBI: **FBI 8, 41, 115, 128, 137, 139, 141, 143-144, 148-149, 166, 171, 175, 178, 193-194, 239, 241, 242, 269-271, 274-275, 301-303, 313-314, 316 and 318**. However, these documents contain portions which are responsive to plaintiffs' request and as a result, have been included in this discussion. **See Exhibit A.**

    **A.**   **REDACTED**

    **B.**   **REDACTED**

**C.**   **REDACTED**

(U)   **D. Criminal Media Leak Investigation**: criminal investigation into leak of TSP-related information which led to publication of <u>New York Times</u> articles in December 2005 (*reflected in one main HQ file and five sub-files, as well as unserialized e-mails and other documents*) [**FBI 2000**].

## (U) SUMMARY OF JUSTIFICATION CATEGORIES

39.   (U)   Listed below are the categories used to explain the FOIA exemptions asserted to withhold protected material.

| CLASSIFICATION MARKING | FOIA EXEMPTION | DESCRIPTION OF FOIA EXEMPTION |
|---|---|---|
| (U) | (b)(1) | **Classified Information** |
| (U) | (b)(2) | **Internal Agency Rules and Practices** |
| (U) | (Low) | • Internal FBI Business Telephone, Fax and Pager Numbers |
| REDACTED | REDACTED | REDACTED |
| (U) | (b)(3) | **Information Protected by Other Statutes** |
| (S) | | • Federal Grand Jury Information (Rule 6(e) of the Federal Rules of Criminal Procedure) |
| (U) | | • Intelligence Sources and Methods Based On DNI Statute |
| (U) | (b)(5) | **Deliberative Process, Attorney/Client and Work Product Privileges** |
| (U) | (DPP) | • Deliberative Process Privilege |
| (U) | (ACC) | • Attorney/Client Communications Privilege |
| (U) | (AWP) | • Attorney Work Product |
| (U) | (b)(6) & (b)(7)(C) | **Clearly Unwarranted & Unwarranted Invasion of Personal Privacy** |
| (U) | | • Names and/or Identifying Information Concerning FBI Special Agents and FBI Support Personnel |
| (U) | | • Names and/or Identifying Information Concerning Other Federal Government Employees |
| (U) | | • Names and/or Identifying Information Concerning Third Parties of Investigative Interest |
| (U) | | • Names and/or Identifying Information Concerning Third Parties Interviewed |
| (U) | | • Names and/or Identifying Information Concerning Third Parties Merely Mentioned in FBI Records |

- 14 -

| (U) | (b)(7)(A) | **Pending Law Enforcement Investigation** |
|---|---|---|
| (U) | | • Information Which if Disclosed Would Interfere with the Ongoing Active FBI and DOJ Criminal Investigation of the Unauthorized Disclosure of Classified Information Concerning the TSP |
| (U) | (b)(7)(D) | **Confidential Source Information** |
| (U) | | • Names and/or Identifying Information Provided By Individuals Under an "Express" Assurance of Confidentiality |
| (U) | | • Names and/or Identifying Information Provided By Individuals Under an "Implied" Assurance of Confidentiality |
| (U) | (b)(7)(E) | **Investigative Techniques and Procedures** |
| **REDACTED** | **REDACTED** | **REDACTED** |

## (U) APPLICATION OF FOIA EXEMPTION 1 AND E.O. 12958, AS AMENDED[13]

40.    (U)    The FBI's analysis of the withholding of classified information contained in

its records in a FOIA context is based on the standards articulated in the FOIA statute, 5 U.S.C. §

552 (b)(1). Exemption 1 protects from disclosure those records that are "(A) specifically

authorized under criteria established by an Executive Order to be kept Secret or Top Secret in the

interest of national defense or foreign policy; and (B) are in fact properly classified pursuant to

such Executive Order."

41.    (U)    The FBI's analysis of whether Exemption 1 permits the withholding of

agency records consists of two significant steps. First, the FBI must determine whether the

information contained in the records is information that satisfies the substantive and procedural

criteria of the applicable Executive Order governing the classification and protection of national

security information. And second, the FBI has to analyze whether the documents are exempt

---

[13] (U) Exemption 1 has been asserted to protect information in the following documents: **FBI 1, 3, 8-10, 15, 17, 20, 24-32, 34, 40, 41, 44-46, 49, 52, 56, 57, 61-64, 67, 68, 70, 71, 73-77, 80, 82, 84, 92, 93, 114-120, 123, 124, 127, 128, 130, 133, 134, 137, 139-144, 146-152, 158, 159, 163, 164, 165-167, 170-175, 177-179, 182-184, 186-188, 190-194, 211, 212, 220, 221, 223, 224, 234, 236, 239, 241-246, 248-250, 256-261, 263, 266, 269-271, 273-276, 280, 284-285, 292, 293, 301-305, 313, 314, 316, 318, 319 and 2000. See Exhibit A.**

under FOIA Exemption 1.

42.    **(U)**    First therefore, I must determine whether the information in these records is information that satisfies the requirements of the current Executive Order which governs the classification and protection of information that affects the national security.[14] I must further ensure that the information at issue complies with the various substantive and procedural criteria of the current Executive Order, E.O. 12958, as amended. The current Executive Order that applies to the protection of national security information was amended on March 25, 2003. I am bound by the requirements of E.O. 12958, as amended, when making classification determinations.

43.    **(U)**    For information to be properly classified, and thus properly withheld from disclosure pursuant to Exemption 1, the information must meet the requirements set forth in E.O. 12958, as amended, § 1.1 (a):

(a) **(U)** an original classification authority is classifying the information;

(b) **(U)** the information is owned by, produced by or for, or is under the control of the United States Government;

(c) **(U)** the information falls within one or more of the categories of information listed in § 1.4 of this order; and

(d) **(U)** the original classification authority determines that the unauthorized disclosure of the information reasonably could be expected to result in damage to the national security, which includes defense against transnational terrorism, and the original classification authority is able to identify or describe the damage.

### (U)  FINDINGS OF DECLARANT

44.    **REDACTED**[15]

45.    **(U)**    In conjunction with consultations with the NSA, as well as based on the

---

[14] **(U)** Section 6.1 (y) of E.O. 12958, as amended, defines "National Security" as "the national defense or foreign relations of the United States."

classification determinations reflected in the Second McConnell Declaration, the FBI has

determined that the information at issue warrants continued classification at the Top Secret level

pursuant to E.O. 12958, as amended, §§1.4 (c), (e) and (g).

46.  **REDACTED**

* **REDACTED**;

* **REDACTED**;

* **REDACTED**;

* **(U)** Revealing information regarding who is or is not targeted for surveillance by the NSA
  thereby allowing foreign adversaries, including al Qaeda and its affiliates, to compromise,
  detect, or evade U.S. surveillance operations.

47.  **REDACTED**

### **REDACTED [HEADING]**

48.  **REDACTED**

### **(U) INTELLIGENCE ACTIVITIES, SOURCES AND METHODS**

49.  **(U)**    E.O. 12958, as amended, § 1.4 (c), exempts from disclosure information

which concerns "intelligence activities (including special activities), intelligence sources and

methods, or cryptology . . . ." The information withheld consists of intelligence activities and

methods utilized by the FBI for gathering intelligence data. "Intelligence activity or method"

includes any intelligence action or technique utilized by the FBI against a targeted individual or

organization that has been determined to be of national security interest. "Intelligence method" is

used to indicate any procedure (human or non-human) utilized to obtain information concerning

such individual or organization. An intelligence activity or method has two characteristics. First,

the intelligence activity or method, and information generated by it, is needed by the U.S.

---

[15] **(U)** See E.O. 12958, as amended, § 1.2(a)(1).

Intelligence/Counterintelligence agencies to carry out their missions. Second, confidentiality must be maintained with respect to the activity or method if the viability, productivity and usefulness of the activity or method are to be preserved.

50.    **(U)**    In this case, Exemption 1 has been applied to protect intelligence sources and methods with respect to the following categories of information contained in both serialized and unserialized documents identified as responsive to plaintiff's request:

(a) **REDACTED**

(b) **REDACTED**

(c) **REDACTED**

(d) **REDACTED**

(e) **REDACTED**

(f) **(U) <u>CRIMINAL MEDIA LEAK INVESTIGATION</u>**: criminal investigation into leak of TSP-related information which led to publication of New York Times articles in December 2005 (*reflected in one main HQ file and five sub-files, as well as unserialized e-mails and other documents*).

### **REDACTED [HEADING]**

51.    **REDACTED**

52.    **REDACTED**

53.    **REDACTED**

- **REDACTED**;

- **REDACTED**;

- **REDACTED**;

- **REDACTED**

54.    **REDACTED**

**REDACTED [HEADER]**

55.    **REDACTED**

### (U) **FBI'S BURDEN OF ESTABLISHING EXEMPTION 1 CLAIMS**

56.    **(U)**    The classified information withheld in this case pursuant to Exemption 1 has been examined in light of the body of information available to me concerning the national defense of the United States. Based upon my personal review of the Second McConnell Declaration, also filed in this litigation, I understand that United States intelligence-gathering efforts in the ongoing war against terror would be significantly harmed if documents that contain classified information about the TSP are compelled to be disclosed. Although the President acknowledged the existence of the TSP in December 2005, highly sensitive information about the TSP remains classified and cannot be disclosed without causing exceptionally grave damage to U.S. national security. This information was not examined in isolation. Rather, particular efforts were made to evaluate each piece of information and what impact disclosure could have on other sensitive information contained elsewhere in the United States Intelligence Community's files. Equal consideration was given to the impact that other information, either in the public domain or likely known or suspected by present or potential adversaries of the United States, would have upon the information. As a result, in conjunction with consultations with the NSA, as well as based on the classification determinations reflected in the Second McConnell Declaration, the FBI has determined that the information at issue warrants continued classification at the Top Secret level pursuant to E.O. 12958, as amended, §§1.4 (c), (e) and (g).

57.    **(U)**    In those instances where in my judgment or in the judgment of the appropriate classification authority disclosure of this information could reasonably be expected to

cause exceptionally grave damage to the national security, and/or grave damage to the national

security, and its withholding outweighed the benefit of disclosure, that information has been

designated classified in the interest of national security at either the "TOP SECRET" or

"SECRET" level, and the FBI has invoked FOIA Exemption 1 to prevent its disclosure. Likewise,

the justifications for the withheld classified information were prepared with the intent that they be

read with consideration given to the context in which the classified information is found. This

context includes not only the surrounding classified information but also other information already

in the public domain, as well as information likely known or suspected by other hostile intelligence

entities.

58.    **REDACTED**

### (U)  FOIA EXEMPTION 2
### INTERNAL AGENCY RULES AND PRACTICES

59.    **(U)**    5 U.S.C. § 552 (b)(2) exempts from disclosure information "related solely

to the internal personnel rules and practices of an agency." This exemption encompasses two

distinct categories of records that are internal in nature: those involving trivial administrative

matters of no genuine public interest ("Low 2"), and those the disclosure of which would risk

circumvention of a statute or regulation ("High 2"). Disclosure of "Low 2" routine internal

administrative information such as telephone, fax and pager numbers serves no public benefit, and

there is no indication that there is a genuine public interest in the disclosure of this information. In

this case, the context in which this information is located – i.e., classified and highly sensitive

documents – as well as the connection of this information to the TSP, heightens the sensitivity of

this information, thereby mandating its protection pursuant to Exemption "Low 2." Moreover,

disclosure of "High 2" information in this case would impede the effectiveness of the internal law

enforcement procedures of the FBI and the intelligence-gathering procedures of the FBI's fellow intelligence agencies as it engages in counterterrorism activities. Disclosure of this information could impede the effectiveness of the FBI's internal operational and law enforcement support procedures, and its intelligence information-gathering and cooperation with the NSA.

### (U) (b)(2)(Low)    Internal Business Telephone, Fax and Pager Numbers[16]

60.    **(U)** Exemption 2 has been asserted in conjunction with Exemptions 6 and 7(C) to protect the business telephone numbers, fax and pager numbers appearing in documents as they relate to FBI Special Agents, FBI support employees, and other federal government personnel. Telephone, fax and pager numbers relate to the internal practices of the FBI, and as applicable, to the internal practices of other federal agencies, in that they are tools utilized by personnel in the performance of their jobs. Disclosure of this information could subject these individuals to harassing contacts (via telephone, fax or pager) which could disrupt official business, including impeding government personnel from conducting and concluding intelligence and law enforcement matters in a timely manner. In this case, the context in which this information is located – i.e., classified and highly sensitive documents – as well as the connection of this information to the TSP, heightens the sensitivity of this information, thereby mandating its protection pursuant to Exemptions 2, 6 and 7(C). Moreover, disclosure of routine internal administrative information such as telephone, fax and pager numbers serves no public benefit, and there is no indication that there is a genuine public interest in the disclosure of this information. Accordingly, because this internal information is related solely to the internal practices of the FBI and other federal government agencies, because disclosure would not serve any public interest,

---

[16]  **(U)** The FBI has withheld information pursuant to Exemption 2 (Low) in the following documents: **FBI 3, 8, 115, 116, 123, 130, 134, 137, 139, 141-144, 147, 148, 158, 163, 164, 166, 170, 171, 184, 194, 224, 236, 237, 241-245, 305, 318, 325-330, 333 and 2000.**

and because disclosure would impede the effectiveness of government personnel, this information has been properly withheld pursuant to Exemption 2 (Low).

61.    **(U)**    Moreover, Exemption 2 (Low) has been asserted to protect information in the criminal media leak investigation as well as information in the five sub-files which contain serials responsive to plaintiffs' request. **FBI 2000**.

<u>**REDACTED [HEADER]**</u>[17]

62.    **REDACTED**

63.    **(U)**    *Rationale for Withholding Information:*

(a)    **REDACTED**

(b)    **REDACTED**

(c)    **REDACTED**

64.    **(U)**    Moreover, Exemption 2 (High) has been asserted in conjunction with Exemption 7(E) to protect information in the criminal media leak investigation as well as information in the five sub-files which contain serials responsive to plaintiffs' request. **FBI 2000**.

**(U) <u>EXEMPTION 3: STATUTORY EXEMPTIONS</u>**[18]

65.    **(U)**    Exemption 3, 5 U.S.C. § 552 (b)(3), permits an agency to withhold from disclosure information which is

specifically exempted from disclosure by statute . . provided that

---

[17] **(U)** The FBI has withheld information pursuant to Exemption 2 (High) in the following documents: **FBI 1, 15, 20, 25, 27-31, 34, 36, 37, 40, 44-46, 49, 52, 61-64, 67, 68, 70, 71, 73-77, 79, 80, 82, 84, 194, 223, 246 and 2000. <u>See</u> Exhibit A.**

[18] **(U)** The FBI has withheld information pursuant to Exemption 3 in the following documents: **FBI 1, 3, 8-10, 15, 17, 20, 24-32, 34, 40, 41, 44-46, 49, 52, 56, 57, 61-64, 67, 68, 70, 71, 73-77, 80, 82, 84, 92, 93, 114-120, 123, 124, 127, 128, 130, 133, 134, 137, 139-144, 146-152, 158, 159, 163, 164, 165-167, 170-175, 177-179, 182-184, 186-188, 190-194, 211, 212, 220, 221, 223, 224, 234, 236, 239, 241-246, 248-250, 256-261, 263, 266, 269-271, 273-276, 280, 284-285, 292, 293, 301-305, 313, 314, 316, 318, 319 and 2000. <u>See</u> Exhibit A.**

such statute (A) requires that the matters be withheld from the public in such a manner as to leave no discretion on the issue, or (B) establishes particular criteria for withholding or refers to particular types of matters to be withheld.

66.    **REDACTED**

(U)    **Intelligence Sources and Methods Based On DNI Statute**

67.    **REDACTED**

(1) **(U)** any classified intelligence information concerning the continuing threat to the United States posed by al Qaeda and its affiliates that forms the basis for the President's authorization and reauthorization of the TSP;

(2) **(U)** any operational details concerning the technical methods by which the NSA intercepts communications under the TSP;

(3) **REDACTED**;

(4) **REDACTED**;

(5) **REDACTED**;

(6) **REDACTED**;

(7) **(U)** any information that would reveal or tend to reveal whether someone is a target of surveillance under the TSP.

### (U) EXEMPTION 5: DELIBERATIVE PROCESS, ATTORNEY/CLIENT AND WORK PRODUCT PRIVILEGES

68.    **(U)**    Exemption 5, 5 U.S.C. § 552 (b)(5), allows the FBI to protect information contained in "inter-agency or intra-agency memorandums or letters which would not be available by law to a party other than an agency in litigation with the agency." This exemption has been construed to exempt those documents or information normally privileged in the civil discovery context, including, as is the case here, the deliberative process privilege and the attorney-client privilege. This exemption is being asserted for various internal e-mails, draft documents, notes, deliberative internal memoranda and internal reports.

## (U) Deliberative Process Privilege[19]

69.    **(U)**    The deliberative process privilege protects the internal deliberations of an agency by exempting from release recommendations, analyses, speculation and other non-factual information prepared in anticipation of agency decision-making.  The general purpose of the deliberative process privilege is to prevent injury to the quality of agency decisions.  Thus, material that contains or was prepared in connection with the formulation of opinions, advice, evaluations, deliberations, policy formulation, proposals, conclusions or recommendations may properly be withheld.  Release of this type of information would have an inhibitive effect upon the development of policy and administrative direction of an agency because it would chill the full and frank discussion among agency personnel regarding a decision.  If agency personnel knew that their preliminary opinions, evaluations and comments would be released for public consumption, they may be more circumspect in what they put in writing, and thereby impede a candid discussion of the issues surrounding a decision.

70.    **(U)**    To invoke the deliberative process privilege, an agency must show that an allegedly exempt document is both (a) "predecisional" – antecedent to the adoption of agency policy; and the agency must also identify the agency decision or policy to which the document contributed or identify a decision-making process to which a document contributed; and (b) "deliberative" – a direct part of the deliberative process in that it makes recommendations or expresses opinions on legal or policy matters, reflects the give and take of the consultative process, and bears on the formulation or exercise of agency policy-oriented judgment.  Furthermore, an agency must identify the role of a contested document in a specific deliberative process.

71.    **REDACTED**

---

[19] **(U)** The FBI has withheld information pursuant to Exemption 5 (DPP) in the following documents: **FBI 1, 3, 8, 9, 10, 15, 20, 24, 25, 26, 27, 28 30, 31, 41, 45, 49, 56, 57, 61, 62, 63, 64, 67, 68, 70, 71, 73, 74, 75, 76, 77, 79, 80, 82, 84, 92, 93, 115, 116, 117, 118, 119, 120, 123, 124, 127, 128, 130, 133, 134, 137, 139, 140, 141, 142, 143, 144, 146, 147, 148, 149, 150, 151, 152, 158, 159, 163, 164, 165, 166, 167, 170, 171, 179, 182, 183, 184, 186, 187, 188, 190, 191, 192, 211, 212, 220, 221, 224, 234, 236, 237, 239, 241, 242, 243, 244, 245, 246, 248-250, 256-259, 260, 261, 263, 266, 269, 270, 271-, 276, 280, 284, 285, 292, 293, 301, 302, 303, 309, 313, 314, 318, 319, 322, 323, 324, 325, 326, 327, 328, 329, 330, 331, 332, 333, 334, 335, 336, 337, 338, 339, 340 and 2000.** See Exhibit A.

72. **(U)** *Rationale for Withholding:*

(a)   **(U)**   As a whole, the redactions taken pursuant to the deliberative process privilege under Exemption 5 reflect an internal, on-going dialogue among and between FBI personnel, DOJ personnel, and other federal agency personnel, including NSA and other Intelligence Community personnel, with regard to the TSP program, and how the FBI can most effectively use information derived from the TSP in its law enforcement efforts. This internal dialogue is reflected in numerous e-mail trails, in draft, predecisional documents (many of which contain handwritten notations), and in internal recommendations for the FBI Director. This dialogue is both (a) "predecisional" – antecedent to the adoption of agency policy – (which in this case is set by DOJ as the agency); and "deliberative" – the numerous drafts and numerous e-mail trails and exchanges reflect a continuous set of deliberations, give and take of the consultative process, with regard to the shaping and finalizing of agency decision-making. All of the material withheld pursuant to Exemption 5 (DPP) reflects a fluid, continuous and on-going deliberative set of discussions among decision makers and contributors to the TSP dialogue, and the role the FBI and other federal agencies play in this significant national security initiative.

(b)   **(U)**   This material is both pre-decisional and deliberative. It reflects the thinking of individuals, rather than adopted policy of the FBI. E-mail communications, for example, serve as a way for individual FBI employees to communicate with each other about current matters without having to leave their offices. These "discussions," which are memorialized electronically, are part of the critical exchange of ideas and suggestions that accompanies all decision making and typically reflect very preliminary assessments by FBI personnel about issues on which they may be asked to make recommendations. Before the advent of computers, these discussions probably would have occurred only orally, with no record of their existence being maintained. The fact that these discussions are now recorded should not obscure the fact that that they are simply conversations among and between FBI personnel, and, in some instances, with other federal government employees, as the situation requires. These discussions

are part of the core give and take of agency deliberations. If these kinds of documents are routinely released to the public, FBI employees will be much more circumspect in their online discussions with each other. This lack of candor will seriously impair the FBI's ability to foster the forthright, internal discussions necessary for efficient and proper decision-making. Furthermore, exempting such documents and information from disclosure also protects against public confusion that might result from disclosure of preliminary information and opinions that do not, in fact, reflect the final views or policies of the FBI, and of DOJ. The deliberative process privilege is designed to protect not only documents and information but also the integrity of the deliberative process itself where exposure of the process would result in harm.

(c)    **(U)**    These protected deliberations form an integral part of the decision-making process regarding the development of policies and procedures in connection with the TSP, which, as the documents reflect, continue to change over time. These deliberations and dialogue continue to the present day. The FBI has appropriately asserted Exemption 5, the deliberative process privilege, to protect these candid internal discussions concerning these evolving policies and procedures. The release of the redacted information is likely to chill full, frank, and open internal discussions -- a chilling effect which is all the more dangerous given the important national security interests at stake. I have therefore determined that the redacted material consists of material which is deliberative and has been withheld appropriately pursuant to Exemption 5.

73.    **(U)**    Moreover, Exemption 5 has been asserted to protect information subject to the deliberative process privilege in the criminal media leak investigation as well as information in the five sub-files which contain serials responsive to plaintiffs' request. **FBI 2000.**

### (U) (b)(5)        Attorney/Client Communications Privilege[20]

74.    **(U)**    The attorney-client communications privilege is appropriately asserted

when legal advice of any kind is sought, from a professional legal adviser in his or her capacity as

such; the communications relating to that purpose are made in confidence by the client; and are, at

the client's instance, permanently protected from disclosure by the client or by the legal adviser

unless the attorney-client protection is waived. This privilege encompasses confidential

communications made to the attorney not only by decision-making personnel but also by

lower-echelon employees who possess information relevant to an attorney's advice-rendering

function. In addition, the attorney-client privilege covers the two-way communications between a

client and an attorney, which relate to legal advice.

75.    **REDACTED**

76.    **(U)**    ***Rationale for Withholding:*** The documents which contain material

withheld pursuant to the attorney-client privilege of Exemption 5 consist of numerous internal

e-mail trails among and between FBI attorneys and FBI SAs and other FBI support employees

regarding the legal implications of the TSP; and notes and draft legal documents prepared in

connection with legal analysis and opinions regarding operation of the TSP. The information

contained in these documents reflects attorney advice, opinions, and recommendations offered at

the employees' request by FBI OGC attorneys. It also includes advice solicited by the FBI from

DOJ attorneys. These communications/exchanges and documents were generated in a secure

internal e-mail/computer system of the FBI, based on client-supplied information regarding

various aspects of the TSP. The redacted material taken as a whole reveals the candid exchanges

of information among FBI attorneys, FBI SAs and FBI support personnel seeking legal advice

---

[20] **(U)** The FBI has withheld information pursuant to Exemption 5 (ACC) in the following documents: **FBI 3, 8, 15,**
**17, 25, 27, 28, 31, 32, 34, 36, 44, 56, 57, 61, 62, 63, 64, 67, 68, 70, 71, 73, 74, 75, 76, 77, 79, 92, 93, 115, 116, 117,**
**118, 119, 120, 124, 137, 141, 143, 144, 146, 149, 150, 151, 152, 159, 182, 183, 239, 241, 242, 243, 244, 245, 246,**
**248, 249, 250, 256, 257, 258, 259, 260, 261, 263, 266, 269, 270, 271, 273, 274, 275, 276, 280, 284, 285, 292, 293,**
**323, 324, 325, 326, 327, 328, 330, 331, 332, 334, 335 and 2000.** See **Exhibit A.**

regarding the FBI's role and responsibilities with respect to the TSP, and more generally, the FBI's law enforcement and counterterrorism efforts. Disclosure of these communications would breach the confidential relationship between these individuals and repress and stifle such critical communications in the future. For these reasons the FBI has asserted Exemption 5, the attorney-client privilege, to protect these confidential communications.

77.    **(U)**    Moreover, Exemption 5 (ACC) has been asserted to protect information in the criminal media leak investigation as well as information in the five sub-files which contain serials responsive to plaintiffs' request. **FBI 2000**.

### **(U) (b)(5)**      **Attorney Work Product Privilege**[21]

78.    **(U)**    The attorney work product privilege protects documents and other memoranda prepared by, or an individual working at the direction of, an attorney, in contemplation or anticipation of litigation. The purpose of this privilege is to protect the adversarial trial process by insulating the mental impressions and litigation strategy from scrutiny. The FBI has withheld several documents pursuant to the attorney work product privilege under Exemption 5.

79.    **REDACTED**

80.    **(U)**    ***Rationale for Withholding:*** The attorney work product at issue in this case relates to e-mails and draft declarations prepared by FBI attorneys in connection with various criminal proceedings. There are also several documents which contain discussions of TSP intelligence collections and how that information has or has not been used in specific criminal cases. The disclosure of this information would reveal the preliminary mental impressions of FBI attorneys regarding these criminal proceedings, and steps employed by agency counsel in preparing the FBI's filings. I have determined that this redacted material consists of attorney work product and it has been withheld appropriately pursuant to Exemption 5.

81.    **(U)**    Moreover, Exemption 5 (AWP) has been asserted to protect information in

---

[21]  (U) The FBI has withheld information pursuant to Exemption 5 (AWP) in the following documents: **FBI 15, 25, 92, 93, 266, 276, 280, 292, 293 and 2000**. See Exhibit A.

the criminal media leak investigation as well as information in the five sub-files which contain

serials responsive to plaintiffs' request. **FBI 2000.**

## (U)  FOIA EXEMPTIONS 6 AND 7(C)
## CLEARLY UNWARRANTED AND UNWARRANTED
## INVASION OF PERSONAL PRIVACY[22]

82.    **(U)**    5 U.S.C. § 552 (b)(6) exempts from disclosure "personnel and medical files

and similar files when the disclosure of such information would constitute a clearly unwarranted

invasion of personal privacy."  Moreover, 5 U.S.C. § 552 (b)(7)(C) exempts from disclosure:

> records or information compiled for law enforcement purposes, but
> only to the extent that the production of such law enforcement
> records or information . . . could reasonably be expected to
> constitute an unwarranted invasion of personal privacy.[23]

83.    **(U)**    When withholding information pursuant to this exemption, the FBI is

required to balance the privacy interests of the individuals mentioned in the documents against any

public interest in disclosure.  In asserting this exemption, each piece of information is scrutinized

to determine the nature and strength of the privacy interest of any individual whose name and/or

identifying information appears in the documents at issue.  In withholding the information, each

individual's privacy interests are balanced against the public's interest in disclosure.  The public

interest in disclosure of the information is determined by whether the information in question

would inform plaintiffs or the general public about the FBI's performance of its mission to enforce

federal criminal and national security statutes, and/or how the FBI actually conducts its internal

operations and investigations.  In each instance where information has been withheld pursuant to

Exemptions 6 and 7(C), the FBI determined that the individual's privacy rights outweigh the

---

[22] (U) The FBI has withheld information pursuant to Exemptions 6 and 7(C) in the following documents: **FBI 1, 3, 20, 24, 29, 32, 34, 36, 44, 49, 52, 61-64, 67, 68, 70, 71, 73-80, 82, 84, 114-120, 123, 124, 127, 128, 130, 133, 134, 137, 139-144, 146-152, 158, 159, 163-167, 170-172, 177-179, 182-184, 186-188, 193, 211, 212, 220, 221, 223, 224, 234, 236, 237, 239, 241-246, 248-250, 256-261, 263, 266, 269-271, 273-276, 280, 283-285, 292, 293, 296, 297, 300, 302-305, 313-316, 318, 325-331, 333 and 2000.  See Exhibit A.**

[23] (U) The Exemption 7 threshold analysis is discussed infra at ¶¶ 101-103.

public interest, and that there is no legitimate public interest in the information at issue.

84.    **(U)**    Moreover, Exemptions 6 and 7(C) have been asserted to protect information in the criminal media leak investigation as well as information in the five sub-files which contain serials responsive to plaintiffs' request. **FBI 2000.**

### (U)  (b)(6) & (b)(7)(C)    Names and/or Identifying Information Concerning FBI Special Agents and FBI Support Personnel

85.    **(U)**    The FBI has asserted Exemptions 6 and 7(C) to protect the names and identifying information of FBI Special Agents ("SAs") and FBI support personnel.

86.    **(U)**    The FBI has withheld names and/or identifying information of FBI Special Agents ("SAs") and FBI support employees, information which appears throughout the serialized and non-serialized documents. The FBI has asserted Exemptions 6 and 7(C) to protect the names and/or identifying information of lower-level SAs and support employees (below Section Chief level). Exemptions 6 and 7(C) have not been extended to provide protection for names and/or identifying information of FBI personnel at the Section Chief, Deputy Assistant Director, Assistant Director and Director level.

87.    **(U)**    FBI SAs and support personnel are assigned to handle a variety of tasks related to counterterrorism and counterintelligence investigations. These individuals are in positions to access information regarding sensitive law enforcement, counterterrorism and national security investigations. They could therefore become the targets of harassing inquiries for unauthorized access to classified and sensitive information if their identities were released. Publicity, adverse or otherwise, regarding any particular activities in which FBI SAs and support employees may engage as part of their official duties may seriously impair their effectiveness in conducting similar future activities. This privacy consideration also protects FBI SAs and support employees from unnecessary, unofficial questioning as to the conduct of their activities, whether or not they are currently employed by the FBI. FBI SAs and support employees conduct official inquiries into violations of various criminal statutes and counterterrorism and national security

UNCLASSIFIED

cases. As part of their duties, they may come into contact with all strata of society conducting searches and making arrests, all of which result in reasonable, but nonetheless serious, disturbances in the lives of individuals. It is possible for a person targeted by such law enforcement action to carry a grudge which may last for years, and to seek revenge on individuals involved in the investigation. The publicity associated with the release of the identity of an FBI SA or support employee in connection with a particular operational activity could trigger hostility towards the SA or support employee by such persons.

88.    **REDACTED**

89.    **(U)**    Accordingly, there is a strong privacy interest in protecting the identities of the FBI SAs and support employees whose names and identifying information appear in the documents at issue here, and disclosure of such information would constitute a clearly unwarranted and an unwarranted invasion of their personal privacy. There is no public interest to be served by disclosing the identities of FBI SAs or support personnel to the public, and release of this information will not shed light on the operations and activities of the FBI. Exemptions 6 and 7(C) have been appropriately asserted to protect the names and/or identifying information of FBI SAs and FBI support personnel.

**(U)    (b)(6) & (b)(7)(C): <u>Names and/or Identifying Information Concerning Other Federal Government Employees</u>**

90.    **(U)**    The FBI has asserted Exemptions 6 and 7(C) to protect the names and/or identifying information concerning other lower-level employees of other government agencies whose names and/or identifying information appear throughout both serialized and non-serialized documents.

91.    **(U)**    The identifying information includes telephone numbers, job titles, business addresses and facsimile numbers of these federal employees. These employees have access to sensitive and often highly classified intelligence information; release of their names could subject them to unofficial inquiries and/or harassment, which would result in a clearly

UNCLASSIFED

unwarranted and an unwarranted invasion of their privacy. The rationale for protecting the identities of FBI SAs and FBI support personnel, as discussed earlier, applies with equal force to the protection of the identities of the employees of other federal government agencies. Furthermore, there is no legitimate public interest to be served in releasing these employees' names because such a release would not shed light on the operations and activities of these other agencies. Exemptions 6 and 7(C) have been asserted to protect the names and/or identifying information of other federal government agency employees.

### (U)  (b)(6) & (b)(7)(C)    Names and/or Identifying Information Concerning Third Parties of Investigative Interest

92.    **(U)**    Exemptions 6 and 7(C) have been asserted to protect the names and/or identifying information of third-party individuals who are of investigative interest to the FBI. For example, during the course of the ongoing criminal media leak investigation, information was developed during interviews of U.S. Government employees and other individuals. Consequently, some of these third party individuals have become of investigative interest to the FBI in this investigation. Disclosure of the identities of these individuals of investigative interest could subject them to embarrassment and harassment as well as undue public attention. Furthermore, disclosure of their identities could result in intimidation and/or threats to their physical safety. Being linked with any investigation carries a strong negative connotation, which is especially acute in this particular investigation inasmuch as public revelation of the TSP has potentially damaged the national security of the United States. The personal privacy of these individuals of investigative interest to the FBI would be severely infringed upon if their identities were released in the context of this ongoing criminal investigation.

93.    **(U)**    Similarly, individuals discussed in the documents who have proven to be of investigative interest in the context of various counterterrorism investigations stemming from TSP

program have also been protected pursuant to Exemptions 6 and 7(C). Some of these third-party

individuals have become of investigative interest in the course of the FBI's counterterrorism

investigations. Disclosure of the identities of these individuals of investigative interest could

subject them to embarrassment and harassment as well as undue public attention. Furthermore,

disclosure of their identities could result in intimidation and/or threats to their physical safety.

Being linked with any law enforcement investigation carries a strong negative connotation, which

is especially acute in these types of investigations inasmuch as these individuals would then be

labeled in the minds of the public as terrorists. The personal privacy of these individuals of

investigative interest to the FBI would be severely infringed upon if their identities were released

in the context of these counterterrorism investigations.

94.    **(U)**    After identifying the substantial privacy interests of these individuals, the

FBI balanced their privacy interests against the public interest in disclosure. The FBI could not

identify any legitimate public interest in the release of this identifying information because it

would not shed any light on the operations and activities of the FBI during the course of the

ongoing leak investigation and other counterterrorism investigations. Since the disclosure of this

identifying information would constitute a clearly unwarranted and an unwarranted invasion of

their personal privacy, the FBI has properly asserted Exemptions 6 and 7(C) to protect the names

and identifying information of individuals who are of investigative interest to the FBI.

### (U) (b)(6) & (b)(7)(C):  Names and/or Identifying Information Concerning Third Parties Interviewed

95.    **(U)**    Exemptions 6 and 7(C) have been asserted to protect the names and/or

identifying information of third-party individuals who provided information and cooperated with

the FBI in the course of the ongoing leak investigation as well as other counter-terrorism

investigations which have resulted from, or been enhanced by, information obtained as a result of the TSP program. These individuals provided information regarding their knowledge of potential criminal and/or terrorism activities.

96.    **REDACTED**

97.    **(U)**    Information provided by individuals during an interview is one of the most productive investigative tools utilized by law enforcement agencies. The largest roadblock in successfully obtaining the desired information through an interview is the fear of the interviewee that his or her identity will possibly be publicly exposed and consequently, being harassed, intimidated or threatened with legal or economic reprisal, or possible physical harm. In order to surmount these obstacles, persons being interviewed must be assured that their identities will be held in the strictest confidence by the FBI. The continued access to individuals who are willing to honestly provide relevant information to further a particular investigation outweighs any benefits derived from releasing the identities of these individuals. To release the names and identifying information of these individuals who cooperated with the FBI would not only constitute a clearly unwarranted and an unwarranted invasion of their personal privacy, but could also subject them to harassment, embarrassment, intimidation, or result in undue public attention. Therefore, the FBI determined that the disclosure of their identities could reasonably be expected to constitute a clearly unwarranted and an unwarranted invasion of their personal privacy.

98.    **(U)**    After identifying the substantial privacy interests of these individuals, the FBI balanced their privacy interests against the public interest in disclosure. The FBI could not identify any legitimate public interest in the release of this identifying information since it would not shed any light on the operations and activities of the FBI during the course of the ongoing leak investigation and other counterterrorism investigations. Since the disclosure of this identifying

information would constitute a clearly unwarranted and an unwarranted invasion of their personal privacy, the FBI has properly asserted Exemptions 6 and 7(C) to protect the names and/or identifying information of individuals who provided information and cooperated with the FBI.

### (U) (b)(6) & (b)(7)(C)  Names and/or Identifying Information Concerning Third Parties Merely Mentioned in FBI Records

99.    **(U)**    Exemptions 6 and 7(C) have been asserted to protect the names and/or identifying information of third-party individuals who are only incidentally mentioned in these FBI records.  The FBI obtains information concerning third parties in the course of its investigations, even though these individuals are not of investigative interest to the FBI.  These third parties maintain legitimate privacy interests in not having their names and identifying information disclosed.  Disclosure of their identities could cause unsolicited and unnecessary attention to be focused on these individuals and/or their family members.  The mere mention of their names in the context of these FBI criminal and counterterrorism investigations could cast them in an unfavorable or negative light if released to the public.  Disclosure of the identities of these individuals could subject them to embarrassment and harassment as well as undue public attention.  Being linked with any law enforcement investigation, even in an incidental manner, carries a strong negative connotation, which is especially acute in the leak investigation inasmuch as the public revelation of the TSP has potentially damaged the national security of the United States.  The personal privacy of these individuals of investigative interest to the FBI would be severely infringed upon if their identities were released in the context of this ongoing criminal investigation or other counterterrorism investigations which have resulted from, or been enhanced by, information obtained as a result of the TSP program.

100.    **(U)**    After identifying the substantial privacy interests of these individuals, the

UNCLASSIFIED

FBI balanced their privacy interests against the public interest in disclosure. The FBI could not identify any legitimate public interest in the release of this identifying information since it would not shed any light on the operations and activities of the FBI during the course of the ongoing leak investigation and other counterterrorism investigations. Since the disclosure of this identifying information would constitute a clearly unwarranted and an unwarranted invasion of their personal privacy, the FBI has properly asserted Exemptions 6 and 7(C) to protect the names and identifying information of individuals who are merely mentioned.

### (U) **FOIA EXEMPTION 7: EXEMPTION 7 THRESHOLD**

101.    **(U)**    Exemption 7 of the FOIA protects from mandatory disclosure records or information compiled for law enforcement purposes, but only to the extent that disclosure could reasonably be expected to cause one of the harms enumerated in one of the sub-parts of the exemption. See 5 U.S.C. § 552 (b)(7). In this case, the harms that could reasonably be expected to result from disclosure concern interference with ongoing enforcement proceedings, unwarranted invasion of privacy, identities of and information provided by confidential sources, and highly sensitive law enforcement techniques.

102.    **REDACTED**

103.    **(U)**    All of the documents at issue here fall squarely within the law enforcement duties of the FBI, and therefore readily meet the threshold requirement of Exemption 7. The remaining inquiries are whether their disclosure could reasonably be expected to interfere with ongoing law enforcement proceedings, would constitute an unwarranted invasion of personal privacy, would reveal confidential informants, and/or would reveal sensitive law enforcement techniques.

UNCLASSIFED

UNCLASSIFIED

## (U) EXEMPTION 7(A)
## PENDING LAW ENFORCEMENT INVESTIGATION

104.    **(U)**    5 S.C. § 552 (b)(7)(A) exempts from disclosure "records or information compiled for law enforcement purposes, but only to the extent that the production of such law enforcement records or information (A) could reasonably be expected to interfere with enforcement proceedings . . . ."

105.    **(U)**    Application of this exemption requires the existence of law enforcement records; a pending or prospective law enforcement proceeding; and a reasonable expectation that release of the information would interfere with the enforcement proceeding.  In applying this exemption to these documents, the FBI will group the documents into functional categories; will describe the categories; and will explain why release of each category would interfere with law enforcement proceedings.[24]

106.    **REDACTED**

107.    **REDACTED**

108.    **REDACTED**

### (U) Reasonable Expectation of Interference with Law Enforcement Proceedings

109.    **REDACTED**

110.    **REDACTED**

(a) **REDACTED**;

(b) **REDACTED**;

---

[24] **(U)** In addition to **FBI 2000**, which will be discussed in further detail below, the FBI has withheld information pursuant to Exemption 7(A) located in the following documents: **FBI  1, 29, 118, 119, 120, 123, 124, 130, 151, 152, 159, 163, 164, 166, 171,  178,  182, 183, 184, 186, 187,  211, 212,  224, 234, 236, 237, 242, 243, 245, 248, 249, 250, 260, 261, 263, 271,  304, and 316.  See Exhibit A.** These documents contain information the release of which "could reasonably be expected to interfere with enforcement proceedings," and the rationale for protecting these documents is similar to the rationale offered herein for the protection of the criminal media leak investigative file.

UNCLASSIFED

(c) **REDACTED**;

(d) **REDACTED**;

(e) **REDACTED**;[25]

(f) **REDACTED.**

### (U)  Law Enforcement Records

111.  **(U)**     The investigative media leak file contains material which is being withheld in full pursuant to Exemption 7(A), as well as Exemptions 1, 2, 3, 5 (DPP), (ACP) and (AWP), 6, 7(C), 7(D) and 7(E).  The FBI opened and presently maintains this law enforcement file pursuant to the Attorney General Guidelines.  The responsive documents in this file consist of the following types of documents:

(a) **(U)  Electronic Communications ("ECs"):**  The EC is a WordPerfect macro which has replaced the traditional correspondence, such as an Airtel and Memorandum, as the primary communication within the FBI.  The purpose of the EC is to communicate within the FBI in a consistent format which can be both uploaded into and downloaded from the FBI's Automated Case Support computer system for purposes of communication, distribution and retention of information.

(b) **(U) FD 302 Forms:**  The FD 302 is the primary form used within the FBI to document and record investigative information.  Although it is generally used to document and record information obtained from an interview of an individual, this form is also used to document and record other types of investigative information such as the positive and/or negative results of a search of documentary records, the results of a physical search of a business office, residence or automobile, or the service of Federal Grand Jury subpoenas.

(c) **(U) Investigative Notes:** These are handwritten notes by FBI SAs and which contain information similar in nature to the type of information contained in the FD 302 forms, i.e., information obtained from interviews, records searches or physical searches. The handwritten information contained in these Investigative Notes are then formalized in the format of FD 302 forms and the Investigative Notes are filed in a sub-file for purposes of record-keeping and retention of records.

(d) **REDACTED**

(e) **REDACTED**

(f) **REDACTED**

**(U)    Functional Categories of Responsive Documents**

112.    **(U)**    Each responsive document in the ongoing leak investigative file that is being withheld pursuant to Exemption 7(A) has been reviewed and categorized for the purpose of this declaration in terms of the information contained within the document. The information contained in these responsive documents is not mutually exclusive in terms of functional categorization. For example, a document such as an EC may serve several functional purposes and may contain multiple categories of information. An EC could therefore be included in multiple functional categories as could the information contained within the document. The responsive documents and evidentiary materials within the ongoing leak investigation file fall within one or more of the functional categories set out in the following paragraphs.

**(U) Evidentiary and/or Investigative Materials**

113.    **REDACTED**

(a)    **REDACTED**

---

[25]  **REDACTED**

(b)    **REDACTED**

### (U)  Administrative Materials

114.    **REDACTED**

115.    **REDACTED**

### (U) FOIA EXEMPTION 7(D): CONFIDENTIAL SOURCE INFORMATION[26]

116.    **(U)**    5 U.S.C. § 552 (b)(7)(D) exempts from disclosure:

> records or information compiled for law enforcement purposes, but only to the extent that the production of such law enforcement records or information . . . could reasonably be expected to disclose the identity of a confidential source, including a State, local or foreign agency or authority or any private institution which furnished information on a confidential basis, and, in the case of a record or information compiled by a criminal law enforcement agency conducting a lawful national security intelligence investigation, information furnished by a confidential source.

117.    **(U)**    Numerous confidential sources report to the FBI on a regular basis and are "informants" within the common meaning of the term.  These sources provide information under a variety of circumstances, including either an express or an implied assurance of confidentiality. Releasing the information provided by these sources may likely reveal a confidential source's identity.  The release of a source's identity would forever eliminate that source as a future means of obtaining information.  In addition, when the identity of one source is revealed, that revelation has a chilling effect on the activities and cooperation of other sources.  It is only with the understanding of complete confidentiality (whether express or implied), that the aid of such sources can be enlisted, and only through this confidence that these sources can be persuaded to continue providing valuable assistance in the future.  Thus, the information provided by, as well as the identities of these sources, has been protected pursuant to Exemption 7(D).

118.    **(U)**    Moreover, Exemption 7(D) has been asserted to protect information in the

---

[26]  **(U)**  The FBI has withheld information pursuant to Exemption 7(D) in the following documents: **FBI 1, 234, 236, 237, 249 and 2000.  See Exhibit A.**

UNCLASSIFIED

criminal media leak investigation as well as information in the five sub-files which contain serials responsive to plaintiffs' request. **FBI 2000.**

### (U) (b)(7)(D)    Names and/or Identifying Information Provided By Individuals Under an "Express" Assurance of Confidentiality

119.   **(U)**   Exemption 7(D) has been asserted to withhold the names, identifying data and information provided to the FBI by foreign law enforcement agencies under an "express" assurance of confidentiality. The FBI has many agreements with foreign governments under which national security and/or criminal law enforcement information is exchanged. The agreements specify the extent of confidentiality requested by the respective foreign authority. Where one agency could request confidentiality for its identity and information provided, another agency could request classification for both its identity and information provided, yet another agency may request that its information be protected while it does not object their relationship with the FBI being disclosed. In this case, the FBI has an agreement with foreign law enforcement agencies which expressly forbids dissemination of information it provides to the FBI. If the FBI were to disclose the information these foreign law enforcement agencies provided to the FBI under an express assurance of confidentiality, the disclosure would have a chilling effect on the FBI's relationship with these agencies. Furthermore, disclosure of the information these agencies provided would have a chilling effect on the FBI's relationship with other foreign law enforcement agencies which have entered into similar agreements with the FBI. Accordingly, the FBI properly withheld information which was provided by foreign law enforcement agencies under an express assurance of confidentiality.

120.   **REDACTED**

121.   **(U)**   Information provided by individuals and organizations who are sources or

UNCLASSIFED

during interviews are some of the most productive investigative tools used by law enforcement

agencies. The largest roadblock in successfully obtaining desired information through an

interview, for example, is fear by the interviewee of his or her identity possibly being exposed, and

consequently being harassed, intimated, or threatened with legal or economic reprisal, or possible

physical harm. In order to surmount these obstacles, persons interviewed must be assured that

information received from them will be held in the strictest confidence. The continued access to

sources who are willing to honestly relate pertinent facts bearing upon a particular investigation

outweighs any benefits derived from releasing the identities of these sources. As a result,

Exemption 7(D) has appropriately been asserted to withhold information provided by sources who

have been provided "express" assurances of confidentiality.

### (U) (b)(7)(D)    Names and/or Identifying Information Provided By Individuals Under an "Implied" Assurance of Confidentiality

122.    **REDACTED**

## (U)  EXEMPTION 7(E): INVESTIGATIVE TECHNIQUES AND PROCEDURES[27]

### REDACTED [HEADER]

123.  **REDACTED**

124.  **(U)** *Rationale for Withholding Information:*

    (a)  **REDACTED**

    (b)  **REDACTED**

    (c)  **REDACTED**

125.  **(U)**  Moreover, Exemption 7(E) has been asserted in conjunction with Exemption 2 (High) to protect information in the criminal media leak investigation as well as information in the five sub-files which contain serials responsive to plaintiffs' request.  **FBI 2000**.

### (U) DESCRIPTION OF CATEGORIES OF DOCUMENTS AND EXEMPTIONS

#### (U)  **Documents Concerning Relationship Between FBI and NSA**

126.  **REDACTED**

**(U) FBI 313, 314, and 316**
**FBI Interactions With NSA And**
**Requests For Information And Statistics**

127.  **(U)**  **FBI 313** is an undated Power Point presentation by CTD consisting of statistical information regarding the TSP.  **FBI 313** is withheld in its entirety under FOIA Exemptions 1, 3, 5 (DPP), 6 and 7(C).

128.  **REDACTED**

129.  **(U)**  **FBI 314** is an undated Power Point presentation by CTD consisting of statistical and investigative information regarding the TSP and its use in several FBI counterterrorism investigations and the staffing of FBI personnel who are responsible for the administration of the TSP.  **FBI 314** is withheld in its entirety under FOIA Exemptions 1, 3, 5

---

[27] **(U)** The FBI has withheld information pursuant to Exemption 7(E) in the following documents: **FBI 1, 15, 20, 25, 27-31, 34, 36, 37, 40, 44-46, 49, 52, 61-64, 67, 68, 70, 71, 73-77, 79, 80, 82, 84, 194, 223, 246 and 2000. See Exhibit**

(DPP), 6 and 7(C).

130. **REDACTED**

131. **(U)**    **FBI 316** consists of an undated overview, with an undated chart, consisting

of statistical and investigative information regarding the TSP and its use in several FBI

counterterrorism investigations. **FBI 316** is withheld in its entirety under FOIA Exemptions 1, 3, 6,

7(A) and 7(C).

132. **REDACTED**

**(U)** *Applicability of Exemptions 1 and 3*

133. **REDACTED**

134. **(U)**    Thus, for the reasons articulated earlier in the Exemptions 1 and 3

discussion, **FBI 313, 314 and 316** are exempt from disclosure in their entireties pursuant to

Exemptions 1 and 3.

**(U)** *Applicability of Exemption 5*

135. **(U)**    The substance of **FBI 313** and **314** is both pre-decisional and deliberative

and is protected by Exemption 5. The documents reflect the thinking of individuals, rather than

adopted policy of the FBI. All of the withheld material reflects a fluid, continuous and on-going

deliberative set of discussions among decision makers and contributors to the TSP dialogue, and

the role the FBI and other federal agencies play in this significant national security initiative. The

release of the redacted information is likely to chill full, frank, and open internal discussions -- a

chilling effect which is all the more dangerous given the important national security interests at

stake. For the foregoing reasons, as well as the reasons articulated earlier in the Exemption 5(DPP)

discussion, I have determined that the withheld material in **FBI 313 and FBI 314** is deliberative

A.

and has been withheld appropriately pursuant to Exemption 5.

**(U)** *Applicability of Exemptions 6 and 7(C)*

136.    **(U)**    **FBI 313, 314 and 316** contain names and/or identifying information of FBI SAs and support personnel, other federal government employees, third parties of investigative interest, third parties interviewed, and third parties merely mentioned, which have been withheld appropriately pursuant to Exemptions 6 and 7(C). For the reasons articulated earlier in the Exemptions 6 and 7(C) discussion, there is a strong privacy interest in protecting the identities of these individuals whose names and identifying information appear in these documents. Disclosure of such information would constitute both a clearly unwarranted and an unwarranted invasion of their personal privacy. There is no public interest to be served by disclosing this type of information to the public and release of this information will not shed light on the operations and activities of the FBI. Thus, Exemptions 6 and 7(C) have been appropriately asserted to protect the names and/or identifying information of FBI SAs and FBI support personnel, other federal government employees, third parties of investigative interest, third parties interviewed, and third parties merely mentioned.

**(U)** *Applicability of Exemption 7(A)*

137.    **(U)**    Finally, **FBI 316** is also withheld on the basis of Exemption 7(A), as it contains specific examples of how TSP-derived information has helped in terrorist investigations, leads, statistics per year, etc. and discusses ongoing, active law enforcement. For the reasons articulated earlier in the Exemption 7(A) discussion, if this information were to be released there is a reasonable expectation of interference with pending law enforcement, and as a result, the information has been appropriately withheld pursuant to Exemption 7(A).

- 45 -

**REDACTED [HEADER]**

138.    **(U)**    **FBI 15** is an internal e-mail trail with attached Memorandum from the FBI
GC and former FBI DGC to the former AAG for OLC and the former Counsel for Intelligence
Policy with handwritten notation. **FBI 25** and **FBI 92** are drafts of the same Memorandum
contained in **FBI 15**. **FBI 15, 25 and 92** are withheld in their entireties under FOIA Exemptions 1,
2 (High), 3, 5(DPP), 5(ACC), 5(AWP), and 7(E).

139.    **REDACTED**

140.    **(U)**    **FBI 20** is an e-mail among CTD and OGC employees regarding policies
and procedures associated with the TSP program in counterterrorism investigations. **FBI 20** is
withheld in full under FOIA Exemptions 1, 2 (High), 3, 5(DPP), 6, 7(C), and 7(E).

141.    **REDACTED**

142.    **(U)**    **FBI 123** is an e-mail trail dated January 18, 2006, among CTD employees
concerning TSP information regarding two FBI counterterrorism investigations and information
concerning the documented processes, protocols and procedures concerning the use of TSP
information. **FBI 123** is withheld in its entirety under FOIA Exemptions 1, 2 (Low), 3, 5 (DPP), 6,
7(A) and 7(C).

143.    **REDACTED**

144.    **(U)**    **FBI 140** is an e-mail dated January 9, 2006, among CTD employees
concerning recommendations for possible inclusion in a draft EC regarding guidance and
procedures for FBI field offices in covering investigative leads generated by TSP information.
**FBI 140** is withheld in its entirety under FOIA Exemptions 1, 3, 5 (DPP), 6, and 7(C).

145.    **REDACTED**

146.   **(U)**   **FBI 142** is an e-mail trail dated January 10, 2006, among CTD employees concerning recommendations for possible inclusion in a draft EC regarding guidance and procedures for FBI field offices in covering investigative leads generated by TSP information. **FBI 140** is withheld in its entirety under FOIA Exemptions 1, 2 (Low), 3, 5 (DPP), 6, and 7(C).

147.   **REDACTED**

148.   **(U)**   **FBI 158** is an e-mail trail dated January 18, 2006, among two CTD employees concerning recommendations for possible inclusion in a draft EC regarding guidance and procedures for FBI field offices in covering investigative leads generated by TSP information with an attached EC from CTD to all FBI field offices dated October 6, 2004, which provides such guidance and procedures in covering investigative leads generated by TSP information. **FBI 158** is withheld in its entirety under FOIA Exemptions 1, 2 (Low), 3, 5 (DPP), 6 and 7(C).

149.   **REDACTED**

150.   **(U)**   **FBI 165** is an e-mail dated January 19, 2006, among CTD employees concerning recent discussions between FBI and NSA employees concerning certain procedures concerning the TSP and successful uses of TSP information in FBI counterterrorism investigations. **FBI 165** is withheld in its entirety under FOIA Exemptions 1, 3, 5 (DPP), 6, and 7(C).

151.   **REDACTED**

152.   **(U)**   **FBI 166** is an e-mail trail dated January 23, 2006, among CTD employees concerning a query and proposed informational response regarding the TSP and its use in FBI counterterrorism investigations. **FBI 166** is withheld in its entirety under FOIA Exemptions 1, 2 (Low), 3, 5 (DPP), 6, 7(A) and 7(C).

153.   **REDACTED**

154.   **(U)**   **FBI 170** is an e-mail trail dated January 30, 2006, among CTD employees

UNCLASSIFIED

concerning the use of TSP information in a specific FBI counterterrorism investigation.  **FBI 170** is withheld in its entirety under FOIA Exemptions 1, 2 (Low), 3, 5 (DPP), 6, and 7(C).

155.    **REDACTED**

156.    **(U)**    **FBI 172** are typed notes of a meeting dated November 22, 2004, between CTD and NSA employees regarding current issues concerning the TSP and recommendations for improvements in the procedures for the use of TSP information in FBI counterterrorism investigations.  **FBI 172** is withheld in its entirety under FOIA Exemptions 1, 3, 5 (DPP), 6, and 7(C).

157.    **REDACTED**

158.    **(U)**    **FBI 304** is an EC dated January 6, 2003, from CTD to all FBIHQ Divisions, all FBI Legats and all FBI Field Offices concerning the mission of the CTD and a description of the support can provide these FBI entities, including the process and procedures for utilizing TSP information in FBI counterterrorism investigations.  **FBI 304** is withheld in its entirety under FOIA Exemptions 1, 3, 6, 7(A) and 7(C).

159.    **REDACTED**

160.    **(U)**    **FBI 305** is an EC dated October 6, 2004, from CTD to all FBI Field Offices providing guidance in addressing investigative leads generated by the TSP in FBI counterterrorism investigations.  **FBI 305** is withheld in its entirety under FOIA Exemptions 1, 2 (Low), 6 and 7(C).

161.    **REDACTED**

162.    **(U)**    **FBI 318** is an e-mail trail dated January 23, 2006, among CTD employees concerning certain procedures in the use of the TSP in FBI counterterrorism investigations.  **FBI 318** is withheld in its entirety under FOIA Exemptions 1, 3 and 5 (DPP).

163.    **REDACTED**

UNCLASSIFED

**(U)** *Applicability of Exemptions 1 and 3*

164.    **REDACTED**

165.    **(U)**    Thus, for the reasons articulated earlier in the Exemptions 1 and 3

discussion, **FBI 15, 20, 25, 92, 123, 140, 142, 158, 165, 166, 172, 304, 305 and 318** are exempt

from disclosure in their entireties pursuant to Exemptions 1 and 3.

**(U)** *Applicability of Exemption 2(Low)*

166.    **(U)**    Portions of **FBI 123, 142, 158, 166, 170, 305 and 318** have been withheld

pursuant to Exemption 2(Low), in conjunction with Exemptions 6 and 7(C), to protect the business

telephone numbers, fax and pager numbers appearing in documents as they relate to FBI Special

Agents, FBI support employees, and other federal government personnel.  For the reasons

articulated earlier in the Exemption 2(Low) discussion, because this internal information is related

solely to the internal practices of the FBI and other federal government agencies, because

disclosure would not serve any public interest, and because disclosure would impede the

effectiveness of government personnel, this information has been properly withheld pursuant to

Exemption 2(Low).

**(U)** *Applicability of Exemptions 2(High) and 7(E)*

167.    **REDACTED**

**(U)** *Applicability of Exemption 5(DPP)*

168.    **REDACTED**

**(U)** *Applicability of Exemption 5(ACC)*

169.    **REDACTED**

**(U)** *Applicability of Exemption 5(AWP)*

170.    **REDACTED**

**(U)** *Applicability of Exemption 7(A)*

171.    **(U)**    **FBI 123 is** also withheld on the basis of Exemption 7(A) as it contains

specific examples of how TSP-derived information has helped in terrorist investigations, leads,

statistics per year, etc. and discusses ongoing, active law enforcement. For the reasons articulated

earlier in the Exemption 7(A) discussion, if this information were to be released there is a

reasonable expectation of interference with pending law enforcement, and as a result, the

information has been appropriately withheld pursuant to Exemption 7(A).

**(U)** *Applicability of Exemptions 6 and 7(C)*

172.    **(U)**    Finally, **FBI 20, 123, 140, 142, 158, 165, 166, 170, 172, 304, 305 and 318**

contain names and/or identifying information of FBI SAs and support personnel, other federal

government employees, third parties of investigative interest, third parties interviewed, and third

parties merely mentioned, which have been withheld appropriately pursuant to Exemptions 6 and

7(C). Based on the reasons articulated earlier in the Exemptions 6 and 7(C) discussion, there is a

strong privacy interest in protecting the identities of these individuals  whose names and

identifying information appear in these documents. Disclosure of such information would

constitute both a clearly unwarranted and an unwarranted invasion of their personal privacy.

There is no public interest to be served by disclosing this type of information to the public and

release of this information will not shed light on the operations and activities of the FBI. Thus,

Exemptions 6 and 7(C) have been appropriately asserted to protect the names and/or identifying

information of FBI SAs and FBI support personnel, other federal government employees, third

parties of investigative interest, third parties interviewed, and third parties merely mentioned.

UNCLASSIFIED

**REDACTED [HEADER]**

173.    **(U)**    **FBI 114** is an e-mail dated December 12, 2005 among CTD employees concerning an attached Position Description for the FBI personnel who are involved with the TSP. The attached Position Description provides both general and specific descriptions of the duties and responsibilities of the personnel assigned to handle the TSP.  **FBI 114** is withheld in its entirety under FOIA Exemptions 1, 3, 6 and 7(C).

174.    **REDACTED**

175.    **(U)**    **FBI 133** is an e-mail dated October 17, 2005 among two CTD employees concerning recommendations regarding the staffing of FBI personnel at NSA and suggested improvements to the processes and procedures for the use of TSP information in FBI counterterrorism investigations.  **FBI 133** is withheld in its entirety under FOIA Exemptions 1, 3, 5(DPP), 6, and 7(C).

176.    **REDACTED**

177.    **(U)**    **FBI 134** is an e-mail trail dated October 17 and 18, 2005, between CTD employees concerning proposals regarding the staffing of FBI personnel who are involved with the TSP.  **FBI 134** is withheld in its entirety under FOIA Exemptions 1, 2(Low), 3, 5 (DPP), 6 and 7(C).

178.    **REDACTED**

179.    **(U)**    **FBI 171** is an e-mail trail dated February 13, 2006, among CTD employees containing a discussion of certain issues regarding the FBI's participation in the TSP.  **FBI 171** is withheld in its entirety under FOIA Exemptions 1, 2(Low), 3, 5 (DPP), 6, 7(A) and 7(C).

180.    **REDACTED**

181.    **(U)**    **FBI 177** is an undated draft of position descriptions for certain CTD/CAU

UNCLASSIFIED

personnel whose positions entail working with TSP information in accordance with the established FBI procedures concerning the TSP. **FBI 177** is withheld in its entirety under FOIA Exemptions 1, 3, 6 and 7(C).

182.    **REDACTED**

183.    **(U)**    **FBI 239** is an e-mail dated December 16, 2005, from a CTD employee to the GC of the FBI regarding the staffing of FBI personnel who are involved with the TSP. **FBI 239** is withheld in its entirety under FOIA Exemptions 1, 3, 5(DPP), 5(ACC), 6 and 7(C).

184.    **REDACTED**

**(U)** *Applicability of Exemptions 1 and 3*

185.    **REDACTED**

186.    **(U)**    Thus, for the reasons articulated earlier in the Exemptions 1 and 3 discussion, **FBI 114, 133, 134, 171, 177 and 239** are exempt from disclosure in their entireties pursuant to Exemptions 1 and 3.

**(U)**    *Applicability of Exemption 2 (Low)*

187.    **(U)**    Portions of **FBI 134 and 171** have been withheld pursuant to Exemption 2 (Low), in conjunction with Exemptions 6 and 7(C) to protect the business telephone numbers, fax and pager numbers appearing in documents as they relate to FBI Special Agents, FBI support employees, and other federal government personnel. For the reasons articulated earlier in the Exemption 2 (Low) discussion, because this internal information is related solely to the internal practices of the FBI and other federal government agencies, because disclosure would not serve any public interest, and because disclosure would impede the effectiveness of government personnel, this information has been properly withheld pursuant to Exemption 2 (Low).

(U) *Applicability of Exemption 5(DPP)*

188.   **REDACTED**

(U) *Applicability of Exemption 5(ACC)*

189.   **REDACTED**

(U) *Applicability of Exemption 7(A)*

190.   **(U)**      **FBI 171** is also withheld on the basis of Exemption 7(A), as it contains

specific examples of how TSP-derived information has helped in terrorist investigations, leads,

statistics per year, etc. and discusses ongoing, active law enforcement.  For the reasons articulated

earlier in the Exemption 7(A) discussion, if this information were to be released there is a

reasonable expectation of interference with pending law enforcement, and as a result, the

information has been appropriately withheld pursuant to Exemption 7(A).

(U) *Applicability of Exemptions 6 and 7(C)*

191.   **(U)**      Finally, **FBI 114, 133, 134, 171, 177 and 239** contain names and/or

identifying information of FBI SAs and support personnel, other federal government employees,

third parties of investigative interest, third parties interviewed, and third parties merely mentioned,

which have been withheld appropriately pursuant to Exemptions 6 and 7(C).  For the reasons

articulated earlier in the Exemptions 6 and 7(C) discussion, there is a strong privacy interest in

protecting the identities of these individuals whose names and identifying information appear in

these documents.  Disclosure of such information would constitute both a clearly unwarranted and

an unwarranted invasion of their personal privacy.  There is no public interest to be served by

disclosing this type of information to the public and release of this information will not shed light

on the operations and activities of the FBI.  Thus, Exemptions 6 and 7(C) have been appropriately

asserted to protect the names and/or identifying information of FBI SAs and FBI support personnel,

other federal government employees, third parties of investigative interest, third parties interviewed, and third parties merely mentioned.

## REDACTED [HEADER]

192.  **REDACTED**

## REDACTED [HEADER]

193.  **(U)**    **FBI 1** is a briefing book dated January 23, 2006, prepared by CTD for the FBI Director and several other high-level FBI executives regarding the overview of the TSP and how it relates to the FBI. **FBI 1** is withheld in its entirety under FOIA Exemptions 1, 2 (High), 3, 5(DPP), 6, 7(A), 7(C), 7(D), and 7(E).

194.  **REDACTED**

195.  **(U)**    **FBI 8** consists of an internal FBI Routing Slip dated December 16, 2005, from the GC to the FBI Director, forwarding an undated internal memorandum which contains a discussion of operational details and statistics related to the use and reliance on the TSP by the FBI, as well as policies and practices. **FBI 8** is withheld in its entirety under Exemptions 1, 2(Low), 3, 5 (DPP), 5(ACC) and 7(E).

196.  **REDACTED**

197.  **(U)**    **FBI 36** is an undated flowchart which originated with the NSA. The FBI equities in **FBI 36** are withheld in full and under FOIA Exemptions 1, 2 (High), 3, 5(ACC), 6, 7(C) and 7(E).

198.  **REDACTED**

199.  **(U)**    **FBI 37** is an excerpt from an undated Power Point Presentation which originated with the NSA. The FBI equities in **FBI 37** are withheld in full and under FOIA Exemptions 1, 2 (High), 3 and 7(E).

200.   **REDACTED**

201.   **(U)**   **FBI 40** is an undated document describing the FBI's participation in TSP.

**FBI 40** is withheld in full under FOIA Exemptions 1, 2 (High) and 7(E).

202.   **REDACTED**

203.   **(U)**   **FBI 41** is a package of four documents concerning the TSP and

participation in the TSP and other issues regarding FBI counterterrorism investigations, dated

March 9, 2004, which were obtained from the working files of the GC. **FBI 41** is withheld in its

entirety under FOIA Exemptions 1, 3 and 5(DPP).

204.   **REDACTED**

205.   **(U)**   **FBI 44 is** an e-mail dated March 20, 2004 between the FBI GC and the

Director concerning issues related to the TSP program. **FBI 44** has been withheld in its entirety

under Exemptions 1, 2(High), 3, 5(ACC), 6, 7(C) and 7(E).

206.   **REDACTED**

207.   **(U)**   **FBI 68, 71, 73, 74 and 75** are a collection of e-mails dated January 19, 30,

and 31, 2006 between the GC and a senior attorney in the Director's Office and attached draft Qs

& As. **FBI 68, 70 and 71 are** withheld in their entireties under FOIA Exemptions 1, 2 (High), 3,

5(DPP), 5(ACC), 6, 7(C) and 7(E).

208.   **REDACTED**

209.   **(U)**   **FBI 76 and 77** are undated drafts of chronologies related to the TSP. **FBI**

**76 and 77** are withheld in their entireties under FOIA Exemptions 1, 2 (High), 3, 5(DPP), 5(ACC),

6, 7(C) and 7(E).

210.   **REDACTED**

211.   **(U)**   **FBI 79** is a draft memorandum dated January 27, 2006, from a senior

attorney in the Director's Office to the FBI Director concerning public speeches regarding the TSP

by the AG, General Hayden of the NSA and the President of the United States and other

developments regarding the TSP. **FBI 79** is withheld in its entirety under Exemptions 2(High),

5(DPP), 5(ACC), 6, 7(C) and 7(E).

213.    **REDACTED**

214.    **(U)**    **FBI 128** is an e-mail dated January 25, 2006, among CTD employees

regarding specific statistical and investigative information concerning the FBI's participation

within the TSP, in response to a request by the CTD AD in prior telephone conversations. **FBI 128**

is withheld in its entirety under FOIA Exemptions 1, 3, 5 (DPP), 6 and 7(C).

215.    **REDACTED**

216.    **(U)**    **FBI 139** is an e-mail trail dated January 9, 2006, with an attached chart,

among CTD employees regarding the collection of certain statistical and investigative information

concerning the TSP. This information is being collected by the CTD employees responsible for

the administration of the TSP in response to current and anticipated requests for such information

from the Director's Office. The attached chart is a blank template for use in the collection of this

statistical and investigative information for the years of 2002 through 2005. **FBI 139** is withheld

in its entirety under FOIA Exemptions 1, 2(Low), 3, 5 (DPP), 6 and 7(C).

217.    **REDACTED**

218.    **(U)**    **FBI 175** is an undated internal memorandum concerning certain aspects

and procedures of the FBI's participation in the TSP and the use of TSP information in FBI

counterterrorism investigations. **FBI 175** is withheld in its entirety under FOIA Exemptions 1

and 3.

219.    **REDACTED**

220.    **(U)**    **FBI 178** is an undated internal memorandum concerning certain aspects and procedures of the FBI's participation in the TSP and the use of TSP information in certain FBI counterterrorism investigations. **FBI 178** is withheld in its entirety under FOIA Exemptions 1 and 3.

221.    **REDACTED**

223.    **(U)**    **FBI 186, 187 and 188** is a collection of e-mails dated January 23 and 24, 2006, among CTD employees concerning recommendations, suggestions and issues concerning the FBI's participation in the TSP for possible inclusion in a briefing book for review by FBI executive personnel, including the procedures for the use of TSP information in FBI counterterrorism investigations. **FBI 186, 187 and 188** are withheld in their entireties under FOIA Exemptions 1, 3, 5 (DPP), 6, 7(A) and 7(C).

224.    **REDACTED**

225.    **(U)**    **FBI 190, 191, 192, 193 and 194** are a collection of undated draft CTD memoranda concerning TSP information for possible inclusion in a briefing book for review by FBI executive personnel. **FBI 190, 191, 192, 193 and 194** are withheld in their entireties under Exemptions 1, 2(Low), 2(High), 3, 5(DPP), 6, 7(C) and 7(E).

226.    **REDACTED**

227.    **(U)**    **FBI 211, 212, 220, 221, 223, 224, 234, 236 and 237** are a collection of e-mails dated between January 23, 2006, and February 14, 2006, among CTD employees concerning recommendations, suggestions and issues concerning the FBI's participation in the TSP for possible inclusion in a briefing book for review by FBI executive personnel. **FBI 211, 212, 220, 221, 223, 224, 234, 236 and 237** are withheld in their entireties under Exemptions 1, 2(High), 3, 5 (DPP), 6, 7(A), 7(C) and 7(E).

228.  **REDACTED**

229.  **(U)**    **FBI 243, 244 and 245** is a collection of e-mails among OGC and CTD employees and executives concerning a proposed briefing regarding the TSP by General Hayden of the NSA to key members of Congress. **FBI 243, 244 and 245** are withheld in its entirety under FOIA Exemptions 1, 2 (Low), 3, 5(DPP), 5(ACC), 6, 7(A) and 7(C).

230.  **REDACTED**

231.  **(U)**    **FBI 246 and 276** are e-mails between the GC and a senior attorney in the Director's Office concerning an attached draft chronology of significant events regarding the legality of the TSP. FBI 246 and 276 are withheld in their entireties under Exemptions 1, 2(High), 3, 5(DPP), 5(ACC), 6, 7(C) and 7(E).

232.  **REDACTED**

233.  **(U)**    **FBI 281, 283 and 300** are each a one-page e-mail trail dated February 1, 2006, between GC Valerie Caproni and a senior attorney in the Director's Office concerning two questions and answers by AG Alberto Gonzales in a press briefing regarding the TSP on December 15, 2005. All information contained in **FBI 281, 283 and 300** has been released to plaintiffs with the exception of the names of the senior attorney in the Director's Office and another FBI employee, which are withheld under Exemptions 6 and 7(C).

234.  **(U)**    **FBI 296 and 297** are a one-page and two-page, respectively, e-mails both dated February 7, 2006, between GC Valerie Caproni and former Deputy General Counsel Marion Bowman concerning a letter from a former attorney of DOJ, who is now in private practice, that delineates his rationale for the legality of the TSP. All information contained in **FBI 296 and 297** has been released to plaintiffs with the exception of the name of an FBI employee, which is withheld under Exemptions 6 and 7(C).

235.  **(U)**  **FBI 301** is an internal memorandum, dated November 19, 2002, from the CTD Assistant Director to the FBI Director concerning certain issues and proposals regarding the TSP as well as a summary of information concerning the FBI's participation in the TSP.  **FBI 301** is withheld in its entirety under FOIA Exemptions 1, 3, and 5 (DPP).

236.  **REDACTED**

237.  **(U)**  **FBI 302** is an internal memorandum, dated January 23, 2003, from the CTD Assistant Director to the FBI Director concerning certain issues and proposals regarding the FBI's participation in the TSP and the staffing of FBI personnel who are involved with the TSP. Attached to this document are two Routing Slips containing the names of several FBI employees and a copy of **FBI 301**.  **FBI 302** is withheld in its entirety under FOIA Exemptions 1, 3, 5 (DPP), 6 and 7(C).

238.  **REDACTED**

239.  **(U)**  **FBI 303** is an internal memorandum, dated February 20, 2003, from the AD for CTD to the Director concerning the staffing of FBI personnel who are involved with the TSP as well as a background and summary of investigative information concerning the use of the TSP in a specific FBI counterterrorism investigation.  **FBI 303** is withheld in its entirety under FOIA Exemptions 1, 3, 5 (DPP), 6 and 7(C).

240.  **REDACTED**

241.  **(U)**  **FBI 319** is a draft document containing questions and proposed answers regarding the TSP and, in part, the FBI's participation in the TSP which were received from Senator Jay Rockefeller of the Senate Select Committee on Intelligence ("SSCI").  **FBI 319** is withheld in its entirety under FOIA Exemptions 1, 3, and 5 (DPP).

242.  **REDACTED**

**(U)** *Applicability of Exemptions 1 and 3*

243.    **REDACTED**

244.    **(U)**    Thus, for the reasons articulated earlier in the Exemptions 1 and 3

discussion, **FBI 1, 8, 40, 41, 44, 68, 71, 73-77, 128, 139, 175, 178, 186-188, 190-194, 211, 212,**

**220, 221, 223, 224, 234, 236, 243-246, 276, 301-303 and 319** are exempt from disclosure in their

entireties pursuant to Exemptions 1 and 3.

**(U)** *Applicability of Exemption 2 (Low)*

245.    **(U)**    Portions of **FBI 8, 139, 194, 224, 236, 237 and 243-245** have been

withheld pursuant to Exemption 2 (Low), in conjunction with Exemptions 6 and 7(C) to protect the

business telephone numbers, fax and pager numbers appearing in documents as they relate to FBI

Special Agents, FBI support employees, and other federal government personnel.  For the reasons

articulated earlier in the Exemption 2 (Low) discussion, because this internal information is related

solely to the internal practices of the FBI and other federal government agencies, because

disclosure would not serve any public interest, and because disclosure would impede the

effectiveness of government personnel, this information has been properly withheld pursuant to

Exemption 2 (Low).

**(U)**    *Applicability of Exemptions 2(High) and 7(E)*

246.    **REDACTED**

**(U)** *Applicability of Exemption 5(DPP)*

247.    **REDACTED**

**(U)** *Applicability of Exemption 5(ACC)*

248.    **REDACTED**

- 60 -

**(U)** *Applicability of Exemptions 6 and 7(C)*

249.    **(U)**    **FBI 1, 36, 44, 68, 71, 73-77, 79, 128, 139, 178, 186-188, 193, 211, 212, 220, 221, 223, 224, 234, 236, 237, 243-246, 276, 293, 296, 297, 300, 302 and 303** contain names and/or identifying information of FBI SAs and support personnel, other federal government employees, third parties of investigative interest, third parties interviewed, and third parties merely mentioned, which have been withheld appropriately pursuant to Exemptions 6 and 7(C). For the reasons articulated earlier in the Exemptions 6 and 7(C) discussion, there is a strong privacy interest in protecting the identities of these individuals whose names and identifying information appear in these documents. Disclosure of such information would constitute both a clearly unwarranted and an unwarranted invasion of their personal privacy. There is no public interest to be served by disclosing this type of information to the public and release of this information will not shed light on the operations and activities of the FBI. Thus, Exemptions 6 and 7(C) have been appropriately asserted to protect the names and/or identifying information of FBI SAs and FBI support personnel, other federal government employees, third parties of investigative interest, third parties interviewed, and third parties merely mentioned.

**(U)** *Applicability of Exemption 7(A)*

250.    **(U)**    **FBI 1, 178, 186, 187, 211, 212, 224, 234, 236, 237, 243 and 245** are also withheld on the basis of Exemption 7(A), as these documents contain specific examples of how TSP-derived information has helped in terrorist investigations, leads, statistics per year, etc. and discusses ongoing, active law enforcement. For the reasons articulated earlier in the Exemption 7(A) discussion, if this information were to be released there is a reasonable expectation of interference with pending law enforcement, and as a result, the information has been appropriately withheld pursuant to Exemption 7(A).

(U) *Applicability of Exemption 7(D)(Express)*

251.    **(U)**    Exemption 7(D) has been asserted to withhold the names, identifying data

and information provided to the FBI by third parties and foreign law enforcement agencies under

an "express" assurance of confidentiality in **FBI 1, 234, 236 and 237**.  During the course of

intelligence gathering by various Intelligence Community partners, individuals, organizations and

foreign governments provide information to the FBI relating to particular investigative matters.

These sources provide information with an assurance of confidentiality made "express" through

various means, including specific grants of "express" assurances of confidentiality and agreements

which expressly forbid dissemination of information.  If the FBI were to disclose this information

it obtained under an express assurance of confidentiality, the disclosure would have a chilling

effect on the FBI's relationship with these individuals, organizations and foreign agencies.  Based

on the reasons articulated earlier in the Exemption 7(D) (Express) discussion, the FBI has properly

asserted Exemption 7(D) for **FBI 1, 234, 236 and 237** to protect the names and/or identifying

information of those individuals, organizations, and/or foreign governments who have provided

information and have cooperated with the FBI under an express assurance of confidentiality.

(U) *Applicability of Exemption 7(D)(Implied)*

252.    **(U)**    Exemption 7(D) has also been asserted to withhold information in **FBI 1,

234, 236 and 237** which was provided by individuals or organizations under circumstances from

which an assurance of confidentiality may be implied.  Certain intelligence and other investigative

information passed on to the FBI in the course of its national security and criminal investigations

may be implicitly confidential.  This information, which is typically classified pursuant to E.O.

12958, as amended, is provided with the understanding that the identities of the sources of the

information will not be disclosed so that they or their families are not subjected to embarrassment,

humiliation, reprisal, or possible physical harm nor have a chilling effect on the activities and

cooperation of other current and future sources of information.  The FBI has not identified any

legitimate public interest in the release of the identities of these individuals.  For the reasons

articulated earlier in the Exemption 7(D) (Implied) discussion, the FBI has properly asserted

Exemption 7(D) for **FBI 1, 234, 236 and 237** to protect the names and/or identifying information

of these individuals who have provided information and have cooperated with the FBI under an

implied assurance of confidentiality.

## REDACTED [HEADING]

253.    **(U)**    This group of e-mails and associated documents, which I will describe in

more detail below, all reflect efforts by OGC and CTD to collect information regarding the

program in order to brief the Director on the "success stories" of the FBI's use of the TSP in

counterterrorism investigations and the FBI's role and responsibilities within the TSP.

254.    **(U)**    **FBI 29** is an internal document dated March 14, 2004 and is withheld in full

under Exemptions 1, 2 (High), 6, 7(A), 7(C), and 7(E).

255.    **REDACTED**

256.    **(U)**    **FBI 30** is an internal document also dated March 14, 2004, and is withheld

in full under Exemptions 1, 2 (High), 5(DPP) and 7(E).

257.    **REDACTED**

258.    **(U)**    **FBI 34** is an e-mail dated March 23, 2004 among FBI executives regarding

the FBI's involvement in TSP and is withheld in full under Exemptions 1, 2 (High), 3, 5(ACC), 6,

7(C) and 7(E).

259.    **REDACTED**

260.    **(U)**    **FBI 46** is an undated position document concerning the value and uses of

TSP information in FBI counterterrorism investigations and is withheld in its entirety under Exemptions 1, 2 (High), 3 and 7(E).

261.    **REDACTED**

262.    **(U)**    **FBI 49** is an undated draft document concerning the value and uses of TSP information in certain FBI counterterrorism investigations and investigative case summaries of the use of TSP information in these investigations.    **FBI 49** is withheld in its entirety under Exemptions 1, 2 (High), 5 (DPP), 6, 7(C) and 7(E).

263.    **REDACTED**

264.    **(U)**    **FBI 52** is an internal report by CTD dated February 26, 2002 and **FBI 78** is an undated draft document.    Both documents address the value and uses of TSP information in several FBI counterterrorism investigations, and also contain investigative case summaries of the use of TSP information in these investigations.    **FBI 52 and FBI 78** are withheld in their entireties under Exemptions 1, 2 (High), 6, 7(C) and 7(E).

265.    **REDACTED**

266.    **(U)**    **FBI 80** is a document dated January 9, 2002, concerning a briefing on that date and is withheld in its entirety under Exemptions 1, 2 (High), 3, 5 (DPP), 6, 7(C) and 7(E).

267.    **REDACTED**

268.    **(U)**    **FBI 82 and 84** are both e-mails dated December 4, 2003 among CTD employees and are withheld in their entireties under FOIA Exemptions 1, 2(High), 5(DPP), 6, 7(C) and 7(E).

269.    **REDACTED**

270.    **(U)**    **FBI 93** is an undated draft document concerning the value and uses of TSP information in certain FBI counterterrorism investigations and investigative case summaries of the

use of TSP information in these investigations. **FBI 93** is withheld in its entirety under Exemptions 1, 3, 5(DPP) and 5 (ACC).

271.   **REDACTED**

272.   **(U)**   **FBI 127** is an e-mail dated January 23, 2006, among CTD employees concerning potential questions and proposed responses regarding the FBI's participation in the TSP and its value and uses in FBI counterterrorism investigations in preparation for a visit to NSA by the President of the United States. **FBI 127** is withheld in its entirety under Exemptions 1, 5 (DPP), 6,and 7(C).

273.   **REDACTED**

274.   **(U)**   **FBI 130** is an undated CTD memorandum concerning several examples of the successful use of TSP information in FBI counterterrorism investigations from January through August of 2003 for possible inclusion in a briefing of the President of the United States. **FBI 130** is withheld in its entirety under Exemptions 1, 3, 5 (DPP), 6, 7(A) and 7(C).

275.   **REDACTED**

276.   **(U)**   **FBI 163 and FBI 164** are e-mail trails each dated January 19, 2006, among the GC, a senior attorney in the Director's Office and CTD employees concerning the successful use of TSP information in several FBI counterterrorism investigations. **FBI 163 and FBI 164** are withheld in their entireties under Exemptions 1, 2(Low), 3, 5(DPP), 5(ACC), 6, 7(A) and 7(C).

277.   **REDACTED**

278.   **(U)**   **FBI 167** is an e-mail dated January 23, 2006, among CTD employees concerning potential questions and proposed responses regarding the FBI's participation in the TSP and its value and uses in FBI counterterrorism investigations in preparation for a visit to NSA by the President of the United States. **FBI 167** is withheld in its entirety under FOIA Exemptions

1, 5 (DPP), 6, and 7(C).

279.    **REDACTED**

280.    **(U)**    **FBI 179** is an e-mail trail dated May 27, 2004, among CTD employees

concerning a 2004 meeting of the AG, Associate AGs Jack Goldsmith and Patrick Philbin of DOJ,

FBI Director Mueller, CIA Director George Tenet, Director of the NSA General Hayden, Director

of the Terrorist Threat Information Center ("TTIC") John Brennan and White House Counsel

Alberto Gonzales about issues regarding the TSP.  **FBI 179** is withheld in its entirety under FOIA

Exemptions 1, 5 (DPP), 6 and 7(C).

281.    **REDACTED**

282.    **(U)**    **FBI 184** is an e-mail trail dated January 19, 2006, among GC Caproni, a

senior attorney in the Director's Office and CTD employees concerning the successful use of TSP

information in several FBI counterterrorism investigations.  **FBI 184** is withheld in its entirety

under FOIA Exemptions 1, 2 (Low), 3, 5 (ACC and DPP), 6, 7(A) and 7(C).

283.    **REDACTED**

284.    **(U)**    **FBI 242** is an e-mail dated January 6, 2006, from a CTD employee to the

GC providing a EC regarding a FBI counterterrorism investigation and suggesting that two

specific FBI Sections in CTD are the primary beneficiaries of TSP information and would thus be

in best position to give a more accurate assessment to the GC of its usefulness.  **FBI 242** is

withheld in its entirety under Exemptions 1, 2(Low), 3, and 5(DPP), 5(ACC), 6 and 7(C).

285.    **REDACTED**

286.    **(U)**    **FBI 269, FBI 270 and FBI 271** are three related e-mails, all dated January

20, 2006, among the GC, FBI executives and CTD employees, which discuss the factual

underpinnings of certain FBI counterterrorism investigations in which TSP information was a

valuable factor in the success of these investigations. **FBI 269, FBI 270 and FBI 271** are withheld in their entireties under Exemptions 1, 3, 5(DPP), 5(ACC), 6, 7(A) and 7(C).

287.    **REDACTED**

288.    **(U)**    **FBI 274 and FBI 275** are related e-mails, both dated January 27, 2006, among the GC, DGC, the AD of the FBI's Directorate of Intelligence, the CTD AD and DAD, and CTD employees concerning certain statistical investigative information regarding the FBI's use of TSP information in counterterrorism investigations. **FBI 274 and FBI 275** are withheld in their entireties under Exemptions 1, 3 and 5 (DPP and ACC).

289.    **REDACTED**

**(U)** *Applicability of Exemptions 1 and 3*

290.    **REDACTED**

291.    **(U)**    Thus, for the reasons articulated earlier in the Exemptions 1 and 3 discussion, **FBI 29, 30, 34, 46, 49, 52, 80, 82, 84, 93, 127, 130, 163, 164, 167, 179, 184, 242, 269, 270, 271, 274 and 275** are exempt from disclosure in their entireties pursuant to Exemptions 1 and 3.

**(U)** *Applicability of Exemption 2 (Low)*

292.    **(U)**    Portions of **FBI 130, 163, 164, 167, 184 and 242** have been withheld pursuant to Exemption 2 (Low), in conjunction with Exemptions 6 and 7(C) to protect the business telephone numbers, fax and pager numbers appearing in documents as they relate to FBI Special Agents, FBI support employees, and other federal government personnel. For the reasons articulated earlier in the Exemption 2(Low) discussion, because this internal information is related solely to the internal practices of the FBI and other federal government agencies, because disclosure would not serve any public interest, and because disclosure would impede the

effectiveness of government personnel, this information has been properly withheld pursuant to

Exemption 2(Low).

**(U)** *Applicability of Exemptions 2(High) and 7(E)*

293. **REDACTED**

**(U)** *Applicability of Exemption 5(DPP)*

294. **REDACTED**

**(U)** *Applicability of Exemption 5(ACC)*

295. **REDACTED**

**(U)**    *Applicability of Exemption 5(AWP)*

296. **REDACTED**

**(U)** *Applicability of Exemptions 6 and 7(C)*

297.   **(U)**    **FBI 29, 34, 49, 52, 78, 80, 82, 84, 127, 130, 163, 164, 167, 179, 184, 242,**

**269, 271, 274 and 275** contain names and/or identifying information of FBI SAs and support

personnel, other federal government employees, third parties of investigative interest, third parties

interviewed, and third parties merely mentioned, which have been withheld appropriately pursuant

to Exemptions 6 and 7(C). For the reasons articulated earlier in the Exemptions 6 and 7(C)

discussion, there is a strong privacy interest in protecting the identities of these individuals whose

names and identifying information appear in these documents. Disclosure of such information

would constitute both a clearly unwarranted and an unwarranted invasion of their personal privacy.

There is no public interest to be served by disclosing this type of information to the public and

release of this information will not shed light on the operations and activities of the FBI. Thus,

Exemptions 6 and 7(C) have been appropriately asserted to protect the names and/or identifying

information of FBI SAs and FBI support personnel, other federal government employees, third

parties of investigative interest, third parties interviewed, and third parties merely mentioned.

**(U)** *Applicability of Exemption 7(A)*

298.    **(U)**    **FBI 29, 130, 163, 164, 184, 242 and 271** are also withheld on the basis of

Exemption 7(A), as they contain specific examples of how TSP-derived information has helped in

terrorist investigations, leads, statistics per year, etc. and discusses ongoing, active law

enforcement. For the reasons articulated earlier in the Exemption 7(A) discussion, if this

information were to be released there is a reasonable expectation of interference with pending law

enforcement, and as a result, the information has been appropriately withheld pursuant to

Exemption 7(A).

**(U)**    **FBI 62-64, 67, 70, 116-120, 124, 141, 143, 144, 146-152, 159, 182, 183,
248-250, 256-261, 263, 266, 273, 280, 284, 285, 292, 293, 309 and 322-340
Drafts And E-mails Regarding Preparation Of Talking Points,
Qs & As, For FBI Director**

299.    **(U)**    **FBI 62, 63, 64, 67** are a collection of e-mails and drafts designed to

circulate and discuss attached draft talking points for the Director concerning the FBI's

participation in the TSP. These documents have been withheld in their entireties under

Exemptions 1, 2 (High), 3, 5(DPP), 5(ACC), 6, 7(C) and 7(E).

300.    **REDACTED**

301.    **(U)**    **FBI 70** is an e-mail dated January 19, 2006, from the GC Caproni to a

senior attorney in the Director's Office, then EAD, AD for CTD and AD for OCA with an attached

undated draft of talking points for the Director concerning the FBI's participation in the TSP. **FBI

70** is withheld in its entirety under Exemptions 1, 2 (High), 3, 5(DPP), 5(ACC), 6, 7(C) and 7(E).

302.    **REDACTED**

303.    **(U)**    **FBI 116, 117, 146, 147, 148 and 149** are e-mail trails dated January 12,

2006, among CTD employees concerning their comments and recommendations regarding the
FBI's participation in the TSP and the value in FBI counterterrorism investigations, and the
collection of certain statistical and investigative information concerning the TSP for possible
inclusion in the Director's talking points regarding the TSP in anticipation of his testimony before
Congress. **FBI 116, 117, 146, 147, 148 and 149** are withheld in their entireties under Exemptions
1, 2(Low), 3, 5(DPP), 5(ACC), 6, and 7(C).

304. **REDACTED**

305. **(U)**    **FBI 118, 119, 120, 124, 150, 151, 152, 159, 182, 183, 248, 249, 250, 260,
261 and 263** are e-mail trails dated January 16-18, 2006, among the GC, the DGC, a senior
attorney in the Director's Office and CTD employees concerning their comments and
recommendations regarding proposed talking points for the FBI Director regarding the FBI's
participation in the TSP and the value and uses of TSP information in FBI counterterrorism
investigations. **FBI 118, 119, 120, 124, 150, 151, 152, 159, 182, 183, 248, 249, 250, 260, 261 and
263** are withheld in their entireties under Exemptions 1, 3, 5(DPP), 5(ACC), 6, 7(A) and 7(C).

306. **REDACTED**

307. **(U)**    **FBI 141, 143 and 144** are interrelated mail trails, dated January 10, 2006,
among the GC and CTD executives and CTD employees regarding a proposed briefing of key
members of Congress in connection with the TSP. **FBI 141, 143 and 144** are withheld in their
entireties under Exemptions 1, 2(Low), 3, 5(DPP), 5(ACC), 6 and 7(C).

308. **(U)**    More specifically, **FBI 141, 143 and 144** are interrelated three-page e-mail
trails, dated January 10, 2006, among the GC and CTD executives and employees regarding a
proposed briefing of key members of Congress by General Hayden of NSA concerning past and
current operations and investigations in which TSP information was utilized. General Hayden has

requested that the FBI review his proposed briefing regarding the TSP to ensure that no information is imparted to the key members of Congress which could conceivably have a negative impact on current and future FBI counterterrorism investigations which would utilize TSP information.

309.    **(U)**    **FBI 256, 257, 258, 259, 284 and 285** are e-mails among the GC, former DGC and a senior attorney in the Director's Office concerning questions and answers regarding the FBI's participation in the TSP.    **FBI 256, 257, 258, 259, 284 and 285** are withheld in their entireties under Exemptions 1, 5(DPP), 5(ACC), 6, 7(A) and 7(C).

310.    **REDACTED**

311.    **(U)**    **FBI 266, 280, 292 and 293** are e-mail trails between the GC and a senior attorney in the Director's Office concerning an attached draft of questions and answers regarding the legality of the TSP and the FBI's participation in the TSP.  **FBI 266, 280, 292 and 293** are withheld in their entireties under Exemptions 1, 3, 5(DPP), 5(ACC), 5 (AWP), 6 and 7(C).

312.    **REDACTED**

313.    **(U)**    **FBI 273** is an e-mail from the GC to then AD for CTD, then EAD for NSB, DGC in OGC and CTD employees concerning her legal decision  regarding a policy matter concerning the FBI's use of TSP information in counterterrorism investigations.  **FBI 273** is withheld in its entirety under FOIA Exemptions 1, 3, 5(DPP), 5(ACC), 6 and 7(C).

314.    **REDACTED**

315.    **(U)**    **FBI 309** is an undated draft of potential questions and proposed answers concerning the FBI's participation in the TSP and the FBI criminal investigation of the leak of highly classified information regarding the TSP to the media.  **FBI 309** is withheld in its entirety under Exemption 5(DPP).

316. **(U)** **FBI 322-340** is a collection of draft documents – often variations of the same seven questions and proposed responses which also contain comments, edits and recommendations made by GC Valerie Caproni, OGC attorneys, DOJ attorneys and OCA employees and ranging from May 24-September 21, 2005. These drafts contain proposed responses by OGC attorneys to several questions regarding the USA PATRIOT Act, the SAFE Act, FISA and, in part, the FBI's participation in the TSP, which were received from Senator Rockefeller, Senator Wyden and Senator Mikulski of the SSCI subsequent to a hearing before this Senate Committee on April 27, 2005. **FBI 322-340** are withheld in their entireties under Exemption 2(Low), 5(DPP) and 5(ACC), 6 and 7(C).

**(U)** *Applicability of Exemptions 1 and 3*

317. **REDACTED**

318. **(U)** Thus, for the reasons articulated earlier in the Exemptions 1 and 3 discussion, **FBI 62-64, 67, 70, 116-120, 124, 141, 143, 144, 146-152, 159, 182, 183, 248-250, 256-261, 263, 266, 273, 280, 284, 285, 292 and 293** are exempt from disclosure in their entireties pursuant to Exemptions 1 and 3.

**(U)** *Applicability of Exemption 2 (Low)*

319. **(U)** Portions of **FBI 116, 141, 142, 143, 325-330 and 333** have been withheld pursuant to Exemption 2 (Low), in conjunction with Exemptions 6 and 7(C) to protect the business telephone numbers, fax and pager numbers appearing in documents as they relate to FBI Special Agents, FBI support employees, and other federal government personnel. For the reasons articulated earlier in the Exemption 2(Low) discussion, because this internal information is related solely to the internal practices of the FBI and other federal government agencies, because disclosure would not serve any public interest, and because disclosure would impede the

effectiveness of government personnel, this information has been properly withheld pursuant to
Exemption 2(Low).

(U)     *Applicability of Exemptions 2(High) and 7(E)*

320.   **REDACTED**

(U) *Applicability of Exemption 5(DPP)*

321.   **REDACTED**

(U) *Applicability of Exemption 5(ACC)*

322.   **REDACTED**

(U) *Applicability of Exemption 5(AWP)*

323.   **REDACTED**

(U) *Applicability of Exemptions 6 and 7(C)*

324.   **(U)**     **FBI 62-64, 67, 70, 116-120, 124, 141, 143, 144, 146-152, 159, 182, 183,
248-250, 256-261, 263, 266, 273, 280, 284, 285, 292, 293, 325-331 and 333** contain names and/or
identifying information of FBI SAs and support personnel, other federal government employees,
third parties of investigative interest, third parties interviewed, and third parties merely mentioned,
which have been withheld appropriately pursuant to Exemptions 6 and 7(C). For the reasons
articulated earlier in the Exemptions 6 and 7(C) discussion, there is a strong privacy interest in
protecting the identities of these individuals whose names and identifying information appear in
these documents. Disclosure of such information would constitute both a clearly unwarranted and
an unwarranted invasion of their personal privacy. There is no public interest to be served by
disclosing this type of information to the public and release of this information will not shed light
on the operations and activities of the FBI. Thus, Exemptions 6 and 7(C) have been appropriately
asserted to protect the names and/or identifying information of FBI SAs and FBI support personnel,

UNCLASSIFIED

other federal government employees, third parties of investigative interest, third parties interviewed, and third parties merely mentioned.

**(U)** *Applicability of Exemption 7(A)*

325.    **(U)**    **FBI 118-120, 124, 151, 152, 159, 182, 183, 248-250, 260, 261 and 263** are also withheld on the basis of Exemption 7(A), as they contain specific examples of how TSP-derived information has helped in terrorist investigations, leads, statistics per year, etc. and discuss ongoing, active law enforcement. For the reasons articulated earlier in the Exemption 7(A) discussion, if this information were to be released there is a reasonable expectation of interference with pending law enforcement, and as a result, the information has been appropriately withheld pursuant to Exemption 7(A).

### **(U) Documents Related To Legal Opinions, Attorney-Client/Work Product Privileged And Internal Deliberations Regarding The TSP**

326.    **REDACTED**

#### **(U) FBI 3, 9, 10, 17, 26, 31, 45, 56, 57 and 61**
FBI Director's, GC's and Director's Special Assistant's
Handwritten Notes And Internal Documents

327.    **(U)**    **FBI 3** is a collection of handwritten notes by the GC, taken on various dates, concerning the TSP. **FBI 3** is withheld in its entirety under FOIA Exemptions 1, 2(Low), 3, 5(DPP), 5(ACC), 5 and 7(C).

328.    **REDACTED**

329.    **(U)**    **FBI 9** is a five-page document entitled "RSM Program Log" which consists of chronological entries of personal notes made by the FBI Director from March 1, 2004 through March 23, 2004, regarding conversations and meetings with the Attorney General, the President, and their close aides, as well as conversations and meetings with FBI personnel regarding the

- 74 -

UNCLASSIFIED

legality of the TSP.  This document was released in part by the FBI's Office of Congressional

Affairs ("OCA") on 08/14/2007 to Rep. John Conyers, and we have also released to plaintiff a part

of **FBI 9** consistent with the Conyers release.  The remaining information is being withheld under

FOIA Exemptions 1, 3 and 5 (DPP).

330.    **(U)**    **FBI 10** is a collection of the FBI Director's handwritten notes, consisting of

eight pages, covering the time frame of March 1, 2004 to March 12, 2004, and eight pages from the

FBI's Director's personal calendar, also covering the time frame of March 1, 2004, to March 12,

2004.  The notes and calendar pages contain both non-responsive and out of scope material.  This

document was released in part by the FBI's OCA on 08/14/2007 to Rep. John Conyers, and we

have previously released to plaintiff a part of **FBI 10**.  The remaining information is withheld

under Exemptions 1, 3 and 5 (DPP).

331.    **(U)**    **FBI 17** is an undated document which details events regarding the TSP

from 9/14/01 to 9/14/04.  **FBI 17** is withheld in its entirety under Exemptions 1, 3, and 5(ACC).

332.    **REDACTED**

333.    **(U)**    **FBI 26** is a collection of the GC's handwritten notes regarding detailed

descriptions of TSP and printed pages of materials from the CTD Briefing Book [**FBI 1**] regarding

procedures and policies concerning the use of TSP information by the FBI in counterterrorism

investigations.  **FBI 26** is withheld in its entirety under FOIA Exemptions 1 and 5 (DPP).

334.    **REDACTED**

335.    **(U)**    **FBI 45** is a list of questions from the GC's collection of documents dated

March 12, 2004, and has been withheld in its entirety pursuant to  Exemptions 1, 2(High), 5(DPP)

and 7(E).

336.    **REDACTED**

UNCLASSIFED

337.  **(U)**    **FBI 56** is an undated draft chronology of significant events concerning the TSP in 2001 and 2004, including the development and implementation of certain policies and procedures concerning the TSP.  **FBI 56** is withheld in its entirety under Exemptions 1, 3 and 5(DPP) and 5(ACC).

338.  **REDACTED**

339.  **(U)**    **FBI 57** is a collection of handwritten notes of the FBI Director's Special Assistant regarding the pre-March 2004 chronology of events surrounding the TSP.  **FBI 57** is withheld in its entirety under FOIA Exemptions 1, 3 and 5(DPP) and 5(ACC).

340.  **REDACTED**

341.  **(U)**    **FBI 61** is an e-mail trail dated January 14, 2006, between the GC and a senior attorney in the Director's Office regarding their comments to an attached undated draft chronology of significant events concerning the TSP in 2001 and 2004, including the development and implementation of certain policies and procedures concerning the TSP.  **FBI 61** is withheld in its entirety under FOIA Exemptions 1, 2(High), 5(DPP), 5(ACC), 6, 7(C) and 7(E).

342.  **REDACTED**

**(U)** *Applicability of Exemptions 1 and 3*

343.  **REDACTED**

344.  **(U)**    Thus, for the reasons articulated earlier in the Exemptions 1 and 3 discussion, **FBI 3, 9, 10, 17, 26, 31, 45, 56, 57 and 61** are exempt from disclosure in their entireties pursuant to Exemptions 1 and 3.

**(U)** *Applicability of Exemption 2 (Low)*

345.  **(U)**    Portions of **FBI 3** have been withheld pursuant to Exemption 2 (Low), in conjunction with Exemptions 6 and 7(C) to protect the business telephone numbers, fax and pager

numbers appearing in documents as they relate to FBI Special Agents, FBI support employees, and

other federal government personnel. For the reasons articulated earlier in the Exemption 2(Low)

discussion, because this internal information is related solely to the internal practices of the FBI

and other federal government agencies, because disclosure would not serve any public interest,

and because disclosure would impede the effectiveness of government personnel, this information

has been properly withheld pursuant to Exemption 2(Low).

**(U)** *Applicability of Exemptions 2(High) and 7(E)*

346.    **REDACTED**

**(U)** *Applicability of Exemption 5(DPP)*

347.    **REDACTED**

**(U)** *Applicability of Exemption 5(ACC)*

348.    **REDACTED**

**(U)** *Applicability of Exemptions 6 and 7(C)*

349.    **(U)**    **FBI 3 and 61** contain names and/or identifying information of FBI SAs and

support personnel, other federal government employees, third parties of investigative interest,

third parties interviewed, and third parties merely mentioned, which have been withheld

appropriately pursuant to Exemptions 6 and 7(C). For the reasons articulated earlier in the

Exemptions 6 and 7(C) discussion, there is a strong privacy interest in protecting the identities of

these individuals whose names and identifying information appear in these documents. Disclosure

of such information would constitute both a clearly unwarranted and an unwarranted invasion of

their personal privacy. There is no public interest to be served by disclosing this type of

information to the public and release of this information will not shed light on the operations and

activities of the FBI. Thus, Exemptions 6 and 7(C) have been appropriately asserted to protect the

names and/or identifying information of FBI SAs and FBI support personnel, other federal government employees, third parties of investigative interest, third parties interviewed, and third parties merely mentioned.

### (U)  FBI 24, 27, 28, 32, 115, 137, and 241
### Clients Seeking Guidance As To How To Proceed With TSP

350.    **(U)**    **FBI 24** is an e-mail trail which has been referred to NSA for direct response. The FBI equities are being withheld in full under Exemptions 1, 3, 5(DPP), 6, 7(C).

351.    **REDACTED**

352.    **(U)**    **FBI 27** is an undated draft letter from the FBI Director to Acting AG Comey seeking guidance on how the FBI should proceed in connection with the TSP. **FBI 27** is withheld in full under FOIA Exemptions 1, 2 (High), 3, 5(DPP), 5(ACC) and 7(E).

353.    **REDACTED**

354.    **(U)**    **FBI 28** is an internal position document dated March 16, 2004, obtained from GC Valerie Caproni's office files. **FBI 28** is withheld in full under FOIA Exemptions 1, 2 (High), 3, 5(DPP), 5(ACC) and 7(E).

355.    **REDACTED**

356.    **(U)**    **FBI 32** is an e-mail, dated March 13, 2004, among an FBI executive, the GC, and the DGC regarding a certain administrative process used by the FBI in connection with the TSP and seeks guidance regarding the FBI's use of TSP information. **FBI 32** is withheld in its entirety under FOIA Exemptions 1, 5(ACC), 6 and 7(C).

357.    **REDACTED**

358.    **(U)**    **FBI 115** is an e-mail trail dated January 4, 2006, among CTD employees, the GC and DGC which seeks legal guidance as to the FBI's use of TSP information in light of the

media reports concerning the TSP. Within this e-mail trail, CTD provides OGC with an example

of the work product generated by the FBI in its use of TSP information. **FBI 115** is withheld in its

entirety under FOIA Exemptions 1, 2(Low), 3, 5(DPP), 5(ACC), 6 and 7(C).

    359.   **REDACTED**

    360.   **(U)**   **FBI 137**, a continuation of the e-mail trail in **FBI 115**, is an e-mail trail, also

dated January 4, 2006, among CTD employees, the GC and DGC regarding legal guidance as to as

to the FBI's use of TSP information in light of the media reports concerning the TSP. **FBI 137** is

withheld in its entirety under FOIA Exemptions 1, 2(Low), 3, 5(DPP), 5 (ACC), 6 and 7(C).

    361.   **REDACTED**

    362.   **(U)**   **FBI 241** is an e-mail trail, similar to the e-mails in **FBI 115** and **FBI 137**,

also dated January 4, 2006, among the GC, DGC and CTD employees seeking legal guidance as to

the FBI's use of TSP information in light of the media reports concerning the TSP. **FBI 241** is

withheld in its entirety under FOIA Exemptions 1, 2(Low), 3, 5(DPP), 5(ACC), 6 and 7(C).

    363.   **REDACTED**

    **(U)** *Applicability of Exemptions 1 and 3*

    364.   **REDACTED**

    365.   **(U)**   Thus, for the reasons articulated earlier in the Exemptions 1 and 3

discussion, **FBI 24, 27, 28, 32, 115, 137 and 241** are exempt from disclosure in their entireties

pursuant to Exemptions 1 and 3.

    **(U)**   *Applicability of Exemption 2 (Low)*

    366.   **(U)**   Portions of **FBI 115, 137 and 241** have been withheld pursuant to

Exemption 2 (Low), in conjunction with Exemptions 6 and 7(C) to protect the business telephone

numbers, fax and pager numbers appearing in documents as they relate to FBI Special Agents, FBI

support employees, and other federal government personnel. For the reasons articulated earlier in

the Exemption 2(Low) discussion, because this internal information is related solely to the internal

practices of the FBI and other federal government agencies, because disclosure would not serve

any public interest, and because disclosure would impede the effectiveness of government

personnel, this information has been properly withheld pursuant to Exemption 2(Low).

**(U)**    *Applicability of Exemptions 2(High) and 7(E)*

367.    **REDACTED**

**(U)**    *Applicability of Exemption 5(DPP)*

368.    **REDACTED**

**(U)**    *Applicability of Exemption 5(ACC)*

369.    **REDACTED**

**(U)**    *Applicability of Exemptions 6 and 7(C)*

370.    **(U)**    **FBI 24, 32, 115, 137 and 241** all contain names and/or identifying

information of FBI SAs and support personnel, other federal government employees, third parties

of investigative interest, third parties interviewed, and third parties merely mentioned, which have

been withheld appropriately pursuant to Exemptions 6 and 7(C). For the reasons articulated earlier

in the Exemptions 6 and 7(C) discussion, there is a strong privacy interest in protecting the

identities of these individuals whose names and identifying information appear in these documents.

Disclosure of such information would constitute both a clearly unwarranted and an unwarranted

invasion of their personal privacy. There is no public interest to be served by disclosing this type

of information to the public and release of this information will not shed light on the operations

and activities of the FBI. Thus, Exemptions 6 and 7(C) have been appropriately asserted to protect

the names and/or identifying information of FBI SAs and FBI support personnel, other federal

government employees, third parties of investigative interest, third parties interviewed, and third parties merely mentioned.

## (U) REFERRALS

371.    **(U)**    An additional 24 non-serialized documents were identified by the FBI as containing equities of other DOJ components and/or other federal government agencies and were therefore referred for either consultation or direct response.  **See Exhibit A.**

## (U) OUTGOING REFERRALS

372.    **(U)**    The FBI has identified one document which originated with the then DOJ Office of Intelligence Policy and Review ("OIPR") – now within the DOJ National Security Division ("NSD") – **FBI 14 and FBI 317**.  The FBI referred this document for direct response, and it will be addressed in a separate declaration supplied by NSD.  See In Camera, Ex Parte Declaration of Matthew G. Olsen, DOJ, National Security Division.

373.    **(U)**    The FBI has identified three documents and/or portions of documents which originated with the Office of Legal Counsel ("OLC") at DOJ – **FBI 7 and FBI 42**.  The FBI referred these documents to OLC for direct response, and these documents will be addressed in a separate declaration supplied by DOJ OLC.  See Bradbury Declaration.

374.    **(U)**    In addition, the FBI identified among documents contained in the files of OGC personnel two copies of a document originally obtained by the FBI from DOJ – **FBI 23**.  The FBI referred this document to OLC for direct response.  See Bradbury Declaration.

375.    **(U)**    Finally, the FBI referred to NSA for direct response the following documents: **FBI 2, FBI 6, FBI 16, FBI 24, FBI 36, FBI 37, FBI 38, FBI 48, FBI 50, FBI 103, FBI 104, FBI 105, FBI 106, FBI 107, FBI 108, FBI 109, FBI 112, and FBI 132**.[28]  These documents will be addressed in a separate declaration supplied by NSA.  See Supplemental Brand

---

[28] **(U) FBI 107, 108 and 112** were referred both to the NSA and to the CIA for a review of their respective equities, but will be addressed in the NSA's declaration.  See Supplemental Brand Declaration.

Declaration.

## (U) **INCOMING REFERRALS**

376.    **(U)**    In the course of responding to the same FOIA request from plaintiffs, other DOJ components and/or other federal agencies have identified documents and/or portions of documents which originated with the FBI and have referred them to the FBI for either consultation or direct response to plaintiffs.

377.    **REDACTED**

## (U) **CONCLUSION**

378.    **(U)** The FBI has now provided plaintiffs with all releasable records responsive to its FOIA request to the FBIHQ.  As demonstrated above, the information which the FBI has withheld consists of information the disclosure of which would: (a) reveal material which is classified; (b) reveal material regarding the internal personnel rules and practices and internal operations of the TSP disclosure of which could reasonably be expected to risk circumvention of law; (c) reveal information protected by federal statutes; (d) reveal material protected by the deliberative process, attorney/client and attorney work product privileges; (e) reveal material which is the subject of ongoing investigations; (f) reveal material which would constitute a clearly unwarranted and an unwarranted invasion of individuals' privacy; and (g) reveal identities and information provided by individuals under an express and implied assurance of confidentiality.

**UNCLASSIFIED**

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true

and correct, and that **Exhibits A and B** attached hereto are true and correct copies.

Executed this _____5th_____ day of May, 2008.

DAVID M. HARDY
Section Chief
Record/Information Dissemination Section
Records Management Division
Federal Bureau of Investigation
Washington, D.C.

**UNCLASSIFED**