UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

_____

THOMAS WILNER, *et al.*,     )
                             )
    Plaintiffs,               )     Hon. Judge Cote
                             )
        v.                   )     1:07-cv-3883-DLC
                             )
NATIONAL SECURITY AGENCY, *et al.*, )
                             )
    Defendants.              )
_____)

**REPLY IN FURTHER SUPPORT OF DEFENDANTS' PARTIAL MOTION FOR
SUMMARY JUDGMENT REGARDING THE GLOMAR RESPONSE**

GREGORY G. KATSAS
Acting Assistant Attorney General

JOSEPH H. HUNT
Director, Federal Programs Branch

ELIZABETH A. SHAPIRO
Assistant Director, Federal Programs Branch

ALEXANDER K. HAAS (CA# 220932)
Trial Attorney
Federal Programs Branch, Civil Division
United States Department of Justice
P.O. Box 883, 20 Massachusetts Ave., N.W.
Washington, D.C. 20044
Tel: (202) 305-9334 — Fax: (202) 305-3138
Email: alexander.haas@usdoj.gov

**INTRODUCTION**

The National Security Agency ("NSA") and Department of Justice ("defendants") respectfully submit this reply in support of the partial summary judgment motion concerning the "*Glomar*" issue, *i.e.*, the refusal to confirm or deny the existence of records concerning whether plaintiffs were targeted by or otherwise subject to surveillance under the Terrorist Surveillance Program ("TSP"). As explained in the detailed declarations of the Director of National Intelligence ("DNI"), NSA, and Federal Bureau of Investigation ("FBI"), the confirmation or denial of whether particular persons are subject to foreign intelligence surveillance and collection is of the most sensitive character because public disclosure of such information reveals to this Nation's enemies our foreign intelligence collection capabilities and our intelligence sources and methods, *see, e.g.*, DNI Decl. ¶ 16; Brand Decl. ¶¶ 9-10, 21-22. *See also* Motion for Partial Summary Judgment ("Defs. Mot.") at 14-22. In light of these harms, a *Glomar* response is clearly warranted and appropriate to protect information concerning particular targets of the TSP.

Rather than substantively engaging defendants' motion and detailed declarations, plaintiffs largely ignore the specific and well-articulated harms identified by defendants and the weight of case law that supports the assertion of the *Glomar* response here. Instead, plaintiffs assert this case is different for two reasons. First, plaintiffs argue that the *Glomar* response is improper because it allegedly conceals unconstitutional activity, which they fear might have been directed at them in connection with their representation of detainees. *See* Pls. Opp. at 7-10. Second, plaintiffs argue that because the existence of the TSP and certain general information about it has been acknowledged, the *Glomar* doctrine cannot protect whether particular targets have been subject to surveillance under the TSP. Neither these arguments, nor plaintiffs' irrelevant and speculative declarations, provide any reason to deny judgment to defendants.

1

I.   **NEITHER PLAINTIFFS' BALD ASSERTIONS OF UNCONSTITUTIONALITY OF THE TSP NOR THEIR REPRESENTATION OF DETAINEES PROVIDE ANY BASIS TO DENY PARTIAL SUMMARY JUDGMENT TO DEFENDANTS.**

As the DNI, NSA, and FBI explain, surveillance targeting information is of the most sensitive character and the confirmation or denial of whether specific individuals were subject to surveillance under the TSP simply cannot be disclosed. Such information cannot be confirmed or denied without jeopardizing the need to protect the identity of its targets:

> Confirmation by NSA that a person's activities are not of foreign intelligence interest or that NSA is unsuccessful in collecting foreign intelligence information on their activities on a case-by-case basis would allow our adversaries to accumulate information and draw conclusions about NSA's technical capabilities, sources, and methods. For example, if NSA were to admit publicly in response to an information request that no information about Persons X, Y or Z exists, but in response to a separate information request about Person T state only that no response could be made, this would give rise to the inference that Person T is a target of the TSP. Over time, the accumulation of these inferences would disclose the targets and capabilities (sources and methods) of the TSP and inform our adversaries of the degree to which NSA is aware of some of their operatives or can successfully exploit particular communications.

Brand Decl. ¶ 22. *See also* DNI Decl. ¶ 16. And while plaintiffs attempt to carve out special rights due to their status as attorneys, *see* Pls. Opp. at 11-19, such a distinction lacks foundation in either FOIA itself or case law. Indeed, FOIA treats all requesters the same. *See, e.g.*, *Bassiouni v. CIA*, 392 F.3d 244, 246 (7th Cir. 2004) (upholding CIA *Glomar* response because "[p]ainstaking analysis of the patterns reflected in the agency's holdings might reveal that the person named in the request is himself a source of information. That would not be worrisome if people could request information only about themselves . . . . But any member of the public may invoke the FOIA, and the agency must disregard the requester's identity.").

Defendants also cannot respond to each case in isolation, but must assume that the United States' adversaries will examine all released information together. DNI Decl. ¶ 17; Brand Decl.

¶ 23. Any information available to a FOIA requester is similarly available to "North Korea's secret police and Iran's counterintelligence service too." *Bassiouni*, 392 F.3d at 246. These and "other hostile entities," *id.*, including agents of al Qaeda and its affiliates, would no doubt be greatly interested in an official and public confirmation or denial whether they or *any* other individual, including plaintiffs, were or were not subjected to surveillance under the TSP. The conclusions that could be drawn from these accumulated disclosures can be expected to have exceptionally grave consequences for the national security of the United States. *See, e.g.*, Brand Decl. ¶¶ 21-23; *see also* DNI Decl. ¶ 16. Defendants' policy of not confirming or denying TSP targeting information is wholly justified and entitles defendants to partial summary judgment.

Accordingly, as explained in our motion, courts have routinely accepted that federal agencies may invoke *Glomar* when intelligence or law enforcement activities would be compromised by accumulated disclosures of the type described by the declarants. *See* Defs. Mot. at 14-16 (addressing *Marrera v. U.S. Dept. of Justice*, 622 F. Supp. 51, 53 (D.D.C. 1985); *Gordon v. FBI*, 388 F. Supp. 2d 1028, 1037 (N.D. Cal. 2005); *Bassiouni*, *supra*, and *Gardels*, 689 F.2d at 1104). As the Seventh Circuit noted in *Bassiouni*, "[e]very appellate court to address the issue has held that the FOIA permits the [intelligence agencies] to make a 'Glomar response' when it fears that inferences from . . . selective disclosure could reveal classified sources or methods of obtaining foreign intelligence." 392 F.3d at 246.

Plaintiffs make no effort to distinguish or even discuss any of these cases. Nor have they identified a single case (either in the multitude of cases challenging the TSP on its merits or in the several cases challenging the Government's determination to withhold TSP-related documents under FOIA) where a court has ordered the disclosure of even a single *classified* document related to the TSP. There is none. *See, e.g.*, *PFAW*, *supra*; *New York Times Company*

3

*v. Dept. of Defense, et al.*, 499 F. Supp. 2d 501 (S.D.N.Y. 2007) (finding various agency declarations all established that the records related to TSP were properly withheld pursuant to Exemption 1); *see also Adejumobi v. NSA*, 2007 WL 4247878 (M.D. Fla. 2007) (finding NSA properly refused to confirm or deny the existence of records concerning the alleged inclusion of plaintiff on "Terror suspect list").

Instead, plaintiffs principally argue that the *Glomar* response is inappropriate because it is allegedly being employed to conceal violations of law. *See id.* at 7-19. Plaintiffs premise the whole of their argument not on deficiencies with defendants' fulsome declarations concerning the specific harms that fully justify the *Glomar* response, but on their own assumption that they were targeted by the TSP and, *if that were the case*, it "would have been illegal" as applied due to their representation of Guantanamo detainees. *See* Pls. Opp. at 7. This reasoning is not responsive to the detailed declarations from the DNI, NSA, and FBI—all of which articulate the harms to national security that would flow from disclosure of the information in question. Indeed, a plaintiff could, in any case, construct a possible scenario where alleged government action that could not be confirmed or denied was illegal or unconstitutional if it occurred. But bald speculation cannot eviscerate a *Glomar* response backed by the kind of detailed determinations provided here concerning the harm to national security that would follow from confirming or denying the particular targets of the TSP. *Cf. National Archives and Records Admin. v. Favish*, 541 U.S. 157, 174 (2004) (observing that "[a]llegations of government misconduct are easy to allege and hard to disprove") (internal quotation omitted). Plaintiffs' response is simply inadequate as a legal matter.

Moreover, plaintiffs' argument misconstrues section 1.7(a) of Executive Order 12958. That provision merely bars the government from classifying otherwise unclassified information

4

"in order to," *i.e.*, for the *purpose* of, concealing violations of law. 68 Fed. Reg. at 15318. Put differently, section 1.7(a) only applies where there is evidence of improper motive or intent on the part of the classifying authority. *See United States v. Abu Marzook*, 412 F. Supp. 2d 913, 923 (N.D. Ill. 2006) (rejecting argument that information had been improperly classified to prevent embarrassment and to conceal Israel's use of illegal interrogation methods because, *inter alia*, "there is simply no evidence that these materials [were] classified merely to prevent embarrassment to Israel"); *Arabian Shield Development Co. v. CIA*, 1999 WL 118796, at *4 (N.D. Tex. 1999) (rejecting argument that information was improperly classified in a *Glomar* response where plaintiff had "no[t] offered evidence that the CIA classified the requested information for the purpose of concealing a crime").[1] Section 1.7(a) thus does not address the *substance* of what may be classified, but rather prohibits the classification of information with the *intent* of concealing a violation of law.[2] *See Wilson v. Dep't of Justice*, 1991 WL 111457, at

---

[1] *See also Billington v. DOJ*, 11 F. Supp. 2d 45, 58 (D.D.C. 1998) (rejecting argument that FBI violated section 1.7 where plaintiff did "not provide any proof of the FBI's motives in classifying the information" and there was no evidence "that the FBI was involved in an attempt to cover-up information"), *aff'd in part, vacated in part*, 233 F.3d 581 (D.C. Cir. 2000); *Canning v. U.S. Dep't of Justice*, 848 F. Supp 1037, 1047 (D.D.C. 1994) (rejecting similar argument because "the Court finds no credible evidence that the agency's motives for its withholding decisions were improper" or otherwise violated the current Executive Order).

[2] The authority on which plaintiffs rely is not to the contrary. *Weiner v. FBI*, 943 F.2d 972 (9th Cir. 1991), concerned a case where a plaintiff pointed to actual *evidence*—four specific documents released by the government—that he argued established improper motive. *Id.* at 988. The Ninth Circuit thus only held that a triable issue of fact remained in that case in light of specific facts of that case. *See Minier v. CIA*, 88 F.3d 796, 804 (9th Cir. 1996) (distinguishing *Weiner* in the *Glomar* context under Exemption 3 because no detailed index was required). Moreover, the factual deficiencies in the agency affidavits in *Weiner* are not repeated here as the DNI, NSA, and FBI have provided sufficient facts to evaluate the claimed exemptions. *See Berman v. CIA*, 378 F. Supp. 2d 1209, 1216 (E.D. Cal. 2005). While plaintiffs rely on *ACLU v. DOD*, Judge Hellerstein upheld in part the Government's *Glomar* assertion because the information at issue implicated intelligence activities and methods. *See* 389 F. Supp. 2d 547, 564-65 (S.D.N.Y. 2005) (noting the "small scope for judicial evaluation in this area").

*2 (D.D.C. 1991) ("even if some of the information withheld were embarrassing . . . it would nonetheless be covered by Exemption 1 if, independent of any desire to avoid embarrassment, the information withheld were properly classified").[3]

Therefore, mere allegations of illegality are insufficient to defeat a *Glomar* response where, as here, knowledgeable government officials have provided detailed declarations explaining that the information is properly classified for legitimate purposes—such as protection of intelligence sources and methods. *See People for the Am. Way v. Nat'l Security Agency*, 462 F. Supp. 2d 21, 33 (D.D.C. 2006) ("Even if the TSP were ultimately determined to be illegal, it does not follow that the NSA's decision regarding the classification of materials relating to the TSP was made 'in order to . . . conceal violations of law.' Because of the deference due to the NSA in matters of national security, and in the absence of any evidence to the contrary, the Court must accept defendant's reasonable explanation that the materials were classified in order to prevent damage to the national security").[4] Plaintiffs fail to meet the declarations at issue here

---

[3] Indeed, in the context of foreign intelligence collection, section 1.7(a) of E.O. 12333 expressly contemplates the protection of intelligence methods and activities, when possible violations of law are referred to DOJ, because it requires intelligence officials to:
> Report to the Attorney General *possible violations of federal criminal laws* by employees and of specified criminal laws by any other person as provided in procedures agreed upon by the Attorney General and the heads of the department or agency concerned, in a manner *consistent with the protection of intelligence sources and methods*, as specified in those procedures.

E.O. 12333, 46 Fed. Reg. 59941 (Dec. 4, 1981) (emphases added).

[4] And while plaintiffs make a similar argument as to the applicability of Exemption 3 "to conceal unconstitutional activities," *see* Pls. Opp. at 9, the *PFAW* Court also correctly noted that mere allegations of the TSP's unconstitutionality does not undermine the Government's reliance on Exemption 3 and Section 6 of the National Security Agency Act. *See PFAW*, 462 F. Supp. 2d at 31 ("Whether the TSP . . . is ultimately determined to be unlawful, its potential illegality cannot be used in this case to evade the "unequivocal[ ]" language of Section 6, which "prohibit[s] the disclosure of information relating the NSA's functions and activities . . . .") (quoting *Linder v. NSA*, 94 F.3d 693, 696 (D.C. Cir. 1996)). Here, both Exemption 1 and

head-on, and instead merely assert that defendants have "not provided sufficient information." *See* Pls. Opp. at 8.[5]  This claim is at odds with both the facts and the law.

It is clear that plaintiffs hinge their challenge to the *Glomar* response solely on their *belief* that they *might* be subject to surveillance of some unknown character.[6]  *See* Pls. Opp. at 10-19; *see also* plaintiffs' declarations (detailing the speculation of plaintiffs concerning possible surveillance).  Plaintiffs' unsubstantiated speculation is insufficient to overcome the defendants' declarations that Exemptions 1 and 3 are applicable.  *See Miller v. Casey*, 730 F.2d 773, 776 (D.C. Cir. 1984) ("Summary judgment is warranted on the basis of agency affidavits when the affidavits describe 'the justifications for nondisclosure with reasonably specific detail, demonstrate that the information withheld logically falls within the claimed exemption, and are not controverted by either contrary evidence in the record or by evidence of agency bad faith.'").

---

Exemption 3 independently support defendants' *Glomar* response for the reasons previously identified.

[5] Such generic complaints are legally inadequate to challenge defendants' properly supported motion for summary judgment.  *See Spirko v. USPS*, 147 F.3d 992, 998 (D.C. Cir. 1998) (rejecting characterization of agency affidavits as "conclusory and vague" when plaintiff did "not indicate what more the [agency] could have stated without revealing the information it sought to protect"; finding that "clearly, 'there are occasions when extensive public justification would threaten to reveal the very information for which a FOIA exemption is claimed.'").

[6] The government notes that a suit brought by the Center for Constitutional Rights is now pending before Chief Judge Vaughn Walker in the Northern District of California in which the United States has asserted the state secrets privilege to protect from disclosure, *inter alia*, information concerning whether or not the plaintiffs in that case (attorneys associated with CCR) may have been subject to surveillance under the now-lapsed TSP.  *See CCR v. Bush*, Case No. 07-1115 (N.D. Cal.).  In that case, the government has also asserted that plaintiffs can no longer obtain prospective relief challenging the TSP because the TSP has lapsed and because any surveillance that had been conducted under the TSP is now subject to court order, *see* Letter from the Attorney General to the Chairman and Ranking Member of the Senate Judiciary Committee (Jan. 17, 2007), or statutory authority, *see* Pub. L. 110-55 (Aug. 5, 2007).  Confirmation or denial of surveillance under any of these authorities would cause the same harms to national security identified in the declarations of DNI, NSA, and FBI.

II.  **THE LIMITED ACKNOWLEDGMENT OF THE TSP PROVIDES NO BASIS TO REQUIRE THE DEFENDANTS TO CONFIRM OR DENY THE EXISTENCE OF PARTICULAR TSP TARGETING INFORMATION.**

Plaintiffs also incorrectly argue that certain official disclosures of a general nature, such as of the existence of the TSP, have a bearing on the particular *Glomar* issue here. *See* Pls. Opp. at 19-23. Specifically, plaintiffs assert the "government waived its right to assert a *Glomar* response when it 'officially acknowledged' the information at issue." *Id.* at 19. The imprecision of this statement renders it misleading. Defendants have not made a *Glomar* response as to whether the TSP existed, with respect to information contained in any of the other purported official acknowledgments plaintiffs point to, *see* Pls. Opp. at 21, or, for that matter, with respect to any information responsive to the six other FOIA requests made by these plaintiffs. Instead, the *Glomar* response in this case has been exceedingly narrow and covers only confirming or denying whether particular individuals were targeted by or otherwise subject to surveillance under the TSP. *See* Brand Decl. ¶ 19; DNI Decl. ¶ 16. No such targeting information with respect to any particular target of surveillance has ever been "officially acknowledged" and thus plaintiffs' argument simply misses the mark.

The government's willingness to discuss the limited information that can be disclosed on the public record regarding a highly classified program cannot be used to undermine a determination, grounded in the government's "unique insights and special expertise concerning the kinds of disclosures that may be harmful," *Krikorian v. Dept. of State*, 984 F.2d 461, 464 (D.C. Cir. 1993), that certain *other* information concerning the TSP cannot be confirmed or denied consistent with the interests of national security. *See Fitzgibbon,* 911 F.2d at 766 ("the fact that information resides in the public domain does not eliminate the possibility that further disclosures can cause harm to intelligence sources, methods, and operations"). It has long been

8

the rule that voluntary disclosures do not require rejecting other withholding determinations in a FOIA case so as to "avoid discouraging the agency from disclosing such information about its intelligence function as it feels it can without endangering its performance of that function." *See Afshar v. Dept. of State*, 702 F.2d 1125, 1130-31 (D.C. Cir. 1983) (citation omitted).

Plaintiffs' lament that the government "refus[es] to disavow," *see* Pls. Opp. at 16-19, the *possibility* of surveillance is wholly consistent with the uniform refusal to confirm *or deny* the existence of records concerning the targeting of *particular* individuals under the TSP, which is the only issue before the Court. As the Supreme Court has acknowledged, "[t]he national interest sometimes makes it advisable, or even imperative, to disclose [] information." *CIA v. Sims*, 471 U.S. 159, 180 (1985). But "it is the responsibility of the [Executive Branch], not that of the judiciary, to weigh the variety of complex and subtle factors in determining whether disclosure of information may lead to an unacceptable risk of compromising the Agency's intelligence-gathering process." *Id.* Thus, what plaintiffs fail to recognize is that it is the "responsibility" of the Executive Branch to be "selective" about disclosures when the program being discussed is classified and disclosure of certain details could compromise the Nation's security.

Finally, plaintiffs' reliance on *Al-Haramain Islamic Found., Inc. v. Bush*, 507 F.3d 1190 (9th Cir. 2007), is wholly misplaced. First, that case did not invoke the standards applicable under FOIA. Second, the Ninth Circuit upheld the "exceptionally well documented" assertion of the state secrets privilege to bar disclosure of precisely the kind of information at issue here: information concerning whether a particular plaintiff, even an attorney, "was subject to surveillance." *See Al-Haramain*, 507 F.3d at 1201-05.[7] *See also ACLU v. NSA*, 493 F.3d 644,

---

[7] *See id.* at 1203 ("[W]e conclude that the Sealed Document is protected by the state secrets privilege, along with the information as to whether the government surveilled

669-70 (6th Cir. 2007) (concluding there was no standing to challenge the TSP in face of assertions of subjective chill by attorneys), *cert. denied* 128 S.Ct 1334 (2008).  The Ninth Circuit agreed that the national security would be harmed by disclosure of whether or not the plaintiffs had been subject to the alleged surveillance, as well as by disclosure of information contained in a sealed document that had been inadvertently released.[8]  *See id*. at 1202-04.  The Court should reject plaintiffs' attempts to defeat summary judgment on the basis of innuendo, speculation, or any other chains of inferences resting upon shoddy foundations.

\*     \*     \*

In sum, despite the distractions offered by plaintiffs, the fundamental point cannot be lost: The unchallenged declarations of the DNI, NSA, and FBI articulate clear, cognizable harms that would flow from confirming or denying the identity of particular targets of the TSP.  The *Glomar* response is wholly appropriate and well supported and this is all that FOIA requires.  Plaintiffs' attempts to litigate issues ancillary to the propriety of the *Glomar* response should be rejected in light of the well-documented and unchallenged declarations.

## CONCLUSION

For the foregoing reasons and those set forth in the partial motion for summary judgment, the Defendants are entitled to summary judgment as to their *Glomar* response.

Dated: June 3, 2008                                             Respectfully Submitted,

---

Al-Haramain" and noting that "judicial intuition about this proposition is no substitute for documented risks and threats posed by the potential disclosure of national security information").

[8] Plaintiffs' reference to arguments by counsel in the recent hearing in *Al-Haramain*, *see* Pls. Opp. at 23, are also unavailing because the government was simply reiterating the same position it takes here:  whether any particular individual has been subject to surveillance cannot be confirmed or denied because doing so would be inconsistent with the overarching policy described by the DNI, NSA, and FBI.

GREGORY G. KATSAS
Acting Assistant Attorney General

JOSEPH H. HUNT
Director, Federal Programs Branch

ELIZABETH A. SHAPIRO
Assistant Director, Federal Programs Branch

  */s/ Alexander K. Haas*
ALEXANDER K. HAAS (CA# 220932)
Trial Attorney
Federal Programs Branch, Civil Division
United States Department of Justice
P.O. Box 883, 20 Massachusetts Ave., N.W.
Washington, D.C.  20044
Tel: (202) 305-9334 — Fax: (202) 305-3138
Email: alexander.haas@usdoj.gov

## CERTIFICATE OF SERVICE

  I hereby certify that on June 3, 2008, a copy of foregoing reply brief in support of defendants' motion for partial summary judgment was filed electronically and thereby served to the parties by e-mail through the operation of the Court's electronic filing system. Parties may access this filing through the Court's CM/ECF System.

  I also certify that a copy of these materials was served by First Class Mail on:

Mark A. Schwartz, Esq.
Julie P. Shelton, Esq.
Butler Rubin Saltarelli & Boyd, LLP
70 W. Madison, Suite 1800
Chicago, IL  60602

                /s/ Alexander K. Haas
                Attorney for Defendants