UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------X
                                        :
THOMAS WILNER, et al.,                  :
                        Plaintiffs,     :
                                        :    07 Civ. 3883 (DLC)
            -v-                         :
                                        :    OPINION AND ORDER
NATIONAL SECURITY AGENCY, et al.,       :
                        Defendants.     :
                                        :
----------------------------------------X

Appearances:

For Plaintiffs:
Kathryn A. Sabbeth
David C. Vladeck
Georgetown University Law Center
Institute for Public Representation
600 New Jersey Avenue, NW, Suite 312
Washington, D.C. 20001

Shayana Kadidal
Emilou MacLean
Center for Constitutional Rights
666 Broadway, 7th Floor
New York, New York 10012

James R. Rubin
Julie P. Shelton
Karen Borg
Mark A. Schwartz
Butler Rubin Saltarelli & Boyd LLP
70 West Madison Street, Suite 1800
Chicago, Illinois 60602

For Defendants:
Jeffrey S. Bucholtz
Joseph H. Hunt
Elizabeth A. Shapiro
Alexander K. Haas
Federal Programs Branch, Civil Division
United States Department of Justice
P.O. Box 883

20 Massachusetts Avenue, NW
Washington, DC 20044

DENISE COTE, District Judge:

This Opinion addresses the partial motion for summary
judgment filed by the defendant United States government
agencies in this Freedom of Information Act ("FOIA") case.
Plaintiffs are attorneys representing individuals detained by
the United States government (the "Government") at Guantanamo
Bay, Cuba.  Defendants rejected their FOIA requests for records
showing whether the Government has intercepted communications
relating to their representation of their clients.  On their
motion for summary judgment, defendants claim that they rightly
refused to confirm or deny the existence of the requested
records.  For the following reasons, defendants' motion is
granted.

BACKGROUND

The following facts are undisputed.  Plaintiffs are
partners and associates at prominent law firms, law professors,
and attorneys for established non-profit organizations.  They
represent individuals detained by the Government at Guantanamo
Bay, Cuba, on suspicion of terrorist activity.  Defendant
National Security Agency ("NSA") is an agency within the
Department of Homeland Security and is charged with, among other
tasks, collecting, processing, and disseminating signals

intelligence information for national foreign intelligence purposes. NSA's signals intelligence ("SIGINT") work includes intercepting communications necessary to the national defense, national security, or the conduct of foreign affairs of the United States. Defendant Department of Justice is the cabinet department charged with law enforcement.

In the aftermath of the September 11, 2001 attacks by al Qaeda on the United States, President George W. Bush secretly authorized the Terrorist Surveillance Program ("TSP"), under the auspices of which the NSA was empowered "to intercept the international communications of people with known links to al Qaeda and related terrorist organizations." George W. Bush, President's Radio Address (Dec. 17, 2005), http://www. whitehouse.gov/news/releases/2005/12/20051217.html (last visited June 2, 2008). President Bush described the TSP as "a highly classified program that is crucial to our national security. Its purpose is to detect and prevent terrorist attacks against the United States, our friends and allies." Id. Surveillance under the TSP was conducted without warrants, and without oversight by the Foreign Intelligence Surveillance Court ("FISC"). The TSP was conducted in secret until President Bush publicly acknowledged its existence on December 17, 2005. On January 17, 2007, Attorney General Alberto Gonzales announced

that electronic surveillance conducted under the TSP would be subject to the approval of the FISC.

By separate letters to the NSA and Department of Justice dated January 18, 2006, plaintiffs submitted FOIA requests seeking seven categories of records.  Only the first of these ("FOIA Request No. 1") is at issue on this motion.  FOIA Request No. 1 sought "records obtained or relating to ongoing or completed warrantless electronic surveillance or physical searches regarding, referencing or concerning any of the plaintiffs."  Defendants refused to confirm or deny whether they possessed records responsive to the request.

This lawsuit followed.  Plaintiffs filed their complaint on May 17, 2007 and amended it twice thereafter.  The Second Amended Complaint, which is the operative pleading, was filed on November 2.  Claiming that they "have a statutory right to the records that they seek, and there is no legal basis for the defendants' refusal to disclose them," plaintiffs sought principally a declaration that defendants' refusal to disclose the requested records was unlawful, and an order compelling defendants to produce the records without further delay.  As discussed above, the motion presently under consideration concerns plaintiffs' FOIA Request No. 1 and defendants' refusal

to confirm or deny the existence of records concerning specific alleged targets of the TSP.[1]

DISCUSSION

I.    FOIA Framework

FOIA was enacted in 1966 "to improve public access to information held by government agencies." Pierce & Stevens Chem. Corp. v. U.S. Consumer Prod. Safety Comm'n, 585 F.2d 1382, 1384 (2d Cir. 1972). It "expresses a public policy in favor of disclosure so that the public might see what activities federal agencies are engaged in." A. Michael's Piano, Inc. v. F.T.C., 18 F.3d 138, 143 (2d Cir. 1994). FOIA requires a federal agency to disclose records in its possession unless they fall under one of nine enumerated and exclusive exemptions. 5 U.S.C. § 552(a)(3)-(b); see also Dep't of the Air Force v. Rose, 425 U.S. 352, 361 (1976). The statutory exemptions "do not obscure the basic policy that disclosure, not secrecy, is the dominant objective of the Act." Dep't of the Interior and Bur. of Indian Affairs v. Klamath Water Users Protective Ass'n, 532 U.S. 1, 8 (2001) (citation omitted). The exemptions are thus to be "given a narrow compass." Id. (citation omitted); see also Nat'l

---

[1]    Defendants filed two motions for partial summary judgment on the Second Amended Complaint. The parties jointly requested that the second motion be placed on the Court's suspense calendar pending decisions by other courts on related motions. The Court denied the second motion for summary judgment without prejudice to its renewal following the resolution of the related litigation.

Council of La Raza v. Dep't of Justice, 411 F.3d 350, 356 (2d
Cir. 2005).

A federal court must "conduct de novo review when a member
of the public challenges an agency's assertion that a record
being sought is exempt from disclosure." A Michael's Piano, 18
F.3d at 143. "The burden of proof, upon such review, rests with
the agency asserting the exemption, with doubts resolved in
favor of disclosure." Id.

On a motion for summary judgment, "the defending agency has
the burden of showing . . . that any withheld documents fall
within an exemption to the FOIA." Carney v. U.S. Dep't of
Justice, 19 F.3d 807, 812 (2d Cir. 1994). "Affidavits or
declarations . . . giving reasonably detailed explanations why
any withheld documents fall within an exemption are sufficient
to sustain the agency's burden." Id. Absent any showing to the
contrary, "[a]ffidavits submitted by an agency are accorded a
presumption of good faith." Id. (citation omitted).

II.  The Glomar Response

In rejecting FOIA Request No. 1, defendants gave what is
commonly known as the "Glomar Response," which derives from a
FOIA case concerning records pertaining to the Glomar Explorer,
an oceanic research vessel. See Phillippi v. CIA, 546 F.2d 1009
(D.C. Cir. 1976). In Phillippi, the CIA asserted that the
"existence or nonexistence of the requested records was itself a

classified fact exempt from disclosure under . . . FOIA," id. at
1012, and therefore responded to plaintiff's FOIA request by
stating that, "in the interest of national security, involvement
by the U.S. Government in the activities which are the subject
matter of [Phillippi's] request can neither be confirmed nor
denied." Id. Following Phillippi, courts have found in favor
of the Government where it refused to offer a substantive
response to a FOIA request, if doing so "would remove any
lingering doubts that a foreign intelligence service might have
on the subject, and [where] the perpetuation of such doubts may
be an important means of protecting national security." Frugone
v. CIA, 169 F.3d 772, 774-75 (D.C. Cir. 1999) (citation
omitted).[2]

The Glomar Response does not stand alone; rather,
defendants must tether it to one of the nine FOIA exemptions,

---

[2]    The Second Circuit has never opined on the Glomar Response.
Because plaintiffs' do not challenge the general availability of
the Glomar Response -- but rather the applicability of the
Glomar Response to their FOIA Request No. 1 -- the Court need
not rule on its legal basis, which is firmly established in
other circuits. See, e.g., Carpenter v. U.S. Dep't of Justice,
470 F.3d 434, 436-37 (1st Cir. 2006); Bassiouni v. CIA, 392 F.3d
244, 246 (7th Cir. 2004); Hunt v. CIA, 981 F.2d 1116, 1117 (9th
Cir. 1992). Indeed, the Second Circuit has evidenced a
willingness to look to the law of other circuits -- particularly
the D.C. Circuit -- in the area of FOIA, even when it has not
specifically adopted other circuits' law. This is especially
the case when the Second Circuit defines the contours of the
FOIA exemptions. See, e.g., Inner City Press/Community on the
Move v. Bd. of Governors of Federal Reserve Sys., 463 F.3d 239,
244-45 (2d Cir. 2006); Tigue v. U.S. Dep't of Justice, 312 F.3d
70, 77-78 (2d Cir. 2002).

and explain why the requested documents fall within the exemption identified.  Here, defendants invoked the Glomar Response under FOIA Exemptions 1 and 3.  Exemption 1 permits the nondisclosure of records that are "(A) specifically authorized under criteria established by an Executive order to be kept secret in the interest of national defense or foreign policy and (B) are in fact properly classified pursuant to such Executive order."  5 U.S.C. § 552(b)(1).  As the D.C. Circuit has recognized, "Exemption 1 in this way establishes a specific exemption for defense and foreign policy secrets, and delegates to the President the power to establish the scope of that exemption by executive order."  Military Audit Project v. Casey, 656 F.2d 724, 737 (D.C. Cir. 1981).

In invoking Exemption 1, defendants rely on Executive Order 12958, 60 Fed. Reg. 19825 (Apr. 17, 1995), as amended by Executive Order 13292, 68 Fed. Reg. 15315 (Mar. 25, 2003), which provides that an agency may classify records relating to, inter alia, "intelligence activities (including special activities), intelligence sources or methods, or cryptology," and "vulnerabilities or capabilities of systems, installations, infrastructures, projects, plans, or protection services relating to the national security, which includes defense against transnational terrorism."  68 Fed. Reg. at 15317. Executive Order 12958 permits a classifying agency such as the

NSA to classify information when it "determines that the unauthorized disclosure of the information reasonably could be expected to result in damage to the national security, which includes defense against transnational terrorism, and the original classification authority is able to identify or describe the damage." Id. at 15315.  Further, the Executive Order specifically countenances the Glomar Response, permitting a classifying agency to "refuse to confirm or deny the existence or nonexistence of requested records whenever the fact of their existence or nonexistence is itself classified under this order or its predecessors." Id. at 15324.

Exemption 3 applies to records "specifically exempted from disclosure by statute," provided that the statute "requires that the matters be withheld from the public in such a manner as to leave no discretion on the issue." 5 U.S.C. § 552(b)(3).  In invoking Exemption 3, defendants identify three statutes which they allege encompass the documents sought by plaintiffs, and therefore preclude disclosure.  First, Section 6 of the National Security Agency Act of 1959 ("NSAA"), Pub. L. No. 86-36, § 6, 73 Stat. 63, 64, codified at 50 U.S.C. § 402, provides that:

> [N]othing in this Act or any other law . . .
> shall be construed to require the disclosure
> of the organization or any function of the
> National Security Agency, of any information
> with respect to the activities thereof, or
> of the names, titles, salaries, or number of
> persons employed by such agency.

Second, Section 102(A)(i)(1) of the Intelligence Reform and Terrorism Prevention Act of 2004, Pub. L. No. 108-458, 118 Stat. 3638 (Dec. 17, 2004), codified at 50 U.S.C. § 403-1(i)(1), requires the Director of National Intelligence to "protect intelligence sources and methods from unauthorized disclosure." Third, Section 798 of Title 18, U.S.C., criminalizes disclosure of information "concerning the communications intelligence activities of the United States."

III. Analysis

     Defendants need only proffer one legitimate basis for invoking the Glomar Response in order to succeed on their motion for summary judgment. Defendants' affidavits provide the requisite detailed explanations for withholding the documents requested in FOIA Request No. 1 under FOIA Exemption 3. Specifically, defendants have demonstrated that acknowledging the existence or nonexistence of the information entailed in FOIA Request No. 1 would reveal the NSA's organization, functions, and activities, in contravention of Section 6 of the NSAA. Accordingly, their motion for summary judgment is granted.

     In CIA v. Sims, 471 U.S. 159 (1985), the Supreme Court adopted a two-pronged approach to evaluating an agency's invocation of FOIA Exemption 3: First, the court must consider

whether the statute identified by the agency is a statute of exemption as contemplated by Exemption 3.  Second, the court must consider whether the withheld material satisfies the criteria of the exemption statute.  Id. at 167; see Fitzgibbon v. C.I.A., 911 F.2d 755, 761 (D.C. Cir. 1990).  As the D.C. Circuit has observed, "[e]xemption 3 presents considerations distinct and apart from the other eight exemptions" inscribed in FOIA.  Association of Retired R.R. Workers v. U.S. R.R. Retirement Bd., 830 F.2d 331, 336 (D.C. Cir. 1987):

> Exemption 3 differs from other FOIA exemptions in that its applicability depends less on the detailed factual contents of specific documents; the sole issue for decision is the existence of a relevant statute and the inclusion of withheld material within the statute's coverage.

Id.

Defendants argue, and plaintiffs do not dispute, that Section 6 of the NSAA qualifies as an exemption statute under Exemption 3.  The D.C. Circuit -- the only circuit court to have considered this question -- concurs.  See Founding Church of Scientology, Inc. v. NSA, 610 F.2d 824, 828 (D.C. Cir. 1979); Hayden v. NSA, 608 F.2d 1381, 1389 (D.C. Cir. 1979).  Indeed, the language of Section 6 makes quite clear that it falls within the scope of Exemption 3.  Section 6 states that no "law . . . shall be construed to require the disclosure . . . of any information with respect to the activities" of the NSA.  Pub. L.

No. 86-36, § 6, 73 Stat. 63, 64, <u>codified at</u> 50 U.S.C. § 402.
Section 6 thus "specifically exempt[s]" certain information
"from disclosure."  5 U.S.C. § 552(b)(3).

The second part of the Exemption 3 inquiry under <u>Sims</u>
probes whether the withheld material satisfies the criteria of
the exemption statute.  Defendants contend that "[a]cknowledging
the existence or nonexistence of the information requested by
Plaintiffs' FOIA Request No. 1 would unquestionably reveal NSA's
organization, functions and activities by revealing the success
or failure of NSA's activities."  In support of this contention,
they have submitted affidavits from Joseph J. Brand, Associate
Director, Community Integration, Policy and Records for the NSA;
J. Michael McConnell, Director of National Intelligence; and
David M. Hardy, Section Chief of the Record/Information
Dissemination Section, Records Management Division, Federal
Bureau of Investigation.

In his affidavit, Brand avers that the TSP is a SIGINT
program "that was critical to the national security of the
United States."  Operation of the TSP "depends upon the
collection of electronic communications, which can be easily
compromised if targets are made aware of NSA capabilities and
priorities."  Giving the Glomar Response to FOIA Request No. 1
was essential, Brand attests, because

> [a]cknowledging the existence or non-
> existence of those individuals or
> organizations subject to surveillance would
> provide our adversaries with critical
> information about the capabilities and
> limitations of the NSA, such as the types of
> communications that may be susceptible to
> NSA detection.  Confirmation by NSA that a
> person's activities are not of foreign
> intelligence interest or that NSA is
> unsuccessful in collecting foreign
> intelligence information on their activities
> on a case-by-case basis would allow our
> adversaries to accumulate information and
> draw conclusions about NSA's technical
> capabilities, sources, and methods.

Similarly, McConnell states that "[t]o confirm or deny whether

someone is a target of surveillance . . . would reveal to our

adversaries that an individual may or may not be available as a

secure means for communicating or, more broadly, the methods

being used to conduct surveillance."  The disclosure of such

information would run afoul of Section 6 of the NSAA, Brand

contends, because it "would reveal the sources of intelligence .

. . and would tend to reveal the methods by which such

intelligence is collected . . . ."  Further, "confirmation or

denial of this information would reveal the limitations of NSA

SIGINT capabilities."  Even the disclosure of "what appears to

be the most innocuous information about the TSP" poses a threat

to national security, McConnell avers, because it might permit

our adversaries "to piece together sensitive information about

how the Program operated, the capabilities, scope and

effectiveness of the Program and our current capability, which would be utilized by the enemy to allow them to plan their terrorist activities more securely."

These affidavits demonstrate that the documents sought in FOIA Request No. 1 relate to "the organization or any function of the National Security Agency" and seek "information with respect to the activities thereof," Pub. L. No. 86-36, § 6, 73 Stat. 63, 64, codified at 50 U.S.C. § 402, all of which are exempted from disclosure by Section 6 of the NSAA.  The affidavits aver that the TSP is a SIGINT program, and "signals intelligence is one of [NSA's] primary functions"; the release of the SIGINT information would "disclose information with respect to [NSA] activities, since any information about an intercepted communication concerns an NSA activity."  Hayden, 608 F.2d at 1389.  Moreover, the affidavits explain in "detailed, nonconclusory" fashion, Wood v. FBI, 432 F.3d 78, 85 (2d Cir. 2005), why the Glomar Response is appropriate.  The affidavits thus "giv[e] reasonably detailed explanations why any withheld documents fall within an exemption," and are therefore "sufficient to sustain the agency's burden."  Carney, 19 F.3d at 812.

Plaintiffs do not challenge the legal basis for defendants' Glomar Response, nor do they challenge the sufficiency -- either in form or substance -- of defendants' affidavits in support of

14

their reliance on FOIA Exemption 3 and Section 6 of the NSAA.
Instead, plaintiffs challenge defendants' refusal to produce the
requested information primarily by arguing that the TSP is
illegal, violating both the United States Constitution[3] and FISA,
and that FOIA exemptions cannot be invoked to facilitate the
concealment of unlawful activity.  The Court need not address
plaintiffs' substantive arguments concerning the TSP's legality,
however, because the language of FOIA Exemption 3 and Section 6
of the NSAA makes clear that the defendants permissibly refused
to disclose the information requested by plaintiffs.

FOIA Exemption 3 states without exception that the
disclosure requirements of FOIA do not apply to information
"specifically exempted from disclosure by statute."  5 U.S.C. §
552(b)(3).  Section 6 of the NSAA, in turn, requires the non-
disclosure of information concerning "the organization or any
function of the National Security Agency" or "information with
respect to the activities thereof."  As the D.C. Circuit has
observed, this language is "unequivocal[]," Linder v. Nat'l Sec.
Agency, 94 F.3d 693, 696 (D.C. Cir. 1996).  Plaintiffs'

---

[3]    Specifically, plaintiffs claim that the TSP -- or, more
specifically, the Government's possible surveillance of their
communication with their clients and the Government's refusal to
confirm that plaintiffs are not being surveilled -- violates
their First Amendment right and duty to raise all reasonable
arguments on their clients' behalf, their clients' Fifth
Amendment due process right to a meaningful opportunity to
present a complete defense, and plaintiffs' own Fifth Amendment
liberty right to pursue their chosen occupation as attorneys.

assertion that the TSP is illegal proves an insufficient retort to these clear statutory directives.  See People for the Am. Way v. Nat'l Sec. Agency, 462 F. Supp. 2d 21, 31 (D.D.C. 2006).

Plaintiffs' argument rests primarily on dicta in the D.C. Circuit's decision in Hayden v. CIA and a handful of district court cases, none of which actually endorsed plaintiffs' theory.[4] In Hayden, the D.C. Circuit considered a FOIA request for foreign intelligence reports concerning the plaintiffs. Plaintiffs did not allege that the reports derived from any unlawful activity.  The court nonetheless opined that, "[c]ertainly where the function or activity is authorized by statute and not otherwise unlawful, NSA materials integrally related to that function or activity fall within [the

_____

[4]    Plaintiffs also cite the D.C. Circuit's decision in Founding Church of Scientology.  In that case, the court observed,

> Although NSA would have no protectable interest in suppressing information simply because its release might uncloak an illegal operation, it may properly withhold records gathered illegally if divulgence would reveal currently viable information channels, albeit ones that were abused in the past.

610 F.2d at 829 n.49.  In this case, plaintiffs have not alleged that the NSA has refused to disclose the information requested in FOIA Request No. 1 "simply because its release might uncloak an illegal operation."  Indeed, as plaintiffs themselves argue, members of President Bush's administration have publicly acknowledged the existence of the TSP.  Further, defendants' detailed affidavits describe the ways in which disclosing the information sought by plaintiffs would compromise ongoing SIGINT activities, and plaintiffs have not challenged defendants' assertions.

predecessor statute to Section 6 of the NSAA] and Exemption 3."
Hayden, 608 F.2d at 1389 (emphasis added).  Plaintiffs attempt
to cast this line of dicta as a prohibition on using FOIA to
avoid disclosure of allegedly unlawful government activity, but
it is clear that the D.C. Circuit eschewed that question in
Hayden and did not opine on the availability of FOIA amidst
allegations of illegality.  Indeed, the D.C. Circuit held that
"all that is necessary" for the NSA to successfully resist
disclosure under Exemption 3 is to explain how the requested
documents "would reveal information integrally related to . . .
NSA activity."  Id. at 233.  Given the clear language of the
statutes at issue, plaintiffs' creative interpretation of the
D.C. Circuit's dicta in Hayden is insufficient to vindicate
their position.

     Further, as plaintiffs correctly observe, a number of
district courts confronting requests for information concerning
President Bush's war on terror have expressed concern that the
Government might refuse to disclose requested information in
order to conceal unlawful activity.  Indeed, some have cited the
Hayden dicta to underscore their point.  See, e.g., People for
the Am. Way, 462 F. Supp. 2d at 33; Terkel v. AT&T Corp., 441 F.
Supp. 2d 899, 905 (N.D. Ill. 2006).  Nonetheless, none of these
courts has resolved the question in plaintiffs' favor.  In
Terkel, plaintiffs sued AT&T under the Electronic Communications

Privacy Act, 18 U.S.C. § 2702(a)(3), alleging that AT&T had
released records of its customers telephone calls to the NSA and
seeking production of those records in discovery.  The NSA
intervened and moved to dismiss, arguing that the plaintiffs'
allegations implicated matters vital to national security and
therefore that production of AT&T's records would violate
Section 6 of the NSAA.  The district court explicitly refused to
"definitively determine the thorny issue of the proper scope of
section 6" because the Government provided an alternative,
independent basis for withholding the records requested by the
plaintiff.  Terkel, 441 F. Supp. 2d at 905.  In ACLU v. Dep't of
Defense, 389 F. Supp. 2d 547 (S.D.N.Y. 2005), the district court
considered plaintiff's FOIA request for documents concerning the
Government's treatment of detainees at Guantanamo Bay.  The
Government gave the Glomar Response with respect to plaintiff's
request for information concerning interrogation techniques
being used on the detainees.  The court expressed "concern . . .
that the purpose of the CIA's Glomar responses is less to
protect intelligence activities, sources or methods than to
conceal possible violations of law in the treatment of
prisoners, or inefficiency or embarrassment of the CIA."  Id. at
564-65 (citation omitted).  Nonetheless, observing the "small
scope for judicial evaluation in this area," id. at 565, the
court accepted the Government's Glomar Response under FOIA

Exemption 3.  Finally, in People for the American Way, the
district court considered plaintiff's FOIA request for
information concerning the TSP and the Government's Glomar
Response.  In the most cogent rebuke to the position advanced by
plaintiffs here, the Honorable Ellen Segal Huvelle explicitly
recognized the Hayden dicta as such, and wrote that the
"potential illegality [of the TSP] cannot be used in this case
to evade the unequivocal language of Section 6 [of the NSAA],
which prohibits the disclosure of information relating to the
NSA's functions and activities."  People for the Am. Way, 462 F.
Supp. 2d at 31 (citation omitted).[5]

Plaintiffs also argue that the Glomar Response is an
inappropriate reply to FOIA Request No. 1 because high-ranking
officials have publicly disclosed certain aspects of the TSP.
Through these disclosures, plaintiffs contend, defendants waived
their right to assert the Glomar Response.  For the purposes of

---

[5]    Plaintiffs also cite an earlier case, Navasky v. CIA, 499
F. Supp. 269 (S.D.N.Y. 1980), which was unrelated to the war on
terror.  In that case, plaintiffs sought records related to the
CIA's "clandestine book publishing activities."  Id. at 271.
The CIA claimed such records were exempt from disclosure under
FOIA Exemption 3.  Plaintiffs argued that because such
activities were "ultra vires the CIA charter," id. at 273, and
therefore illegal, the CIA could not invoke the FOIA exemption.
After reviewing the language of FOIA and a handful of D.C.
Circuit cases concerning allegations of illegal government
activity, the district court drew "[t]he inference . . . that
illegality is not a bar to an otherwise valid justification
under exemption 3," id., and ruled in the CIA's favor.  This
case plainly does not support plaintiffs' position.

this motion, defendants do not appear to dispute that officials in the presidential administration have publicly acknowledged the existence of the TSP, as well as certain details about the program. But, as they rightly argue, "the Glomar response in this case has been exceedingly narrow and covers only confirming or denying whether particular individuals were targeted by or otherwise subject to surveillance under the TSP." Defendants' affidavits sufficiently explain why disclosure of this additional information would violate Section 6 of the NSAA. The law is clear that limited voluntary disclosures by the Government do not necessarily require further disclosures sought through FOIA requests where those disclosures fall within a FOIA exemption. See Salisbury v. United States, 690 F.2d 966, 971 (D.C. Cir. 1982).[6]

Finally, plaintiffs emphasize the "narrowness of the question before the Court." They contend that, because the Government has disclosed much information about the TSP, "[t]he only additional information sought by the plaintiffs is whether the government has illegally intercepted their communications." This argument is misguided for two reasons. First, as defendants' unchallenged affidavits demonstrate, confirming or

---

[6]    Plaintiffs' reliance on the Ninth Circuit's decision in Al-Haramain Islamic Foundation, Inc. v. Bush, 507 F.3d 1190 (9th Cir. 2007), is misplaced. That case did not concern FOIA, but rather the state secrets doctrine, which has its own substantive standards that differ from those under FOIA.

denying whether plaintiffs' communication with their clients has been intercepted would reveal information about the NSA's capabilities and activities, in contravention of Section 6 of the NSAA.  Second, the identity of the person making a FOIA request is irrelevant to the FOIA inquiry, and the agency must not consider the requester's identity.  See Dep't of Justice v. Reporters Committee for Freedom of the Press, 489 U.S. 749, 771 (1989); NLRB v. Sears, Roebuck & Co., 421 U.S. 132, 149 (1975). If, as a matter of law, defendants are required to respond to plaintiffs' FOIA requests, they must do so no matter who is requesting the information.  This might allow potential malfeasants to access sensitive information.  Moreover, according to Brand, the accretion of progressively disclosed information "would disclose the targets and capabilities (sources and methods) of the TSP and inform our adversaries of the degree to which NSA is aware of some of their operative or can successfully exploit particular communications."

CONCLUSION

Defendants' March 18 motion for partial summary judgment is granted.

SO ORDERED:

Dated:    New York, New York
          June 25, 2008

                                    _____
                                         DENISE COTE
                                    United States District Judge

21